**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **PETER BISTRIAN,** | **:** | |
| **Plaintiff,** | **:** | |
| **v.** | **:** | **CIVIL NO. 08-3010** |
| | **:** | |
| **WARDEN TROY LEVI, et al.,** | **:** | |
| **Defendants.** | **:** | |

---

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                          **July 29, 2010**

        Plaintiff Peter Bistrian brings the instant action against Federal Detention Center ("FDC") prison officials and medical staff, and the United States of America, alleging violations of his First, Fifth, and Eighth Amendment rights, in addition to claims under the Federal Tort Claims Act[1] ("FTCA"). Plaintiff's claims arise out of his placement in the Special Housing Unit ("SHU") on four separate occasions while detained in FDC Philadelphia. Now before the Court are Defendants' three Motions to Dismiss[2], addressing each of the remaining eighteen counts in Plaintiff's Second Amended Complaint[3]. These Motions are now ripe for disposition.

---

[1] 28 U.S.C. § 2671, *et seq.*

[2] Doc. Nos. 18, 20, 21.

[3] Plaintiff consents to dismissal of Count XI, a FTCA claim for negligence regarding Plaintiff's first period of SHU confinement, on the basis of it being untimely filed. See Pl.'s Mem. of Law in Opp. Collectively to all Defs.' Motions to Dismiss the Compl. Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) at 55 (Doc. No. 24). Eighteen counts remain in Plaintiff's Second Amended Complaint. See Second Am. Compl. ("SAC") (Doc. No. 17).

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff first entered FDC Philadelphia as a pre-sentence inmate on August 20, 2005.[4]

He was first transferred out of general population and into the SHU[5] on or about November 17, 2005,

for allegedly violating Bureau of Prison ("BOP") telephone regulations.[6]  Plaintiff was held in

administrative segregation until December 9, 2005, when he presented his case before a disciplinary

hearing officer.[7]  Plaintiff then received a thirty (30) day disciplinary segregation,[8] which he does not

challenge in his instant Complaint.  Upon his release from SHU on January 9, 2006, Plaintiff was

again accused of violating the telephone rules and regulations and was placed back in the SHU for

administrative segregation on January 25, 2006.[9]  He remained there for 308 days.[10]  Plaintiff

---

[4]SAC ¶ 9.

[5]Plaintiff describes the SHU as a place "reserved for the segregation of inmates who present a security risk, as well as for inmates who require particular protection.  According to the United States Department of Justice, the SHU's principal purpose is to manage and secure control of inmates officially designated as exhibiting violent or seriously disruptive behavior while incarcerated."  SAC ¶ 11.
  There are two types of segregation in the SHU: administrative and disciplinary.  Administrative segregation is "the status or confinement of an inmate in a special housing unit in a cell either by self or with other inmates which serves to remove the inmate from the general population."  28 C.F.R. § 541.22; SAC ¶ 18.  BOP regulations specify that "[t]he Warden may . . . place an inmate in administrative detention when the inmate's continued presence in the general population poses a serous threat to life, property, self, staff, other inmates or to the security or orderly running of hte institution . . . ."  Id. § 541.22(a).  Also, an inmate may be held in SHU while a violation of BOP regulations is pending.  Id.
  Disciplinary segregation is "the status of confinement of an inmate housed in a special housing unit in a cell either alone or with other inmates, separated from the general population."  28 C.F.R.§ 541.21; SAC ¶ 28.  BOP regulations designate that an inmate may only be placed in disciplinary segregation by order of the Discipline Hearing Officer ("DHO") following a hearing.  Id. § 541.20(a); SAC ¶ 29.

[6]FDC officials accused Plaintiff of making twenty-one (21) calls using the telephone account of another inmate in violation of its policies.  Government's Response to Defendant's Motion for an Emergency Hearing and Certificate of Service, United States v. Peter Bistrian et al., No. 03-CR-757 (E.D. Pa. March 14, 2008); SAC ¶ 57.

[7]SAC ¶ 59.

[8]Id.

[9]Id. ¶ 63.

