IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PETER BISTRIAN,                                          CIVIL ACTION

    Plaintiff,                                          NO. 2:08-CV-03010-CMR

    v.                                                  JURY TRIAL DEMANDED

WARDEN TROY LEVI, FDC
Philadelphia, and
ASSISTANT WARDEN TRACY BROWN,
FDC Philadelphia,
          and
ASSISTANT WARDEN BLACKMAN,
FDC Philadelphia,
          and
CAPTAIN DAVID C. KNOX,
FDC Philadelphia,
          and
J. McLAUGHLIN, Special Investigative Agent,
FDC Philadelphia,
          and
DAVID GARRAWAY, Special Investigative
Agent, FDC Philadelphia,
          and
LT. J. A. GIBBS, FDC Philadelphia,
          and
SENIOR OFFICER WILLIAM JEZIOR,
FDC    Philadelphia,
          and
SENIOR OFFICER BOWNS, FDC Philadelphia,
          and
SENIOR OFFICER BERGOS, FDC Philadelphia,
          and
UNIT MANAGER WHITE, FDC Philadelphia,
          and
LT. RODGERS, FDC Philadelphia,
          and
LT. R. WILSON, FDC Philadelphia,
          and

LT. ROBINSON, FDC Philadelphia,
    and
G. REYNOLDS, M.D., FDC Philadelphia,
    and
THE UNITED STATES OF AMERICA,

       Defendants.

## THIRD AMENDED COMPLAINT

Plaintiff, Peter Bistrian, through his undersigned counsel, Dana L. Bazelon, Richard L. Bazelon and Robert E. Goldman hereby asserts, by way of this Third Amended Complaint, claims for damages sustained as a direct and proximate result of the acts and omissions committed by the Defendants named herein in violation of his constitutional rights under the Fifth, Eighth, and First Amendments to the United States Constitution and as a direct and proximate result of the intentional, reckless, negligent, and wrongful acts and omissions committed by the Defendants named herein.  In addition to his Constitutional Claims, Plaintiff also asserts claims against the United States for failing to protect him from two assaults, pursuant to the Federal Tort Claims Act.

## INTRODUCTION

Following his arrest on August 20, 2005, Plaintiff, Peter Bistrian ("Bistrian"), a non-violent defendant accused of white collar offenses, was detained pending trial and sentencing at the Federal Detention Center, Philadelphia ("FDC Philadelphia") which is operated by the Federal Bureau of Prisons ("BOP"), an agency of the United States of America.  During his stay at FDC Philadelphia, Bistrian was held in the Special Housing Unit ("SHU") for a total period of approximately 477 days, or nearly 16 months.  Of Bistrian's 477 days spent in the SHU, approximately 447 days, or nearly 15 months, were illegal, in violation of Bistrian's constitutional rights and intentionally and/or negligently and wrongfully in violation of BOP regulations.  Bistrian's wrongful detention in the SHU was in violation of his liberty interests and due process rights as protected by the Fifth Amendment to the United States Constitution; in violation of his rights under the First Amendment to the United States Constitution to be protected from governmental retaliation for the exercise of constitutionally protected activity;

and a direct and proximate result of negligent and wrongful acts and omissions on the part of Defendants.

It was, therefore, through the acts and omissions of BOP agents, servants, and employees, including the named Defendants, FDC Philadelphia agents, servants; and employees, and other governmental agents, servants, and employees that Bistrian was illegally, intentionally and/or negligently held in the SHU, in close quarters with violent and dangerous criminal offenders. While Bistrian was unconstitutionally, unlawfully, intentionally and/or negligently held in the SHU, he was violently assaulted by other FDC inmates on two separate occasions, June 30, 2006 and October 12, 2006.  These assaults were committed upon Bistrian as a direct and proximate result of the failure of BOP agents, servants, and employees, including the named Defendants, FDC Philadelphia agents, servants, and employees, and other governmental agents, servants, and employees to protect Bistrian, in violation of the Fifth Amendment to the United States Constitution, FDC non-discretionary policies, and in violation of their duty under 18 U.S.C.§ 4042 to "provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States."  Also in violation of the Fifth Amendment and 18 U.S.C. § 4042, BOP agents, servants, and employees, including the named Defendants, FDC Philadelphia agents, servants, and employees, and other governmental agents, servants, and employees intentionally failed to provide necessary and timely medical treatment to Bistrian.  In addition, Defendants, FDC Philadelphia agents, servants, and employees, and other governmental agents, servants, and employees retaliated against Bistrian for petitioning for the redress of his treatment at FDC Philadelphia by confining him in administrative segregation in the SHU for a period of 83 days.

As a direct and proximate result of the wrongful acts and omissions of BOP agents, servants, and employees, including the named Defendants, FDC Philadelphia agents, servants, and employees, and other governmental agents, servants, and employees named herein, Bistrian has sustained severe, permanent and substantial physical and psychological injuries, in violation of his constitutional rights and as a direct and proximate result of Defendants' negligence.

### ADMINISTRATIVE CLAIM UNDER THE FEDERAL TORT CLAIMS ACT, 28 U.S.C. §§ 1346(b) and 2671 et seq.

On June 20, 2008, Bistrian filed a Form 95 I Claim for Damage, Injury, or Death under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 et seq., with the BOP, the appropriate federal agency whose agents, servants, and employees committed the acts and omissions set forth herein.  On December 17, 2008 the BOP denied Bistrian's claim, leaving Bistrian with no other remedy than to amend this action to also plead claims under the FTCA. Bistrian's First Amended Complaint pleading claims under the FTCA was filed on May 29, 2009.

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1346(b).  Bistrian brings claims against BOP agents, servants, and employees, FDC Philadelphia agents, servants, and employees, and other governmental agents, servants, and employees acting within the scope of their agency and employment under the Fifth, Eighth, and First Amendments to the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971).  Bistrian further brings claims against the United States of America pursuant to the FTCA.

2.      Venue properly lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C.

§ 1391(b), as a substantial part of the events or omissions giving rise to this action occurred in

this District.  In particular, a substantial part of the events and/or omissions set forth herein

occurred at FDC Philadelphia, located in the Eastern District of Pennsylvania.

## THE PARTIES

3.      Plaintiff, Bistrian, is an adult individual presently residing at 43 Louse Point

Road, East Hampton, NY 11937, having been released from Metropolitan Correctional Center,

New York ("MCC New York"), located at 150 Park Row, New York, NY 10007 (where he was

transferred following his sentencing), on June 29, 2009.  At all times relevant herein, Bistrian

was an inmate awaiting sentencing at FDC Philadelphia.

4.      Defendants Warden Troy Levi ("Levi"); Assistant Warden Tracy Brown

("Brown"); Assistant Warden Blackman ("Blackman"); Captain David C. Knox ("Knox"); J.

McLaughlin, Special Investigative Agent ("McLaughlin"); David Garraway, Special

Investigative Agent ("Garraway");  Lt. J. A. Gibbs ("Gibbs"); Senior Officer William Jezior

("Jezior"); Senior Officer Bowns ("Bowns"); Senior Officer Bergos ("Bergos"); Unit Manager

White ("White"); Lt. Rodgers ("Rodgers"); Lt. R. Wilson ("Wilson"); Lt. Robinson

("Robinson"); G. Reynolds, M.D. ("Reynolds") are adult individuals and, at all times relevant

herein, agents, servants, and employees of BOP and/or FDC Philadelphia acting within the

course and scope of their authority as agents, servants, and employees of BOP and/or FDC

Philadelphia.  As agents, servants, and employees of BOP and/or FDC Philadelphia, they are,

and were at all times relevant herein, responsible for the treatment, protection, and medical care

of prisoners.  They also are, and were at all times relevant herein, required to respect and comply

with the Constitutional rights of all federal prisoners, as well all BOP rules, regulations, and

4

other mandated duties.   Moreover, as agents, servants, and employees of BOP and/or FDC Philadelphia, they are, and were at all times relevant herein, responsible for the supervision, direction, and control of other employees at BOP and/or FDC Philadelphia.  It is believed, and therefore averred, that these Defendants deprived Bistrian of his constitutional rights under the First and Fifth Amendments to the United States Constitution, conspired with other Defendants to deprive Bistrian of his constitutional rights under the First and Fifth Amendments and were intentional and/or negligent and wrongful in their acts and omissions towards Bistrian. Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson, Robinson, and Reynolds, and are sued in their individual capacities.

5.      Defendant the United States of America is a sovereign entity, generally immune from suit.  However, the United States of America has partially waived its sovereign immunity under the FTCA.  Pursuant to the FTCA, the United States of America is liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  All employees of BOP and/or FDC Philadelphia are the servants and employees of the United States of America.

6.      Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson, Robinson, Reynolds and the United States of America are referred to collectively herein as the "Defendants."

## FACTUAL ALLEGATIONS

7.      Between his arrest on August 20, 2005 and his sentencing on March 14, 2008, Bistrian was a non-violent inmate awaiting sentencing in two (2) white collar criminal cases at FDC Philadelphia.

8.      An inmate awaiting sentencing, Bistrian held the same status under the United States Constitution as a pre-trial detainee, with the Due Process Clause of the United States Constitution protecting him from conditions of confinement which amount to punishment.  *See, Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872 (1979); *Fuentes v. Wagner*, 206 F.3d 335, 341 (3d Cir. 2000) cert. *denied*, 531 U.S. 821 (2000).

## The Special Housing Unit (SHU)

9.      At FDC Philadelphia, BOP maintained the SHU, which is reserved for the segregation of inmates who present a security risk, as well as for inmates who require particular protection.  According to the United States Department of Justice, the SHU's principal purpose is to manage and secure control of inmates officially designated as exhibiting violent or seriously disruptive behavior while incarcerated.

10.     The SHU's conditions, faced by Bistrian, were atypical and significant in comparison to the conditions faced by prisoners in the general population at FDC Philadelphia, and include, without limitation:

a.      Inmates housed in the SHU are confined to solitary or near-solitary confinement in a six by eight foot cell for 23 to 24 hours a day, with little or no opportunity to interact with other inmates;

b.      Inmates housed in the SHU experience sensory deprivation, with poorly lighted cells and smoked windows to prevent outside visibility;

c.      Inmates housed in the SHU have reduced access to personal property and

6

to legal materials and have limited ability to file administrative grievances;

d.      Medical care in the SHU is absent or deficient;

e.      Inmates housed in the SHU receive meals in their cells with no communal time permitted;

f.      Recreational activities in the SHU are virtually nonexistent, and basic supplies such as paper and pencils are difficult to obtain; and

g.      Access to legal counsel is limited.

