IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER BISTRIAN, <br>     Plaintiff, | : <br> : <br> : |
| v. | :     CIVIL ACTION NO. 08-cv-3010 <br> : |
| WARDEN TROY LEVI, et al. <br>     Defendants. | : <br> : <br> : |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                                    March 24, 2020

Plaintiff Peter Bistrian sued the federal government and several individual officers at the Federal Detention Center ("FDC") in Philadelphia for failing to protect him from two attacks by fellow inmates during his pretrial detention. The *Bivens*[1] claims against the individual officers were tried to a jury, which found the officers not liable. Bistrian has renewed his Motion for Judgment as a Matter of Law against two of the officers, Defendants James Gibbs and William Jezior. Because a reasonable jury would have a legally sufficient basis to find in favor of Defendants Gibbs and Jezior, the Court must deny the Motions.[2]

### I.    BACKGROUND

The evidence at trial showed the following facts. Defendant James Gibbs was the Special Investigation Services ("SIS") Lieutenant at the FDC from 2004 to 2007.[3] SIS was in charge of investigating disciplinary infractions within the FDC as well as monitoring and investigating

---

[1] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] *See* Fed. R. Civ. P. 50(a).

[3] Gibbs Testimony, Trial Tr. July 16, 2019, at 193.

gang activity.[4] Defendant William Jezior was a special investigative technician with SIS at the FDC.[5] He reported to Gibbs.[6]

From April through June of 2006, SIS and the FBI were closely monitoring two Secure Housing Unit ("SHU") inmates who were thought to be particularly dangerous: Kaboni Savage and Steven Northington.[7] Savage was a "drug kingpin" in Philadelphia.[8] His status as a gang leader made him a subject of great concern among FDC staff.[9] In particular, FDC staff were aware that Savage was suspected of ordering a firebombing in retaliation against an informant in which six of the informant's relatives were killed.[10] Scott Dodrill, the Northeast Regional Director of the Bureau of Prisons in 2006, testified that any inmate who served as an informant against Savage would be in danger if his cooperation were revealed.[11] Northington was part of Savage's drug ring and his co-defendant.[12]

Plaintiff Peter Bistrian was a pretrial detainee at the FDC in 2006.[13] He was placed in the SHU for violating his telephone privileges.[14] While in the SHU, Bistrian served as an orderly.[15] SHU inmates are ordinarily confined to their cells 23 hours per day.[16] As an orderly, however,

---

[4] Jezior Testimony, Trial Tr. July 10, 2019, at 233.

[5] Jezior Testimony, Trial Tr. July 10, 2019, at 232.

[6] Jezior Testimony, Trial Tr. July 10, 2019, at 233.

[7] Gibbs Testimony, Trial Tr. July 17, 2019, at 95–96; Jezior Testimony, Trial Tr. July 11, 2019, at 92, 150–51; Dodrill Testimony, Trial Tr. July 12, 2019, at 96.

[8] Jezior Testimony, Trial Tr. July 10, 2019, at 235.

[9] Dodrill Testimony, Trial Tr. July 12, 2019, at 98–99.

[10] Gibbs Testimony, Trial Tr. July 16, 2019, at 196–97; Gibbs Testimony, Trial Tr. July 17, 2019, at 95.

[11] Dodrill Testimony, Trial Tr. July 12, 2019, at 86, 100.

[12] Jezior Testimony, Trial Tr. July 10, 2019, at 235–36.

[13] Bistrian Testimony, Trial Tr. July 9, 2019, at 44–45.

[14] *Id.* at 45.

[15] *Id.* at 46.

[16] *Id.* at 45–46.

