**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PETER BISTRIAN** <br><br>                        **Plaintiff,** <br><br>      **v.** <br><br> **WARDEN TROY LEVI,** *et al.***,** <br><br>                      **Defendants.** | **CIVIL ACTION NO. 08-3010** |

**<u>MEMORANDUM OPINION</u>**

**Rufe, J.**                                                                                          **February 5, 2021**

Plaintiff Peter Bistrian sued the federal government and several individual officers at the Federal Detention Center ("FDC") in Philadelphia for failing to protect him from two attacks by fellow inmates during his pretrial detention. Bistrian brought the claims against the officers under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*.[1] These claims were tried to a jury, which did not find the officers liable.[2] Bistrian timely moved for a new trial as to Defendant James Gibbs under Federal Rule of Civil Procedure 59, and has also moved to compel discovery. For the reasons stated below, Bistrian's motion for a new trial is granted and his motion to compel is granted in part and denied in part.

---

[1] 403 U.S. 388 (1971).

[2] Plaintiff also brought claims against the government under the Federal Torts Claim Act, alleging that the correctional staff of the FDC acted negligently in failing to protect him from a second attack. The FTCA claims were tried to the Court. *See* [Doc. No. 489].

I.      BACKGROUND[3]

A.  Factual Background

Defendant James Gibbs was a Special Investigation Services ("SIS") Lieutenant at the FDC from 2004 to 2007.[4] The SIS oversaw investigations of disciplinary infractions within the FDC and monitored and investigated gang activity.[5]

From April through June of 2006, the SIS and FBI were monitoring two Secure Housing Unit ("SHU") inmates who were considered very dangerous: Kaboni Savage and Steven Northington.[6] Savage was a "drug kingpin" in Philadelphia, and Northington was his co-defendant and part of his drug ring.[7] Savage was suspected of ordering a firebombing in retaliation against an informant in which six of the informant's relatives were killed.[8] The SIS and FDC staff were aware of these allegations.

In 2006, Plaintiff Peter Bistrian was a pretrial detainee at the FDC,[9] who had been placed in the SHU for violating telephone privileges.[10] While in the SHU, Bistrian served as an orderly, a job which allowed him to be out of his cell from around 6 a.m. until after dinnertime to help correctional officers serve meals and clean.[11]

---

[3] The Court assumes familiarity with the facts of this case, which are reviewed in detail in prior opinions of this Court. *See e.g.*, *Bistrian v. Levi*, No. 08-3010, 2020 WL 1435079 (E.D. Pa. Mar. 24, 2020); *Bistrian v. Levi*, No. 08-3010, 2020 WL 6951048 (E.D. Pa. Aug. 21, 2020).

[4] Gibbs Testimony, Trial Tr. July 16, 2019, at 193.

[5] Jezior Testimony, Trial Tr. July 10, 2019, at 233.

[6] Gibbs Testimony, Trial Tr. July 17, 2019, at 95–96; Jezior Testimony, Trial Tr. July 11, 2019, at 92, 150–51; Dodrill Testimony, Trial Tr. July 12, 2019, at 96.

[7] Jezior Testimony, Trial Tr. July 10, 2019, at 235–36.

[8] Gibbs Testimony, Trial Tr. July 16, 2019, at 196–97; Gibbs Testimony, Trial Tr. July 17, 2019, at 95.

[9] Bistrian Testimony, Trial Tr. July 9, 2019, at 44–45.

[10] *Id.* at 45.

[11] *Id.* at 46–47.

Bistrian testified that one day, while he was outside his cell working as an orderly, an inmate slid a note from his cell to Bistrian in the hall under the cell door. The inmate directed Bistrian to deliver the note to another cell, which he did.[12] Three or four days later, another note was slid to Bistrian under the same door, and Bistrian brought it to an officer's attention.[13] These notes were between Northington and Savage. Bistrian testified that the officers instructed him to continue to pass between the two any notes he received. Bistrian was told that when he received a note, he was to bring it to an SIS officer, who would make a photocopy of it and then return the original to Bistrian for delivery.[14]

According to Bistrian, on one occasion, the officers mistakenly returned to Bistrian an envelope containing the photocopy instead of the original, which he unknowingly delivered to Northington.[15] When Northington received the envelope, and discovered that it contained a photocopy, he drew the obvious conclusion that Bistrian was cooperating with the officers.[16] Bistrian testified that soon after the "yelling and screaming started from Northington's cell . . . we're going to f'ing kill you, you're a rat, you're a snitch, you turned on us . . . the threats started in, non-stop from that point."[17]

As Scott Dodrill, the Northeast Regional Director of the Bureau of Prisons in 2006, testified, any inmate who was discovered to have informed or cooperated against Savage or

---

[12] *Id.* at 49–50.

