**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PETER BISTRIAN,**<br>**Plaintiff,**<br>**v.**<br>**WARDEN TROY LEVI, FDC PHILADELPHIA, *et al.*,**<br>**Defendants.** | **CIVIL ACTION NO. 08-3010** |

**MEMORANDUM OPINION**

**Rufe, J.** **March 25, 2022**

Plaintiff Peter Bistrian filed this lawsuit to seek damages for harm he suffered when fellow inmates at the Philadelphia Federal Detention Center ("FDC") attacked him on two separate occasions. After a jury trial at which individual officers were found not liable for failing to protect Bistrian from one of the attacks, the United States produced a previously undisclosed FBI file that contained evidence relevant to Plaintiff's *Bivens* claims.[1] This revelation formed the basis for the Court's decision to grant Bistrian a new trial against Defendant James Gibbs. Bistrian now seeks sanctions against the United States for failing to timely disclose the file.[2] Bistrian's motion for sanctions will be granted in part and denied in part for the reasons stated herein.

---

[1] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Pl.'s Mot. Sanctions [Doc. No. 495].

## I. Background

### A. Factual Background

At trial, Bistrian testified to the following facts. In 2006, Bistrian was incarcerated at the FDC while awaiting trial on federal charges.[3] He was placed in the Special Housing Unit ("SHU") for violating telephone privileges.[4] As an orderly in the SHU, Bistrian was permitted to leave his cell from approximately 6:00 am until dinnertime to assist with serving meals and completing janitorial tasks.[5] One day, an inmate slipped Bistrian a note while he was sweeping a hallway and asked him to give it to another inmate.[6] Defendant James Gibbs, the Special Investigation Services ("SIS") Officer at the FDC at the time,[7] had asked Bistrian to bring any notes received from inmates while working as an orderly to the SIS office.[8] Bistrian delivered the note without disclosing it to an officer.[9] When the same inmate asked him to pass a note a few days later, Bistrian informed a correctional officer.[10]

According to Bistrian, Defendant Gibbs and Defendant William Jezior, a Special Investigations Technician with the SIS, solicited his help with gathering intelligence on two SHU inmates, Kaboni Savage and Steven Northington.[11] Savage was known as a local "drug kingpin" who was charged with, and later convicted of, orchestrating the deadly firebombing of an

---

[3] Bistrian Testimony, Trial Tr. July 9, 2019, at 44–45.

[4] *Id.* at 45.

[5] *Id.* at 46–47.

[6] *Id.* at 49–50.

[7] Gibbs Testimony, Trial Tr. July 16, 2019, at 193.

[8] *Id.* at 202.

[9] Bistrian Testimony, Trial Tr. July 9, 2019, at 50.

[10] *Id.* at 50–51.

[11] *Id.* at 54.

informant's house.[12] Northington was involved in Savage's drug ring and had been indicted as his co-defendant.[13]

Bistrian testified that the SIS office exposed his role as an informant after he provided the officers with a note for photocopying.[14] Instead of returning the original note, an officer mistakenly provided Bistrian with a photocopy. Bistrian, unaware of the error, delivered the photocopy to Northington.[15] Northington concluded that Bistrian was clearly an informant and threatened to kill him.[16] Scott Dodrill, the Northeast Regional Director of the Bureau of Prisons ("BOP") at the time, testified that any inmate who informed on Savage or Northington would be in danger.[17] On June 30, 2006, approximately eight weeks after the photocopy incident, Bistrian and Northington were placed in the same recreation pen, and Northington and two other inmates brutally attacked him.[18]

Not known to Bistrian at the time of trial was that a separate FBI investigation file was assembled after FBI agents Heaney, Holdsworth, and another agent "conducted a crime scene investigation and interviewed several witnesses" concerning the Northington attack ("the Northington Attack file").[19] Additionally, "SIS Technician Jezior, with assistance from Agent

---

[12] Jezior Testimony, Trial Tr. July 10, 2019, at 235–36, Gibbs Testimony, Trial Tr. July 16, 2019, at 196–97; Gibbs Testimony, Trial Tr. July 17, 2019, at 95.

[13] Jezior Testimony, Trial Tr. July 10, 2019, at 235–36.

[14] Bistrian Testimony, Trial Tr. July 9, 2019, at 69–70.

[15] *Id.*

[16] *Id.* at 70.

[17] Dodrill Testimony, Trial Tr. July 12, 2019, at 86, 100. Dodrill testified by deposition, excerpts of which were read to the jury.

[18] Bistrian Testimony, Trial Tr. July 9, 2019, at 90–92, 95–104.

[19] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 13 [Doc. No. 498-13] at 1.

Holdsworth, took a number of photographs."[20] The FBI closed its investigation of the Northington attack on July 5, 2006, and the BOP conducted internal disciplinary proceedings.[21]

Bistrian suffered a second, unrelated attack a few months later. In that incident, an inmate, Aaron Taylor, attacked Bistrian with a makeshift weapon formed from a disposable razor while they were in the recreation pen.[22] That attack formed the basis for a negligence claim asserted against the United States under the Federal Tort Claims Act ("FTCA").[23] The Court found in favor of Bistrian and awarded damages under the FTCA after a bench trial.

