IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER BISTRIAN,<br><br>                  **Plaintiff,**<br><br>       v.<br><br>WARDEN TROY LEVI, FDC PHILADELPHIA, *et al.*,<br><br>                  **Defendants.** | CIVIL ACTION NO. 08-3010 |

## MEMORANDUM OPINION

Defendant United States seeks reconsideration of the Court's order imposing sanctions for failing to timely disclose evidence relevant to Plaintiff Peter Bistrian's *Bivens* claims, arguing that the Court lacked the necessary context to determine whether Defendant's conduct warranted sanctions. As explained below, Defendant's motion comprises rehashed arguments that have previously been briefed by the parties and considered by the Court. The motion for reconsideration will be denied.

**I. BACKGROUND**

    **A. Factual Background[1]**

The pertinent history of this action has been detailed in the memorandum order at issue[2] and will be summarized here to provide context. In 2006, Bistrian was incarcerated at the Philadelphia Federal Detention Center ("FDC") awaiting federal charges.[3] Bistrian states that

---

[1] The following facts were testified to at Bistrian's *Bivens* trial.

[2] Mem. Mar. 25, 2022 [Doc. No. 518]; Order Mar. 25, 2022 [Doc. No. 519].

[3] Tr. Jury Trial Jul. 9, 2019 [Doc. No. 528] at 44.

during this time, Defendants James Gibbs and William Jezior[4] solicited Bistrian's help with gathering intelligence on two inmates, Kaboni Savage and Steven Northington.[5] Savage was known as a local "drug kingpin" who was charged with, and later convicted of, orchestrating the deadly firebombing of an informant's house.[6] Northington was involved in Savage's drug ring and had been indicted as his co-defendant.[7] Both Northington and Savage were considered "dangerous inmates."[8]

After a series of events that ultimately exposed Bistrian's role as an informant, Northington posted a prominent sign on his cell door that read "Stop Snitching."[9] Approximately eight weeks later, on June 30, 2006, Bistrian and Northington were placed in the same recreation pen, and Northington and two other inmates brutally attacked him ("the Northington Attack").[10] The Bureau of Prisons ("BOP") conducted an administrative investigation of the Northington Attack, and Officer Jezior compiled those findings in a report ("the Jezior Report").[11] Several

---

[4] Defendant Gibbs was the Special Investigation Section ("SIS") Officer at the FDC at the time, and Defendant Jezior was a Special Investigations Technician with the SIS. *See* Tr. Jury Trial Jul. 10, 2019 [Doc. No. 529] at 232-33; Tr. Jury Trial Jul. 16, 2019 [Doc. No. 533] at 193.

[5] Tr. Jury Trial Jul. 9, 2019 [Doc. No. 528] at 53-54.

[6] Tr. Jury Trial Jul. 10, 2019 [Doc. No. 529] at 235-36; Tr. Jury Trial Jul. 16, 2019 [Doc. No. 533] at 196-97; Tr. Jury Trial Jul. 17, 2019 [Doc. No. 534] at 95.

[7] Tr. Jury Trial Jul. 10, 2019 [Doc. No. 529] at 235-36.

[8] Tr. Jury Trial Jul. 10, 2019 [Doc. No. 529] at 236.

[9] Tr. Jury Trial Jul. 11, 2019 [Doc. No. 530] at 144; *see* Pl.'s Reply Mot. Compel App. Exs. [Doc. No. 477-1] at Ex. N.

[10] Tr. Jury Trial Jul. 9, 2019 [Doc. No. 528] at 90-92, 95-104.