[10]Id.

identifies Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White as the FDC officials responsible for discussing, on a weekly basis, the status of the SHU inmates and whether any should be released back into the general prison population.[11]

During this second period of segregation, other SHU inmates violently assaulted Plaintiff on two separate occasions. The first attack was perpetrated by fellow SHU detainee Steve Northington, an inmate with several prior violent criminal convictions.[12] In April or May of 2006, Northington asked Plaintiff, who was then assigned as an orderly in the SHU, to pass notes along to other detainees.[13] Plaintiff complied, and then informed Defendant FDC officers Gibbs, Bowns, Jezior, and Bergos of the request.[14] The Federal Bureau of Investigation ("FBI") expressed interest in the communications being passed between Northington and other detainees who were implicated in an unrelated Philadelphia drug gang prosecution, and instructed Plaintiff to continue acting as a courier for inmates Northington, Kaboni Savage, Derek Russell, and one other unidentified detainee.[15] Plaintiff was told to bring all intercepted correspondence to the Special Investigative Services ("SIS") office at FDC Philadelphia, where Defendants would photocopy them and forward the notes to the FBI.[16]

---

[11] Id. ¶ 38.

[12] Id. ¶ 75.

[13] Id. ¶¶ 72, 81.

[14] Id. ¶ 73.

[15] Id. ¶¶ 79, 81.

[16] Id. ¶¶ 80, 82.

Plaintiff passed several notes between his co-detainees.[17] On one occasion, however, when Plaintiff brought a note to Defendants for photocopying, Defendants placed the photocopy back in the delivery envelope instead of the original.[18] Plaintiff asserts that the intended recipient of the note recognized it as a photocopy and immediately realized Plaintiff's cooperation with Defendants.[19] Plaintiff alleges that he then began to receive multiple threats from the inmates against whom he had cooperated; he further alleges that he repeatedly informed Defendants of these threats.[20] On June 30, 2006, in the recreation yard, Plaintiff was severely beaten by Northington and two other SHU inmates.[21] Plaintiff alleges that Defendants appeared indifferent and waited several minutes to intervene and separate the assailants.[22]

On July 6, 2006, Defendants provided Plaintiff with an administrative detention order, citing "security reasons" for Plaintiff's status of confinement in the SHU.[23] On July 27, 2006, Plaintiff pleaded guilty to six counts of federal wire fraud and two counts of failure to appear.[24]

While awaiting sentencing, the second attack occurred on October 12, 2006, also in

---

[17]Id. ¶ 81.

[18]Id. ¶ 84.

[19]Id. ¶ 85.

[20]Id. ¶¶ 86, 87.

[21]Id. ¶¶ 91-95.

[22]Id. ¶ 95, 96.

[23]Id. ¶ 99.

[24]Transcript of Change of Plea Hearing, United States v. Peter Bistrian et al., No. 03-CR-757 (E.D. Pa. March 14, 2008).

the recreation yard.[25]  While Plaintiff was in hand restraints, waiting to be let in from the yard, inmate Aaron Taylor (an inmate with a history of violently attacking fellow detainees) approached him waving a "manufactured razor-blade style weapon, repeatedly slashing and cutting [Plaintiff's] face, arms, and legs."[26]  FDC Philadelphia prison officials, including but not limited to Defendants Knox, Acker, and Dempsey, first attempted to stop the attack by using chemical agents, but resorted to the use of a Tactical Blast Stun Munition, which incapacitated Taylor.[27]  Plaintiff was transported to a local hospital, where he received treatment for the cuts.[28]  Plaintiff alleges that, despite several requests, Defendants did not subsequently allow him to see a medical doctor until November 9, 2006, when he was examined by Defendant medical staff members Reynolds, Dalmasi, and Kaiser.[29]  He further alleges that the medical staff refused to treat him on that day, informing him that "he was going to have to be 'creative' at physical rehabilitation due to his confinement in the SHU."[30]

As a result of the two violent attacks, Plaintiff alleges that he sustained serious injuries, including but not limited to "possibly permanent scarring and nerve damage; loss of feeling in his lower left leg and foot; a finger in his right hand that cannot be closed; chronic back pain; lower back spasms; headaches; a dislocated shoulder; broken and chipped teeth; loss of hearing in his right ear; and severe mental, emotional, and psychological injuries . . . ."[31]  Plaintiff adds that,

---

[25]SAC ¶ 106.

[26]Id. ¶¶ 106, 107.

[27]Id. ¶ 109.

[28]Id. ¶ 112.

[29]Id. ¶ 114.

[30]Id.