11.     Due to the SHU's isolative and claustrophobic nature, suicide attempts are not uncommon in the SHU population of FDC Philadelphia, and in the BOP prison population nationwide.  There is a greater tendency among inmates to attempt suicide while confined in the SHU than in the general population.

12.     The Fifth and Eighth Amendments and federal (BOP) regulations mandate that BOP and FDC Philadelphia and their employees have a basis in fact and follow various procedures in order to segregate and confine an inmate in the SHU.

13.     Both the Fifth and Eighth Amendments and federal (BOP) regulations require that an inmate's placement in the SHU is to last no longer than necessary to accomplish a permissible or legitimate non-punitive objective in compliance with BOP regulations.

14.     The mandatory language of these BOP regulations creates a protected liberty interest in an inmate, such as Bistrian, remaining outside of the SHU and part of the general prison population, unless and until BOP regulations are followed.

15.     BOP regulations provide mandatory procedural requirements that are not left to the discretion of BOP employees for both administrative segregation and disciplinary segregation in the SHU.

7

### Administrative Segregation

16.     "Administrative detention," also referred to as "administrative segregation," is "the status of confinement of an inmate in a special housing unit in a cell either by self or with other inmates which serves to remove the inmate from the general population."  28 C.F.R. § 541.22.[1]

17.     BOP regulations provide, in relevant part, that:

> The Warden may place an inmate in administrative detention when the inmate is in holdover status (i.e., en route to a designated institution) during transfer, or is a new commitment pending classification.  The Warden may also place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate:

> (1)     Is pending a hearing for a violation of Bureau regulations;
> (2)     Is pending an investigation of a violation of Bureau regulations;
> (3)     Is pending investigation or trial for a criminal act;
> (4)     Is pending transfer;
> (5)     Requests admission to administrative detention for the inmate's own protection, or staff determines that admission to or continuation in administrative detention is necessary for the inmate's own protection....; or

> (6)     Is terminating confinement in disciplinary segregation and placement in general population is not prudent.  The Segregation Review Official is to advise the inmate of this determination and the reasons for such action.

28 C.F.R. § 541.22(a).

18.     BOP regulations require the Warden—in this case, Defendant Levi—to prepare an administrative detention order "detailing the reasons for placing an inmate in administrative detention" within 24 hours of the inmate's placement in administrative segregation, and provide a copy to the inmate.  28 C.F.R. § 541.22(b).

---

[1] The quoted regulations were those in effect during Plaintiff's confinement at the FDC.

19.     BOP regulations further require individualized determinations concerning the appropriateness of continuing an inmate in administrative segregation.

20.     Specifically, 28 C.F.R. § 541.22(c)(l) provides, in relevant part, that:

> [T]he Segregation Review Official ["SRO"] will review the status of inmates housed in administrative detention.  The SRO shall conduct a record review within three work days of the inmate's placement in administrative detention and shall hold a hearing and formally review the status of each inmate who spends seven continuous days in administrative detention, and thereafter shall review these cases on the record (in the inmate's absence) each week, and shall hold a hearing and review these cases formally at least every 30 days.  The inmate appears before the SRO at the hearing unless the inmate waives the right to appear....Staff shall conduct a psychiatric or psychological assessment, including a personal interview, when administrative detention continues beyond 30 days....Staff shall conduct a similar psychiatric or psychological assessment and report at subsequent one-month intervals should detention continue for this extended period.

28 C.F.R. § 541.22(c)(l).

21.     28 C.F.R. § 541.22(c)(l) further provides, in relevant part, that:

> Administrative detention is to be used only for short periods of time except where an inmate needs long-term protection..., or where there are exceptional circumstances, ordinarily tied to security or complex investigative concerns.  An inmate may be kept in administrative detention for longer term protection only if the need for such protection is documented by the SRO.  Provided institutional security is not compromised, the inmate is required to receive at each formal review a written copy of the SRO's decision and the basis for this finding.

28 C.F.R. § 541.22(c)(l).

22.     Moreover, pursuant to 28 C.F.R. § 541.22(c)(3), "when an inmate is placed in administrative detention for protection, but not at that inmate's request, the Warden or designee is to review the inmate's status within two work days of this placement to determine if continued protective custody is necessary."  28 C.F.R. § 541.22(c)(3).

23.     Inmates placed in administrative detention for protection, "but not at their own request" are then "entitled to a hearing, no later than seven days from the time of their admission...." 28 C.F.R. § 541.23(b).  See also 28 C.F.R. § 541.22(c)(3).

24.     An inmate is required to be released "from administrative detention when reasons for placement cease to exist."  28 CFR § 541.22(c)(l).

25.     The requirements concerning the administrative detention order and individualized determinations concerning the appropriateness of continuing an inmate in administrative segregation are mandated by the BOP regulations and not left to the discretion of BOP employees.

## Disciplinary Segregation

26.     "Disciplinary segregation is the status of confinement of an inmate housed in a special housing unit in a cell either alone or with other inmates, separated from the general population.  Inmates housed in disciplinary segregation have significantly fewer privileges than those housed in administrative detention."  28 C.P.R. § 541.21(a).

27.     BOP regulations provide that "an inmate may be placed in disciplinary segregation only by order of the Discipline Hearing Officer ["DHO"] following a hearing in which the inmate has been found to have committed a prohibited act in the Greatest, High, or Moderate Category, or a repeated offense in the Low Moderate Category.  The DHO may order placement in disciplinary segregation only when other available dispositions are inadequate to achieve the purpose of punishment and deterrence necessary to regulate an inmate's behavior within acceptable limits."  28 CFR § 541.20(a).

10

28.     BOP regulations further require an "independent" DHO to "conduct hearings, make findings, and impose appropriate sanctions for incidents of inmate misconduct...."  28 CFR § 541.16(6).

29.     Moreover, BOP regulations require that the Warden, such as Defendant Levi, provide an inmate with at least 24 hours' notice prior to the inmate's appearance in front of the DHO.  28 CFR § 541.17(a).

30.     The inmate has the right to be represented at the DHO hearing by a full-time staff member at the facility.  The inmate's representative can speak to possible witnesses, and can assist the inmate in presenting evidence on the merits of the charges and on any appropriate sanction.  The DHO is required to give the representative sufficient time to talk with the inmate and to interview potential witnesses.  28 CFR § 541.17(b).

31.     At the DHO hearing, the inmate may make a statement; present documentary evidence; and call witnesses, subject to certain conditions.  28 CFR § 541.17(c).

32.     The DHO, after considering all the evidence presented at the hearing, is required to make findings "based on the greater weight of the evidence."  28 CFR § 541.17(f).

33.     The DHO must prepare a report of the hearing (referred to in the BOP regulations as a "record of the proceedings").  The report shall include, in specific terms, the DHO's findings, the DHO's decision, the evidence relied on, and a statement of the reasons for any sanctions.  28 CFR § 541.17(g).

34.     As with the SRO's review of the status of inmates spending seven continuous days in administrative detention, the SRO is required to "conduct a hearing and formally review the status of each inmate who spends seven continuous days in disciplinary segregation and thereafter shall review these cases on the record in the inmate's absence each week and shall

11

conduct a hearing and formally review these cases at least once every 30 days. The inmate appears before the SRO at the 30-day hearings, unless the inmate waives the right to appear." 28 C.F.R. § 541.20(c).

35.     The requirements concerning the DHO and individualized determinations concerning the appropriateness of continuing an inmate in disciplinary segregation are mandated by the BOP regulations and not left to the discretion of BOP employees.

**Defendants' Wrongful and Excessive Imprisonment
of Bistrian in the SHU, In Violation of His Rights Under the
Fifth and First Amendments to the United States Constitution
<u>And As Negligent and Wrongful Conduct</u>**

36.     As an inmate at FDC Philadelphia between his arrest on August 20, 2005 and his sentencing on March 14, 2008, Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson, Robinson, placed and kept Bistrian in segregation in the SHU for approximately 477 days, approximately 447 days of which were categorized as administrative detention, or administrative segregation, and 30 days of which were categorized as "disciplinary segregation."

37.     As a result of wrongful conduct on the part of the Defendants, Bistrian served four (4) separate periods of administrative segregation in the SHU. These were: (1) from November 18, 2005 to December 9, 2005 (22 days); (2) from January 25, 2006 to December 8, 2006 (308 days); (3) from December 22, 2006 to January 25, 2007 (34 days); and (4) from September 13, 2007 to December 4, 2007 (83 days).

38.     In placing Bistrian in administrative segregation in the SHU, and confining him therein for approximately 447 days, Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White,

12

Rodgers, Wilson and Robinson, intentionally and/or negligently and wrongfully failed to comply with mandatory BOP regulations, and violated Bistrian's procedural and substantive due process rights under the Fifth Amendment to the United States Constitution.

39.     Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson, and Robinson intentionally and/or negligently and wrongfully did not have, and failed to provide a legitimate purpose for Bistrian's placements in administrative segregation in the SHU.

40.     Bistrian's approximately 447 days' confinement in the SHU was not connected to BOP and/or FDC Philadelphia's legitimate security concerns, and was without any other legitimate purpose.

41.     To the contrary, it is believed, and therefore averred, that Bistrian was targeted by Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson to receive the wrongful extensive confinement in the SHU, in violation of his constitutional rights under the First and Fifth Amendments to the United States Constitution, and in violation of their statutory duty to him to provide for his safekeeping and care.

42.     Moreover, Bistrian's approximately 447 days' confinement in the SHU was arbitrary and capricious and evidenced an intent by Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson to inflict punishment upon Bistrian which is not constitutionally permissible as a reason for placing or keeping a pre-trial detainee in administrative segregation.

13

43.     The SHU's conditions imposed atypical and significant hardship, and cruel and unusual punishment, on Bistrian, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

44.     Upon each of his four separate placements in administrative segregation in the SHU, Bistrian gave BOP administrative grievance forms to correctional officers requesting an administrative remedy.  Many of these forms were destroyed or disposed of by correctional officers, and never filed on Bistrian's behalf.

45.     On many occasions correctional officers failed to provide Bistrian with proper grievance forms, despite Bistrian's repeated requests for these forms.  When this occurred, Bistrian wrote out his grievances on plain paper and gave it to correctional officers.  These documents were destroyed and/or not preserved by FDC staff.