Bistrian was allowed out of his cell from around 6 a.m. until after dinnertime to help correctional officers with serving meals and cleaning.[17]

At trial, Bistrian testified that one day while sweeping the SHU hallway, an inmate slipped a note to him from inside a cell and asked him to deliver it to another inmate.[18] Gibbs had warned Bistrian that if he encountered any inmate notes in the course of his work as an orderly, he should bring the note to the SIS office. Instead, Bistrian delivered the notes as the inmate requested without telling anyone.[19] Bistrian testified that he did this as a one-off favor to a fellow inmate.[20] A few days later, however, the same inmate asked him to pass a note again.[21] This time, Bistrian testified, he collected the note and alerted a correctional officer.[22]

At this point, the parties' accounts diverge. According to Bistrian, Defendants Gibbs and Jezior solicited his help with the dangerous task of gathering intelligence on Savage and Northington,[23] who unbeknownst to Bistrian were the inmates passing notes to each other.[24] Jezior confirmed that he asked Bistrian to continue bringing any notes the inmates gave him to SIS so that the FBI could review them.[25] Gibbs, however, testified that he had no knowledge of the note-passing arrangement.[26]

---

[17] *Id.* at 46–47.
[18] *Id.* at 48–50.
[19] Gibbs Testimony, Trial Tr. July 16, 2019, at 202–04.
[20] Bistrian Testimony, Trial Tr. July 10, 2019, at 121–22.
[21] *Id.* at 122–23; Bistrian Testimony, Trial Tr. July 9, 2019, at 50–51.
[22] Bistrian Testimony, Trial Tr. July 9, 2019, at 50–51, 53; Bistrian Testimony, Trial Tr. July 10, 2019, at 122–24.
[23] Bistrian Testimony, Trial Tr. July 9, 2019, at 53–54.
[24] *Id.* at 50.
[25] Jezior Testimony, Trial Tr. July 10, 2019, at 239, 244.
[26] Gibbs Testimony, Trial Tr. July 16, 2019, at 208.

Bistrian testified that after he had passed several notes in this manner, a mistake by the SIS office exposed him as an informant. According to Bistrian, each time he showed the officers a note, they made a photocopy for the FBI to review. On one occasion, they mistakenly gave Bistrian the photocopy instead of the original, and he unwittingly delivered the photocopy to Northington, who drew the obvious conclusion that Bistrian was cooperating as an informant.[27] Northington threatened Bistrian's life.[28] Bistrian testified that he alerted Gibbs and Jezior.[29] About eight weeks later—the next time Northington and Bistrian were placed in the same rec pen together—Northington and several of his associates attacked Bistrian, brutally beating him.[30]

Defendant Gibbs, on the other hand, testified that although he did not impose a separation order to keep Northington away from Bistrian, he did take other steps to protect Bistrian, including removing him from his position as an orderly and checking in with Bistrian during his daily rounds to investigate the situation.[31] Gibbs testified that he was concerned that imposing a separation order would put a "spotlight" on Bistrian, alerting Northington's many associates in the SHU that Bistrian had informed against him and making Bistrian a target.[32] Based on the steps he took to monitor the situation, Gibbs testified, he believed at the time that Bistrian was safe.[33]

Before the case was submitted to the jury, Bistrian moved for judgment as a matter of law as to Defendants Jezior and Gibbs pursuant to Federal Rule of Civil Procedure 50(a). The Court

---

[27] Bistrian Testimony, Trial Tr. July 9, 2019, at 69–75.

[28] *Id.* at 72, 79–80, 87.

[29] *Id.* at 77–82.

[30] *Id.* at 90–92, 95–104.

[31] Gibbs Testimony, Trial Tr. July 17, 2019, at 80–81.

[32] *Id.* at 82–83, 98–101.

[33] *Id.* at 81–82.

deferred ruling on the Motions and permitted the jury to deliberate.[34] The jury found that none of the *Bivens* defendants were liable.[35] Bistrian renewed his motion for judgment as a matter of law after the jury verdict pursuant to Rule 50(b).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 50(a) directs courts to render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue."[36] "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record."[37] "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party" and "disregard all evidence favorable to the moving party that the jury is not required to believe."[38] This means that "the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party

---

[34] *See* Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.").