[13] *Id.* at 50–51.

[14] *Id.* at 55–57. Defendant Gibbs testified that he had no knowledge of the note-passing arrangement. Gibbs Testimony, Trial Tr. July 16, 2019, at 208.

[15] Bistrian Testimony, Trial Tr. July 9, 2019, at 69.

[16] *Id.* at 70.

[17] *Id.*

Northington would be in danger.[18] Eight weeks after Bistrian had delivered the wrong envelope, prison officials placed Northington and Bistrian in the same recreation pen together. Northington and several of his associates attacked Bistrian and brutally beat him.[19]

The FTCA claims were based upon a second assault. Three and a half months after the Northington attack, Aaron Taylor, another inmate in the SHU, attacked Bistrian in the recreation pen with a weapon fashioned from one of the disposable razors regularly given to inmates for shaving. This second assault was unrelated to the Northington assault.[20]

### B. Procedural Background

Bistrian brought claims under *Bivens* and the FTCA. Under *Bivens*, Bistrian brought failure-to-protect claims against Defendant James Gibbs and other individual officers alleging that they were deliberately indifferent when they placed him in a recreation pen with Northington. Under the FTCA, Bistrian brought claims against the United States, alleging that the negligence of the correctional staff led to the attack by Taylor. Bistrian's claims were bifurcated; his *Bivens* claims were tried to a jury and his FTCA claims were tried to the Court.

The *Bivens* claims were tried to a jury in July 2019. At trial, Defendant Gibbs testified that although he did not impose a separation order to keep Northington away from Bistrian, he did take other steps to protect Bistrian, including removing him from his position as an orderly and checking in with Bistrian during his daily rounds to investigate the situation.[21] Gibbs

---

[18] Dodrill Testimony, Trial Tr. July 12, 2019, at 86, 100. Dodrill's testimony was by deposition, excerpts of which were read to the jury.

[19] Bistrian Testimony, Trial Tr. July 9, 2019, at 90–92, 95–104.

[20] Taylor was convicted of one count of assault with a deadly weapon, 18 U.S.C. § 113(a)(3), for the attack. *See United States v. Taylor*, Crim. No. 07-288 [Doc. No. 189] (E.D. Pa. Dec 3, 2010).

[21] Gibbs Testimony, Trial Tr. July 17, 2019, at 80–81.

testified that he did not impose a separation order because he was concerned that it would place a "spotlight" on Bistrian.[22] He also testified that he believed the steps he did take would keep Bistrian safe.[23]

The jury found that Bistrian was facing a substantial risk of serious harm at the time of the attack and that Gibbs had actual knowledge of the substantial risk. However, the jury did not find that Gibbs had been deliberately indifferent to the risk Bistrian faced.[24] On April 21, 2020, Bistrian moved for a new trial as to Defendant Gibbs.[25]

The FTCA claims were tried to this Court in August 2019.[26] After both sides had rested, but before closing arguments, it was discovered that relevant evidence had not been disclosed by the Government.[27] A supplemental round of discovery was permitted, and the Court held that it was appropriate to reopen the trial record and allow consideration of newly-produced, highly relevant evidence.[28] The Court also noted the "failures by the government in the presentation and timely production of evidence," and determined that the government had destroyed highly-relevant evidence in bad faith.[29] This Court noted that "an extraordinary number of . . . evidentiary irregularities have plagued this litigation."[30] Unfortunately, the evidentiary irregularities were compounded.

---

[22] *Id.* at 82–83, 98–101.

[23] *Id.* at 81–82.

[24] *See* Verdict Form [Doc. No. 394].