**B. Procedural Background**

In 2008, Bistrian filed an initial complaint asserting *Bivens* claims against several correctional officers.[24] Bistrian alleged that Defendant Gibbs and other officers were liable under *Bivens* for acting with deliberate indifference by placing him in a recreation pen with Northington. In 2009, Bistrian amended the complaint to include FTCA claims against the United States.[25] These claims alleged that the United States was liable under the FTCA for negligence by the correctional officers that allowed Taylor to attack him.

In 2010, the Court dismissed the United States from the case.[26] In 2013 and 2014, while the United States was not a party to this case,[27] Bistrian requested information from the FBI and

---

[20] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 13 [Doc. No. 498-13] at 1.

[21] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 13 [Doc. No. 498-13] at 1.

[22] Taylor was convicted of one count of assault with a deadly weapon for attacking Bistrian. *See United States v. Taylor*, 686 F.3d 182, 184 (3d Cir. 2012) (affirming Taylor's conviction).

[23] 28 U.S.C. § 1346(b).

[24] Compl. [Doc. No. 1].

[25] Am. Compl. [Doc. No. 8].

[26] Order Jul. 29, 2010 [Doc. No. 30].

[27] *See Bistrian v. Levi*, 448 F. Supp. 3d 454, 493 n.183 (E.D. Pa. 2020) (noting that "Bistrian sought the post orders via *Touhy* request during the time when the government was not a party," referring to a letter requesting post orders

other federal agencies through *Touhy* letters.[28] In response to these requests, the FBI produced documents from the overarching investigation file on Savage and Northington that referenced Bistrian. In January 2015, Bistrian sent a FOIA request to the FBI.[29]

Bistrian brought the United States back into the case by filing a third amended complaint in February 2015.[30] Nevertheless, for reasons that are unclear, the Department of Justice requested that Bistrian continue to conduct discovery through *Touhy* letters. Accordingly, in May 2015, Bistrian requested information from various federal agencies by *Touhy* letter.[31] It is now known that in October 2015, FBI personnel scanned the Northington Attack file when preparing to process Bistrian's FOIA request.[32] The FBI had not searched for the Northington Attack file when responding to Bistrian's earlier *Touhy* requests, and the file was not produced during discovery or otherwise provided to Bistrian before trial. Bistrian's FOIA request was still pending as of March 2021.[33]

At the jury trial on the *Bivens* claims in 2019, Defendant Gibbs testified that he took measures to protect Bistrian even though he did not impose a separation order to keep Bistrian

---

dated November 24, 2014.); Def.'s Resp. Pl.'s Mot. Reopen Record Ex. 22 [Doc. No. 424-22] at 5 (containing the *Touhy* letter through which Bistrian requested the post orders).

[28] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 7 [Doc. No. 498-7]; Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 16 [Doc. No. 498-16]; *see United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Federal law permits agency heads to promulgate "regulations for . . . the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. *Touhy* affirmed the use of these regulations, and today "most courts require a party seeking information from the Government, as a non-party, to make a request to the [agency] pursuant to their administrative regulations." *Aiken v. Eady*, No. 14-811, 2016 WL 452135, at *5 (D.N.J. Feb. 4, 2016).

[29] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 25 [Doc. No. 508-1].

[30] Third Am. Compl. [Doc. No. 133].

[31] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 19 [Doc. No. 498-19].

[32] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at Ex. A.

[33] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 27 [Doc. No. 508-3].

and Northington apart.[34] These steps included removing Bistrian from his position as an orderly and checking in with Bistrian during his daily rounds.[35] Defendant Gibbs testified that he did not impose a separation order because he was concerned that doing so would make Bistrian a target.[36] The jury found that Bistrian faced a substantial risk of harm and that Gibbs possessed actual knowledge of that risk, but that Gibbs was not deliberately indifferent to the risk Bistrian faced.[37]

The Court conducted a bench trial on the FTCA claims immediately after the jury trial concluded. Just before closing arguments, the United States' failure to disclose relevant evidence regarding the Taylor attack came to light.[38] In response to this failure, the Court allowed supplemental discovery and reopened the trial record to consider newly-produced evidence. The Court noted the "failures by the government in the presentation and timely production of evidence," and concluded that the United States had destroyed highly relevant evidence—the razor weapon used in the Taylor attack—in bad faith.[39] The Court also remarked that "an extraordinary number of . . . evidentiary irregularities have plagued this litigation."[40]

On April 21, 2020, Bistrian moved for a new trial with respect to Defendant Gibbs.[41] Shortly thereafter, Bistrian filed a motion to compel the United States to review and produce FBI

---

[34] Gibbs Testimony, Trial Tr. July 17, 2019, at 80–81.

[35] *Id.*

[36] *Id.* at 82–83, 98–101.

[37] *See* Verdict Form [Doc. No. 394].

[38] *Bistrian*, 448 F. Supp. 3d at 482.

[39] *Id.* at 481, 496.

[40] *Id.* at 463.