[11] *See* Def.'s Resp. Opp. Mot. Sanctions Ex. 3 [Doc. No. 498-3].

months after the Northington Attack, Bistrian suffered a second, unrelated attack by inmate Aaron Taylor ("the Taylor Attack").[12]

Unbeknownst to Bistrian at the time, the FBI also investigated the Northington Attack, and assembled its own comprehensive investigation file ("the Northington Attack File").[13] The Northington Attack File contained relevant evidence not included in the Jezior Report, including but not limited to high-quality color photographs of the "Stop Snitching" sign.[14]

### B. Procedural Background

In 2008, Bistrian filed an initial complaint alleging that Defendant Gibbs and other officers were liable under *Bivens* for acting with deliberate indifference by placing Bistrian and Northington in the same recreation pen.[15] Bistrian amended the complaint in 2009, adding the United States as a defendant and alleging claims under the Federal Tort Claims Act ("FTCA") concerning the Taylor Attack.[16]

In June 2013 and 2014, while the United States was not a party, Bistrian sent *Touhy* requests[17] seeking documents and deposition testimony from the FBI and other federal

---

[12] Taylor was convicted of one count of assault with a dangerous weapon for attacking Bistrian. *See United States v. Taylor*, 686 F.3d 182, 184 (3d Cir. 2012) (affirming Taylor's conviction).

[13] Pl.'s Mem. Supp. Mot. Sanctions [Doc. No. 495] at ECF pages 36-45; *see* Pl.'s Mem. Supp. Mot. Sanctions [Doc. No. 495] at 4 n.2 (noting the file "consisted of 285 pages").

[14] *See* Mem. Feb. 5, 2021 [Doc. No. 490] at 8-15 (discussing newly discovered evidence).

[15] Compl. [Doc. No. 1]; *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971).

[16] Am. Compl. [Doc. No. 8].

[17] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Federal law permits agency heads to promulgate "regulations for . . . the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. *Touhy* affirmed the use of these regulations, and today "most courts require a party seeking information from the Government, as a non-party, to make a request to the [agency] pursuant to their administrative regulations." *Aiken v. Eady*, No. 14-811, 2016 WL 452135, at *5 (D.N.J. Feb. 4, 2016).

agencies.[18] In response to these requests, the FBI produced documents from an overarching investigation file on Northington and Savage that referenced Bistrian.[19] Although the Northington Attack File was maintained in the FBI's electronic database, the FBI did not conduct a search for the file when responding to Bistrian's *Touhy* requests.[20]

Bistrian filed a third amended complaint in February 2015, which brought the United States back into the case.[21] Counsel for the United States requested that Bistrian continue to conduct discovery through *Touhy* letters.[22] Accordingly, Bistrian submitted another *Touhy* letter on May 6, 2015 requesting "color versions of all pictures contained in or relating to" the Jezior Report.[23] As Bistrian was unaware of the existence of the Northington Attack File, he did not specifically request its production. Counsel for the United States forwarded Bistrian's *Touhy* request to the BOP, which then produced copies of photographs on July 20, 2015.[24] These images did not include any decipherable photographs of the "Stop Snitching" sign.[25] The Northington Attack File was not produced during discovery or otherwise provided to Bistrian before trial.[26]

---

[18] *See* Mem. Mar. 24, 2020 [Doc. No. 459] at 49 n.183, (noting that "Bistrian sought the post orders via *Touhy* request during the time when the government was not a party," referring to a letter requesting post orders dated November 24, 2014).

[19] Def.'s Sur-Reply Opp. Pl.'s Mot. Sanctions Ex. 25 [Doc. No. 508-1].

[20] *See* Def.'s Opp. Mot. Sanctions Ex. 13 [Doc. No. 498-13].

[21] Third Am. Compl. [Doc. No. 133].

[22] *See* Def.'s Opp. Mot. Sanctions Ex. 19 [Doc. No. 498-19] at 1 ("While the United States is now a party to this action, we were informed by your counsel, Tom Johnson on May 1, 2015 that the proper way to make some of the requests listed below was through a *Touhy* letter.").

[23] Def.'s Opp. Mot. Sanctions Ex. 19 [Doc. No. 498-19] at 4-5.

[24] Def.'s Opp. Mot. Sanctions [Doc. No. 498] at 15.

[25] *See* Mem. Feb. 5, 2021 [Doc. No. 490] at 12 (showing the highly low-quality photographs).

[26] *See* Def.'s Opp. Mot. Sanctions Ex. 13 [Doc. No. 498-13].