[31]Id. ¶ 70.

while housed in the SHU, Defendants were deliberately indifferent to his medical needs.[32]

Plaintiff was released from his second administrative segregation on December 8, 2006, but was returned to the SHU for the third time on December 22, 2006; he remained there until January 25, 2006.[33]  Plaintiff claims that FDC Philadelphia officials removed him from the general population and returned him to the SHU due to the presence of one of his June 30 assailants in the same unit.[34]

On August 10, 2007, Plaintiff avows that Defendant Boardman learned from Dr. Stephen E. Samuel, a forensic psychologist, that Plaintiff suffered from Post-Traumatic Stress Disorder and Dysthymic Disorder resulting from his confinement and the two assaults in the SHU.[35] Dr. Samuel later testified to that effect at Plaintiff's first sentencing hearing.[36]  On September 12, 2007, Plaintiff's counsel requested, by email, a copy of BOP regulations from the Government, explaining that Plaintiff contested the allegations of telephone abuse reported at the sentencing hearing.[37]  Plaintiff claims that the email was forwarded to the prosecutor at FDC Philadelphia.[38] The following day, Plaintiff was placed in the SHU for the fourth time, and remained there until December 4, 2007.[39]  FDC officials issued an administrative detention order the same day, citing the

---

[32]Id. ¶ 71.

[33]Id. ¶ 119.

[34]Id. ¶¶ 118, 119.

[35]Id. ¶ 125.

[36]Id. ¶ 126.

[37]Id. ¶ 127.

[38]Id.

[39]Id. ¶ 128.

investigation of Plaintiff's violation of telephone rules as the reason for confinement.[40]  Also on

September 13th, Plaintiff had a hearing in front of the Unit Discipline Committee ("UDC"), where

he received "a suspended sanction of a loss of phone privileges for 60 days."[41]  Defendants continued

to keep Plaintiff in the SHU despite a plea by his counsel to release him.[42]  Plaintiff further claims

that Defendant Levi threatened him during the fourth confinement, stating that he "would not see

the light of day again."[43]  Plaintiff states that any confessions regarding telephone violations were

the result of coercion by FDC prison officials and staff, who informed him that he would not be

released from the SHU unless he confessed .[44]

      Plaintiff alleges that, for all four periods of confinement in the SHU, he "filed a BOP

Form 8 as an administrative grievance / request for administrative remedy."[45]  He further alleges that,

instead of addressing his Form 8 grievances, Defendants ignored them and retaliated against him by

searching his cell and seizing the documents.[46]  In addition, Defendants refused to discuss the

grievance process, asserted that it was unnecessary to file the forms, and failed to provide Plaintiff

with the appropriate forms when requested.[47]  Moreover, Plaintiff accuses Defendants of failing to

follow the BOP regulations regarding proper procedures for placing inmates in administrative

---

[40]Id. ¶ 129.

[41]Id. ¶ 130.

[42]Id. ¶ 131.

[43]Id. ¶ 133.

[44]Id. ¶ 134.

[45]Id. ¶ 49.

[46]Id. ¶ 50.

[47]Id. ¶¶ 51-53.

segregation: these include providing an inmate with an administrative detention order, investigating the alleged violations which resulted in the confinement in SHU, conducting a disciplinary hearing, and imposing formal sanctions.[48]

On March 14, 2008, Judge Jan E. DuBois sentenced Plaintiff to fifty-seven (57) months imprisonment and ordered him to pay approximately $680,000 in restitution.[49] Plaintiff filed his original Complaint in the instant case on June 27, 2008. Plaintiff amended his Complaint twice; the Second Amended Complaint contains eighteen counts:[50] Counts I-V relate to alleged violations of Plaintiff's Fifth Amendment substantive due process rights; Counts VI-IX arise under the Eighth Amendment; Count X is a First Amendment retaliation claim; and Counts XII-XIX are FTCA claims against the United States.[51]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of any claim wherein the district court lacks subject matter jurisdiction.[52] When considering a 12(b)(1) motion, the court "review[s] only whether the allegations on the face of the complaint, taken as true, allege sufficient facts to invoke the jurisdiction of the district court."[53] When subject matter

---

[48]Id. ¶ 54.

[49]Judgment as to Peter Bistrian, United States v. Peter Bistrian et al., No. 03-CR-757 (E.D. Pa. March 14, 2008).

[50]Supra, note 3.

[51]SAC.

[52]FED. R. CIV. P. 12(b)(1) (West 2009 Revised).