46.     However, with respect to each of Bistrian's four separate placements in administrative segregation in the SHU, BOP and/or FDC Philadelphia ignored all of his written grievances for administrative remedy, and instead subjected Bistrian to retaliatory measures including, without limitation, a search of his cell and seizure of BOP grievance forms.

47.     BOP and/or FDC Philadelphia guards and staff also refused to discuss with Bistrian the documents needed to file administrative grievances, despite his requests for assistance in filing such grievances.

48.     Furthermore, BOP and/or FDC Philadelphia guards and staff represented and warranted to Bistrian that administrative grievances should not and need not be filed, as he would be released from the SHU based upon his cooperation with FBI, BOP, FDC Philadelphia, and Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, and Robinson, as

14

described more fully below.  These representations proved false and misleading, also described more fully below.

49.    Moreover, as set forth below, BOP and FDC Philadelphia and Defendant Levi repeatedly violated BOP regulations by failing to provide Bistrian with the required administrative detention order "detailing the reasons for placing an inmate in administrative detention."  On several occasions, detention orders were never prepared, or if they were prepared they were removed and destroyed from Bistrian's central file.

50.    When detention orders were prepared for Bistrian, on July 6, 2006 and September 13, 2007, the reasons given for Bistrian's continued detention were false.

51.    In addition, the SRO failed to review Bistrian's placement in administrative segregation, as required by BOP regulations.  In further violation of BOP regulations, BOP and FDC Philadelphia and Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson failed to cause an investigation of the alleged violations which resulted in Bistrian's being placed in the SHU, failed to conduct a disciplinary hearing.  These wrongful acts and omissions and Bistrian's  placement in the segregated confines of the SHU, which resulted in Bistrian developing Post-Traumatic Stress Disorder and Dysthymic Disorder, additionally prevented Bistrian from effectively filing required administrative grievances and appeals.

52.    On the occasions that Bistrian successfully filed administrative grievances, they were denied and his subsequent appeals were also denied.

53.    On October 25, 2006, September 17, 2007, November 16, 2007 and at other times, counsel and other representatives of Bistrian made direct appeals to BOP officials to remedy the improper placement of Bistrian in the SHU.  These efforts were rebuffed by BOP.

**Bistrian's First Wrongful Confinement in the SHU**

54.     On or about November 18, 2005, Bistrian was placed in the SHU, ostensibly for the minor offense of telephone abuse - non-criminal.

55.     Between November 18, 2005 and December 9, 2005, Bistrian was held in administrative segregation in the SHU for a period of 22 days absent a permissible or legitimate non-punitive basis or objective and in violation of BOP regulations.

56.     On December 9, 2005, Bistrian was sanctioned by the DHO to 30 days' disciplinary segregation for telephone abuse- non-criminal.  Bistrian does not contest this 30- day confinement in the SHU, from December 10, 2005 to January 9, 2006.

57.     Upon Bistrian's placement in the SHU on November 18, 2005, Defendant Levi failed to prepare an administrative detention order and provide a copy to Bistrian, "detailing the reasons for placing an inmate in administrative detention" within 24 hours of Bistrian's placement in administrative segregation, in violation of 28 C.F.R. § 541.22(b).   In fact, Defendant Levi never prepared an administrative detention order prior to the DHO's sanction on December 9, 2005.

58.     During this period of administrative segregation, between November 18, 2005 and December 9, 2005, the SRO failed to conduct a record review of Bistrian's placement in administrative segregation within three days, in violation of 28 C.F.R. § 541.22(c), and failed to review Bistrian's case on the record each week as required by this BOP regulation.

59.     Bistrian was released from this first period of confinement in the SHU on January 9, 2006.

**Bistrian's Second Wrongful Confinement in the SHU**

16

60.     Between January 25, 2006 and December 8, 2006, a period of 308 days, Bistrian was placed in a second period of administrative segregation, again ostensibly for the minor offense of telephone abuse-non-criminal.  As with his first period of administrative segregation, this period of administrative segregation is without a permissible or legitimate non-punitive basis or objective and is marked by Defendants' failure to comply with BOP regulations.

61.     Defendant Levi failed to prepare an administrative detention order and provide a copy to Bistrian, "detailing the reasons for placing an inmate in administrative detention" in violation of 28 C.F.R. § 541.22(b) or, if such an order was prepared, it was intentionally destroyed.

62.     Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson intentionally bypassed the procedural protections of BOP regulations relating to disciplinary segregation by confining Bistrian in the SHU in administrative segregation under a pretext that a non-existent investigation was being conducted.

63.     During this 308-day period, Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson, failed to cause an investigation of the alleged phone abuse violation, in violation of 28 CFR § 541.14, failed to conduct a disciplinary hearing, in violation of 28 CFR §§ 541.15 and 541.20(a), and failed to impose a formal sanction, in violation of 28 C.F.R. §§ 541.16(c) and 541.18.

64.     Had Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson proceeded under the BOP regulations for disciplinary segregation, Bistrian

17

would have been subjected to limited disciplinary sanctions as provided in 28 C.F.R. § 541.13, Table 13, and would have been provided with a host of procedural protections which were denied by Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson.

65.     As a result of his intentional and/or negligent and wrongful placement and confinement in the SHU by Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson Bistrian was intentionally, recklessly and/or negligently placed with inmates who posed extreme security risks.

66.     Under the eye of BOP and FDC Philadelphia and Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson and as a result of their intentional, negligent and wrongful actions and omissions, during Bistrian's wrongful 308-day confinement in the SHU, he was brutally assaulted by inmates in the SHU on two (2) separate occasions. These inmates were known to FDC Philadelphia and Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson FDC Philadelphia officials, prison guards, and staff as posing significant risks to the life and safety of Bistrian.

67.     Both assaults resulted in Bistrian's hospitalization for very serious injuries, including, without limitation, possibly permanent scarring and nerve damage; loss of feeling in his lower left leg and foot; a finger in his right hand that cannot be closed; chronic back injuries; lower back spasms; headaches; a dislocated shoulder; broken and chipped teeth; loss of hearing in his right ear; and severe mental, emotional, and psychological injuries, including, without

limitation, Post-Traumatic Stress Disorder and Dysthymic Disorder.  A true and correct copy of Bistrian's FDC Philadelphia medical records is attached hereto and incorporated herein as Exhibit "A".

68.     To make matters worse, while he continued to be confined in the SHU, Defendants were deliberately indifferent to Bistrian's serious medical needs.

### The June 30, 2006 Northington Assault

69.     In approximately April and May 2006, Bistrian was assigned as an orderly in the SHU, during which time he was asked by detainee Steve Northington ("Northington") to pass along a note to detainee Kaboni Savage ("Savage").

70.     Bistrian passed the note to Savage, and then advised Defendants Gibbs, Bowns, Jezior, and Bergos of the inmates' solicitation to Bistrian to act as their note courier.

71.     Northington and Savage, as well as detainee Derek Russell ("Russell") were members of a violent drug gang from North Philadelphia.  Unlike Bistrian, a non-violent white collar criminal, these men had been placed in the SHU for legitimate security reasons.

72.     Northington was convicted in 1990 of robbery, aggravated assault, and several other offenses, and in April 2007, he was convicted in the Court of Common Pleas of Philadelphia of first-degree murder.

73.     Savage had prior convictions for serious violent criminal offenses.  During a court-authorized wiretap of Savage's prison cell in the SHU, Savage was caught on tape threatening to "torture" and "set on fire" the prison captain so that he could "die a miserable death"; threatening to kill the FBI agent and Philadelphia police officer who conducted the investigation and to "blow [their] head[s] off'; and repeatedly threatening in graphic detail to kill the witnesses against him, their wives, parents, siblings, and young children.  *See*, Government's

Sentencing Memorandum, *United States v. Kaboni Savage,* Criminal No. 04-269-01 Doc. No. 823, (E.D. Pa. March 15, 2006).

74.     Russell's history of violence dated back to the late 1980's, when he was convicted of involuntary manslaughter, aggravated assault, and numerous other crimes.

75.     As Northington, Savage, and Russell were criminal defendants in a North Philadelphia drug gang prosecution, *United States v. Kaboni Savage, et al.,* Criminal No. 04-269-01, that involved substantial witness intimidation, death threats to witnesses and law enforcement, and an arson firebombing that resulted in the death of six family members of the government's chief cooperating witness, the FBI was particularly interested in the communications between the three (3) inmates.

76.     Because the FBI was very interested in receiving inside information from FDC Philadelphia concerning communications between the Savage co-defendants, Bistrian's cooperation and ability to intercept notes between the co-defendants was a valuable service to FDC Philadelphia and the FBI at that time, and Bistrian agreed to cooperate with FDC Philadelphia to intercept notes between the co-defendants.

77.     Defendants Gibbs, Bowns, Jezior, and Bergos, after consulting with the FBI, instructed Bistrian to continue to pass the notes, but to first bring them to the Special Investigative Services ("SIS") office, where Defendants Gibbs, Bowns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson would copy and retain the notes of interest.

78.     Bistrian thereafter passed several notes between Northington, Savage, Russell, and one other detainee (name unknown) over the next few weeks.  Each time, Bistrian took the note to the SIS office, where Defendants Gibbs, Bowns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson reviewed the note (and copied it if necessary), then handed the original

back to Bistrian in the "delivery" envelope, with instructions to pass the note to its intended recipient.

79.    Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, Bergos, McLaughlin, and Garraway, forwarded copies of some of the notes to the FBI.

80.    Bistrian's cooperation with Defendants, including, without limitation, Defendants, Gibbs, Bowns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson, in the manner set forth above ultimately led to his being attacked and severely beaten by Northington and two (2) other SHU inmates on June 30, 2006.  A true and correct copy of FDC Philadelphia's Report of Incident, June 30, 2006 is attached hereto and incorporated herein as Exhibit "B" (redactions in original).

81.    On one particular occasion, Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, and Bergos, with intent to harm Bistrian, deliberate indifference to Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm faced by Bistrian in cooperating with BOP and FDC Philadelphia, failed to place the original note in the "delivery" envelope but rather placed a photocopy in the "delivery" envelope, thereby instantly informing the intended recipient and other SHU inmates that Bistrian had delivered the note to BOP and/or FDC Philadelphia officials.

82.    Moreover, Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson, with intent to harm Bistrian, deliberate indifference to Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm faced by Bistrian in cooperating with BOP and FDC Philadelphia, failed to return to Bistrian all of the notes for delivery to the intended recipients, thereby notifying the

intended recipients and other SHU inmates of Bistrian's cooperation with BOP and/or FDC Philadelphia officials.