[35] The jury's verdict and special interrogatory answers do not enter into the analysis for purposes of this motion. *See Hubbard v. BankAtlantic Bankcorp Inc.*, 688 F.3d 713, 716 (11th Cir. 2012); *Richardson v. Prisoner Transp. Servs. of Am.*, No. 15-1061, 2019 WL 1493313, at *3 (M.D. Pa. Apr. 4, 2019). In the interest of completeness, however, the Court notes that the jury found that Bistrian had "proven by a preponderance of the evidence that in June of 2006, he was facing a substantial risk of serious harm from an attack by other inmates." Jury Verdict [Doc. No. 394] at 1. The jury also found that Plaintiff had "proven by a preponderance of the evidence" that Defendants James Gibbs and William Jezior "had actual knowledge that Plaintiff faced a substantial risk of serious harm from an attack by other inmates." *Id.* The jury found that the other six individual *Bivens* defendants did not have actual knowledge that Plaintiff faced a substantial risk of serious harm and accordingly did not make further factual findings as to those defendants. *Id.* Finally, the jury found that Plaintiff had not proven by a preponderance of the evidence that Defendants Gibbs and Jezior were deliberately indifferent to the substantial risk of harm facing Plaintiff. *Id.* at 2.

[36] Fed. R. Civ. P. 50(a); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000).

[37] *Reeves*, 530 U.S. at 150.

[38] *Id.* at 150–51.

that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"[39]

For a party who bore the burden of proof at trial, this is a difficult standard to meet. The Third Circuit has explained that it is "rarely appropriate" to grant judgment as a matter of law "in favor of the party having the burden of proof."[40] A Rule 50 motion by the party bearing the burden of proof may be granted only in "extreme circumstances where the effect of the evidence is not only sufficient to meet his burden of proof, but is overwhelming, leaving no room for the jury to draw significant inferences in favor of the other party."[41] A movant who bears the burden of proof "must have established his case 'by testimony that the jury is not at liberty to disbelieve.'"[42] "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party."[43]

The substantive standard Bistrian was required to meet here is also a stringent one. To prevail on a failure-to-protect claim, a plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of objectively serious harm and (2) prison officials acted with deliberate indifference to his health and safety.[44] Deliberate indifference is a subjective standard that measures the culpability of an official's state of mind.[45] It is "an exceedingly high

---

[39] *Id.* at 151 (quoting Wright & Miller, Federal Practice & Procedure § 2529, at 300 (2d ed. 1995).

[40] *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990).

[41] *Id.*; *see also Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976).

[42] *Fireman's Fund*, 540 F.2d at 1177 (quoting *Serv. Auto Supply Co. v. Harte & Co., Inc.*, 533 F.2d 23, 25 (1st Cir. 1976)).

[43] *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)).

[44] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[45] *Id.*

standard."[46] "A showing of simple or even heightened negligence will not suffice" to prove deliberate indifference.[47] Instead, a plaintiff must put forward evidence that the defendant recognized the excessive risk and ignored it.[48] Even "prison officials who actually knew of a substantial risk to inmate health or safety" may nevertheless "be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."[49] A plaintiff must also prove that the official's deliberate indifference caused the harm.[50]

## III. DISCUSSION

There was conflicting evidence at trial on the question whether either Jezior or Gibbs was actually aware of a risk to Bistrian. Even if both Defendants were aware of a substantial risk of serious harm to Bistrian, however, there was sufficient evidence to support a verdict that neither Defendant was deliberately indifferent.

The core of Bistrian's argument is that the defendant officers were required to impose a separation order that would ensure that Bistrian would not come in contact with Northington.[51] The Court cannot agree, however, that the failure to impose a separation order constituted deliberate indifference as a matter of law. Instead, there was legally sufficient evidence for a jury to conclude that even if Defendant Gibbs was aware of a substantial risk to Bistrian, he acted reasonably or at most negligently in response to that risk and therefore was not deliberately

---

[46] *Baez v. Falor*, 566 F. App'x 155, 158 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 1156 (2015).