[25] *See* Pl.'s Mot. New Trial as to James Gibbs [Doc. No. 462].

[26] *See generally, Bistrian*, 2020 WL 6951048 (Findings of Fact and Conclusions of Law).

[27] *Bistrian v. Levi*, 448 F. Supp. 3d 454, 482 (E.D. Pa. 2020).

[28] *See id.* at 485–91.

[29] *Id.* at 496; *see also id.* at 481.

[30] *Id.* at 463.

On May 8, 2020, Bistrian filed a motion to compel.[31] The motion stated that after the Court issued its March 24, 2020 Order, Bistrian sent a letter to the government requesting the FBI review their file on Taylor. On April 21, 2020, the government informed Bistrian that it had discovered relevant documents related to the FTCA claim that had not been previously produced.[32] On April 27, 2020, Bistrian requested that the government review the FBI files in connection with the *Bivens* claims.

In June 2013, Bistrian sent a *Touhy*[33] request to multiple governmental agencies, including the FBI, seeking evidence related to both attacks.[34] In response, the FBI searched the overarching Kaboni Savage case file (which included investigations of Northington) and identified two FBI Form 302s mentioning Bistrian.[35] These documents were produced on August 7, 2013.[36] The government also produced various other documents related to the attacks, and the parties agreed to a stipulation and an affidavit by FBI Agent Kevin Lewis, the agent assigned to the Savage investigation.[37] The government did not agree to conduct any additional discovery in response to Bistrian's April 27, 2020, request, asserting that it had made "a reasonable search for

---

[31] *See* Pl.'s Mot. to Compel United States to Review FBI Docs. and to Produce Relevant Docs. [Doc. No. 465].

[32] *See id.* at 2–3. These additional documents were highly relevant to Bistrian's FTCA claim, but like the evidence here, were not discovered until after the trial.

[33] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

[34] United States' Resp. to Pl.'s Mot. to Compel [Doc. No. 471] at 4.

[35] *Id.* at 5. FBI Form 302s record information that may become testimony, such as the contents of an interview or the receipt of a record. *Id.* at 5 n.2.

[36] *Id.*

[37] *See e.g. Touhy* Response dated August 7, 2013 [Doc. No. 471-9]; Letter from Paul Kaufman to Richard Bazelon (Mar. 24, 2016) [Doc. No. 471-22]; *see also* P-069 (Lewis Stipulation).

documents under the circumstances" and that it was would not "redo the discovery that was discussed and negotiated at length in 2015."[38]

After Bistrian had moved to compel, the FBI nevertheless discovered additional, relevant evidence. In 2006, the FBI had created an additional file, separate and apart from the overarching Kaboni Savage case file, specifically related to the Northington attack on Bistrian.[39] In 2013, when Bistrian sent the initial *Touhy* request, this other file had not been searched because "at the time, the responsible individuals did not realize there was a separate file."[40] The file the FBI had made for its investigation of Northington's assault on Bistrian was not searched in connection to this case until May 2020, eight years after Bistrian's initial request and ten months after the *Bivens* trial had concluded.

On May 20, 2020, the FBI informed Plaintiff of the file's existence and produced the file in its entirety. The government explained that "had we been aware of it, we would have produced the Northington file . . . when we produced the other documents responsive to the *Touhy* request."[41] Bistrian argues that this newly discovered evidence provides additional reasons for granting a new trial as to Defendant Gibbs.[42]

## II.   LEGAL STANDARD

Under Rule 59(a), "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in

---

[38] Letter from Landon Jones to Richard Bazelon (May 4, 2020) [Doc. No. 477-1] at 19, 20.

[39] *See* Letter from Landon Jones to Richard Bazelon (May 20, 2020) [Doc. No. 477] at 7.

[40] *Id.* at 8.

[41] *Id.* at 9. Plaintiff has continued to pursue the Motion to Compel despite the government's production.