[41] Pl.'s Mot. New Trial [Doc. No. 462].

documents.[42] While the motion to compel was pending, the United States turned over the Northington Attack file. In its May 20, 2020 letter to Plaintiff, Government counsel claimed that they would have produced the file earlier, but that the FBI had previously only searched for Bistrian's name in the overarching file concerning the Savage and Northington investigation.[43] The Court granted Bistrian's motion to compel in part and granted the motion for a new trial as to Defendant Gibbs.[44]

## II. LEGAL STANDARD

Bistrian moves for sanctions under Federal Rules of Civil Procedure 26 and 37 for the United States' failure to timely disclose the Northington Attack file. Rule 26(b)(1) entitles a party to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[45] A party is required to supplement information disclosed pursuant to a discovery request "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties."[46] When "a party fails to provide information . . . as required by Rule 26(a) or (e)," Rule 37(c) allows for the "payment of the reasonable expenses, including attorney's fees, caused by the failure."[47] Sanctions may also be imposed for discovery misconduct under Rule 26(g), which applies when an attorney or a party improperly "certifies that to the best of the person's

[42] Pl.'s Mot. Compel [Doc. No. 465].

[43] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at Ex. E.

[44] *See Bistrian v. Levi*, 517 F. Supp. 3d 335 (E.D. Pa. 2021).

[45] Fed. R. Civ. P. 26(b)(1).

[46] Fed. R. Civ. P. 26(e)(1)(A).

[47] Fed. R. Civ. P. 37(c)(1)(A).

knowledge, information, and belief formed after a reasonable inquiry" a disclosure "is complete and correct as of the time it is made."[48]

District courts also possess inherent authority to sanction parties' discovery misconduct. If "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,'" the Court may impose sanctions.[49] A "prerequisite for the exercise of the district court's inherent power to sanction is a finding of bad faith conduct."[50] The Court has broad discretion to determine whether, and what kinds, of sanctions are warranted.[51] When a district court imposes sanctions under its inherent power, this "serv[es] the dual purpose of 'vindicat[ing] judicial authority without resort[ing] to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'"[52]

In evaluating the appropriateness of sanctions, courts follow the same principles regardless of whether sanctions are invoked under the Federal Rules of Civil Procedure or the district courts' inherent powers.[53] Courts will first "consider the conduct at issue and explain why the conduct warrants sanction" before "specifically consider[ing] the range of permissible sanctions and explain[ing] why less severe alternatives to the sanction imposed are inadequate or inappropriate."[54] Additionally, "due process considerations demand that a party and/or attorney

---

[48] Fed. R. Civ. P. 26(g)(1)(A).

[49] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (citations omitted); *see also Weisberg v. Riverside Tp. Bd. of Educ.*, 272 Fed. App'x 170, 173 (3d Cir. 2008) (quoting *Chambers*, 501 U.S. at 45–46)).

[50] *Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir. 1991).

[51] *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir 2007).

[52] *Chambers*, 501 U.S. at 46 (citation omitted).

[53] *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

[54] *Id.*

to whom a motion for sanctions is directed must have both notice and an opportunity to be heard."[55]

## III. Discussion

### A. The doctrine of sovereign immunity does not shield the United States from sanctions for its failure to fulfill its discovery obligations as a party to this case.

As a threshold matter, the Court must determine whether sovereign immunity bars the imposition of sanctions, including payment of attorneys' fees. "A waiver of . . . sovereign immunity must be unequivocally expressed in statutory text" and "will be strictly construed, in terms of its scope, in favor of the sovereign."[56] Where a plaintiff seeks damages from the United States, "the waiver of sovereign immunity must extend unambiguously to such monetary claims."[57]

The United States acknowledges that "in cases in which the United States is properly before the Court as a litigating party, it is subject to the Federal Rules of Civil Procedure and has waived its immunity from monetary sanctions arising from violations of those rules as a party."[58]

---

[55] *Fuhs v. McLachlan Drilling Co.*, No. 16-376, 2018 WL 5312760, at *11 (W.D. Pa. Oct. 26, 2018) (quoting *Vay v. Huston*, No. 14-769, 2016 WL 1408116, at *9 (W.D. Pa. Apr. 11, 2016) (citing *Jones v. Pittsburgh Nat'l Corp*., 899 F.2d 1350, 1357 (3d Cir. 1990)). Adequate notice must communicate the statute or rule under which sanctions are sought and the nature of the sanctions requested. *Id.*

[56] *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).

[57] *Id.* (citation omitted).

[58] Def.'s Resp. Opp'n Pl.s' Mot. Sanctions [Doc. No. 508] at 1; *see, e.g. F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 595 (5th Cir. 2008) ("The government, as a party to a lawsuit, is subject to the same ethical and procedural rules as a private litigant, and risks the same sanctions if it fails to abide by these rules."); *M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1181 (Fed. Cir. 1993) ("By incorporating as an example Rule 37 into section 2412(b) [of the EAJA], Congress emphasized that there was no longer a need to differentiate between the government and a private litigant in matters relating to awarding fees and costs as a sanction for abusing the discovery process."); *Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991) ("[W]hen the United States comes into court as a party in a civil suit, it is subject to the Federal Rules of Civil Procedure as any other litigant."); *United States v. Nat'l Med. Enterprises, Inc.*, 792 F.2d 906, 911 (9th Cir. 1986) (affirming monetary sanctions against the government for violating Rule 37(b)).

The United States contends, however, that it "has not waived sovereign immunity for claims for monetary damages arising from its actions as a non-party *Touhy* recipient, or for attorney's fees in cases in which it is not a party."[59] The Court agrees that sanctions may be assessed only for those periods during which the United States' conduct was constrained by Federal Rules of Civil Procedure 26 and 37, i.e., when it was a party.[60]

Bistrian's First Amended Complaint, which added the United States as a defendant, was filed on May 29, 2009.[61] The Court dismissed the United States from the case on July 29, 2010.[62] The United States was not a party to the case between July 29, 2010 and February 9, 2015, when Plaintiff filed the Third Amended Complaint.[63] While the United States was not a party, Bistrian

---

[59] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 27.