At the *Bivens* trial in 2019, the jury found that Defendant Gibbs was not deliberately indifferent to the risk of harm that Bistrian faced after he was exposed as an informant.[27] Immediately after the *Bivens* trial concluded, the Court conducted a bench trial on the FTCA claims. Just before closing arguments, it came to light that the United States had failed to disclose relevant evidence regarding the Taylor Attack, which then prompted the Court to (1) allow supplemental discovery and (2) reopen the trial record to consider newly presented evidence.[28]

On April 21, 2020, Bistrian moved for a new *Bivens* trial with respect to Defendant Gibbs.[29] Bistrian subsequently filed a motion to compel the United States to review and produce FBI documents in connection with the *Bivens* claims.[30] While the motion to compel was pending, the United States turned over the Northington Attack File.[31] The Court granted in part Bistrian's motion to compel and granted his motion for a new trial as to Defendant Gibbs.[32]

On April 5, 2021, Bistrian filed a motion for sanctions against the United States for failing to timely disclose the Northington Attack File.[33] The Court granted in part and denied in part Plaintiff's motion, awarding Bistrian expenses and fees that he incurred in filing his motion to compel, his reply brief for his motion for a new trial, and his motion for sanctions.[34] The

---

[27] Mem. Feb. 5, 2021 [Doc. No. 490] at 5.

[28] *See* Mem. Mar. 24, 2020 [Doc. No. 459] at 31-33.

[29] Pl.'s Mot. New Trial [Doc. No. 462].

[30] Pl.'s Mot. Compel [Doc. No. 465].

[31] Def.'s Opp. Mot. Sanctions Ex. 13 [Doc. No. 498-13].

[32] Order Feb. 5, 2021 [Doc. No. 491].

[33] Pl.'s Mot. Sanctions [Doc. No. 495].

[34] Order Mar. 25, 2022 [Doc. No. 519]. The Court also granted Plaintiff's motion with respect to the fees and costs incurred in deposing Officer Jezior.

Court determined that the United States impermissibly limited its search to documents within the possession of the BOP, and that its failure to produce the Northington Attack File was neither harmless nor substantially justified.[35]

## II.     LEGAL STANDARD

A motion for reconsideration should be granted only where the moving party shows that at least one of the following grounds is present: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[36] "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly."[37] Moreover, "[a] motion for reconsideration is not properly grounded on a request that a court consider repetitive arguments that have been fully examined by the court."[38]

## III.    DISCUSSION

Defendant argues that the parties' briefing focused mainly on Bistrian's 2013 *Touhy* request, rather than the 2015 request, and that "[a]s a result, the Court was left without important context necessary to consider the reasonableness of the Government's response to the 2015 letter request . . . ."[39] The United States further contends that "[s]everal erroneous findings undergirded

---

[35] *See* Mem. Mar. 25, 2022 [Doc. No. 518] at 18-24.

[36] *United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

[37] *Continental Casualty Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citation omitted).

[38] *Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F.Supp.2d 394, 398 (E D. Pa. 2002) (citation omitted).

[39] Def.'s Br. Supp. Mot. Reconsideration [Doc. No. 520-2] at 1.

the Court's ruling: 1) that the BOP did not locate any color photographs; 2) that no color photographs were produced until 2020; and 3) that Government counsel had improperly directed Bistrian to file his request as a *Touhy* request."[40]

To the extent that the United States claims it lacked sufficient opportunity to address the 2015 request for photographs, this argument is contradicted by both the sanctions briefing and the record in this case. Bistrian's briefs highlighted his repeated attempts to obtain the color photographs of the "Stop Snitching" sign, the value of these photographs to Bistrian's claims, and the "extreme prejudice" that resulted from Defendant's failure to produce this evidence.[41] Moreover, the United States responded to these arguments and attempted to justify its conduct by asserting that it "understood [the 2015] request as being directed to the BOP"—a position that the Court considered and rejected.[42] The United States seeks "to relitigate a point of disagreement between the Court and the litigant," which is not a proper basis for reconsideration.[43]

It is also worth noting that the United States understood the significance of the "Stop Snitching" photographs, in light of the Court's February 5, 2021 Memorandum that granted Bistrian a new trial.[44] In so ruling, the Court determined that "the value of the color photographs . . . is obvious," and that either of Plaintiff's requests "should have led to the production of this

---

[40] Def.'s Br. Supp. Mot. Reconsideration [Doc. No. 520-2] at 10-11.