[53]Licata v. U.S. Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994).

jurisdiction is challenged under 12(b)(1), the plaintiff must bear the burden of persuasion.[54]

As a general rule, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."[55] The FTCA is one area in which the United States has waived its sovereign immunity; under the FTCA, the United States is liable for torts as a private individual.[56] Federal prisoners may recover damages under the FTCA from the government for injuries sustained during confinement as a result of negligence by government employees.[57] If, however, a plaintiff fails to allege an injury caused by a negligent or wrongful act or omission for which a private party would be liable, Congress has not waived sovereign immunity with respect to that act, and the court lacks subject matter jurisdiction.

A complaint can be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has not presented "'enough facts to raise a reasonable expectation that discovery will reveal evidence' of [a] necessary element."[58] A court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[59] However, a plaintiff's "bald assertions" or "legal

---

[54]Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

[55]United States v. Sherwood, 312 U.S. 584, 586 (1941).

[56]28 U.S.C. § 2674 (1988).

[57]See United States v. Muniz, 374 U.S. 150 (1963).

[58]Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

[59]Id. at 233.

9

conclusions" need not be accepted as true by the court.[60]  At this stage, the court does not determine whether the non-moving party will prevail, but whether it will be permitted to offer evidence in support of the claims in the complaint.[61]

The pleading standard relevant to a Rule 12(b)(6) inquiry, described in Federal Rule of Civil Procedure 8(a)(2) as "a short and plain statement of the claim showing that the pleader is entitled to relief"[62] has been addressed twice by the Supreme Court of the United States in recent years, first in Twombly and then in Ashcroft v. Iqbal.[63]  The Court in Twombly articulated a "plausibility" standard that a plaintiff must meet by its factual allegations to survive a motion to dismiss.  The Court described it as a level higher than suspicion or speculation.[64]  The Iqbal Court, applying the Twombly standard in a discrimination case, offered further explanation and support, stating "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'"[65]

### III. DISCUSSION

*A. Defendants Levi, Brown, Blackman, Knox, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wislon, Robinson, Acker, Dempsey, Armisak, Dalmasi, Bokhari, Fausto, Boardman,*

---

[60] In Re Burlington Coat Factory Sec. Litigation, 114 F.3d 1410, 1429-30 (3d Cir. 1997).

[61] Fay v. Muhlenberg College, 2008 U.S. Dist. LEXIS 5063, at *4 (E.D. Pa. Jan. 23, 2008) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

[62] FED. R. CIV. P. 8(a)(2).

[63] 129 S. Ct. 1937 (2009).

[64] The decision in Twombly retired the previous standard articulated in Conley v. Gibson, 355 U.S. 41 (1957), allowing dismissal if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Gibson, 355 U.S. at 45-46.

[65] Iqbal, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

*Martinez, Kaiser, Alsbrook, Zorrilla, Massa, and Still's ("FDC Defendants") Motion to Dismiss*

The aforementioned FDC Defendants have moved to dismiss all counts against them (Counts I-X) on the following four grounds: 1) Plaintiff failed to exhaust administrative grievances pursuant to 42 U.S.C. § 1997E(a); 2) the Bivens[66] two-year statute of limitations bars any claims before June 27, 2006; 3) Defendants are immune from suit pursuant to the doctrine of qualified immunity; and 4) Plaintiff failed to plead sufficient facts to show Defendants' individual liability.

Before moving to an analysis of FDC Defendants' Motion, it must first be noted that at all times relevant to the claims at issue in this matter, Plaintiff was a federal detainee awaiting trial, and then, after his guilty plea, awaiting sentencing. As such, the Eighth Amendment prohibition against cruel and unusual punishment is inapplicable, and Plaintiff is protected by the due process clause of the Fifth Amendment.[67] Plaintiff has nevertheless articulated identical claims under the Fifth Amendment substantive due process clause (Counts I-IV) and the Eighth Amendment cruel and unusual punishment clause (Counts VI-IX). The Court shall accordingly dismiss Counts VI-IX and duly analyze the Fifth Amendment claims.

### 1. Exhaustion of administrative remedies

FDC Defendants assert that Plaintiff failed to exhaust his administrative grievances prior to filing the instant suit. Pursuant to the Prison Litigation Reform Act ("PLRA"):

---

[66]Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, 403 U.S. 388 (1971). In Bivens, the United States Supreme Court held that federal officers who acted under color of law were liable for damages caused by their violations of a plaintiff's Fourth Amendment rights. Id. at 397. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

[67]See Bell v. Wolfish, 441 U.S. 520 (1979); see also City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983) (explaining that the due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner.")