83.     The intended recipients, including Northington, and other inmates subsequently threatened Bistrian on multiple occasions prior to the June 30, 2006 assault.  By way of example, on more than one occasion prior to the assault, Northington and other inmates threatened Bistrian when they were together in the recreation pen.  Additionally, a member of the Savage Gang put a sign up outside his cell saying "Stop Snitching" which was directed at Bistrian.

84.     Following the threats, and prior to the June 30, 2006 assault, Bistrian repeatedly advised (both verbally and in writing) Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson, that the Savage Gang members knew he was informing on them, that Gang members were threatening him with physical attack, and that he faced substantial risk of serious harm if he was not separated from them, including by being removed from the SHU where  inmates against whom he had cooperated, including Northington, Savage, and Russell, were housed. Bistrian specifically warned Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson, that he would suffer serious harm if placed in a rec pen at the same time as the SHU inmates against whom he had cooperated, including Northington, Savage, and Russell.

85.     In fact, Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, McLaughlin, and Garraway, had represented to Bistrian that he would be transferred out of the SHU upon BOP and/or FDC Philadelphia's termination of the note-passing operation. This representation proved to be false and misleading.

86.     With knowledge of the substantial risk of serious harm faced by Bistrian in remaining confined in the SHU along with the SHU inmates against whom he had cooperated, Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, and Robinson, intentionally, with deliberate indifference and/or recklessly failed to transfer Bistrian from the SHU, and failed to take any other reasonable measure to abate the risk, to an extent that shocks the conscience.

87.     In intentionally and/or recklessly disregarding the substantial risk of serious harm faced by Bistrian in remaining confined in the SHU along with the SHU inmates against whom he had cooperated, Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, and Robinson, acted with deliberate indifference to Bistrian's health and safety and presented a substantial risk of serious harm to Bistrian, to an extent that shocks the conscience.

88.     At all relevant times, including 2006, the BOP had a standard, mandatory policy, known to the Defendants, that when an inmate in the SHU at the FDC informed BOP personnel that he had been threatened by another inmate with physical attack, he was to be separated from the inmate who made the threat(s), at least until the allegation and/or threats had been investigated.

89.     Defendants and other correctional officers assigned to the SHU violated this mandatory, non-discretionary policy of the BOP and FDC when, on June 30, 2006, Plaintiff was placed in a rec pen with Northington and other Savage Gang members, after Plaintiff warned these Defendants, or the Defendants otherwise learned, that these Savage Gang members had threatened him.

23

90.     According to BOP written policy, a central file is create and kept for every current and former inmate in federal custody.  *See* Ex.  to Motion For Leave to File Third Amended Complaint, Ex. 7, BOP Program Statement 5800.011 at § 8.

91.     BOP Program Statement 5800.11 provides a specific list of documents that are to be included in the inmate's central file.

92.     The mandatory, written policy which required separation of an inmate who has been threatened with bodily harm by other inmates included the preparation and entry or posting and/or other communication of separation documents, requiring that the threatened inmate be separated from the inmates who have threatened them.  BOP employees commonly refer to these documents as separation orders or as "CIMs," which stands for "Central Inmate Monitoring." *Id.* at ¶ 10, (discussing CIM document to be kept in private section of central file).

93.     Separation orders, or CIMs, are missing from Plaintiff's central file.  These documents were removed from Plaintiff's central file in 2007, when Defendants knew that Plaintiff intended to seek legal redress for his unlawful treatment at the FDC.  Plaintiff has requested these documents from the Government, but they have not been produced.

94.     Upon information and belief, CIMs likely contained further mandatory requirements for the separation of Bistrian from members of the Savage Gang at the time of the attack on Bistrian by members of that Gang on June 30, 2006.

95.     A number of other categories of documents required to be maintained in Plaintiff's central file, including administrative detention orders and SRO review forms, are also missing without explanation.  Upon information and belief, these documents were removed and/or destroyed in the fall of 2007, when Bistrian first challenged his detention in the SHU to Judge DuBois, the presiding judge in Bistrian's prosecution, through an Emergency Motion for

Hearing to Inquire into the Retaliaroty Acts by the FDC in Response to Defendant's Exercise of Rights at Sentencing Hearing. *See infra* ¶¶ 139-149.

96.     Upon information and belief, one or more of the following categories of documents contained mandatory, non-discretionary orders or directives, stating that when an inmate was threatened by another inmate, that inmate should remain separated from the threatener until the threats can be investigated.

a.     "Post orders" on separating inmates who threatened one another.  Post orders are sets of instructions for correctional officers which are physically posted at an officer's post and must be read by each officer at the beginning of his or her shift;

b.     "Captains Memos": these are memoranda written by captains, directing correctional officers' conduct within the SHU;

c.     "Operations Memos:" these are memoranda written by the warden or other prison management officials regarding official prison policies;

d.     "Program Statements:" these are policy statements written by the BOP, with specific instructions on how correctional officers should protect the safety of inmates;

e.     FDC's Institutional Supplement to Program Statement 5180.05: Program Statement 5180.05 directs each warden to develop specific written institutional supplements "that includes local procedures and identifies staff responsible for an institution's CIM program."

97.     The aforesaid documents were identified in depositions in this case in September, 2014, and Plaintiff has made Touhy requests for the production of these documents, to the extent that they were not included in earlier Touhy requests. To date, these documents have not been produced.

98.     The failure of the Government to produce these documents and/or the destruction of these documents, particularly the CIMs, gives rise to the inference that these documents contain information, including but not limited to orders, policies or practices that would have protected Bistrian, but which were ignored by correctional officers.

99.     In retaliation for cooperating with the FBI, BOP, FDC Philadelphia, and Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, and Robinson, against fellow inmate Northington, on June 30, 2006, Bistrian was brutally attacked and severely beaten by Northington and two (2) other SHU inmates.

100.    Specifically, while standing in the recreation pen in the SHU, Bistrian was approached by Northington and two (2) other SHU inmates, who accused Bistrian of cooperating with the government because Bistrian had failed to pass along a note from Northington to Savage.

101.    As Bistrian attempted to turn away, Northington struck him in the head with his fist, causing Bistrian's right eye to bleed.  Bistrian was then knocked to the ground and rendered unconscious after his head hit a cement portion in front of the metal cages.

102.    As he lay on the ground unconscious, Northington and the two (2) other SHU inmates repeatedly kicked and beat Bistrian, striking him with blows to the face, head, body, and midsection.

103.    Only after several minutes of continued pummeling did Defendants, BOP and/or FDC Philadelphia guards and staff, including, without limitation, Jezior, finally intervene and move the assailants away from Bistrian.  Bistrian remained on the ground, bloodied from head to toe.

26

104.    In delaying to intervene and move the assailants away from Bistrian, the BOP and/or FDC Philadelphia guards and staff, including, without limitation, Jezior, intended to harm Bistrian and/or were deliberately indifferent to the harm caused to Bistrian.  The conduct of the BOP and/or FDC Philadelphia guards and staff, including, without limitation, Jezior, in intending to harm Bistrian and/or acting with deliberate indifference to the harm caused to Bistrian, shocks the conscience.

105.    As a result of the June 30, 2006 assault, Bistrian suffered, and will continue to suffer from, serious physical injuries, including, without limitation, multiple contusions and lacerations to his face and head, requiring sutures, chronic back injuries, a dislocated left shoulder, two broken teeth, and a deep cut on his left elbow, as well as severe mental, emotional, and psychological injuries. *See* Exhibits "A", "B".

106.    Following the June 30, 2006 assault, Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson, and Robinson, recognized that Bistrian had been confined in administrative segregation in the SHU without the required administrative detention order having been prepared by Defendants.  Alternatively, such an order had been prepared and subsequently destroyed.  There is a written regulation that such an order be prepared and provided to an inmate within 24 hours of his placement in the SHU. *See* 28 C.F.R. § 541.22(b).  Morever, BOP regulations require that all detention orders be maintained in an inmate's central file.

107.    Defendants, including, without limitation, Defendant Wilson, prepared an administrative detention order on July 6, 2006, placing Bistrian in administrative segregation for alleged "security reasons."  Defendants, nonetheless, failed to protect Bistian (see averments regarding razor blade attack below, *infra* ¶  112).

108.     Defendants, including, without limitation, Defendants Levi and Wilson, failed to provide a copy of the July 6, 2006 administrative detention order to Bistrian, in violation of 28 C.P.R. § 541.22(b).

109.     Following his assault, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson, and Robinson knew that Bistrian required medical treatment and intentionally and wrongfully failed and refused to provide such necessary medical treatment to Bistrian for his serious injuries, which included a dislocated left shoulder, multiple contusions and lacerations to his face and head, chipped and loss of teeth, and broken finger, as well as severe mental, emotional, and psychological injuries. *See* Exhibits "A", "B".

110.     In failing and refusing to provide medical treatment which they knew was necessary for Bistrian's serious injuries, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson acted with an intent to harm Bistrian, deliberate indifference to Bistrian's  medical needs, and/or reckless disregard of the substantial risk of serious harm faced by Bistrian, to an extent that shocks the conscience.

111.     Following his assault detailed above, Bistrian continued to be intentionally and wrongfully held in the SHU, in violation of his constitutional rights under the Fifth Amendment to the United States Constitution.

## The Razor Blade Attack

112.     Although Bistrian, a minimal security risk at FDC Philadelphia, presented no legitimate reason for placement in the SHU, had cooperated with BOP and FDC Philadelphia, and was known by other SHU inmates as a cooperator, Defendants, including, without limitation,

28

Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson, Robinson, Acker, Dempsey, Arrnisak, and John I/Jane Does 1-15 continued to deliberately and/or recklessly confine Bistrian in the SHU with inmates who posed extreme security risks, as well as a substantial risk of serious harm to Bistrian.

113.    Under the eye of BOP and FDC Philadelphia and Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson and as a result of their intent to harm Bistrian, deliberate indifference to Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm to Bistrian in the SHU, Bistrian was stabbed by a SHU inmate with a history of violent assaults against other inmates.

114.    On October 12, 2006, at approximately 9:00 a.m., while Bistrian was standing in the recreation pen of the SHU, having been placed in hand restraints by FDC Philadelphia prison guards and staff, and waiting to be let in from the recreation pen, unrestrained inmate Aaron Taylor ("Taylor") approached Bistrian and began assaulting him with a manufactured razor-blade style weapon, repeatedly slashing and cutting Bistrian's face, arms, and legs.  A true and correct copy of FDC Philadelphia's Report of Incident, October 12, 2006 is attached hereto and incorporated herein as Exhibit "C″ (redactions in original).