[47] *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

[48] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 138 (3d Cir. 2001).

[49] *Farmer*, 511 U.S. at 844.

[50] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).

[51] *See, e.g.*, Bistrian's Reply Mem. Supp. JMOL [Doc. No. 438] at 2 ("A reasonable jury could not find that Gibbs' awareness of Bistrian's blown cover and the threats against Bistrian, or what Gibbs actually did in response, relieved Jezior of his obligation to take reasonable action to protect Bistrian, *because there was uncontradicted evidence that SIS personnel were required to take immediate action to protect a compromised confidential source*." (emphasis added)).

indifferent. Gibbs testified that although he considered imposing a separation order, he opted not to because such an order would put a "spotlight" on Bistrian.[52] In other words, Gibbs testified that he was concerned that a separation order would draw attention to Bistrian's status as an informant, putting him at risk of retaliation not only by Northington himself but also by any of Northington's many associates in the SHU. Gibbs testified that he took other steps to protect Bistrian, including removing him from his position as an orderly, checking on him during daily rounds, and investigating whether he was in danger.[53] Gibbs testified that at the time, based on his interactions with Bistrian during his regular rounds and on the other steps he took, he believed that Bistrian was safe.[54]

Bistrian argues that this explanation is not credible because Northington's associates in the SHU could have learned of his cooperation even in the absence of a separation order and because even if they did learn of it, Bistrian could have been placed on "rec-alone" status so that he would not come in contact with any other inmates even during recreation time.[55] On a motion for judgment as a matter of law, however, courts may not weigh the evidence or evaluate its credibility.[56] Drawing all reasonable inferences in his favor, as the Court is required to do, the Court agrees with Defendant Gibbs that there was sufficient record evidence to support the

---

[52] Gibbs Testimony, Trial Tr. July 17, 2019, at 82–83, 98–101.

[53] *Id.* at 80–82; *see also* Gravette Testimony, Trial Tr. July 11, 2019, at 193 (agreeing that Gibbs "monitored" the situation with Bistrian, but clarifying that prison policy indicated a different course of action).

[54] Gibbs Testimony, Trial Tr. July 17, 2019, at 81–82.

[55] Bistrian's Reply Mem. Supp. JMOL [Doc. No. 437] at 10–11.

[56] *Reeves*, 530 U.S. at 150.

8

conclusion that Gibbs believed, based on the steps he took, that Bistrian was safe.[57] A jury could properly find on that basis that he was not deliberately indifferent.

Moreover, even if it would have been wise to impose a separation order—indeed, even if such an order was required under FDC policy—"a violation of prison policy 'is insufficient by itself to support an argument for deliberate indifference.'"[58] Again, to prevail on his motion, Bistrian must show that the record did not admit of any other reasonable interpretation but a verdict in his favor. But the mere fact that Gibbs's actions may have violated FDC policy does not suffice to prove that he was deliberately indifferent. On this record, a jury could properly conclude that, as a matter of Gibbs's constitutional duties, as opposed to his job duties as an FDC officer, Gibbs's decision to monitor the situation rather than impose a separation order did not meet the high standard of deliberate indifference.

Likewise, there was sufficient evidence for a jury to conclude that even if Defendant Jezior was aware of a substantial risk to Bistrian, he was not deliberately indifferent. The record reflected that both Jezior and Gibbs were aware that Northington had learned of Bistrian's cooperation.[59] This fact alone could likely support a determination that Jezior was not deliberately indifferent, because prison officials may be found to act reasonably when they report a risk to an inmate up the chain of command.[60] Indeed, Plaintiff's expert testified at trial that reporting threats up the chain of command is the proper practice for a lower-ranking correctional

---

[57] *See Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997) (explaining that the proper focus in the deliberate-indifference inquiry is on "what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)").

[58] *Bracey v. Pa. Dep't of Corrs.*, 571 F. App'x 75, 79 (3d Cir. 2014) (quoting *Longoria v. Texas*, 473 F.3d 586, 593 n.9 (5th Cir. 2006)).