[42] *See* Reply in Supp. Mot. for New Trial [Doc. No. 481] at 10–12.

actions at law in the courts of the United States," and "[t]he authority to grant a new trial resides in the exercise of sound discretion by the trial court."[43]

For a new trial to be granted based on newly-discovered evidence, a court looks to the standard under Rule 60(b)(2).[44] Under this standard, the new evidence must: "(1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial."[45] However, a party requesting a new trial "bears a heavy burden."[46]

### III.   DISCUSSION

**A.  A new trial must be granted based on the newly-discovered evidence.**

Plaintiff argues that two pieces of evidence undercut the defense presented by Gibbs and necessitate a new trial:

a) Akano interview notes – Handwritten notes from an FBI agent's interview with Correctional Officer Kehinde Akano. These interview notes describe the attack and state that the attack was the "first time both [Northington and Bistrian] in cell together."[47]

b) Stop Snitching photographs – A series of color photographs of a sign Northington had placed in his cell window before the attack reading "Stop Snitching."[48] Similar photographs were produced by the BOP in 2015 as part of

---

[43] *Wagner by Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995).

[44] *See Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995).

[45] *Id.*

[46] *Id.* (quoting *Plisco v. Union R. Co.*, 379 F.2d 15, 17 (3d Cir.1967)).

[47] Akano Interview Notes [Doc. No. 477-1] at 49–50.

[48] Color Photographs [Doc. No. 477-1] at 55.

the investigation report on the attack, but the previously produced photographs were of such low quality that the sign was not visible.[49]

    1.  *The newly discovered evidence would likely have changed the outcome of the trial.*

The jury found that Bistrian was facing a substantial risk of serious harm. The jury also found that Gibbs had actual knowledge of that fact. However, the jury determined that Gibbs had not failed to take reasonable measures to prevent the attack, and therefore, had not been deliberately indifferent to Bistrian's substantial risk.[50]

Bistrian's core argument was that Gibbs was deliberately indifferent because, knowing the danger Bistrian faced, he chose not to place a separation on Bistrian and Northington.[51] Gibbs testified that there had been no separation in place, and implied that Bistrian would have been in danger from Northington's associates had there been one. Gibbs stated that "Steven Northington had a lot [of] co-defendants in SHU, in all the floors. So if I put a keep away on Bistrian and Northington the spotlight would have totally been on Peter Bistrian."[52] The newly-discovered evidence undercuts these contentions.

    a.  <u>The Akano interview notes</u>

FBI Special Agent Stephen Heaney lead the investigation into Northington's assault on Bistrian. As part of the investigation, Special Agent Heaney interviewed Correctional Officer

---

[49] On May 6, 2015, Bistrian requested "color versions of all pictures contained in or relating to Jezior's June 30, 2006 report of Steven Northington's assault on Mr. Bistrian." *Touhy* Letter from Richard Bazelon dated May 6, 2015 [Doc. No. 471-15] at 4–5. Although these photographs fall within that request, the government "understood this aspect of the Touhy request as being directed to the BOP," and the FBI did not search for or produce any evidence. United States' Resp. to Pl.'s Mot. to Compel [Doc. No. 471] at 7 n.4.

[50] *See* Verdict Form [Doc. No. 394]; *see also* Jury Charge, Trial Tr. July 24, 2019, at 34, 36.

[51] Bistrian Closing Argument, Trial Tr. July 23, 2019, at 30–31, 41.

[52] Gibbs Testimony, Trial Tr. July 17, 2019, at 82–83.

Kehinde Akano, who was a witness to the attack.[53] Special Agent Heaney took notes of the interview. The last line states "- first time both in cell together."[54] From the context, this apparently refers to Northington and Bistrian being placed in a recreation pen together on the day of the attack.

Prior to Northington's discovery of Bistrian's cooperation and threats, Bistrian and Northington had occasionally been placed in a recreation pen together.[55] But at trial, it was in dispute as to whether the two had shared a recreation pen in the eight weeks between Northington's threats and the attack. The Akano interview notes suggest that they had not. The notes further suggest that the reason they had not shared a recreation pen was because of a separation order.[56]

Had the jury seen the interview notes, or heard testimony from Akano about the notes, it reasonably could have concluded that a separation was placed between Northington and Bistrian in response to Northington's treats against Bistrian. The jury could have reasonably concluded that, on the day of the attack, Gibbs was deliberately indifferent in either ending or ignoring the separation and placing Northington and Bistrian together.