[60] *See Bistrian*, 448 F. Supp. 3d at 493 n.183 (holding that the United States was not a party when Bistrian served a 2014 *Touhy* request). Although Bistrian argues that the United States was a party at the time of the 2013 and 2014 *Touhy* requests, the Court has already held otherwise. *See id.*; Pl.'s Reply Mem. Supp. Mot. Sanctions [Doc. No. 502] at 9–12. The Court previously explained that "[a]lthough the Court rejects the notion that the government had no preservation obligations [between July 2010 and February 2015], the Court notes that, as an apparent matter of first impression, Rule 26 seems inapplicable to *Touhy* requests." *Bistrian*, 448 F. Supp. 3d at 493 n.183 (internal citation omitted). Further, although sanctions may be available against a non-party under Rule 37(a)(5), this is only the case if (1) a party filed a motion to compel against "a deponent [who] fails to answer a question asked under Rule 30 or 31" or "a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4)" and (2) the motion is granted, discovery is provided after filing of the motion, or the motion is denied in part and granted in part. *See* Fed. R. Civ. P. 37(a)(5), 37(a)(3)(B)(i–ii), 37(a)(3)(C).

The United States has demonstrated that Plaintiff treated the United States as a non-party at the time of the 2013 and 2014 *Touhy* requests. Def.'s Sur-Reply Further Opp'n Pl.'s Mot. Sanctions [Doc. No. 508] at 2–5. Courts that have considered the discovery obligations of former parties have routinely held that it is appropriate to treat them as non-parties for the purpose of requesting information. *See e.g.*, *Jasin v. Kozlowski*, No. 04-2188, 2011 WL 13214127, at *1 (M.D. Pa. Mar. 14, 2011) ("Rule 45 is indeed the proper means of obtaining information from parties, such as the Settling Defendants here, who have been dismissed from a cause of action."); *Mallinckrodt LLC v. Actavis Lab. FL, Inc.*, No. 15-3800, 2017 WL 5476801, at *1–2 (D.N.J. Feb. 10, 2017) (treating a dismissed party as a non-party).

Although Bistrian also contends that the United States has always been a party to this action because the "individual defendants were sued in their capacity as employees of the United States," this argument is unconvincing because sovereign immunity also bars *Bivens* claims against individual officers in their official capacities. Pl.'s Reply Mem. Supp. Mot. Sanctions [Doc. No. 502] at 10; *see Huberty v. U.S. Ambassador to Costa Rica*, 316 F. App'x 120, 122 (3d Cir. 2008) (citations omitted).

[61] Am. Compl. [Doc. No. 8] at 2.

[62] Order July 29, 2010 [Doc. No. 29].

[63] Third Am. Compl. [Doc. No. 133].

sent two relevant *Touhy* requests concerning federal agencies to Government counsel. The first was dated June 12, 2013, and the second was sent on or around May 5, 2014.[64] On January 5, 2015, Bistrian emailed a FOIA request to the FBI seeking "all material pertaining to him."[65]

After the United States was again named as a party on February 9, 2015, counsel for the United States nevertheless directed Bistrian to continue to request information from various federal agencies through *Touhy* letters.[66] Accordingly, on May 6, 2015, Bistrian submitted a *Touhy* letter that asked for "color versions of all pictures contained in or relating to [Defendant] Jezior's June 30, 2006 report of Steven Northington's assault on Mr. Bistrian."[67] Government counsel forwarded this request to the BOP, which produced some low quality copies of photographs on July 20, 2015.[68] In parallel, responding to Bistrian's January 2015 FOIA request, FBI personnel scanned the Northington Attack file, which contained high quality color photographs, on October 22, 2015.[69]

---

[64] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at Exs. C, D.

[65] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 25 [Doc. No. 508-1] at 1.

[66] *See* Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 19 [Doc. No. 498-19] at 1. The letter states, in relevant part:

> While the United States is now a party to this action, we were informed by your counsel, Tom Johnson on May 1, 2015 that the proper way to make some of the requests listed below was through a *Touhy* letter. Rather than divide our requests into two letters, we submit the following *Touhy* Request to the Government on Mr. Bistrian's behalf, for information that is "both relevant and essential" to the presentation of his case. *Miller v. Mehltretter*, 478 F. Supp. 2d 415, 424 (W.D.N.Y. 2007).

*Id.* The parties' briefing does not append an email or letter from May 1, 2015, that contained this directive. However, the United States does not contest Bistrian's assertion that Government counsel instructed Bistrian to request information through *Touhy* letters after the United States reentered this case as a litigating party.

[67] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 19 [Doc. No. 498-19] at 4–5.

[68] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 15. The photographs, some of which showed a large "Stop Snitching" sign that Northington placed on the door to his cell prior to the attack, were of such poor quality that the sign was indecipherable. *Bistrian*, 517 F. Supp. 3d at 343.

[69] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at Ex. A.