[41] Pl.'s Mem. Supp. Mot. Sanctions [Doc. No. 495] at 1; Pl.'s Reply Mem. Supp. Mot. Sanctions [Doc. No. 502] at 5 n.3.

[42] Def.'s Opp. Mot. Sanctions [Doc. No. 498] at 15 (advancing arguments under the topic heading "The Request for Color Photographs and the U.S. Attorney's Response on Behalf of BOP"); *see* Mem. Mar. 25, 2022 [Doc. No. 518] at 16-18.

[43] *Burlington v. News Corp.*, 55 F. Supp. 3d 723, 741 n.10 (E.D. Pa. 2014) (citation omitted).

[44] Mem. Feb. 5, 2021 [Doc. No. 490]; Order Feb. 5, 2021 [Doc. No. 491].

newly-discovered evidence."[45] The Court finds no support for Defendant's claim that it lacked the foresight to fully brief its response to the 2015 request.

As for the Court's factual findings, the United States argues that the Court erroneously failed to acknowledge the production of color photographs from the Jezior report in 2015.[46] However, nearly all of these photographs are of the injuries that Bistrian sustained from the Northington Attack.[47] As the Court has made abundantly clear, the photographs at issue are the high-quality images of the "Stop Snitching" sign, which were not produced to Bistrian until May 2020.

With respect to the *Touhy* issue, the United States alleges that it properly instructed Bistrian to submit only "some" requests through *Touhy* because (1) one of Bistrian's requests involved the Probation Office, (2) the Probation Office operates under the federal judiciary, and (3) the federal judiciary has procedural regulations akin to those required under *Touhy*.[48] Even if the United States properly directed Bistrian to continue to submit *Touhy* letters, this does nothing to alter the Court's determination regarding sanctions. While the Court briefly noted its concern regarding the prolonged use of *Touhy* requests,[49] the bulk of its reasoning focused on Defendant's failure to timely produce the Northington Attack File. Moreover, the Northington

---

[45] Mem. Feb. 5, 2021 [Doc. No. 490] at 15. The United States contends that "in light of the Court's rulings, the 'Stop Snitching' photograph has taken on outsized importance." Def.'s Br. Supp. Mot. Reconsideration [Doc. No. 520-2] at 7.

[46] Def.'s Br. Supp. Mot. Reconsider [Doc. No. 520-2] at 7.

[47] *See* Def.'s Mot. Reconsideration Ex. 31 [Doc. No. 520-5]. This exhibit also includes several photographs of what appears to be a pair of socks and shoes on top of concrete, and some photographs of Northington's injured hand and forehead.

[48] Def.'s Br. Supp. Mot. Reconsideration [Doc. No. 520-2] at 4-6.

[49] Mem. Mar. 25, 2022 [Doc. No. 518] at 18 ("Additionally, Government counsel's briefs do not provide any justification for directing Bistrian to continue making *Touhy* requests even though the United States was a party to the case.").

Attack File had nothing to do with the Probation Office. The United States has not established that the Court committed an error of fact or law in reaching its conclusions, has not identified any new evidence relevant to the Court's conclusions, and has not cited any change in the controlling law cited by the Court in reaching its decision. Accordingly, reconsideration is not merited.[50]

### IV.     CONCLUSION

For the reasons stated above, the motion for reconsideration will be denied. An appropriate order follows.

---

[50] Defendant's arguments in the alternative—which ask the Court to reconsider its award of expenses and fees to Bistrian—fail for the same reason. Motions for reconsideration "are not to be used to reargue or relitigate matters already decided." *Koken v. Pension Benefit Guar. Corp.*, 381 F. Supp. 2d 437, 439 (E.D. Pa. 2005) (citation omitted).