> [N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.[68]

As a general rule, inmates who fail to fully complete the prison grievance process are barred from subsequently litigating claims in federal court.[69] A court must examine whether a prisoner has "properly" exhausted his claim by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials.[70] Defendants must plead and prove the failure of a prisoner to exhaust administrative remedies as an affirmative defense.[71]

Courts in the Third Circuit have acknowledged that the exhaustion requirement may be affected by prison officials' refusal to provide a prisoner with the necessary grievance forms.[72] Plaintiff has included in his Second Amended Complaint substantial detail regarding his attempts to exhaust, despite alleged misinformation and obstruction on the part of FDC Defendants. Specifically, for example, he alleges that: FDC Defendants told him that filing grievances was unnecessary; FDC Defendants refused to provide him necessary materials; and Plaintiff submitted numerous grievances on blank paper which he contends were never filed. The Court finds that the facts provided by Plaintiff are sufficient at this stage to deny the Motions to Dismiss as they pertain

---

[68]42 U.S.C. § 1997e(A) (1980).

[69]See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000);

[70]Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).

[71]Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[72]See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); see also McKinney v. Guthrie, 309 Fed. Appx. 586, 588 (3d Cir. 2009); Rye v. Erie County Prison, 689 F. Supp. 2d 770, 773 (W.D. Pa. 2009).

to exhaustion of administrative remedies.

## 2. Statute of limitations under Bivens

The statute of limitations for Plaintiff's Bivens claims, alleging constitutional violations by federal officials, is the statute of limitations for personal injuries in the state where the tortious act occurred;[73] in the present matter, the applicable Pennsylvania statute specifies a two-year period.[74] Plaintiff argues, however, that the two-year period is extended by an equitable exception such as the continuing violation doctrine or equitable tolling.

The facts of Plaintiff's case warrant the application of the continuing violation doctrine. For the continuing violation doctrine: "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred."[75] In determining whether a violation is "continuing", courts generally consider three factors:

> (1) subject matter-whether the violations constitute the same type of [conduct], tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. The consideration of "degree of permanence" is the most important of the factors.[76]

When examining Bivens and § 1983 claims, the Third Circuit has often declined to find continuing

---

[73] See, e.g., Napier v. Thirty or More Unidentified Federal Agents, 855 F.2d 1080, 1087 n.3 (3d Cir. 1988).

[74] 42 Pa. C.S. § 5524(2), (7) (2004).

[75] Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).

[76] Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (citations omitted).

violations.[77]  In the instant matter, however, the four instances of SHU confinement are the same type of conduct, and Plaintiff alleges that he was repeatedly placed in the SHU for the same reason, that is, violations of telephone use policies.  He also asserts that FDC Defendants continually failed to protect him from obvious threats to his health and safety.  The time between the periods of confinement in the SHU and the attacks on Plaintiff by other inmates were relatively brief.  Thus, the continuing violation doctrine is appropriate here.

The Court also finds, in the alternative, that equitable tolling is warranted.  Equitable tolling is applied sparingly and in extraordinary circumstances.[78]  It may be applied "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."[79]  Largely for the reasons outlined infra in Part III.A.1, the Court will allow Plaintiff's claims concerning his first period of SHU confinement and the attack on June 30, 2006 to proceed.  Plaintiff also claims he was prevented from asserting his rights timely; courts in the Third Circuit have held that defendants cannot invoke a statute of limitations defense when defendants prevented the plaintiff from timely filing his action.[80]

### 3. Qualified immunity

FDC Defendants next argue that they are immune from suit under the doctrine of

---

[77] See, e.g., Crawford v. Wash. County Children & Youth Servs., 353 Fed. Appx. 726, 729 (3d Cir. 2009).

[78] Robinson v. Dalton, 107 F.3d 1018, 1023 (3d Cir. 1997).

[79] Id. at 1022.