115.    A mandatory written policy existed in the SHU regarding the dispensing and collection of razors to inmates in the SHU.

116.    Correctional officers at the FDC violated this mandatory, non-discretionary policy when an officer gave Aaron Taylor a razor so that he could shave, and then failed to collect that razor at the appropriate time.

117.     Correctional officers were required by mandatory FDC policy to conduct a pat down search and a metal-detector search on all inmates when they left their cells to go to the rec pen.  Correctional Officers violated this mandatory, non-discretionary policy when they failed to properly search Aaron Taylor prior to his entry into the rec pen on the day he attacked Plaintiff in the rec pen, thereby allowing Taylor to enter the rec pen with a razor blade weapon.

118.     Plaintiff has requested documents from the Government relating to:

    a.     The FDC's mandatory policy on the dispensing and collection of razors;

    b.     The FDC's mandatory policy on pat-searching and metal-screening inmates prior to allowing them in the rec pen.

119.     The Government has yet to produce these documents.

120.     Taylor was in the SHU because two (2) months earlier he had cut two (2) inmates on unit 6-North of FDC Philadelphia (one of his victims required over 30 stitches to his face), and because he had a history of violent attacks against inmates at another facility.

121.     Because Bistrian was in hand restraints behind his back, he was severely constrained in his attempts to defend himself against Taylor's slashing.

122.     FDC Philadelphia prison guards and staff initially attempted to intervene from outside the cell, through the use of chemical agents.  Such attempts proved ineffective, and after several minutes, the guards and staff resorted to use of a Tactical Blast Stun Munition, which exploded in close proximity to the handcuffed Bistrian.  The Munition temporarily incapacitated Taylor and prevented him from further attacking Bistrian.

123.     By the time FDC Philadelphia prison guards and staff, including, without limitation, Defendants forcibly intervened, Bistrian was severely injured, with deep cuts in several parts of his body.

30

124.    In delaying to use the Tactical Blast Stun Munition and forcibly intervene, the FDC Philadelphia guards and staff acted with intent to harm Bistrian, deliberate indifference to Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm faced by Bistrian.  The conduct of the FDC Philadelphia guards and staff in intending to harm Bistrian and/or acting with deliberate indifference and/or reckless disregard to the harm caused to Bistrian, shocks the conscience.

125.    Bistrian was transported to a local hospital for emergency treatment, and 52 sutures were required to close his wounds.

126.    As a result of the October 12, 2006 assault, Bistrian suffered,  and will continue to suffer from, serious physical  injuries,  including,  without limitation, scars on his face, arms, and legs, possibly permanent  nerve damage  to his left leg, and chronic back injuries and pain and lower back spasms, as well as severe mental,  emotional, and psychological injuries.   *See* Exhibits "A", "C".

127.    Moreover, despite Bistrian's repeated (verbal and written) requests for treatment by a medical doctor, the first time Bistrian was examined after receiving initial treatment by Defendants Reynolds, and  on October 12, 2006 was almost  one (1) month later, on November 9, 2006.  After examining Bistrian for a maximum of seven (7) to ten (10) minutes, Defendant Reynolds did not treat Bistrian's serious injuries.  Rather, Defendant Reynolds- intending to harm Bistrian  and/or deliberately indifferent  to Bistrian's medical  needs to an extent that shocks the conscience – told Bistrian that he was going to have to be "creative" at physical rehabilitation due to his confinement in the SHU.

128.    Following the October 12, 2006 assault, Defendant Reynolds knew that Bistrian required medical treatment and intentionally and wrongfully failed and refused to provide such necessary medical treatment to Bistrian for his serious injuries.

129.    In failing and refusing to provide medical treatment which he knew was necessary for Bistrian's serious injuries, Defendant Reynolds acted with an intent to harm Bistrian, deliberate indifference to Bistrian's medical needs, and/or reckless disregard of the substantial risk of serious harm faced by Bistrian, to an extent that shocks the conscience.

130.    Following the October 12, 2006 assault, Bistrian continued to be intentionally and wrongfully held under administrative segregation in the SHU by Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, Whit, Rodgers, Wilson and Robinson until December 8, 2006.

### Bistrian's Third Wrongful Confinement in the SHU

131.    Upon Bistrian's release from the SHU on December 8, 2006, he was placed by FDC Philadelphia in the general population in a unit that contained one of his June 30, 2006 assailants.

132.    Upon learning that they had placed Bistrian in the unit with the assailant, FDC Philadelphia personnel removed Bistrian rather than the assailant from the general population and returned Bistrian to administrative segregation in the SHU on December 22, 2006, where he remained until January 25, 2007, a period of 34 days.

133.    During Bistrian's third, 34-day period of administrative segregation, Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White, violated several mandatory BOP regulations.

134.    Defendants failed to prepare an administrative detention order, and provide a copy to Bistrian, "detailing the reasons for placing an inmate in administrative detention" within 24 hours of Bistrian's placement in administrative segregation, in violation of 28 C.P.R. § 541.22(b).

135.    Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White, also violated several BOP regulations concerning inmates placed in administrative segregation for protection "but not at their own request."  28 C.F.R. § 541.23(b).

136.    Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos and White, failed to review Bistrian's status within two work days of this placement, in violation of 28 C.F.R. § 541.22(c)(3).

137.    Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos and White, failed to provide Bistrian with a hearing, no later than seven (7) days after Bistrian's  December 22, 2006 placement in administrative segregation, in violation of 28 C.F.R. §§ 541.22(c)(3) and 541.23(b).

**Bistrian's Fourth Wrongful Confinement in the SHU**

138.    On August 10, 2007, Dr. Stephen E. Samuel, Associate Clinical Professor, Department of Psychiatry, Jefferson Medical College, Philadelphia, a recognized forensic psychologist, advised FDC Psychologist Andrea Boardman that he had diagnosed Bistrian with Post-Traumatic Stress Disorder and Dysthymic Disorder resulting from Bistrian's long-term confinement in the SHU and the two (2) assaults on him while in the SHU.

139.    On August 23, 2007, Bistrian participated in the first of two (2) Sentencing Hearings in his criminal cases.  At this proceeding and in pre-hearing court filings, Bistrian strongly contested the illegal nature of his confinement in the SHU and the violations of his

33

constitutional rights by BOP and FDC Philadelphia agents, servants, and employees.  Dr. Samuel also testified in detail as to the psychological injuries inflicted upon Bistrian through his long placement in the SHU.

140.    By email on September 12, 2007, counsel for Bistrian advised the Assistant United States Attorney handling Bistrian's sentencing that Bistrian contested telephone abuse allegations made by the government at the Sentencing Hearing and requested a copy of applicable BOP regulations.  The email was forwarded by the prosecutor to FDC Philadelphia.

141.    The following day, September 13, 2007, Bistrian was returned to yet another period of administrative segregation where he was held until December 4, 2007, a period of 83 days.  This period of administrative segregation was imposed by Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White, in retaliation for Bistrian and his counsel's contesting Bistrian's treatment at FDC Philadelphia at Bistrian's initial Sentencing Hearing and in related sentencing pleadings, in violation of Bistrian's constitutional rights under the First Amendment to the United States Constitution.

142.    On September 13, 2007, an administrative detention order was issued stating that Bistrian was being placed in administrative segregation "pending investigation of a violation of [BOP] regulations"- i.e., the non-criminal abuse of telephone privileges.

143.    Also on September 13, 2007, Bistrian appeared for a hearing with the Unit Discipline Committee ("UDC").  The UDC found Bistrian guilty of a reduced charge (code 397), and imposed a suspended sanction of a loss of phone privileges for 60 days.  In spite of this conclusive hearing and sanction, Defendants, including, without limitation, Defendants Levi,

Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, and White, continued to confine Bistrian in the SHU.

144.    On September 17, 2007, counsel for Bistrian notified Defendant Levi by letter delivered on September 18, 2007 that Bistrian contested the continued administrative segregation and that he continued to suffer from serious traumatic physical and psychological injuries as a result of his prior lengthy confinement in the SHU and the two (2) assaults upon him.  Defendant Levi was requested to release Bistrian from the SHU.

145.    Defendants, including, without limitation, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White, continued to confine Bistrian in the SHU until December 4, 2007, a cruel, unusual, excessive, and punitive sanction.

146.    On October 26, 2007, Bistrian filed an Emergency Motion to Hearing to Inquire Into Retaliatory Acts by the FDC in Reponse to Defendant's Exercise of Rights at Sentencing Hearing.  In this Motion, Bistrian alleged that his confinement in the SHU was unjustified and unlawful and asked the Court to order the FDC to release Bistrian into general population.

147.    At the Court's instruction, the Government responded to this motion on November 28, 2007.  On December 4, 2007, before the Court had scheduled a hearing to determine the merits of Bistrian's claim, Bistrian was released from the SHU into general population.  Upon information and belief, the Defendants released Bistrian from the SHU because he filed the Emergency Motion, the further litigation of which would have served to call the Court's attention Bistrian's illegal and unjustified detention in the SHU and because the circumstances of Bistrian's treatment in the FDC were being argued as a basis for a sentence reduction.

148.    During Bistrian's fourth period of administrative segregation, Defendant Levi told Bistrian that he "would not see the light of day again."

149.    During Bistrian's fourth period of administrative segregation, Defendant Levi sent FDC Philadelphia prison guards and staff to Bistrian to intimidate Bistrian to confess to telephone violations by stating to Bistrian that he would not be released from the SHU unless he confessed to the alleged violations.   Upon information and belief, Defendants sought an inculpatory statement from Bistrian regarding the alleged phone abuse because they wanted a legal, albeit false, justification for their detention of Bistrian in the SHU.

## Injuries Sustained By Bistrian

150.    Bistrian's confinement in the SHU was degenerative and inflicted cruel, excessive, and needless suffering and punishment to the great detriment of Bistrian's physical and psychological conditions, including, without limitation, Post-Traumatic Stress Disorder, Dysthymic Disorder, insomnia, depression, withdrawal, anxiety, panic, and a sense of impending emotional breakdown.

151.    Bistrian will require medical treatment for his physical, mental, emotional, and psychological injuries for the foreseeable future.