[59] Bistrian Testimony, Trial Tr. July 9, 2019, at 77–79, 86–87; Gibbs Testimony, Trial Tr. July 17, 2019, at 88–89.

[60] *See Watson v. Wathen*, No. 03-194, 2005 WL 41590, at *2 (N.D. Tex. Jan. 7, 2005) ("[N]o reasonable prison guard would believe that notifying his superior of a potential threat against an inmate would violate the inmate's constitutional rights[, e]specially where the supervisor actually intervened after being notified.").

officer.[61] As with Defendant Gibbs, a jury could properly conclude that Defendant Jezior did not violate any constitutional duty to Bistrian when he relied on Gibbs's superior authority and on the lesser precautions Gibbs imposed.

Bistrian argues that "there was no evidence that Jezior did not have the ability, or the obligation, to do more than report the risk to Gibbs," citing the SIS manual.[62] Again, this boils down to an argument that failure to adhere to prison policy—here, taking immediate action to protect a compromised source—necessarily amounts to a constitutional violation. It does not.[63]

Bistrian also relies on the Third Circuit's decision in *Hamilton v. Leavy*, which held that summary judgment was not appropriate where prison officials recommended protective custody for an inmate but took no further action to protect him after the Central Institutional Classification Committee rejected the officials' recommendation.[64] But that case merely held that failure to take additional steps beyond reporting a risk to an inmate up the chain of command *could* support a finding of deliberate indifference.[65] It did not hold that such action *necessarily* amounts to deliberate indifference.[66] Importantly, the Court is not ruling on summary judgment here, but on a trial record, one in which there was evidence that at least some other protective steps were taken, unlike in *Hamilton*.

---

[61] Gravette Testimony, Trial Tr. July 11, 2019, at 187–88.

[62] Bistrian's Reply Mem. Supp. JMOL [Doc. No. 438] at 6–7.

[63] *Bracey*, 571 F. App'x at 79.

[64] *Hamilton*, 117 F.3d at 748.

[65] *Id.* ("[W]hile it appears that the MDT defendants acted reasonably in following the internal prison procedures by recommending to the CICC that Hamilton be placed in protective custody, the reasonableness of their actions following the rejection of that recommendation *remains a question*." (emphasis added)).

[66] *Id.* at 749 ("The failure of the MDT defendants to take additional steps beyond the recommendation of protective custody *could be viewed by a factfinder* as the sort of deliberate indifference to inmate safety that the Constitution forbids." (emphasis added)).

In essence, Bistrian has argued vehemently that the jury got it wrong in this case. Courts may not grant judgment as a matter of law based on mere disagreement with the jury's verdict, however. The Court cannot agree that failing to impose a separation order was deliberate indifference as a matter of law on the part of either Gibbs or Jezior.[67] An appropriate Order follows.

---

[67] In his post-verdict briefing on the renewed Motions, Bistrian alleges that spoliation occurred in this case. Specifically, he points to trial testimony about the kinds of records that would have been kept in the course of an intelligence-gathering operation like the one Bistrian described at trial. Those records were not produced and Defendants Gibbs and Jezior testified that they did not know why such records were either not made or not retained. To the extent that Bistrian intends these allegations as a request for a spoliation inference or as support for his Motion for Judgment as a Matter of Law, they are procedurally improper because the issue of spoliation was not raised in his Rule 50(a) motion at trial. Bistrian's Mot. JMOL as to Defendant Gibbs [Doc. No. 385]; Bistrian's Mot. JMOL as to Defendant Jezior [Doc. No. 386]; Trial Tr., July 24, 2019, at 82–83; *see Lightning Lube*, 4 F.3d at 1173 ("A motion for judgment as a matter of law pursuant to Rule 50(b) must be preceded by a Rule 50(a) motion *sufficiently specific* to afford the party against whom the motion is directed with an opportunity to cure possible defects in proof which otherwise might make its case legally insufficient.").