Additionally, it is likely that the jury credited Gibbs's testimony in finding that he was not deliberately indifferent. At trial, Gibbs testified to the steps he took to keep Bistrian safe, why he did not impose or maintain a separation between the inmates, and that he believed that Bistrian was safe at the time of the attack. But the notes call his testimony into question. If, as the

---

[53] United States' Sur-Reply in Opp. Pl.'s Mot. to Compel [Doc. No. 486] at 5.

[54] Akano Interview Notes [Doc. No. 477-1] at 50.

[55] *See* Bistrian Testimony, Trial Tr. July 10, 2019 at 229–230.

[56] The statement "first time both in cell together" suggests awareness of the threats against Bistrian and that the correctional officers had not been placing Northington and Bistrian in a recreation cell together.

notes suggest, the two inmates had been previously kept apart, Gibbs's trial testimony would have been contradicted and his "spotlight" justification undermined. The jury could have reasonably found Gibbs's testimony about keeping Bistrian safe as not credible.

      b.  <u>The color photographs of the "Stop Snitching" sign</u>

The BOP report on the Northington attack states that "[p]rior to the assault inmate Northington placed a sign on the window of his cell 823 North reading 'Stop Snitching.'"[57] Officer Jezior also testified that the sign was posted before the assault.[58] But Gibbs was evasive as to his knowledge of the sign:

> Q: And so, did you understand from that that at the time of the assault Northington had posted on his cell door window a sign "stop snitching?"
>
> A: Through this investigation I did, yes.
>
> Q: And what did you learn about how long that sign had been up?
>
> A: Well, I didn't do the investigation.
>
> Q: Did you ask anybody how long the sign had been up?
>
> A: I didn't do the investigation.
>
> Q: Did you see the sign when it was up?
>
> A: What I know of this is Northington used to do that, yes.
>
> . . .
>
> Q: How often do people walk by the cell doors of the inmates in the SHU?
>
> A: Twice an hour.
>
> Q: And that's the -- and who does -- who walks by to check on the inmates twice an hour?
>
> A: The SHU officers.
>
> Q: Who report to the lieutenant, the SHU lieutenant, correct?
>
> A: Yes, sir.
>
> Q: And aren't they required to look through the narrow slot window in the door to see what the inmate is doing?
>
> A: Yeah, they have to look through the window and see what they're doing.[59]

---

[57] Jezior Report on Northington Assault, P-043 at 9.

[58] Jezior Testimony, Trial Tr. July 11, 2019, at 144.

[59] Gibbs Testimony, Trial Tr. July 17, 2019, at 66–67.

The pictures previously produced by the BOP are of such low quality that the sign is illegible. The newly discovered photographs clearly show the sign, and its prominence. Based on these photographs, it seems unlikely that anyone passing by, let alone the SHU officers who report to Gibbs and were required to walk by the cell doors and look through the slot windows to check on the inmates, would have failed to notice it.

Comparing the sets of photographs demonstrates that the recently-discovered photographs would have been far more helpful to the jury:

 

Photos of the "Stop Snitching" sign produced by the BOP and available at trial.[60]

---

[60] *See* Jezior Report on Northington Assault, P-043 at 54

12

 

Newly-produced photos of the "Stop Snitching" sign from the Northington Attack File.[61]

The value of the color photographs in illustrating the nature of the sign is obvious. Had the jury viewed these photographs, it could have reasonably concluded that Northington had placed the sign on his door as a clear and direct threat against Bistrian and that Gibbs was aware, or should have been aware, of this. The jury could have reasonably concluded that Gibbs was deliberately indifferent in putting the two in the same recreation pen given the threat projected by the sign.

Although Gibbs implied in his testimony that he was unaware of the "Stop Snitching" sign, he also testified that he personally made rounds in the SHU "every single day," and that SHU officers walked by the cells of the inmates twice an hour and reported to the SHU lieutenant.[62] Had the jury seen the color photographs, it could have determined that Gibbs must

---

[61] *See* Color Photographs [Doc. No. 477-1] at 55.

[62] Gibbs Testimony, Trial Tr. July 17, 2019, at 67, 80.

have been aware of the "Stop Snitching" sign and that Gibbs's testimony that he believed Bistrian was safe at the time they were placed together lacked credibility.