Neither the high quality photographs nor the other contents of the Northington Attack file were produced to Bistrian until nearly five years later, even though the United States was a party to the litigation and obligated to comply with the Federal Rules of Civil Procedure. The doctrine of sovereign immunity does not bar the imposition of sanctions as to the United States' conduct while it was subject to the Rules. Therefore, the Court will consider whether any of the potential misconduct that occurred after February 9, 2015 warrants sanctions.

**B. The United States' discovery misconduct violated its obligations under the Federal Rules of Civil Procedure.**

Bistrian avers that the United States violated its discovery obligations under the Federal Rules of Civil Procedure because Government counsel either a) suppressed discovery of the Northington Attack file after being notified of its existence by the FBI, and/or b) failed to make any real effort to locate this information even though Bistrian's prior requests encompassed information found in the file.[70]

*1. Alleged suppression of the Northington Attack file*

Bistrian contends that the United States suppressed the Northington Attack file, and points to FOIA procedures that direct the FBI to "determine whether another . . . agency component has a 'substantial interest' in any of the records or information contained in the records" and to "consult with any other . . . agency component whose information appears in the responsive records" to support this assertion.[71] Government counsel maintain that they were

---

[70] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 4–6; Pl.'s Reply Mem. Supp. Mot. Sanctions [Doc. No. 502] at 7. Bistrian identifies the United States' refusal to allow Special Agent Heaney to sit for a deposition in response to a 2014 *Touhy* request as additional evidence that the United States intentionally sought to block Plaintiff's access to the Northington Attack file. Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 5–6. As the United States was not a party at the time, its conduct is not sanctionable in this regard.

[71] Pl.'s Reply Mem. Supp. Mot. Sanctions [Doc. No. 502] at 8–9.

unaware of the Northington Attack file prior to May 18, 2020.[72] Additionally, Government counsel argue that the FBI did not share that it located the file in 2015 because Bistrian's FOIA request had not yet been processed, and further contend that Bistrian's FOIA request was more expansive than his 2013 *Touhy* request for FBI files.[73]

Bistrian avers that the United States learned about the Northington Attack file in 2015 but intentionally withheld it, which constitutes spoliation.[74] "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party."[75] Further, "a finding of bad faith is pivotal to a spoliation determination."[76] Here, the file was undoubtedly within the United States' control, and the file's contents were highly relevant to Bistrian's claims. However, the record does not demonstrate that Government counsel knew that FBI personnel scanned the Northington Attack file in 2015 when preparing to respond to Bistrian's pending FOIA request. According to current Government counsel, they only learned of its existence in May 2020. The Court therefore declines to infer that Government counsel intentionally delayed production of the file.[77]

---

[72] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 10.

[73] Def.'s Sur-Reply Opp'n Pl.'s Mot. Sanctions [Doc. No. 508] at 18–20. The United States also avers that the FBI was substantially justified in its failure to disclose the file in response to *Touhy* requests made in 2013, explaining that the FBI's search methods at that time were "tailored to documents actually requested." Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 20–23. The Court declines to dissect the FBI's handling of the 2013 *Touhy* request as the United States was not a party to this case when that request was made.

[74] *See* Pl.'s Reply Mem. Supp. Mot. Sanctions [Doc. No. 502] at 7.

[75] *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012).

[76] *Id.* at 79.

[77] "[S]poliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance—misplaced. Withholding requires intent." *Id.* Thus, the question of whether the file *should* have been discovered and produced earlier is not before the Court.

Accordingly, to the extent that Bistrian asks the Court to consider imposing sanctions for the United States' alleged suppression of the Northington Attack file, this motion will be denied.

*2. Failure to search for documents responsive to Bistrian's requests for information*

Civil Rule of Federal Procedure 26 governs discovery between parties in a civil case. Under Rule 26(b)(1), a party can obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(e) obligates a party to supplement its disclosures if it "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties."[78] If an earlier discovery request did not encompass the information, the duty to supplement does not apply.[79] The Third Circuit recognizes that "the obligation on parties and counsel to come forward with relevant documents not produced during discovery is 'absolute.'"[80]

Procedures differ when a plaintiff seeks information from a federal agency and the United States is not a party. In *Touhy*, the Supreme Court "found regulations governing the circumstances under which agency employees could testify in response to a subpoena to be valid."[81] However, courts have generally held that "[w]hen the United States is a party to litigation, 'judicial control over the evidence in a case cannot be abdicated to the caprice of

---

[78] Fed. R. Civ. P. 26(e)(1)(A).

[79] *Bowers*, 475 F.3d at 540 (quoting *Polec v. Northwest Airlines, Inc.*, 86 F.3d 498, 539 (6th Cir. 1996)).

[80] *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 243 (3d Cir. 2007).