[80] See, e.g., Howard v. Mendez, 304 F. Supp. 2d 632, 634 (M.D. Pa. 2004).

qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[81] In order to determine whether a defendant has qualified immunity, a court may conduct a two-part test: first, a court considers whether the facts alleged, taken in the light most favorable to the party asserting injury, show that the conduct violated a constitutional right.[82] Second, a court may examine whether that right was "clearly established", in other words, whether a reasonable person would know that her conduct was unlawful under the circumstances.[83]

Defendants first assert qualified immunity with respect to Plaintiff's "failure to protect" claims in Counts I and II. The United States Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."[84] The first incident of violence occurred on June 30, 2006, when Northington and two other inmates attacked Plaintiff. In this instance, Plaintiff alleges that not only did FDC Defendants fail to protect him on the day of the attack, they actually were the direct cause of the violence. FDC Defendants exposed Plaintiff's cooperation through their placement of the photocopied note in the delivery envelope, and thus cannot claim ignorance of the ensuing threat to Plaintiff's safety. Furthermore, it is likely that they were also aware of inmate Northington's violent criminal history, and, even if they did not, Plaintiff avers in his Second Amended Complaint that he specifically notified FDC Defendants of the

---

[81]Pearson v. Callahan, 129 S. Ct. 1808 (2009) (citations omitted).

[82]See Saucier v. Katz, 533 U.S. 194, 201 (2001).

[83]Id. at 202.

[84]Farmer v. Brennan, 511 U.S. 825, 833 (1994).

"substantial risk of serious harm" he faced by being placed in the recreation yard with the inmates against whom he had cooperated.[85]  Once the attack began, Plaintiff asserts that FDC Defendants waited for several minutes before intervening.[86]

The second incident at issue is the attack by Taylor on October 12th.  Plaintiff has asserted that Taylor had a long history of violent attacks against other inmates, a history of which FDC Defendants were allegedly aware.  Despite this knowledge, FDC Defendants left Plaintiff in hand restraints in the recreation yard with Taylor.  In addition, Plaintiff asserts that prison officials' attempts to diffuse the attack further added to his serious injuries.  The Court finds that Plaintiff has plead sufficient facts to make out his failure to protect claims at this preliminary stage.

FDC Defendants next challenge Count IV, which alleges deliberate indifference to Plaintiff's medical needs.  The medical needs Plaintiff refers to arise out of the two assaults committed by fellow SHU inmates Northington and Taylor.  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[87]  Plaintiff asserts in his Second Amended Complaint that prison officials and medical staff denied his requests for treatment of his serious injuries after both the June 30th and October 12th attacks, in addition to ignoring his alleged medical needs that resulted from his confinement in the SHU.  He describes the injuries sustained in both attacks and his confinement in detail.[88]  The Court determines that these allegations are

---

[85]SAC ¶ 87.

[86]Id. ¶ 95.

[87]Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

[88]SAC ¶¶ 135-138.

sufficient to maintain his Count IV claim. The Court declines to construe FDC Defendants' arguments on the issue of deliberate indifference for purposes of summary judgment, but does not preclude Defendants from raising the argument at the appropriate time.[89]

Next, FDC Defendants assert qualified immunity from Plaintiff's First Amendment retaliation claim. The Third Circuit requires a plaintiff stating a retaliation claim to show three elements: 1) he engaged in constitutionally protected conduct; 2) he was subject to adverse action by prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and 3) there exists a "causal link between the exercise of his constitutional rights and the adverse action taken against him."[90] Regarding the third element, the plaintiff bears the burden of proving that his protected conduct was a "substantial or motivating factor" in a government actor's decision to discipline him.[91] In the present matter, Plaintiff avers that his fourth placement in SHU on September 13, 2007 was a direct result of his attempts to challenge the allegations of telephone policy abuse at his sentencing hearing on August 23, 2007, and his counsel's September 12, 2007 email to the Assistant United States Attorney. The close proximity in time between these inquiries and Plaintiff's placement in SHU, the evidence Plaintiff presented as to his psychological reaction to SHU confinement, and the alleged threats from FDC officials during Plaintiff's fourth SHU stay provide factual support for a causal link between Plaintiff's actions and the adverse action of confinement. Even though Plaintiff was found guilty at a UDC proceeding on

---

[89]FDC Defendants ask the Court, in the alternative, to grant summary judgment on Plaintiff's deliberate indifference to medical needs claims. Defs' Mem. of Law in Supp. of their Mot. to Dismiss or, in the Alternative, for Summ. J. at 10, 22 (Doc. No. 20). The Court will allow further discovery on these issues.

[90]Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (internal quotations omitted).

[91]Mount Healthy Board of Education v. Doyle, 429 U.S. 274, 287 (1977).

September 13, 2007, Plaintiff may be able to prove the existence of such a link. The Court holds that Count X survives dismissal.