152.    As a direct and proximate result of the intentional and/or negligent and wrongful actions and omissions of all Defendants, Bistrian was caused to sustain, and will continue to suffer from, severe physical, mental, emotional, and psychological injuries, including, without limitation

      a.    Brain concussion as a result of being beaten into an unconscious state;

      b.    Multiple razor slash type injuries requiring 52 stitches, and resulting in permanent scarring about his face, arms, and legs;

      c.    Possibly permanent nerve damage;

36

      d.      Loss of feeling in his lower left leg and foot;

      e.      Injuries to his shoulder;

      f.      Chronic injuries and back pain;

      g.      Lower back spasms;

      h.      Loss of hearing in his right ear;

      i.      Broken finger that cannot close;

      j.      Headaches;

      k.      Broken and chipped teeth;

      l.      Recurrent nightmares;

      m.      Insomnia;

      n.      Depression;

      o.      Withdrawal;

      p.      Fear and anxiety, including that for his safety for the rest of his life;

      q.      Panic;

      r.      Mutilation, embarrassment, and humiliation;

      s.      Inability to concentrate;

      t.      Inability to stand, sit, or perform any task for more than a brief period;

      u.      Severe mental suffering and emotional distress;

      v.      Post-Traumatic Stress Disorder, requiring lifetime care and treatment; and

      w.      Dysthymic Disorder, requiring lifetime care and treatment.

153.    The aforesaid injuries are serious and permanent and will prevent Bistrian from performing any type of future employment other than menial labor, thereby causing him to suffer a permanent loss of earning capacity.

## CAUSES OF ACTION

## COUNT I

### Bivens - Fifth Amendment-Substantive Due Process - Failure to Protect
### Bistrian v. Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson

154.    Bistrian incorporates by reference paragraphs 1 through 153, as if set forth at length herein.

155.    Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson, knew of the substantial risk of serious harm faced by Bistrian in cooperating with BOP and FDC Philadelphia against violent SHU inmates including Northington, Savage, and Russell, and failed to take required actions for his safety and well-being.

156.    Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson acted with intent to harm Bistrian, deliberate indifference to Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm faced by Bistrian in cooperating with BOP and FDC Philadelphia against violent SHU inmates including Northington, Savage, and Russell.

157.    Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson, acted with intent to harm Bistrian, deliberate indifference to Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm to Bistrian by placing Bistrian in a position of danger as a result of which Bistrian was physically assaulted and severely beaten.

158.    By way of example, Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, and Bergos, with intent to harm Bistrian, deliberate indifference to Bistrian's

38

health and safety and/or reckless disregard of the substantial risk of serious harm to Bistrian, failed to place the original note in the "delivery" envelope but rather placed a photocopy in the "delivery" envelope, thereby instantly informing the intended recipient and other SHU inmates that Bistrian had delivered the original note to BOP and/or FDC Philadelphia officials.

159.    In addition, Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson, with intent to harm Bistrian, deliberate indifference to Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm to Bistrian, failed to return to Bistrian all of the notes for delivery to the intended recipients, thereby notifying the intended recipients and other SHU inmates of Bistrian's cooperation with BOP and/or FDC Philadelphia officials.

160.    Following several threats of physical violence directed against Bistrian by the violent note-passing SHU inmates, described more fully above, Bistrian, in fear for his life, repeatedly advised (both verbally and in writing) Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson, of such threats and of the substantial risk of serious harm he faced by remaining confined in the SHU along with the SHU inmates against whom he had cooperated, including Northington, Savage, and Russell.

161.    Bistrian requested protection by Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson, against the SHU inmates against whom he had cooperated, including Northington, Savage, and Russell, particularly his relocation out of the SHU.

162.    Moreover, Bistrian specifically warned Defendants, including, without limitation, Defendants Gibbs, Bowns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson, that

he would suffer serious harm if placed in the recreation pen at the same time as the SHU inmates against whom he had cooperated, including Northington, Savage, and Russell.

163.    Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson knew that Bistrian's cooperation with BOP and FDC Philadelphia had been discovered by the violent SHU inmates against whom he had cooperated, including Northington, Savage, and Russell.

164.    Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson, knew of the substantial risk of serious harm faced by Bistrian in remaining confined in the SHU along with the violent SHU inmates against whom he had cooperated, including Northington, Savage, and Russell, as such inmates had discovered Bistrian's cooperation and threatened Bistrian.

165.    Despite their knowledge of the substantial risk of serious harm faced by Bistrian in remaining confined in the SHU along with the violent SHU inmates against whom he had cooperated, including Northington, Savage, and Russell, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson with intent to harm Bistrian, deliberate indifference to Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm to Bistrian, failed to transfer Bistrian from the SHU, and failed to take any other reasonable measure to abate the risk, to an extent that shocks the conscience.

166.    In keeping Bistrian confined in the SHU along with the violent SHU inmates against whom he had cooperated, including Northington, Savage, and Russell, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson acted with intent to harm Bistrian, deliberate indifference to

40

Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm faced by Bistrian and, with the intent to inflict punishment, caused and failed to protect him from a substantial risk of serious harm to an extent that shocks the conscience, in violation of Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution.

167.    In intentionally placing Bistrian in a locked recreation pen with the violent SHU inmates against whom he had cooperated, where such inmates had discovered Bistrian's cooperation and threatened him, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson, acted with intent to harm Bistrian, deliberate indifference to Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm faced by Bistrian and, with the intent to inflict punishment, caused and failed to protect him from a substantial risk of serious harm to an extent that shocks the conscience, in violation of Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution.

168.    As a direct and proximate result of the intentional and/or reckless disregard by Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson, of the substantial risk of serious harm faced by Bistrian and such Defendants' deliberate indifference to Bistrian's health and safety, in violation of Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution, on June 30, 2006, Bistrian was brutally attacked by three (3) SHU inmates against whom he had cooperated, including Northington.

169.    Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson, intentionally and/or recklessly failed to prevent, stop, or effectively intervene in the June 30, 2006 attack by the three (3) SHU

41

inmates against whom he had cooperated, including Northington, and thereby acted with intent to harm Bistrian, deliberate indifference to Bistrian's health and safety and/or reckless disregard of the substantial risk of serious harm to Bistrian, to an extent that shocks the conscience.

170.    As a direct and proximate result of the intentional and/or reckless disregard by Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson, of the substantial risk of serious harm faced by Bistrian and such Defendants' deliberate indifference to Bistrian's health and safety, in violation of Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution, Bistrian has suffered, and will continue to suffer from, severe and permanent physical, mental, emotional, and psychological injuries, as specifically enumerated above.

171.    The actions and omissions of Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson were intentional, deliberate, knowing, willful, wanton, malicious, and outrageous, shock the conscience, and were performed with the specific intent of harming Bistrian, in reckless disregard of the substantial risk of serious harm faced by Bistrian, and in deliberate indifference to Bistrian's  health and safety, in violation of Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution, thereby entitling Bistrian to an award of punitive damages.

WHEREFORE, Plaintiff, Peter Bistrian, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff, and against Defendants, Warden Troy Levi; Assistant Warden Tracy Brown; Assistant Warden Blackman; Captain David C. Knox; J. McLaughlin, Special Investigative Agent; David Garraway, Special Investigative Agent; Lt. J. A. Gibbs; Senior Officer William Jezior; Senior Officer Bowns; Senior Officer Bergos; Unit Manager

White; Lt. Rodgers; and Lt. Robinson in the amount of fifty million dollars ($50,000,000.00), plus pre- judgment and post-judgment interest, attorneys' fees, and costs, together with punitive damages, and such other and further relief as this Court deems just and proper.

## COUNT III

### Bivens -Fifth Amendment- Substantive Due Process- Cruel and Unusual Punishment Bistrian v. Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos and White

172.    Bistrian incorporates by reference paragraphs 1 through 171, as if set forth at length herein.

173.    Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos and White confined Bistrian under cruel and unusual conditions at FDC Philadelphia, in violation of the Fifth Amendment to the United States Constitution.

174.    The conditions of Bistrian's confinement to administrative segregation in the SHU were not reasonably related to a legitimate governmental objective, and were arbitrary, capricious, and purposeless.

175.    Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos and White intentionally inflicted unnecessary and wanton pain and punishment upon Bistrian by, *inter alia*:

        a.    Intentionally confining and holding Bistrian to administrative segregation in the SHU for approximately 447 days without a sufficient factual or legal basis;

        b.    Intentionally imposing punishment upon Bistrian that was grossly disproportionate to the severity of the alleged offense committed;

c.     Knowing of, and intentionally and deliberately disregarding, the excessive and substantial risk of serious harm to Bistrian's health and safety resulting from his being confined in the SHU for 447 days;

d.     Knowing of, and intentionally and deliberately disregarding, the harmful and destructive physical, mental, emotional, and psychological injuries resulting from Bistrian's being confined in the SHU for 447 days;

e.     Intentionally confining Bistrian to administrative segregation in the SHU in violation of BOP regulations;

f.     Intentionally confining Bistrian to administrative segregation in the SHU absent any permissible or legitimate non-punitive objective;

g.     Intentionally confining Bistrian to administrative segregation in the SHU under conditions amounting to punishment;

h.     Confining Bistrian to administrative segregation in the SHU with the intent to inflict cruel and unusual punishment;

i.     Recruiting and instructing Bistrian to cooperate with BOP, FDC Philadelphia, the FBI, and Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos and White against violent SHU inmates, including Northington, Savage, and Russell, whom such Defendants knew presented a substantial risk of serious harm to Bistrian;

j.     Notifying violent SHU inmates, including Northington, Savage, and Russell, whom Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos and White knew presented a

44

substantial risk of serious harm to Bistrian, of Bistrian's cooperation with BOP, FDC Philadelphia, and such Defendants;

k.    Intentionally and/or recklessly failing to transfer Bistrian from the SHU following the violent SHU inmates' discovery that Bistrian was cooperating with BOP, FDC Philadelphia, and Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, and White and Bistrian's receipt, known by such Defendants, of several threats of physical violence from such inmates;

1.    Intentionally and/or recklessly failing to take any other reasonable measure to abate the known substantial risk of serious harm faced by Bistrian in remaining confined in the SHU along with the violent SHU inmates against whom he had cooperated;

m.    Intentionally placing Bistrian in a locked recreation pen with the violent SHU inmates against whom he had cooperated, knowing that such inmates had discovered Bistrian's cooperation and threatened Bistrian;

n.    Intentionally and/or recklessly failing to prevent, stop, or effectively intervene in the June 30, 2006 attack by the SHU inmates against whom Bistrian had cooperated;

p.    Intentionally placing Bistrian in a locked recreation pen with Taylor, knowing of the substantial risk of serious harm faced by Bistrian;

q.    Intentionally and/or recklessly placing Bistrian in hand restraints but permitting Taylor (as well as other inmates) to remain unrestrained in the locked recreation pen;

r.      Intentionally and/or recklessly failing to prevent, stop, or effectively intervene in Taylor's October 12, 2006 attack against Bistrian;

s.      Acting with deliberate indifference to Bistrian's serious medical needs following the October 12, 2006 assault;

t.      Failing to supervise, train, and direct BOP and/or FDC Philadelphia guards and staff on how to prevent stop, or effectively intervene in attacks on inmates in the SHU;

u.      Imposing administrative segregation on Bistrian from September 13, 2007 to December 4, 2007 in retaliation for Bistrian and his legal counsel's contesting Bistrian's treatment at FDC Philadelphia at Bistrian's initial Sentencing Hearing, and in related sentencing proceedings; and

v.      Creating, ratifying, condoning, and/or acquiescing to a policy or custom under which Bistrian's right to be free from the unnecessary and wanton infliction of pain and punishment occurred.