The two pieces of newly-discovered evidence, both independently and in concert, would have likely changed the outcome of the trial.

### 2.   *The newly-discovered evidence is not merely cumulative*

Defendant Gibbs argues that this evidence is cumulative of evidence presented at trial and does not justify granting a new trial.[63] Gibbs further argues that because Bistrian testified that he had not been in a recreation pen with Northington between the time of the threats and the assault, the Akano interview notes merely reiterate already existing evidence.

At trial, it was disputed whether Bistrian and Northington had previously shared a recreation pen. Bistrian testified that they had not,[64] but on cross-examination, the jury was shown a segment of a video deposition in which Bistrian stated that he could not remember if the two had shared a recreation pen.[65] Additionally, Gibbs's attorney stated during opening statements that "Peter Bistrian was going out to rec with the same inmates that he was passing notes between,"[66] and Gibbs testified that he had no information if the two had been in a pen together during the that time period.[67]

The Akano interview notes were taken soon after the Northington attack and were prepared by a disinterested party. As such, they are "different in both degree and kind" to

---

[63] *See* Def. Gibbs' Sur-Reply in Opp. Pl.'s Mot. for a New Trial [Doc. No. 487] at 7.

[64] *See, e.g.*, Bistrian Testimony, Trial Tr. July 9, 2019, at 80, 93.

[65] *See* Bistrian Testimony, Trial Tr. July 10, 2019, at 145 ("Q: Are you sure you weren't in the same rec cage, Mr. Bistrian? / A: No. I -- like I said, I don't really recall --"); *see also* Bistrian Dep., D-188 at 142.

[66] Opening Statement of Syreeta Joyce Moore, Trial Tr. July 9, 2019, at 37.

[67] Gibbs Testimony, Trial Tr. July 17, 2019, at 98.

Bistrian's testimony at trial as an interested party.[68] The notes provide evidence pertaining to a material issue that was in dispute at trial and are not merely cumulative.[69]

> ### 3. The newly-discovered evidence could not have been discovered prior to the trial

Gibbs argues that Bistrian could have discovered this new evidence prior to the trial.[70] The Court disagrees. Bistrian sent a *Touhy* request to the government in 2013 seeking evidence from the FBI. Bistrian sent another *Touhy* in 2015 specifically requesting the color photographs. Either request should have led to the production of this newly-discovered evidence. But this evidence was not produced, and in a letter sent 16 days prior to production, the FBI firmly denied that any additional evidence existed.[71] It was not until Bistrian's most recent motion to compel, which was filed because the government had failed to timely produce other relevant evidence, that the FBI discovered the Northington Attack File. The Court determines that Bistrian could not have discovered this evidence prior to the trial.

A new trial is "extraordinary relief which should be granted only where extraordinary justifying circumstances are present."[72] These are extraordinary circumstances. Bistrian diligently sought all the relevant evidence in the exclusive control of the government and it was

---

[68] *Compass Tech.*, 71 F.3d at 1130; *see also Crowley v. Cooperstein*, No. 95-0194, 1996 WL 524101, at *3 (E.D. Pa. Sept. 11, 1996) ("[T]he new evidence is the only corroborative evidence which has been introduced by the plaintiff. Thus, this evidence is not cumulative.").

[69] Gibbs does not argue that the color photographs of the "Stop Snitching" sign would be cumulative. They are not. As discussed above, the photographs produced by the BOP and available at trial were essentially useless. The newly produced photographs would allow a jury to view the sign.

[70] *See* Def. Gibbs' Sur-Reply in Opp. Pl.'s Mot. for a New Trial [Doc. No. 487] at 6–7.

[71] *See* Letter from Landon Jones to Richard Bazelon (May 4, 2020) [Doc. No. 477-1] at 20 ("The United States is . . . unwilling to engage in dozens of hours of document or other review on the chance that there is some unknown record of unknowable nature regarding heretofore unmentioned cooperation that no one has even suggested exists.").

[72] *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (citations omitted).

not until after the trial that the government discovered the Northington Attack File, despite it being in the government's possession for 14 years. Indeed, if not for Bistrian's diligence after the FTCA evidence was discovered, this evidence would never have come to light.