[81] *Se. Pa. Transp. Auth. v. Orrstown Fin. Serv., Inc.*, 367 F. Supp. 3d 267, 280 (M.D. Pa. 2019) (citing *Touhy*, 340 U.S. at 462). Such regulations help "to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." *Boron Oil Co. v. Downie*, 873 F. 2d 67, 70 (4th Cir. 1989).

executive officers.'"[82] If a case "originat[es] in federal court in which the federal government is a party to the underlying litigation, the *Touhy* problem simply does not arise."[83]

Bistrian asserts that the United States violated its discovery obligations under the Federal Rules of Civil Procedure because Bistrian's requests for document production encompassed the contents of the Northington Attack file.[84] Bistrian attempted to obtain information that was later found in the Northington Attack file on two occasions after the United States' return to this case. The first was the 2015 *Touhy* letter that requested "color versions of all pictures contained in or relating to Jezior's June 30, 2006 report of Steven Northington's assault on Mr. Bistrian."[85] That letter stated that, "[w]hile the United States is now a party to this action, we were informed by your counsel . . . that the proper way to make some of the requests . . . was through a *Touhy* letter."[86] The second request was in an email from Bistrian's counsel that sought "all of the picture attachments to the Northington Report."[87]

The United States argues that "it was not until after the *Bivens* trial that Bistrian first made requests that specifically encompassed the FBI's Northington file."[88] With respect to Bistrian's requests for photographs, the United States first asserts that Bistrian's 2015 request

---

[82] *Alexander v. F.B.I*, 186 F.R.D. 66, 70 (D.D.C. 1998) (quoting *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953)).

[83] *Id.*

[84] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 1.

[85] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 19 [Doc. No. 489-19]; Pl.'s Reply Mem. Supp. Mot. Sanctions [Doc. No. 502] at 5 n.3; Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 1 n.1.

[86] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 19 [Doc. No. 489-19] at 1.

[87] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 21 [Doc. No. 498-21].

[88] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 9.

was directed toward the BOP because Defendant Jezior worked for the BOP.[89] The United States also claims that "Bistrian's counsel did not then suggest that the Government had mistakenly understood the request as being directed towards BOP, when actually Bistrian intended it to be directed to the FBI."[90] The United States acknowledges that Bistrian requested better versions of the color photographs again in 2019, but that "Bistrian did not follow-up with any request for a search of FBI files for the color photographs in Jezior's report."[91]

As the United States responded to these discovery requests after it had returned to the case as a litigating party, the Court evaluates this conduct under the Federal Rules of Civil Procedure. The Court cannot agree that Bistrian's discovery requests for color versions of the photographs failed to encompass the Northington Attack file. Bistrian unambiguously requested photographs "relating to" Jezior's report.[92] Bistrian's counsel did not direct this request to the BOP, and Bistrian's lawyers had no reason to know which agency might have files containing the photographs, particularly given that the BOP and FBI conducted overlapping investigations of the attack. Indeed, as the Court stated when it granted Bistrian's motion for a new trial, the 2015 "request should have led to the production of th[e] newly-discovered evidence" contained in the Northington Attack file.[93] The United States violated its obligation to supplement its discovery disclosures under Rule 26(e) after Bistrian served the 2015 request.

---

[89] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 15.

[90] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 15–16.

[91] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 16.

[92] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 19 [Doc. No. 489-19]; Pl.'s Reply Mem. Supp. Mot. Sanctions [Doc. No. 502] at 5 n.3, Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 1 n.1.

[93] *Bistrian*, 517 F. Supp. 3d at 345.

**C. Sanctions are warranted under Federal Rules of Civil Procedure 26 and 37.**

Rule 37(c)(1) permits the imposition of sanctions for a party's failure to supplement its discovery disclosures "unless the failure was substantially justified or is harmless."[94] Likewise, Rule 26(g)(3) requires sanctions when "an attorney's signature [improperly] certifies that any disclosures were complete and accurate at the time they were made and that a reasonable inquiry was made."[95] When courts consider sanctions under Rule 26(g), the substantial justification standard also applies.[96] "Substantial justification" means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."[97] A dispute must be "genuine" to fulfill the exception.[98] Discovery "misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced."[99]

Although the United States does not specifically argue that its handling of the 2015 request was substantially justified or harmless, it contends that it addressed Bistrian's 2015 request for color photographs to the BOP because Jezior was a BOP employee.[100] The United States incorrectly suggests that Bistrian restricted the scope of this request to files under the

---

[94] Fed. R. Civ. P. 37(c)(1).

[95] *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 703 (D.N.J. 2015).

[96] *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 139 (3d Cir. 2009); *see* Fed. R. Civ. P. 26(g).

[97] *Grider*, 580 F.3d at 140 n.23 (3d Cir. 2009) (quoting *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002)).

[98] *Id.*

[99] *Tolerico*, 205 F.R.D. at 176 (citation omitted).

[100] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 15.

BOP's control. In fact, the United States unilaterally imposed this limitation.[101] Regardless of which federal agency possessed the photographs, the United States was obligated to produce them pursuant to its duties as a litigating party. Additionally, Government counsel's briefs do not provide any justification for directing Bistrian to continue making *Touhy* requests even though the United States was a party to the case. Even if the United States' initial misinterpretation of Bistrian's request was "an honest mistake," the photographs were not produced until 2020, after the trial.

The Court finds that the United States failed to supplement its disclosures by impermissibly cabining its search to documents within the possession of the BOP, rendering sanctions appropriate under both Rule 26 and Rule 37. The Federal Rules of Civil Procedure "do not and should not require plaintiffs to use 'magic words' to obtain clearly relevant discovery."[102] Bistrian's request signaled that the United States' document production was likely incomplete. As there was no genuine dispute over whether the United States needed to produce these photographs, its handling of this request was not substantially justified. Furthermore, as the

---

[101] *See* Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 19 [Doc. No. 498-19] at 4–5. Bistrian's 2015 *Touhy* letter did not ask Government counsel to direct his request for color photographs to the BOP. The portion of the letter that contained this request stated:

> Additionally, Defendant Jezior stated that the pictures he took which are attached to his report of the Northington Assault were in color. We have in our possession only black and white images relating to the Bistrian assault. We would ask you to provide us with color versions of all pictures contained in or relating to Jezior's June 30, 2006 report of Steven Northington's assault on Mr. Bistrian.

Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 19 [Doc. No. 498-19] at 4–5. Unlike Bistrian's 2013 and 2014 *Touhy* letters, the 2015 letter *did not* state which agencies Bistrian believed were in control of the materials he requested. *See* Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 7 [Doc. No. 498-7] (specifying that Bistrian sought particular documents under the control of the BOP, the FBI, and the U.S. Attorney's Office); Def.'s Resp. Opp'n Pl.'s Mot. Sanctions Ex. 16 [Doc. No. 498-16] at 4–8 (identifying materials sought as being under the BOP, the FBI, the Office of the Inspector General, or the U.S. Attorney's Office's control). It is reasonable to infer, then, that Government counsel chose to direct Bistrian's request for photographs to the BOP.

[102] *Younes*, 312 F.R.D. at 709.

Court has previously determined, the photographs were highly relevant and the failure to produce them in a timely fashion was not harmless.[103] Thus, sanctions are warranted, and the Court turns to the nature of those sanctions.[104]

**D. Monetary sanctions are appropriate under Rule 37 and Rule 26(g)(3).**

Bistrian's motion asks the Court to impose monetary sanctions.[105] Rule 26(g)(3) provides for the imposition of sanctions against a party, counsel, or both.[106] Sanctions available under Rule 37 include prohibiting the offending party from using the information "to supply evidence on a motion, at a hearing, or at a trial," "order[ing] payment of the reasonable expenses, including attorney's fees, caused by the failure," and "inform[ing] the jury of the party's failure."[107] The rule also offers courts the discretion to "impose other appropriate sanctions."[108]

---

[103] *See Tolerico*, 205 F.R.D. at 176.

[104] Bistrian argues that the Court should impose sanctions pursuant to its inherent authority. However, "a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995); *but see also In re Prudential Ins. Co. Am. Sales. Prac. Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002) ("A court may resort to its inherent power to impose sanctions even if much of the misconduct at issue is also sanctionable under statute or rules of court.").

Here, the Court has found that sanctions are warranted under the Federal Rules of Civil Procedure and will therefore decline to consider whether the United States acted with the requisite bad faith to permit the imposition of sanctions pursuant to the Court's inherent authority.

[105] Plaintiff's Reply brief also asks the Court to require the United States to:

> produce a representative of the FBI with knowledge of the retrieval, scanning and review of the FBI Northington attack investigation file, including the actions or inactions leading to its not being produced to Plaintiff, and that in connection therewith the Government be ordered to produce written communications about these matters, including communications within the FBI and with the U.S. Attorney's Office for the Eastern District of Pennsylvania, and including, if privilege is claimed, a privilege log.

Pl.'s Reply Mem. Supp. Mot. Sanctions [Doc. No. 502] at 23–24. The Court declines to consider this request as it was not properly raised in Bistrian's motion and targets conduct that occurred prior to the United States' reentry to this case as a litigating party.

[106] Fed. R. Civ. P. 26(g)(3).

[107] Fed. R. Civ. P. 37(c)(1)(A–B).

[108] Fed. R. Civ. P. 37(c)(1)(C).

"Although Rule 37 authorizes both punitive and compensatory damages, it requires the amount of any monetary damages to be specifically related to expenses incurred by the violations."[109]

1. *Attorneys' fees and costs related to Plaintiff's Motion to Compel*

Bistrian first seeks monetary sanctions consisting of attorneys' fees and costs related to Plaintiff's motion to compel the United States to review FBI documents and to produce relevant documents.[110] If a party seeks information that is later disclosed after filing a motion to compel, Rule 37(a)(5) directs courts to "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[111] A court will not impose sanctions if "the opposing party's nondisclosure, response, or objection was substantially justified."[112]

Plaintiff argues that monetary sanctions under Rule 37(a)(5) are mandatory "when a motion to compel is granted (or where the opposing party produces discovery after a motion to compel is filed), absent circumstances that are not present here."[113] The United States asserts that sanctions for the motion to compel are not warranted because Bistrian's motion was untimely, the Court denied most of Bistrian's motion, and the United States was substantially justified in not producing the Northington Attack file before 2020.[114]

---

[109] *Martin*, 63 F.3d at 1263 n.15.

[110] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 14; *see* Pl.'s Mot. Compel United States Review FBI Documents [Doc. No. 465].

[111] Fed. R. Civ. P. 37(a)(5)(A).

[112] Fed. R. Civ. P. 37(a)(5)(A)(ii).

[113] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 14.

[114] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 28–29.

The United States only produced the Northington Attack file after Bistrian filed his motion to compel, which occurred before the Court ruled on the motion. Only as a result of the production of the Northington Attack file did the federal government (specifically, the FBI) take measures to ensure that it had not overlooked other potentially relevant materials.[115] The United States' contention that sanctions are inappropriate because Bistrian's motion was untimely, or that the Court did not grant the motion in full, ignores this context. Furthermore, the United States was not substantially justified in its handling of Bistrian's 2015 request for the color photographs, which should have led to the production of the Northington Attack file years before the trial. On this basis, Bistrian's motion for attorneys' fees and costs related to the motion to compel will be granted against the United States pursuant to Rule 37(a)(5).