Finally, FDC Defendants assert that Plaintiff's claims relating to his confinement in SHU do not implicate a liberty interest. The Court disagrees with FDC Defendants' contention that the Third Circuit's decision in Griffin v. Vaughn[92] dictates that Plaintiff's claims related to wrongful confinement in the SHU must fail. Griffin is distinguishable on several grounds; the inmate in that matter was under investigation for the rape of a prison guard, and there is no evidence that he was exposed to threats, violence, or other negative behavior while in administrative segregation.[93] In addition, Griffin was a sentenced inmate, unlike Plaintiff, who was awaiting sentencing at the time of his confinement.[94] Plaintiff's claims focus on FDC Defendants' alleged abuse of and nonconformance with the prison regulations in relation to his confinement; the United States Supreme Court has held that state prison regulations may create liberty interests protected by the Due Process Clause when the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[95] The Court believes that Plaintiff has plead sufficient information to meet his burden on this issue.

**4. Sufficiency of facts related to the liability of each individual Defendant**

For their fourth and final argument, FDC Defendants assert that Plaintiff has failed to plead sufficient facts to demonstrate the individual liability of each Defendant. A defendant in

---

[92] 112 F.3d 703, 706 (3d Cir. 1997).

[93] Id. at 705.

[94] Id. at 709.

[95] See Saudin v. Conner, 515 U.S. 472 (1995).

a civil rights action is liable only if he was individually involved in the alleged malfeasance.[96]  The

Third Circuit requires that a civil rights complaint "contain a modicum of factual specificity,

identifying the particular conduct of defendants that is alleged to have harmed the plaintiff."[97]

Viewing the record in the manner most favorable to Plaintiff, the Court determines that the

information detailed in his 309-paragraph, 108-page Second Amended Complaint is adequate.  For

the remaining claims in the Second Amended Complaint, Counts I-V and X, and for the reasons

stated infra Part III.A.3, the Court finds that Plaintiff has plead with sufficient factual specificity the

personal involvement of each individual defendant.


*B. Defendant Reynolds's Motion to Dismiss*

            Defendant Gary Reynolds, M.D., a federal medical officer employed by the Federal

Bureau of Prisons and assigned to FDC Philadelphia, is named in two counts in the Second

Amended Complaint: Count IV, captioned as "Bivens - Fifth Amendment - Substantive Due Process

- Deliberate Indifference to Medical Needs"; and Count IX, titled "Bivens - Eighth Amendment -

Deliberate Indifference to Medical Needs."  As noted infra Part III.A, Count IX is dismissed by

consent.  However, Count IV, as it relates to the events of June 30, 2006 and October 12, 2006, and

the alleged subsequent lack of medical treatment, survives as to all named Defendants therein.[98]

Thus, the Court shall grant Defendant Reynolds' Motion in part, and deny the Motion in part.

---

[96] C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir.2005);

[97] Freedman v. City of Allentown, 853 F.2d 1111, 1114 (3d Cir. 1988).

[98] See infra, Part III.A.3.

*C. Defendant United States of America's Motion to Dismiss*

Counts XI through XIX arise out of the FTCA. Defendant United States asserts the following arguments as to why the Court lacks jurisdiction over the claims against it: 1) with respect to Counts XII-XIV, Plaintiff did not state a claim for a violation of Pennsylvania law; 2) Counts XV and XVI fall within the discretionary function exception to the FTCA; 3) Plaintiff failed to provide a certificate of merit necessary to maintain Counts XVII and XVIII; and 4) Count XIX fails to state a claim upon which relief can be granted. The Court will examine Defendant's arguments individually.

### 1. Wrongful confinement

Counts XII-XIV, in which the United States is the sole Defendant, allege that the United States is liable under the FTCA for prison officials' negligence in violating various BOP regulations and obligations. However, the FTCA only applies where the negligent government employee has a duty under state tort law.[99] No Pennsylvania law exists that imposes liability in tort for negligence in violating BOP (federal) regulations. The Third Circuit has held on several occasions that violations of federal regulations are not actionable under the FTCA.[100] Moreover, even Pennsylvania statutes are not always enforceable in tort.[101] The Court thus agrees with Defendant United States, and Counts XII-XIV are hereby dismissed.

### 2. Discretionary function exception

Counts XV and XVI, "failure to protect as a confidential informant" and "failure to

---

[99] See, e.g., Walsh v. United States, 328 Fed. Appx. 806, 808 (3d Cir. 2009).