176.    In intentionally inflicting unnecessary and wanton pain and punishment upon Bistrian, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos and White violated Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution.

177.    As a direct and proximate result of the unnecessary and wanton infliction of pain and punishment upon Bistrian by Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos and White in violation of Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution, Bistrian has

suffered, and will continue to suffer from, severe and permanent physical, mental, emotional, and psychological injuries, as specifically enumerated above.

178.    The actions and omissions of Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White were intentional, deliberate, knowing, willful, wanton, malicious, and outrageous, shock the conscience, and were performed with the specific intent of inflicting punishment upon Bistrian, in violation of Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution, thereby entitling Bistrian to an award of punitive damages.

WHEREFORE, Plaintiff, Peter Bistrian, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff, and against Defendants, Warden Troy Levi; Assistant Warden Tracy Brown; Assistant Warden Blackman; Captain David C. Knox; J. McLaughlin, Special Investigative Agent; David Garraway, Special Investigative Agent; Lt. J. A. Gibbs; Senior Officer William Jezior; Senior Officer Bowns; Senior Officer Bergos and Unit Manager White in the amount of fifty million dollars ($50,000,000.00),  plus pre- judgment and post-judgment interest, attorneys' fees, and costs, together with punitive damages, and such other and further relief as this Court deems just and proper.

**COUNT IV**
**Bivens - Fifth Amendment - Substantive Due Process -**
**Deliberate Indifference to Medical Needs**
**Bistrian v. Defendants Reynolds and John I/Jane Does 1-10**

179.    Bistrian incorporates by reference paragraphs 1 through 178, as if set forth at length herein.

180.    Defendant Reynolds acted with deliberate indifference to Bistrian's serious medical needs to an extent that shocks the conscience by, *inter alia*:

a.      Knowing of, and intentionally and deliberately disregarding, the harmful and destructive physical, mental, emotional, and psychological injuries resulting from Bistrian's being confined in the SHU for 447 days;

b.      Intentionally and deliberately preventing Bistrian from receiving needed or recommended medical treatment;

c.      Knowing that Bistrian required medical treatment following the June 30, 2006 attack, and intentionally and deliberately refusing and denying Bistrian's reasonable requests for medical treatment following such attack, resulting in the unnecessary and wanton infliction of pain, punishment, and undue suffering upon Bistrian, as well as serious and permanent injuries and the threat of tangible residual injury to Bistrian;

d.      Intentionally and deliberately delaying, for non-medical reasons, Bistrian's necessary medical treatment following the June 30, 2006 attack, resulting in the unnecessary and wanton infliction of pain and punishment upon Bistrian and in serious and permanent injuries to Bistrian;

e.      Knowing that Bistrian required medical treatment following the October 12, 2006 attack, and intentionally and deliberately refusing and denying Bistrian's reasonable requests for medical treatment following such attack, resulting in the unnecessary and wanton infliction of pain, punishment, and undue suffering upon Bistrian, as well as serious and permanent injuries and the threat of tangible residual injury to Bistrian; and

f.      Intentionally and deliberately delaying, for non-medical reasons, Bistrian's necessary medical treatment following the October 12, 2006 attack,

48

resulting in the unnecessary and wanton infliction of pain and punishment upon Bistrian and in serious and permanent injuries to Bistrian.

181.    In acting with deliberate indifference to Bistrian's serious medical needs, Defendant Reynolds intentionally inflicted unnecessary and wanton pain and punishment upon Bistrian to an extent that shocks the conscience, in violation of Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution.

182.    As a direct and proximate result of the deliberate indifference of Defendant Reynolds to Bistrian's serious medical needs, in violation of Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution, Bistrian has suffered, and will continue to suffer from, severe and permanent physical, mental, emotional, and psychological injuries, as specifically enumerated above.

183.    The actions and omissions of Defendant Reynolds were intentional, deliberate, knowing, willful, wanton, malicious, and outrageous, shock the conscience, and were performed with the specific intent of inflicting punishment upon Bistrian and of denying or delaying Bistrian's access to medical care, and in deliberate indifference to Bistrian's health and safety and medical needs, in violation of Bistrian's substantive due process rights under the Fifth Amendment to the United States Constitution, thereby entitling Bistrian to an award of punitive damages.

WHEREFORE, Plaintiff, Peter Bistrian, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff, and against Dr. Reynolds in the amount of fifty million dollars ($50,000,000.00), plus pre-judgment and post-judgment interest, attorneys' fees, and costs, together with punitive damages, and such other and further relief as this Court deems just and proper.

## COUNT V
### Bivens - Fifth Amendment- Procedural Due Process
### Bistrian v. Defendants Levi, Brown, Blackman, Knox, McLaughlin,
### Garraway, Gibbs, Jezior, Bowns, Bergos, White and Wilson

184.    Bistrian incorporates by reference paragraphs 1 through 183, as if set forth at length herein.

185.    Bistrian had a protected liberty interest in not being confined in the SHU.

186.    Bistrian's confinement in the SHU imposed atypical and significant hardship on him in relation to the ordinary incidents of prison life as a direct and proximate result of, *inter alia*:

a.    Being intentionally confined in the SHU for 447 days;

b.    Receiving punishment that was grossly disproportionate to the severity of the alleged offense committed;

c.    The excessive and substantial risk of serious harm to Bistrian's health and safety resulting from his being confined in the SHU for 447 days;

d.    The harmful and destructive physical, mental, emotional, and psychological injuries resulting from Bistrian's being confined in the SHU for 447 days;

e.    Being intentionally confined to administrative segregation in the SHU in violation of BOP regulations;

f.    Being intentionally confined to administrative segregation in the SHU absent any permissible or legitimate non-punitive objective;

g.    Being intentionally confined to administrative segregation in the SHU under conditions amounting to punishment;

50

h.   Being confined to administrative segregation in the SHU with the intent by Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Wilson, to inflict cruel and unusual punishment;

i.   Being recruited and instructed by Defendants, including, without limitation, Defendants Gibbs, Jezior, Bowns, Bergos, McLaughlin, and Garraway to cooperate with BOP and FDC Philadelphia against violent SHU inmates, including Northington, Savage, and Russell, whom Defendants knew presented a substantial risk of serious harm to Bistrian;

j.   Defendants' notifying violent SHU inmates, including Northington, Savage, and Russell, whom Defendants knew presented a substantial risk of serious harm to Bistrian, of Bistrian's cooperation with BOP, FDC Philadelphia, and Defendants;

k.   The intentional and/or reckless failure of Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Wilson, to transfer Bistrian from the SHU following the violent SHU inmates' discovery that Bistrian was cooperating with BOP and FDC Philadelphia, and Bistrian's receipt, known by Defendants, of several threats of physical violence from such inmates;

l.   The intentional and/or reckless failure of Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos and Wilson to take any other reasonable measure to abate the known substantial risk of serious harm faced by Bistrian in remaining confined in

51

the SHU along with the violent SHU inmates against whom he had cooperated;

m.  Being intentionally placed by Defendants in a locked recreation pen with the violent SHU inmates against whom he had cooperated, knowing that such inmates had discovered Bistrian's cooperation and threatened Bistrian;

n.  Defendants'  intentional and/or reckless failure to prevent, stop, or effectively intervene in the June 30, 2006 attack by the SHU inmates against whom Bistrian had cooperated;

p.  Being intentionally placed by Defendants in a locked recreation pen with Taylor, knowing of the substantial risk of serious harm faced by Bistrian;

q.  Being intentionally and/or recklessly placed by Defendants in hand restraints but permitting Taylor (as well as other inmates) to remain unrestrained in the locked recreation pen;

r.  Defendants' intentional and/or reckless failure to prevent, stop, or effectively intervene in Taylor's October 12, 2006 attack against Bistrian;

s.  Defendants' deliberate indifference to Bistrian's serious medical needs following the October 12, 2006 assault;

t.  Defendants' failure to supervise, train, and direct BOP and/or FDC Philadelphia guards and staff on how to prevent stop, or effectively intervene in attacks on inmates in the SHU;

u.  Defendants' imposition of administrative segregation on Bistrian from September 13, 2007 to December 4, 2007 in retaliation for Bistrian and his

legal counsel's contesting Bistrian's treatment at FDC Philadelphia at Bistrian's initial Sentencing Hearing, and in related sentencing proceedings; and

    v.    Defendants' creating, ratifying, condoning, and/or acquiescing to a policy or custom under which Bistrian's right to be free from the unnecessary and wanton infliction of pain and punishment occurred.

187.    Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White and Wilson deprived Bistrian of his protected liberty interest without due process of law by, inter alia:

    a.    Confining Bistrian to administrative segregation in the SHU in intentional violation of BOP regulations; and

    b.    Intentionally confining Bistrian to administrative segregation in the SHU absent any permissible or legitimate non-punitive objective.

188.    In depriving Bistrian of his protected liberty interest without due process of law, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White and Wilson, violated Bistrian's rights under the Fifth Amendment to the United States Constitution.

189.    As a direct and proximate result of the deprivation by Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, owns, Bergos, White and Wilson, of Bistrian's protected liberty interest without due process of law, in violation of Bistrian's rights under the Fifth Amendment to the United States Constitution, Bistrian has suffered, and will continue to suffer from, severe and permanent physical, mental, emotional, and psychological injuries, as specifically enumerated above.

190.     The actions and omissions of Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White and Wilson were intentional, deliberate, knowing, willful, wanton, malicious, and outrageous, shock the conscience, and were performed with the specific intent of inflicting punishment upon Bistrian, in violation of Bistrian's rights under the Fifth Amendment to the United States Constitution, thereby entitling Bistrian to an award of punitive damages.