The newly-discovered evidence, even if only withheld from Bistrian through carelessness, is material, could not have been discovered by Bistrian through reasonable diligence, and would have likely changed the outcome of the trial. It meets the heavy burden under Rule 60(b)(2), and therefore, the Court will grant a new trial under Rule 59(a)(1).[73]

### B.  Limited Additional Discovery is Reasonable

Bistrian has also moved for additional discovery in light of the newly-discovered evidence.[74] The Court has broad discretion to manage discovery.[75] It will consider the needs of the case, and weigh the burdens of production against the likely benefit when determining if additional discovery is appropriate.[76]

Bistrian requests that the FBI and Office of the United States Attorney review all FBI files concerning the investigation, surveillance, or intelligence gathering related to Savage, Northington, or Bistrian at the FDC in 2006. Bistrian further requests depositions of Correctional Officer Kehinde Akano, Special Agent Stephen Heaney, William Jezior, and an FBI designated representative on the subject of records pertaining to this case.[77]

---

[73] Bistrian also argues that a new trial is warranted as to Gibbs because the jury's verdict was against the weight of the evidence and improper actions by Defendant Gibb's attorneys during opening and closing arguments. Pl.'s Mot. New Trial as to James Gibbs [Doc. No. 462] at 17–20, 21–23. Because the Court finds that a new trial should be granted based on the discovery of new evidence, it does not reach these arguments.

[74] *See* Pl.'s Reply to Gov.'s Opp. to Pl.'s Mot. to Compel [Doc. No. 477] at 17–24.

[75] *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995).

[76] Fed. R. Civ. P. 26(b)(1).

[77] *See generally,* Proposed Order, Pl.'s Reply to Gov.'s Opp. to Pl.'s Mot. to Compel [Doc. No. 477] at 1–2.

As discussed above, there have been serious issues with evidence and discovery throughout this case. But after producing the Northington Attack File, the FBI took the following steps to identify any other potentially responsive documents:

- Re-performing the search of the overarching Savage investigative file for the term "Bistrian" and separately for "bist*."

- Reviewed all substantive files from the main Savage case file serialized in 2006.

- Reviewed all 302s in the "D subfile," entitled "Informant Reports," of the Savage file.

- Searched across all files in Sentinel, the FBI's document management system, for items containing "Peter" and "Bistrian" and that were serialized in 2006.[78]

Considering these steps, the Court believes that there would be little benefit in examining for responsiveness all "handwriting, photographs, physical evidence, or documents that are not word searchable."[79] Given the immense size of the Savage file, such an examination would be unduly burdensome. Similarly, the Court will not permit a deposition from a representative of the FBI as to the records, as the burden also outweighs any likely benefit.

However, the substance of the newly-discovered evidence will likely be at issue in Bistrian's new trial, and limited and targeted discovery is appropriate. The Court will allow Bistrian to depose Correctional Officer Kehinde Akano on the topics of his interview with the FBI and any knowledge of a separation between Bistrian and Northington. The Court will also allow Bistrian to depose Officer Jezior on the topics of the "Stop Snitching" photographs and any knowledge of a separation. Finally, the Court will allow Bistrian to conduct a limited

---

[78] United States' Resp. to Pl.'s Mot. to Compel [Doc. No. 471] at 8. The '*' character is a wild card within their Boolean search system. The Sentinel search reviews all documents in the FBI's electronic file.

[79] Pl.'s Reply to Gov.'s Opp. to Pl.'s Mot. to Compel [Doc. No. 477] at 19.

17

deposition of Special Agent Heaney on the topic of the Akano interview notes, unless the government produces an affidavit from the Special Agent authenticating the notes.

### III.  CONCLUSION

The Court is fully aware of prolonged litigation of this case[80] and does not determine lightly that a new trial is necessary. Because the government's long-term failure to produce highly relevant evidence directly impacted the *Biven's* jury's verdict, the only just relief is to grant Plaintiff the opportunity to have his claims fully and fairly heard. An order will be entered.

---

[80] This case has been before the Court for over twelve and a half years. It has included multiple motions to dismiss, multiple motions for summary judgment, two interlocutory appeals, two lengthy trials, post-trial litigation, and seemingly endless problems with discovery.

18