*2. Attorneys' fees and costs related to Plaintiff's Motion for a New Trial as to Defendant James Gibbs*

Bistrian next seeks attorneys' fees and costs related to Plaintiff's motion for a new trial as to Defendant Gibbs.[116] The United States argues that such sanctions are inappropriate because Bistrian moved for a new trial on other grounds before it produced the Northington Attack file.[117] However, Plaintiff asserted that a new trial was necessary due to the newly-discovered evidence that came to light through the disclosure of the file.[118] The Court's decision to grant a new trial was based on this newly-disclosed evidence. Accordingly, Bistrian's request for attorneys' fees

[115] *Bistrian*, 517 F. Supp. 3d at 346.

[116] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 15; *see* Pl.'s Mot. New Trial [Doc. No. 462].

[117] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 30–31.

[118] Pl.'s Rep. Resp. Mot. New Trial [Doc. No. 481] at 10–12.

and costs relating to the motion for a new trial will be granted, but solely with respect to Plaintiff's briefing that argued for a new trial on the basis of the newly-discovered evidence.

*3. Attorneys' fees and costs related to Plaintiff's Motion for Sanctions*

Bistrian also moves for attorneys' fees and costs stemming from this motion for sanctions.[119] This request is reasonable given that Bistrian would not have needed to move for sanctions had the United States produced the Northington Attack file prior to the *Bivens* trial. Additionally, this is not an isolated incident. The United States' failure to produce the Northington Attack file is only the latest in a series of errors and omissions during discovery that have come to light over this case's lengthy history.[120] Accordingly, the Court will grant Bistrian's request for attorneys' fees and costs related to this motion for sanctions.

*4. Attorneys' fees and costs related to three depositions resulting from the Court's Order granting Plaintiff's Motion to Compel*

Bistrian next requests that the Court impose sanctions in the form of attorneys' fees and costs arising from the depositions of Officer Kehinde Akano, Officer Jezior, and Special Agent Heaney, which the Court permitted so that Plaintiff could question these individuals about the evidence contained in the Northington Attack file to prepare for re-trial.[121] Plaintiff would likely have deposed Akano and Heaney prior to trial if the United States had produced the Northington Attack file in a timely manner. This indicates that Bistrian would have incurred those expenses regardless, whereas the need to depose Officer Jezior a second time directly related to the tardy

---

[119] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 17.

[120] *See Bistrian*, 448 F. Supp. 3d at 496. These issues included the destruction of video footage of a hallway that would have shown if prison staff properly searched the inmate who attacked Bistrian with a razor weapon, the destruction of the razor weapon two days after Bistrian requested it, and the delayed production of post orders that were in effect in 2006. *Id.* at 463–64, 478, 485–86.

[121] *Bistrian*, 517 F. Supp. 3d at 346.

production of the Northington Attack file. The Court will grant Bistrian's motion as to the attorneys' fees and costs incurred to depose Officer Jezior and deny the motion as to the other two depositions.

5. *Attorneys' fees and costs related to the deposition, trial testimony, and Motion for Judgment as a Matter of Law with Respect to Defendant James Gibbs*

Finally, Bistrian moves for attorneys' fees and costs concerning the deposition and trial testimony of Defendant Gibbs as well as costs related to Plaintiff's motion for judgment as a matter of law with respect to this defendant.[122] Bistrian argues that "[b]ut for the Government's gross dereliction of its discovery obligations, Gibbs would have already been questioned about the matters in the FBI investigation file, and the arguments put forth in Plaintiff's Rule 50 motion would have been substantially different and stronger."[123] The United States argues that the deposition and trial testimony of Gibbs were, and still are, of use to Plaintiff.[124] Further, the United States contends that Plaintiff's motion for judgment as a matter of law did not rest on the newly-disclosed evidence.[125] As the deposition and trial testimony will still be useful to Plaintiff during the new trial, and because it would be too difficult to carve out the fees from the trial that are sufficiently linked to the United States' conduct, the Court will deny Bistrian's motion with respect to these requested sanctions.

---

[122] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 18-19; *see* Mot. J. Matter Law Def. James Gibbs [Doc. No. 385]; Pl.'s Am. Mem. Law Supp. Mot J. Matter Law Def. James Gibbs [Doc. No. 431]; Pl.'s Reply Supp. Pl.'s Mot J. Matter Law Def. James Gibbs [Doc. No. 437].

[123] Pl.'s Mem. Law Supp. Mot. Sanctions [Doc. No. 495] at 18.

[124] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 31.

[125] Def.'s Resp. Opp'n Pl.'s Mot. Sanctions [Doc. No. 498] at 30.

## IV. CONCLUSION

The Court previously declined to impose monetary sanctions for the United States' discovery misconduct throughout this litigation, which has involved inconsistencies, late disclosures, and the spoliation of evidence, although such conduct is unacceptable. Here, the United States' failure to produce the Northington Attack file was neither harmless nor substantially justified, and the Federal Rules of Civil Procedure therefore empower and direct the Court to impose reasonable sanctions. An order will be entered.