[100] See Rolick v. Collins Pine Co., 975 F.2d 1009, 1014 (3d Cir. 1992); Cecile Industries v. United States, 793 F.2d 97, 100 (3d Cir. 1986).

[101] See, e.g., Maynard v. United States, 2008 U.S. Dist. LEXIS 76849, at *13 (M.D. Pa. Sept. 30, 2008).

protect from assault", relate to the two separate attacks experienced by Plaintiff during his second confinement in the SHU. Plaintiff points to 18 U.S.C. § 4042, which establishes a general duty of care for prisoners, as the source of the duty to protect claims.[102] Defendant United States argues that the discretionary function exception to the FTCA bars the two counts. Under the discretionary function exception, the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government."[103] The Third Circuit recently held that 18 U.S.C. § 4042 leaves the implementation of the duty to protect prisoners (including in the context of inmate-on-inmate violence) to the discretion of the BOP; specifically, it held that the discretionary function exception applies, and alleged violations of § 4042 are not actionable under the FTCA.[104] Thus, Counts XV and XVI must fail.

### 3. Certificate of merit

Counts XVI and XVII concern FDC Defendants' alleged failure to provide necessary medical care. Defendant United States interprets these claims as medical malpractice actions, while Plaintiff contends that the claims arise out of the general duty that the BOP has to protect prisoners, codified in 18 U.S.C. § 4042.[105] The Court finds, in agreement with the Pennsylvania state and

---

[102] 18 U.S.C. § 4042 (2008).

[103] 28 U.S.C. § 2680(a) (2006).

[104] Donaldson v. United States, 281 Fed. Appx. 75, 76 (3d Cir. 2008). Other circuits agree with this view. See Ashford v. United States, 511 F.3d 501, 505 (5th Cir. 2007); Montez ex rel. Estate of Hearlson v. United States, 359 F.3d 392, 396-98 (6th Cir. 2004); Santana-Rosa v. United States, 335 F.3d 39, 43-44 (1st Cir. 2003); Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 795-96 (8th Cir. 1998); Calderon v. United States, 123 F.3d 947, 948-50 (7th Cir. 1997).

[105] Supra, note 102.

federal courts that have considered the issue,[106] that the only possible interpretation of Plaintiff's "failure to provide medical care" claims is as medical malpractice claims. Thus, Pennsylvania law regarding medical malpractice is applicable. Pennsylvania Rule of Civil Procedure 1042.3(a) requires that a certificate of merit be filed "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard."[107] "Rule 1042.3(a) is a substantive state law that federal district courts must apply."[108] Plaintiff admits that he has not filed a certificate of merit, but further alleges that, even if the Court interprets Counts XVI and XVII as medical malpractice claims, a certificate is not required here, as some of the named defendants are not licensed professionals. The Court disagrees. Rule 1042.3 does not distinguish between the type of defendants in the action; that is, whether plaintiffs must only file a certificate of merit if the suit is against medical professional defendants. Plaintiff is not exempt from the statutory requirement when non-licensed professionals are also named as defendants in the suit.[109] Thus, the Court will grant United States' Motion as to Counts XVI and XVII.

### 4. Reckless endangerment count

Plaintiff's last count, Count XIX, should be dismissed for the same reasons as Counts XII to XIV; namely, that there is no independent source of Pennsylvania tort liability for reckless endangerment. Plaintiff's allegations therein are simply repetitive of allegations elsewhere in the complaint, and they fail to state a claim for relief.

---

[106] See Reaves v. Knauer, 979 A.2d 404, 413-14 (Pa. Cmmw. Ct. 2009); see also Stroud v. Abington Memorial Hosp., 546 F. Supp. 2d 238, 245-48 (E.D. Pa. 2008).

[107] Pa. R. Civ. P. 1042.3(a).

[108] Perez v. Griffin, 304 Fed. Appx. 72, 74 (3d Cir. 2008).

[109] See id.; see, e.g., Lopez v. Brady, 2008 U.S. Dist. LEXIS 43797 (M.D. Pa. June 3, 2008).

## IV. CONCLUSION

As discussed in detail above, the Court grants Defendant United States' Motion to Dismiss in full, and grants FDC Defendants and Defendant Reynolds' Motions to Dismiss in part. Counts I-V and Count X remain. An appropriate Order follows.