WHEREFORE, Plaintiff, Peter Bistrian, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff, and against Defendants, Warden Troy Levi; Assistant Warden Tracy Brown; Assistant Warden Blackman; Captain David C. Knox; J. McLaughlin, Special Investigative Agent; David Garraway, Special Investigative Agent; Lt. J. A. Gibbs; Senior Officer William Jezior; Senior Officer Bowns; Senior Officer Bergos; Unit Manager White and Lt. R. Wilson in the amount of fifty million dollars ($50,000,000.00), plus pre-judgment and post-judgment interest, attorneys' fees, and costs, together with punitive damages, and such other and further relief as this Court deems just and proper.

### COUNT X
**Bivens - First Amendment - Retaliation**
**Bistrian v. Defendants Levi, Brown, Blackman,**
**Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White**

191.     Bistrian incorporates by reference paragraphs 1 through 190, as if set forth at length herein.

192.     Bistrian and his legal counsel petitioned BOP and FDC Philadelphia and Defendants, Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White for the redress of Bistrian's treatment at FDC Philadelphia and raised violations of Bistrian's confinement at his Sentencing Hearing.

193.    Bistrian's conduct in petitioning for the redress of his treatment at FDC Philadelphia is constitutionally protected.

194.    In retaliation for Bistrian and his legal counsel petitioning BOP and FDC Philadelphia and Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White for the redress of Bistrian's treatment at FDC Philadelphia and for raising the matter of Bistrian's confinement, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White took adverse action against Bistrian by, *inter alia*, confining Bistrian in administrative segregation in the SHU between September 13, 2007 and December 4, 2007, a period of 83 days.

195.    Bistrian's conduct in petitioning for the redress of his treatment at FDC Philadelphia was a substantial and/or motivating factor for such adverse action taken by Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White.

196.    Such adverse action taken by Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White was sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

197.    In taking adverse action against Bistrian in retaliation for his constitutionally protected conduct, Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White violated Bistrian's rights under the First Amendment to the United States Constitution.

198.    As a direct and proximate result of the retaliation by Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White against Bistrian for his constitutionally protected conduct, in violation of Bistrian's rights under the First Amendment

to the United States Constitution, Bistrian has suffered, and will continue to suffer from, severe and permanent physical, mental, emotional, and psychological injuries, as specifically enumerated above.

199.    The actions and omissions of Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bergos, and White were intentional, deliberate, knowing, willful, wanton, malicious, and outrageous, shock the conscience, and were performed with the specific intent of deterring or punishing Bistrian for exercising his constitutionally protected conduct, in violation of Bistrian's rights under the First Amendment to the United States Constitution, thereby entitling Bistrian to an award of punitive damages.

WHEREFORE, Plaintiff, Peter Bistrian, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff, and against Defendants, Warden Troy Levi; Assistant Warden Tracy Brown; Assistant Warden Blackman; Captain David C. Knox; J. McLaughlin, Special Investigative Agent; David Garraway, Special Investigative Agent; Lt. J. A. Gibbs; Senior Officer William Jezior; Senior Officer Bergos; and Unit Manager White in the amount of fifty million dollars ($50,000,000.00), plus pre-judgment and post-judgment interest, attorneys' fees, and costs, together with punitive damages, and such other and further relief as this Court deems just and proper.

### COUNT XV
**FTCA- Negligence- Failure to Protect as a Confidential Informant
Bistrian v. Defendant The United States of America**

200.    Bistrian incorporates by reference paragraphs 1 through 199, as if set forth at length herein.

201.    Pursuant to the express terms of 28 U.S.C. § 1346(b), the FTCA, the United States is liable for personal injury or death caused by the negligent or wrongful act or omission

of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

202.   Under Pennsylvania law, an individual is liable for negligence if he or she breaches a legally recognized obligation or duty that is causally connected to the damages suffered by the complainant. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005).

203.   Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson were at all times herein relevant agents, servants, and employees of BOP and/or FDC Philadelphia acting within the course and scope of their authority as agents, servants, and employees of BOP and/or FDC Philadelphia.

204.   During his 308-day confinement in the SHU, Bistrian agreed to cooperate with BOP and FDC Philadelphia to help intercept notes between his fellow inmates, Northington, Savage and Russell.  At a great risk to his own safety, when Bistrian was given a note to pass between his fellow inmates, he would first take the note to the SIS office, where Defendants Biggs, Browns, Jezior, Bergos, McLaughlin, Garraway, Rodgers, and Robinson would review the note (and copy it if necessary), then hand the original back to Bistrian in the "delivery" envelope, to be passed on to its intended recipient.

205.   The United States of America, BOP, FDC Philadelphia, and all employees of BOP and/or FDC Philadelphia have a duty under 18 U.S.C. § 4042 to "provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States."  Further, by using Bistrian as a confidential informant, Defendants took on an additional duty to protect Bistrian from any danger to him associated from that position.

206.    Additionally, specific, mandatory, non-discretionary policies existed that compelled staff in the SHU at the FDC to separate inmates who have allegedly been threatened from those inmates who have threatened them, at least until a proper investigation has been conducted.  Under no circumstances was a threatened inmate to be placed in the same rec pen as an inmate who had threatened him. Defendants and/or FDC staff members violated these mandatory policies and practices when they placed Bistrian in the same rec pen as Northington and other members of the Kaboni Savage Gang.  *See supra* ¶¶ 100-103.

207.    Defendants breached their duty to protect Bistrian on several occasions.  In one incident, Defendants displayed extreme recklessness, or worse, when they failed to place the original note in the "delivery" envelope, and instead placed a photocopy of the note in the "delivery" envelope.

208.    There were also multiple incidents in which Defendants failed to return to Bistrian all of the notes for delivery to the intended recipients.

209.    As a direct and proximate result of certain Defendants' aforesaid reckless actions, members of the Savage Gang learned that Plaintiff was giving notes between the Gang members to BOP officers, and this information was predictably and quickly passed on to other SHU inmates.  These actions by Defendants were not discretionary; rather, they were reckless in the extreme and violated BOP and FDC policy, and BOP and FDC standards for acceptable practice. These actions exposed Bistrian to substantially heightened risk from Savage Gang members and from other prison inmates, including Taylor.

210.    When Defendants were informed of the danger posed to Bistrian by the Savage Gang members, they failed to take any action, thereby violating the FDC's mandatory policy. These actions directly led to the June 30, 2006 retaliatory assault on Bistrian in the rec pen in

which Bistrian suffered severe and permanent physical, mental, emotional, and psychological injuries, as specifically enumerated above.

WHEREFORE, Plaintiff, Peter Bistrian, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff, and against Defendant, The United States of America, in the amount of five million dollars ($50,000,000.00), plus pre-judgment and post-judgment interest, attorneys' fees, and costs, and such other and further relief as this Court deems just and proper.

## COUNT XVI
### FTCA - Negligence - Failure to Protect from Assault
### Bistrian v. Defendant The United States of America

211.    Bistrian incorporates by reference paragraphs 1 through 210, as if set forth at length herein.

212.    Pursuant to the express terms of 28 U.S.C. § 1346(b), the FTCA, the United States is liable for personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

213.    Under Pennsylvania law, an individual is liable for negligence if he or she breaches a legally recognized obligation or duty that is causally connected to the damages suffered by the complainant. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005).

214.    Defendants Levi, Brown, Blackman, Knox, McLaughlin, Garraway, Gibbs, Jezior, Bowns, Bergos, White, Rodgers, Wilson and Robinson were at all times herein relevant agents, servants, and employees of BOP and/or FDC Philadelphia acting within the course and scope of their authority as agents, servants, and employees of BOP and/or FDC Philadelphia.

215.    The United States of America, BOP, FDC Philadelphia, and all employees of BOP and/or FDC Philadelphia have a duty under 18 U.S.C. § 4042 to "provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States."

216.    FDC Philadelphia has a non-discretionary policy mandating that correctional officers keep track of, collect and account for all razors that are given to inmates in the SHU so that they can shave.

217.    Correctional officers violated this non-discretionary policy when they failed to collect a razor blade from Aaron Taylor, which had been given to him so that he could shave.

218.    Upon information and belief, FDC Philadelphia has a non-discretionary policy mandating that all inmates be searched with a metal detector and patted down for weapons before they are taken from their cells to go the SHU rec pen.

219.    Upon information and belief correctional officers failed to conduct a pat down or a search with a metal detector on Aaron Taylor before allowing him into the rec pen on October 12, 2006, where he attacked Peter Bistrian with a weapon made from a razor blade.

220.    On October 12, 2006, at approximately 9:00a.m., while Bistrian was standing in the rec pen of the SHU, having been placed in hand restraints by FDC Philadelphia prison guards and staff, when Taylor, an unrestrained inmate, approached Bistrian and began assaulting him with a manufactured razor blade style weapon, repeatedly slashing and cutting Bistrian's face, arms, and legs.  Taylor had a history of violent assaults and was in the SHU because two (2) months earlier he had cut two (2) inmates on unit 6-North of FDC Philadelphia (one of his victims required over 30 stitches to his face).

60

221.    Bistrian's injuries from this assault are a direct and proximate result of Defendants' failure to follow established non-discretionary FDC policy.

222.    As a result of the October 12, 2006 assault, Bistrian suffered, and will continue to suffer from, serious physical injuries, including, without limitation, scars on his face, arms, and legs, possibly permanent nerve damage to his left leg, and chronic back pain and lower back spasms, as well as severe mental, emotional, and psychological injuries, as specifically enumerated above.

WHEREFORE, Plaintiff, Peter Bistrian, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff, and against Defendant, The United States of America, in the amount of five million dollars ($50,000,000.00), plus pre-judgment and post-judgment interest, attorneys' fees, and costs, and such other and further relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Pursuant to Fed.R.Civ.P. 38, Plaintiff, Peter Bistrian, hereby demands a trial by jury of all issues in this action.

Respectfully submitted,


By: <u>s/ Dana Bazelon</u>
        Dana Bazelon
        Law Offices of Dana Bazelon
        One South Broad Street
        Suite 1500
        Philadelphia, PA 19107
        215-568-1155


        Richard Bazelon
        Bazelon Less & Feldman
        One South Broad Street
        Suite 1500
        Philadelphia, PA 19107

61

215-568-1155

Robert E. Goldman, Esquire
Pa. Attorney I.D. No. 25340
P.O. Box 239
Fountainville, PA 18923
(215) 249-1213 (telephone)
(215) 249-1213 (facsimile)
reg@bobgoldmanlaw.com

Attorneys for Plaintiff, Peter Bistrian