# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PETER BISTRIAN,** | : | |
| | : | **No. 2:08-cv-03010-CMR** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **WARDEN TROY LEVI, et al.,** | : | |
| | : | |
| **Defendants.** | : | **Honorable Cynthia M. Rufe** |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JAMES GIBBS' MOTION FOR SUMMARY JUDGMENT "ALTERNATIVE METHOD"

Robert E. Goldman, Esquire
Pennsylvania Attorney Identification No. 25340
**Law Office of Robert E. Goldman LLC**
535 Hamilton Street, Suite 302
Allentown, PA 18101
Phone: (610) 841-3876
Fax:    (215) 933-6902
Email: reg@bobgoldmanlaw.com

*Attorney for Plaintiff Peter Bistrian*

## **TABLE OF CONTENTS**

**PAGE**

I. STATEMENT OF THE CASE ................................................................. 1

II. ARGUMENT ...................................................................................... 2

A. Gibbs' Effort To Have This Court Reconsider *Bistrian IV* In Light Of *Egbert* Is Precluded By Both The Doctrines Of "The Law Of The Case" And The "Mandate Rule". ........................................................................ 2

A.-1 Even if Gibbs were not procedurally barred from renewing his previously denied motion, his argument that *Egbert* "implicitly" overruled *Bistrian IV* is misplaced. ................................................. 6

    a.   There is no such thing as the Supreme Court's "implicit overruling" of its own precedent, as Gibbs argues. ....................................... 6

    b.   There is nothing in *Egbert*'s pronouncement which overrules *Bistrian IV*'s predicate, *Farmer*, as Gibbs argues. ............................ 7

    c.   *Egbert* does not change *Bivens* jurisprudence in any material way and, especially not in the "new context" step which Gibbs solely challenges here. ........................................................................ 9

    d.   *Egbert*'s Limited Significance ................................................. 10

        1)  The evolution of *Bivens* jurisprudence. ................................ 10

        2)  *Egbert*, the case. ............................................................. 10

        3)  *Egbert*'s place in that evolution did not alter the two-step analysis for finding *Bivens* eligibility and, the identical standard was previously properly employed by the Third Circuit here in *Bistrian IV*. ................ 11

        4)  *Egbert*'s actual holding. .................................................. 12

        5)  Other *Egbert* take-aways. ................................................. 14

B. The "Law Of The Case Doctrine" And The "Mandate Rule" Preclude Gibbs' Fifth Attempt At Qualified Immunity. ....................................... 17

C. Bistrian's "Back Pain" And PTSD (Mental Pain And Suffering) Which He Suffered After The Northington Attack And Prior To The Taylor Attack, Are Fully Compensable In This Case. ......................................... 19

D.  Bistrian Does Not Require Expert Testimony To Establish The Cause
    Of His Hearing Loss. ................................................................................... 23

III.  CONCLUSION ................................................................................................. 25

## I. <u>STATEMENT OF THE CASE</u>

This Court is fully familiar with the facts of this *Bivens* action, having recited them on several occasions and, having reviewed them as a part of multiple appeals taken by the Defendants to the Third Circuit, and decided there. Accordingly, no attempt to repeat them will be made here. However, for context and for convenient reference hereafter, the following abridgement is provided.

On June 27, 2008, Plaintiff Peter Bistrian filed an original Complaint alleging a Federal Tort Claims Act ("FTCA") violation and, a *Bivens* action. *Bistrian v. Levi*, civil action number 08-cv-3010. The causes of action were bifurcated into a FTCA non-jury action, and a *Bivens* jury trial action.

In the FTCA action Bistrian "sued the United States pursuant to the Federal Tort Claims Act, alleging that the correctional staff of the Federal Detention Center negligently failed to protect him from Aaron Taylor, a fellow inmate who attacked Bistrian with a razor weapon on October 12, 2006 when he was handcuffed and defenseless (the "Taylor assault" or "Taylor attack"). Bistrian's damages/injuries included the numerous razor slashes he received, PTSD, as well as back pain he experienced when a munitions device which the correctional officers deployed in an attempt to stop the attack, rolled under Bistrian and exploded beneath his lower back. *Bistrian v. Levi*, 2020 WL 6952048, at *1.

This Court conducted a bench trial in the matter and ultimately adjudicated the FTCA claims on August 21, 2020, and entered an award for Bistrian in "the sum of $251.340.81 for past costs of care and $1,000,000.00 for future costs of care, as well as $500,000.00 for pain and suffering." *Id.* at *35.

The *Bivens* action (which is under review here) was predicated upon a prior June 30, 2006 assault committed upon Bistrian by fellow inmates Northington, Lee, and Walker who badly beat him (the "Northington assault" or "Northington attack") when he was locked into a recreation pen with them under circumstances which rendered their attack clearly foreseeable by Defendant SIS Lieutenant James Gibbs, and hence just as clearly avoidable. As a result of this assault, Bistrian suffered, *inter alia*, a cracked or broken rib and several broken or chipped teeth; hearing problems, blood in his urine for several days, a serious injury to his left shoulder, which may have been dislocated in the assault, and PTSD/anxiety. *Bistrian v. Levi*, 2020 WL 6952048, at *1-2 (E.D.Pa. 2020). This case resulted in a *Bivens* action being tried to a jury and, a new trial was ordered. That retrial has yet to have been conducted and now awaits the disposition of Defendant Gibbs' pending Motion For "Summary Judgment 'Alternative Method' ", to which this is a response.

## II.  ARGUMENT

### A. Gibbs' Effort To Have This Court Reconsider *Bistrian IV* In Light Of *Egbert* Is Precluded By Both The Doctrines Of "The Law Of The Case" And The "Mandate Rule".

The identical *Bivens* "new context" issue which Gibbs raises here has already been decided by this Court in *Bistrian v. Levi*, 299 F.Supp.3d 686, 702, 707, 711-12 (E.D.Pa. 2018) ("*Bistrian III*"[1]) (motion for summary judgment), which was pertinently affirmed on appeal in *Bistrian v. Levi*, 912 F.3d 79, 88, 89-95 (3d Cir. 2018) ("*Bistrian IV*").

Gibbs thus seeks to have this Court overrule the Third Circuit's holding in *Bistrian IV* which affirmed this Court's denial of Gibbs' previous motion for summary judgment which decided that Bistrian was not pursuing a *Bivens* action in a "new context" as Gibbs once again tries to argue here.

---

[1] These Roman Numeral designations are taken from *Bistrian v. Levi*, 912 F.3d 79, 85 (3d Cir. 2018) ("*Bistrian IV*").

Contrary to the opposition of some of the defendants, an inmate's claim that prison officials violated his Fifth Amendment rights by failing to protect him against a known risk of substantial harm does not present a new *Bivens* context. On the contrary, we recognized just such a claim 45 years ago in *Curtis v. Everette*. 489 F.2d 516, 518-19 (3d Cir. 1973) (recognizing constitutional due process right for prisoner to be free from violent attack by fellow prisoner). Moreover, the Supreme Court ratified that kind of claim some 20 years later in *Farmer v. Brennan*, 511 U.S. 825, 832-49 (1994), and we recently concluded, in *Bistrian II,* that a pretrial detainee "ha[s] a clearly established constitutional right to have prison officials protect him from inmate violence[,]" 696 F.3d at 367.

*Bistrian IV*, 912 F.3d 79, 90 (3d Cir. 2018).

Reconsideration of this Court's prior ruling is precluded by the "law of the case" doctrine. The law of the case doctrine provides that "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case." *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 114 F.3d 1513, 1520 (10th Cir. 1997); see also *Arizona v. California*, 460 U.S. 605, 618-19, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) ("Unlike the more precise requirements of res judicata, law of the case is amorphous concept … posit [ing] that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

Presumably, Gibbs seeks to assert the exception to that doctrine which permits a departure from that bar where there was a supervening change in the law. *In re City of Philadelphia Litig.*, 158 F.3d 711, 718 (3d Cir. 1998).

Because, as argued hereinafter, *Egbert v. Boule*, 142 S.Ct. 457, ____ U.S. ____ (2021) does not represent an intervening change in *Bivens*, especially as it applies here, Gibbs has not met his burden of proof in that regard.  See, Issue No. A.-1, *infra*.

But, perhaps more importantly, Gibbs' motion not only seeks to overturn this Court's prior rulings in *Bistrian III* but, he requests this Court to overrule the Third Circuit's affirmance of this

Court's decision in *Bistrian IV*, something which the "mandate doctrine" precludes this Court from

doing. A significant corollary to the law of the case is the "mandate rule" – a "fundamental rule

[that] binds every court to honor rulings in the case by superior courts." *Casey v. Planned*

*Parenthood of Se. Pa.*, 14 F.3d 848, 856 (3d Cir. 1994). Specifically, the Third Circuit has stated:

> It is axiomatic that on remand for further proceedings after decision by an
> appellate court, the trial court must proceed in accordance with the mandate and
> the law of the case as established on appeal…. A trial court must implement
> both the letter and the spirit of the mandate, taking into account the appellate
> court's opinion and the circumstances it embraces.

*Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985) (citation omitted).

Because the issue whether Bistrian alleges an impermissible new *Bivens* "context" was

squarely addressed and denied in *Bistrian IV*, the "mandate doctrine" precludes Gibbs' renewed

motion for summary judgment on that basis and must be denied as a matter of law. The record is

clear. Neither *Farmer* nor *Bistrian* has been overruled. No new evidence favorable to Gibbs has

become available in the intervening period[2] and, there is no clear error in the Third Circuit's

holdings, and none alleged (i.e. no appeals filed).

It should also be noted that the Third Circuit has had multiple occasions since *Egbert* was

handed down to reverse its holding and/or analysis in *Bistrian IV* but, has not done so.[3] In fact, it

has just recently reaffirmed its holding in *Bistrian IV* in the recent case of *Xi v. Haugen*, 2023 WL

3608347 (3d Cir. May 24, 2023) in which the Third Circuit affirmed the District Court's dismissal

of the plaintiffs' *Bivens* claim (but overturned its dismissal of his FTCA claim) on the basis that

---

[2] In fact, information <u>unfavorable</u> to Gibbs has entered the instant record (regarding the withholding of evidence
favorable to Bistrian, resulting in a mistrial and multiple motions for sanctions, at least one of which awaits filing due
to Gibbs' request for additional time to confer).

[3] Gibbs' claim is that a majority of a Third Circuit panel called *Bistrian IV* into question. This is not completely
accurate. The majority did not consider the issue mentioned in dicta because "Mammana does not bring a failure to
protect claim and makes no allegations of prisoner-on-prisoner violence." Thus, not only did the majority not address
the issue presented here but, their holding does not constitute binding precedent under the Court's I.O.P.5.7. Moreover,
this is not to be confused with a decision overruling *Bistrian IV* or *Farmer*, something necessary to the avoidance of
the mandate doctrine. Yet, guidance is available from the persuasive dissent of Judge Swartz in that case.

Xi's claim sought to extend *Bivens* into the national security realm, holding "accountable a 'new category of defendant[ ]': a federal counterintelligence agent" (*Id.* at *6, citing *Egbert*, 142 S.Ct. at 1803) (internal citations excluded) who was performing "case-building activities [that] are a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*." (quoting *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019)).  Thus, the Third Circuit explicitly followed the dictates of *Egbert* which expressly held that claims which implicated national security interests are not *Bivens*-worthy (*Xi* at *5).

However, in the process of arriving at this holding, the Third Circuit made a very important point:

> [O]n no fewer than twelve occasions since *Bivens*, the [Supreme] Court has expressly considered and declined to apply a *Bivens* remedy; … **and we, too have refused to extend *Bivens* except in one of these three established contexts … *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018) (applying a Bivens remedy to Fifth Amendment failure-to-protect claim**, but not to Fifth Amendment punitive detention claim or First Amendment retaliation claim) ….

*Xi* at fns 6 and 7 (emphasis supplied).

Crucially[4], the Third Circuit did not walk back its *Bistrian* decisions, or even suggest that their reasoning had been brought into question by *Egbert*.  Instead, they reaffirmed *Bistrian IV* **and declared that it was part and parcel of the "three established [*Bivens*] contexts" consistent with *Egbert***.  *Bistrian IV* unequivocally remains the law of this Circuit, <u>post *Egbert*</u>, unless the Third Circuit or the Supreme Court expressly hold otherwise.  And, accordingly, this Court is bound by the Third Circuit's continuing precedent established in *Bistrian*.

Thus, even assuming *arguendo* that Gibbs could overcome the law of the case doctrine, he is still precluded by the higher bar of the "mandate doctrine".

---

[4] Also significant is the fact that the Third Circuit reiterated, yet again, that *Egbert* continued to apply the *Abbasi* two-part test. *Xi* at *5.

In other words, because Gibbs seeks to have this Court's prior summary judgment *Bistrian III*, decision overturned, and because this Court's decision was reaffirmed by the Third Circuit in *Bistrian IV* and *Xi*, Gibbs faces the much higher hurdle of reversing the Third Circuit's pronouncement because of the "mandate rule".

Accordingly, Gibbs must demonstrate that either the Third Circuit in some post-*Bistrian IV/Xi* decision or, the Supreme Court in *Egbert*, expressly overruled *Bistrian IV*, or the *Farmer* precedent on which *Bistrian II and IV* relied, in order to have his motion granted.  Because he can do neither, his motion to reconsider in the form of a renewed motion for summary judgment, on the same grounds as previously asserted, must again be denied, *ab initio*.

**A.-1  Even if Gibbs were not procedurally barred from renewing his previously denied motion, his argument that *Egbert* "implicitly" overruled *Bistrian IV* is misplaced.**

**a.  There is no such thing as the Supreme Court's "implicit overruling" of its own precedent, as Gibbs argues.**

The Third Circuit has already refused to accept Gibbs' argument that a Supreme Court decision, especially one as well-established as *Farmer*, can be overruled by "implication":

> … we decline to "conclude [that the Supreme Court's] more recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

*Bistrian IV* at 91.

Thus, no matter what doubts a fertile mind can conjure up about the future vitality of the *Bivens* doctrine, and more particularly, whether it would include a space for *Farmer*-based causes of action, courts are counseled to avoid such prognostications in favor of existing precedents.

> The Supreme Court has discouraged lower courts from renouncing its precedent on the belief that such cases were overruled by implication, instead directing the lower courts to "follow the case which directly controls," even if that precedent "appears to rest on reasons rejected in some other line of decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989); see *Bosse v. Oklahoma*, 137 S.Ct. 1, 2 (2016) ("Our decisions remain binding

precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.").

*Garraway v. Ciufo*, 2023 WL 1446823 at *3 (E.D. Calif. February 1, 2023) (app. pend.).

**b.** **There is nothing in *Egbert*'s pronouncement which overrules *Bistrian IV*'s predicate, *Farmer*, as Gibbs argues.**

The Third Circuit's ruling in *Bistrian IV* is predicated upon the Supreme Court's holding

in *Farmer*, and in *Bistrian IV* it stated that:

> *Farmer* is of greatest significance. In that case, the Court assessed a "failure to protect" claim brought under the Eighth Amendment and *Bivens* as a result of prisoner-on-prisoner violence. 511 U.S. at 829-34. Although the *Farmer* Court did not explicitly state that it was recognizing a *Bivens* claim, it not only vacated the grant of summary judgment in favor of the prison officials but also discussed at length "deliberate indifference" as the legal standard to assess a *Bivens* claim, the standard by which all subsequent prisoner safety claims have been assessed. *Id.* at 832-49. It seems clear, then, that the Supreme Court has, pursuant to *Bivens*, recognized a failure-to-protect claim under the Eighth Amendment.
>                                    * * *
> *Abbasi* does not contradict that reasoning [set forth in] *Doty v. Hollingsworth*, Civ. No. 15-3016, 2018 WL 1509082, at *3 (D.N.J. Mar. 27, 2018) (holding that an Eighth Amendment failure-to-protect claim premised on inmate-on-inmate violence is not a new context given sufficient similarity to both *Carlson* and *Farmer*).

*Bistrian IV* at 91.

There is nothing in *Egbert* which overrules *Farmer*. In fact it does not mention *Farmer*.

The Third Circuit in *Bistrian IV* has clearly held that, just as in the Supreme Court's decision in

*Abbasi*, the fact that *Farmer* was unmentioned, does not impugn its holding, must less overrule it.

> It is true that *Abbasi* identified three *Bivens* contexts and did not address, or otherwise cite to, *Farmer*. 137 S. Ct. at 1854-55. But we decline to "conclude [that the Supreme Court's] more recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997). It may be that the Court simply viewed the failure-to-protect claim as not distinct from the Eighth Amendment deliberate indifference claim in the medical context. *Farmer* continues to be the case that most directly deals with whether a *Bivens* remedy is available for a failure-to-protect claim resulting in physical injury. 137 S. Ct. at 832-34.

*Id.* at 91.

The Third Circuit repeated this view in the subsequent case of *Shorter v. U.S.*, 12 F.4th 366, n. 5 (3d Cir. 2021) (citing *Bistrian IV*, 912 F.3d at 91) that, "the Supreme Court in *Abbasi* neglected to name *Farmer* because it saw that case as falling under the umbrella of *Carlson* …." (The same logic applies to its absence from the Supreme Court's *Hernandez* and *Egbert* decisions.)

Gibbs argues that *Farmer* was implicitly overruled by *Egbert* because it wasn't one of the two seminal cases to which *Bivens* was initially extended. This constitutes not only an overly narrow reading of *Egbert*, but a seriously biased one as well. Despite multiple Supreme Court pronouncements rejecting *Bivens* liability in numerous other cases since *Farmer*. (See, *Egbert v. Boule*, 142 S.Ct. 1793, 1799-800 (2022) (collecting cases)), *Farmer* has never been overruled in any one of them, "implicitly" or otherwise. In fact, in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), the Supreme Court was presented with the perfect opportunity to cast shade on *Farmer*, but refused to do so. In *Abbasi*, the Court declined to extend a Fifth Amendment *Bivens*-type remedy challenging the conditions of confinement imposed on prisoners in the wake of the September 11 attacks. 137 S.Ct. at 1848. Although the dissent analogized the plaintiff's allegations to *Farmer* and its holding, which acknowledged the existence of a *Bivens* implied damages action for "deliberate indifferen[ce] to an inmates safety," referring to *Farmer* (*Id.* at 1878, citing *Farmer*, 511 U.S. at 830, 834), the plurality opinion did not mention *Farmer*. Likewise, in *Egbert*, the Supreme Court again kept its hands off *Farmer*, not even mentioning it. Indeed, there is nothing in *Egbert* which in any way undermines this Court's, or the Third Circuit's, *Bistrian IV* analysis supporting *Farmer*'s application here. *Farmer* remains the law of the land. The bottom line is that the Supreme Court has never been reluctant to <u>refuse</u> to allow new *Bivens* Constitutional tort actions. Indeed, its decision in *Egbert* demonstrates no such reticence. And, despite that obvious fact, no

Supreme Court decision has ever found that *Farmer* or its progeny constituted an unwarranted extension of *Bivens* into a new context. This is not subject to dispute. In fact, as one District Court has recently reminded us, about *Farmer*'s continued viability in the post-*Egbert* era:

> The Supreme Court's decision in *Farmer* is a cornerstone of Eighth Amendment jurisprudence and remains binding authority.

*Garraway*, *supra.*, 2023 WL 1446823 at *3.

### c. *Egbert* does not change *Bivens* jurisprudence in any material way and, especially not in the "new context" step which Gibbs solely challenges here.

In his motion, Gibbs <u>only</u> asserts that Bistrian's claim fails the "new context" first step of the test set forth in *Abbasi*, and reaffirmed by *Egbert*, and he does not challenge that *Bistrian IV* satisfies the step two "special factors" test. (See, Gibbs' *Motion*, argument A., page 3.)

Ironically, Gibbs' argument fails from the outset because *Egbert*, upon which Gibbs exclusively relies, is not considered a "new context" decision, but rather focuses exclusively upon a "special factors" analysis of the national security, foreign affairs and separation of powers special factors presented to it in *Egbert*. As was recently stated in *Kidd v. Mayorkas*, 2022 WL 17584225 at *6 (C.D. Calif. December 12, 2022) (app. pend.):

> This Court's previous finding that Plaintiffs' *Bivens* claim is viable was fundamentally based on the conclusion that this case does not present a new *Bivens* context. (Order 21 ("here, a Bivens claim is appropriate because the circumstances do not present a 'new context' ").) That reasoning remains undisturbed by *Egbert* for the simple reason that *Egbert* was not a case about the context inquiry (step one of the *Bivens* analysis); instead, it was a case about the special factors inquiry (step two of the *Bivens* analysis). See *Mejia*, 53 F.4th at 505 ("*Egbert* reiterates the longstanding first step of the *Bivens*, question, but clarifie[s] … the second step….").

Accordingly, Gibbs' motion fails on its face.

### d. *Egbert*'s Limited Significance

#### 1) The evolution of *Bivens* jurisprudence.

Over a half a century ago, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court announced a cause of action for money damages against federal officials under the Fourth Amendment. *Id.* at 397. During the next decade, the Court extended this "*Bivens*" cause of action to new contexts under the Fifth and Eighth Amendments. See *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); *Carlson v. Green*, 446 U.S. 14, 18-20 (1980), respectively. In the years that followed, the High Court declined to set forth totally new *Bivens* applications but, did further refine the kinds of cases which were considered to be within the reasonable ambit of the previous *Bivens*, *Passman*, and *Carlson* trilogy. One of those such cases was the previously cited *Farmer v. Brennan*, 511 U.S. 825 (1994) in which the Court held that an Eighth Amendment *Bivens* claim, as an adjunct to *Carlson*, expressly includes an inmate's cause of action for a failure to protect him from violence by other prisoners.

#### 2) *Egbert*, the case.

In *Egbert*, Boule was the enterprising proprietor of the appropriately name Smugglers Inn bed and breakfast located a few feet from the U.S.-Canada border. On some occasions Boule would act as a paid informant for the U.S. Border Patrol by providing the agency with persons of interest whom Boule was scheduled to transport or lodge. On one such occasion, Boule informed Border Patrol Agent *Egbert* that a certain Turkish national who had arrived in the United States via New York was staying at the Smuggler's Inn for a night. The Agent believed that Boule was smuggling people over the border by passing them from the front door of his establishment out the back door and, that Boule informed upon only a portion of them as a cover for his continued activities. When the Turkish national arrived, Egbert exited his vehicle outside the inn but Boule,

in an apparent change of heart, asked the Agent to leave.  When he refused, a short altercation ensued following which Boule later claimed injury.  When Agent *Egbert* and the two agents with him confirmed that the Turkish national was lawfully in the United States, they departed.  *Egbert* sued raising *Bivens* claims under the Fourth, First and Fourteenth Amendments.  The district court dismissed each claim, the Ninth Circuit reversed and, the Supreme Court reversed the Ninth Circuit, concluding that the national security concerns the Court previously expressed in *Hernandez v. Mesa*, 140 S.Ct. 735 (2020) controlled,[5] because the case involved separation of powers, foreign affairs and national security concerns and a new context, against new defendants, and a CBP statutorily mandated alternative remedy, all of which foreclosed extending *Bivens*.

**3)** ***Egbert*'s place in that evolution did not alter the two-step analysis for finding *Bivens* eligibility and, the identical standard was previously properly employed by the Third Circuit here in *Bistrian IV*.**

The Supreme Court's restrictive two step standard for extending the *Bivens* remedy to new contexts, has been with us in one form or another for more than four decades, and was reiterated in clear terms as recently as *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), handed down by the Court five years prior to *Egbert*: (i) whether the claim arises in a "new context" and (2) whether there are any "special factors counselling hesitation." 137 S.Ct. 1843 at 1857 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *Carlson v. Green*, 446 U.S. 14, 18 (1980).

Importantly, here, this two-step analysis for determining whether Bistrian's claims are cognizable under *Bivens*, remains the same <u>after</u> *Egbert* as it was <u>before</u>.[6]  See, *Corr. Servs. Corp.*, *Id.*; *Carlson v. Green*, 446 U.S. 14, 18 (1980); *Hernandez v. Mesa*, 140 S.Ct. 735 (2020) and *Egbert*, 142 S.Ct. at 1803.  Under this well established framework, the court must first determine

---

[5] There, the Court had rejected a *Bivens* claim against the U.S. Customs and Border Patrol ("CBP") Agent who had shot a Mexican child across the United States-Mexican border.

[6] (When this Court and the Third Circuit previously addressed the same motions as are resubmitted here.)

whether a claim falls within the causes of action the Supreme Court has found were the sort of causes of action already authorized by the Supreme Court's trilogy – *Bivens*, *Davis*, and *Carlson* (*Egbert*, 142 S.Ct. at 1797) – or "whether it arises in a new context or involves a new category of defendants." *Hernandez*, 140 S.Ct. at 743.  To constitute a "new context", the case at issue must present a "meaningful" difference from a previous *Bivens* case. *Egbert*, 142 S.Ct. at 1797.

It is also important to note that, Justice Thomas' statement (writing for the majority) that the two-step inquiry "often resolve[s] to a single question whether there is any reason to think that Congress might be better equipped to create a damages remedy" (*Egbert*, 142 S.Ct. at 1803 and 1805), also is not new.  In fact, as Justice Thomas himself makes clear, he is quoting that statement from *Abbasi*, 137 S.Ct. at 1858.  And, because of his citation to *Hernandez v. Mesa* (140 S.Ct. 735, 747 (2020)), *Egbert*, 142 S.Ct. at 1798, it is clear that he is implying that the separation-of-powers, national security concerns presented by the involvement of the Department of U.S. Border Protection and their agents in both *Hernandez* and *Egbert*, could be reduced to the single question favoring legislative rather than adjudicative action in *Egbert*.

### 4) *Egbert*'s actual holding.

The commentary which followed the Court's decision in *Egbert* has focused mainly around the issues on 'how finely the Court evaluates the facts to identify differences between previous *Bivens* claims approved by the Court' and 'whether, if at all, the majority reframed the two-step process for extending *Bivens*.' See, e.g. *Harvard Law Review*, 136 Harv. L. Rev. 370, 379 "Constitutional Remedies – Bivens Actions – Excessive Force – Retaliation – Egbert v. Boule" (November, 2022).  The truth remains however that, *Egbert* changed little in *Bivens* jurisprudence in that it only further affirmed and again applied the same two-step analysis employed in determining *Bivens* applicability, formulated by the Court only five years earlier in *Ziglar v.*

*Abbasi*, 137 S.Ct. 1843, 1859-60 (2017); *Egbert* at 1803.  And, it reaffirmed *Hernandez*, *supra.* in holding that national security and CBP Agents as defendants constituted a prohibited "new context" under *Bivens*, constituting "special factors counselling hesitation" and, that there existed statutory mandates in the complex area of national security and foreign affairs which provided an "adequate level of deterrence" against these specific CBP federal actors. *Egbert*, 142 S.Ct. at 1803-1807.

But, while federal officers like Gibbs, and their advocates, will likely expound upon *Egbert*'s significant contribution to the diminution of Constitutional torts, and a blow to all *Bivens*-based actions, it is important to pause and to briefly consider what the High Court did, and did not decide in *Egbert* and, to separate the obvious disdain of Justices Thomas and Gorshuch for *Bivens* as a whole, from what actions they took in this case and what precedent, if any, they actually set by its issuance.  To do that, we must start with the specific issue upon which the Court granted a writ of certiorari.  The Court stated that it would consider the question of:

> Whether a cause of action exists under *Bivens* for claims against federal officers engaged in immigration-related functions for allegedly violating a plaintiff's Fourth Amendment rights?

See *Egbert v. Boule*, 142 S.Ct. 457 (2021) (mem.); Petition for a Writ of Certiorari, at I, *Egbert v. Boule*, 142 S.Ct. 1793 (2022).

Because it is axiomatic that "a cause of action exists under *Bivens* for claims against federal officers … for allegedly violating a plaintiff's Fourth Amendment rights" (established by *Bivens* itself), in actuality, the singular issue presented in *Egbert* is, **whether *Bivens* applies in the context of "federal officers engaged in immigration-related functions,"** as the Court stated in the only remaining part of its self-designated issue.

The Court answered that question succinctly, in the negative, holding that issues of border security are wrapped up in national security concerns that are more appropriate for legislative determination.

> Congress is better positioned to create remedies in the border-security context (142 S.Ct. at 1804) … [b]ecause "matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention," we reaffirm that a *Bivens* cause of action may not lie where, as here, national security is at issue.

*Id.* at 1805 (internal citations omitted).

This is the precise holding of *Egbert*, and it is nothing which avails Gibbs' renewed summary judgment motion here.

### 5) **Other *Egbert* take-aways.**

(i)  *Egbert*'s overall contribution to *Bivens* jurisprudence is objectively little. The Opinion can be separated into three functional parts. In the first, the Court reaffirms *Abbasi*'s two-part test for determining when a *Bivens* claim will properly lie. *Egbert* at 1803 (quoting *Abbasi*, 582 U.S. at 139, 137 S.Ct. 1843). In the second part of *Egbert*, the Opinion, bypasses the 'context inquiry' and focuses on the 'special factors' analysis in the milieu of national security, foreign affairs, separation of powers, etc. And, in the third part of the Opinion, which is really a diffuse narrative running throughout, the Court reiterates the disfavor it has for expanding *Bivens* claims into new contexts, especially with "new defendants" not previously the subject of *Bivens* claims.

(ii)  Even if *Egbert* had chosen to review *Farmer* (the predicate for *Bistrian III and IV*), it is clear that the Third Circuit's *Bistrian IV* decision not only followed *Abbasi*'s two-part test (which was reaffirmed and employed by *Egbert*) but, those decisions clearly "satisf[y] the 'analytic framework' prescribed by the last four decades of intervening case law", as required by *Egbert*. 142 S.Ct. at 1806-1808.

14

(iii)   The Third Circuit remains steadfast in its holding that *Bistrian IV* was properly decided as part of the Supreme Courts "three established contexts." *Xi v. Haugen*, 2023 WL 3608347 (3d Cir. May 24, 2023).  *Xi* drew itself a straight line from *Shorter v. U.S.*, 12 F.4th 366 (3d Cir. 2021) wherein the Third Circuit reaffirmed *Bistrian IV*.

> Defendants assert that this case presents a new *Bivens* context and that special factors counsel hesitation before allowing a *Bivens* remedy here.  Our Court's precedent in *Bistrian II* [our "*Bistrian IV*"] covers this argument. 912 F.3d at 89-94.  In that case, we considered a *Bivens* claim from a prisoner who was beaten by fellow inmates after they learned he was cooperating with a prison surveillance operation.  Like Shorter, Bistrian claimed prison officials had failed "to protect him from a substantial risk of serious injury at the hands of other inmates." *Id.* at 88.  There, as here, the defendants contended Bistrian's claim presented a new *Bivens* context.  We disagreed, reiterating that our case law and the Supreme Court's longstanding precedent in *Farmer*, a federal prisoner "ha[s] a clearly established constitutional right to have prison officials protect him from inmate violence" and has a damages remedy when officials violate that right. *Id.* at 90 (internal quotation marks omitted) (alteration in original).
>
> Because Bistrian's claim was not meaningfully different from the claim at issue in *Farmer*, we concluded the latter case "practically dictate[d] our ruling" in the former. *Id.* at 91.
>
> * * *
>
> And as we held in *Bistrian II*, *Farmer* remains good law.  Our case therefore does not present a new *Bivens* context.

*Shorter* at 372-376.

Significantly, there is nothing in *Egbert* which unsettles *Bistrian IV* or *Shorter*, both of which continue to be favorably cited by the courts.

(iv)   There is no denying that Justice Gorsuch was critical of the majority of which he was a voting member.  He unabashedly made it clear that the case-by-case analysis adopted by the majority, which searched for whether "meaningful differences" existed in nonidentical Constitutional tort cases was, in his opinion, unnecessary. *Egbert* at 1810.  However, the most important thing about these and other expressed sentiments is the fact that not a single one of the remaining eight Justices – not even Thomas – joined him in this conviction.  Instead, the Court

15

remained committed to a "fact specific analysis" to determine whether any material differences existed when compared with other similar *Bivens*-based causes of action previously approved by the Court, (even while Justice Gorsuch claimed to "struggle to see how this [*Egbert*] set of facts differ meaningfully from those in *Bivens* itself. *Id.* at 1810). And, it is likely that, it was this Justice Gorsuch's remark that prompted Justice Sotomayor to note that, "The Court thinly veils its disapproval of Bivens … But the Court unmistakenly stops short of overruling *Bivens* and its progeny[7], and appropriately so." *Id.* at 1823 (Sotomayor, J., concurring and dissenting). In fact, not only did the Court not do away with *Bivens*, it chose not to "reconsider *Bivens* itself." *Id.* at 1809.

Given all of the foregoing, there simply is no basis for the Court to conclude that *Egbert* did any violence to this Court's ruling in *Bistrian III* or, more significantly, to the Third Circuit's affirmance of that decision in *Bistrian IV*. This argument finds further support in a factually similar case to the one *sub judice*, which was presented post-*Egbert* in *Garraway v. Ciufo*, 2023 WL 1446823 (E.D.Pa. February 1, 2023). There, the court rejected reconsideration of its previous denial of the defendants' judgment on the pleadings declaring that *Egbert* did not represent an intervening change in the law, and once again held that the case did not present a "new *Bivens* context."

> Here, Plaintiff's case does not differ in a meaningful way from *Farmer* and his claims do not arise in a new *Bivens* context. Plaintiff alleges that he was attacked by his cellmate after prison officials left the two in the same cell despite his request to be moved, even though the latter had already attacked Plaintiff once and had a history of attacking other inmates.
> * * *
> Because Plaintiff's allegations remain similar to those of Farmer, where both amounted to Eighth Amendment failure to protect claims and *Bivens* actions, the Court denies Defendants' motion for reconsideration. Such determination passes the *Ziglar v. Abbasi* test because the case does not present a new *Bivens* context, precluding the Court from weighing the costs and benefits of allowing

---

[7] Including, the Plaintiff would say, *Farmer.*

a damages action to proceed.  The Court does not need to consider whether there is any reason to think that Congress might be better equipped to create a damages remedy because the damages remedy already exists.

*Id.* at *3-4.

**B.** **The "Law Of The Case Doctrine" And The "Mandate Rule" Preclude Gibbs' Fifth Attempt At Qualified Immunity.[8]**

The identical qualified immunity issue which Gibbs raises here, was previously decided by

this Court and the Third Circuit on four previous occasions combined:

1. *Bistrian v. Levi*, Civ. No. 08-3010, 2010 WL 3155267 at *1 (E.D.Pa. July 29, 2010) (*Bistrian I*) (motion to dismiss) (pgs. 4, 5 and 6);

2. *Bistrian v. Levi*, 696 F.3d 352, 364-65 (3d Cir. 2012) (*Bistrian II*) (motion to dismiss) (pgs. 2, 3, 11, 12, 13, 14 and 19);

3. *Bistrian v. Levi*, 299 F.Supp.3d 686, 702, 707, 711-12 (E.D.Pa. 2018) (*Bistrian III*) (motion for summary judgment) (pgs. 1, 2, 3, 4, 5, 12, 13, 14, 15, 16, 17 and 26);

4. *Bistrian v. Levi*, 912 F.3d 79, 88, 89-95 (3d Cir. 2018) (*Bistrian IV*) (motion for summary judgment) (pgs. 1, 2, 6, 7, 8, 13, 14 and 15).

These determinations, as ultimately reaffirmed in *Bistrian IV*, remain the law of the case

and are binding by that doctrine and the "mandate rule."  See Argument "A.-1" *supra.*  After four

(4) prior reviews and four (4) separate denials of Gibbs' qualified immunity defense, this Court,

twice, and the Third Circuit, twice, denied each, determining that the evidence shows that, in this

case:

1.  The Plaintiff was incarcerated under conditions posing a substantial risk of serious harm by locking him in a recreational cage with inmate Northington and other gang members knowing that he had snitched on them and, knowing that they had openly threatened him with violence on multiple occasions and, that they had injured and/or killed other such snitches in the past.

---

[8] While it may be theoretically true "that the cognizability of the *Bivens* claim[ ] is a question inherent in the qualified immunity defense [ ] (*Bistrian*, 912 F.3d at 88) (i.e. if there is no *Bivens* claim, the issue of qualified immunity is moot), Gibbs does not predicate his qualified immunity defense on the invalidity of Bistrian's *Bivens* claim.  (In which case it would suffer the same hasty demise as does his *Bivens* challenge, which should be considered "antecedent" to, and dispositive of, his qualified immunity defense.  See, *Hernandez v. Mesa*, ___ U.S. ___, 137 S.Ct. 2003, 2006 (2017) (citation omitted).  Rather, Gibbs yet again claims that he has carried his burden of proving that the record facts immunize him from liability.

2.   Defendant Gibbs was aware of the threats Northington had made to the Plaintiff and was aware that the Plaintiff was at substantial risk of serious harm because Northington had discovered the Plaintiff's cooperation with prison officials to target Northington.

3.   And, Gibbs not only ignored a prior separation order that was in effect in an attempt to prevent Northington from having access to or making contact with the Plaintiff[9] but he, with deliberate indifference, actually locked the Plaintiff in the same recreation cage with Northington and other gang members so that they could, and did, beat the helpless Plaintiff unmercifully.

The Third Circuit's holding in *Bistrian IV* by which Gibbs is bound, could not have been clearer.

> Plaintiff has pointed to evidence showing that certain prison officials acted with deliberate indifference in failing to protect him from harm by placing him in the recreation pen with Northington, and therefore that a violation of his Fifth Amendment substantive due process rights occurred.  Furthermore, the Third Circuit has concluded that "Bistrian – as an inmate who at all relevant times was either not yet convicted or convicted but not yet sentenced – had a clearly established constitutional right to have prison officials protect him from inmate violence.  Defendants, therefore, are not entitled to qualified immunity on this claim.

*Id.*, 299 F.Supp.3d at 702 (footnotes omitted).

There can be no doubt that these record facts were found by this Court and the Third Circuit to establish a claim for damages against Gibbs, a prison official, who could not claim qualified immunity for failing to protect the Plaintiff, an inmate, from violence because the Plaintiff:

(1) … was incarcerated under conditions posing a substantial risk of serious harm,
(2) the official was deliberately indifference to that substantial risk to his health and safety, and
(3) the official's deliberate indifference caused the harm.

*Bistrian v. Levi*, 696 F.3d 352 at 367 (3d Cir. 2012) (*Bistrian II*).  See, *Bistrian I* at *1; *Bistrian III* at 364-65; *Bistrian IV* at 702, 707, 711-712.

Although it is true that qualified immunity motions may be renewed as a case produces new evidence, from pre-trial discovery to verdict, Gibbs does not rely upon any claimed new evidence to support his renewed summary judgment motion.  Gibbs has presented no new record

---

[9] Based upon evidence that was only recently revealed by non-compliant Defendants.

facts which would justify[10] this Court's reconsideration of its or the Third Circuit's prior qualified immunity decisions and, accordingly, he is collaterally estopped from raising summary judgment yet a fifth time here.  See argument A.-1, *supra.* and, *Hamilton v. Levy*, 322 F.3d 776, 786 (3d Cir. 2003).  Accordingly, his fifth (5th) attempt at summary judgment (*Bistrian I* through *Bistrian IV* and the instant one), based upon qualified immunity, should be denied, *ab initio*.

**C.** **Bistrian's "Back Pain" And PTSD (Mental Pain And Suffering) Which He Suffered After The Northington Attack And Prior To The Taylor Attack, Are Fully Compensable In This Case.**

In its FTCA decision, *Bistrian v. Levi*, 2020 WL 6951048 at *32 (E.D.Pa. 2020) this Court stated:

> The [Taylor] assault produced symptoms beyond what Plaintiff would have experienced had he only been assaulted by Northington and his associates," and "<u>all parties, and the Court, agree that at least some injuries were sustained in the Northington assault</u>.

*Id.* (emphasis supplied).

The foregoing notwithstanding, Gibbs wants to eliminate Bistrian's right to be compensated for those injuries based upon an inapplicable "apportionment" argument.

In the FTCA Taylor attack case, this Court held that the government was responsible for all of Bistrian's existing and future back pain and PTSD, because the government had failed to carry its burden to show a reasonable basis upon which the Court could identify (i.e. apportion) what part of the Plaintiff's then **post**-Taylor assault problems were attributable to the Taylor

---

[10] It is abundantly clear that qualified immunity was again added to Gibbs' summary judgement here as an attempt to secure an interlocutory appeal by bootstrapping it to Gibbs' *Bivens* summary judgement motion which, if denied, the Third Circuit has declared is not immediately appealable under the collateral order doctrine.  See, *Graber v. Doe II*, 59 F.4th 603 (3d Cir. 2023).

assault, and which were attributable to the Northington assault (that occurred three and one half months prior).[11] *Bistrian v. Levi*, 2020 WL 6951048 at *34 (E.D.Pa. 2020).

The Defendant now mistakenly argues that the obverse is true, to wit, that the Court's FTCA holding, which acknowledged its inability to apportion Bistrian's damages <u>subsequent to</u> <u>both</u> the Northington and the Taylor assaults, likewise applies in this *Bivens* case to the apportionment of Bistrian's damages (<u>before</u> the Taylor assault occurred). This is illogical because the issue of apportionment simply cannot arise in this case where there was no predecessor tortfeasor assault to apportion.

In the FTCA Taylor attack case, the government argued that "the second tortfeasor [the Taylor attack] is not liable for the original harm" [the Northington attack]. *Id.*, and that the Court could only award Bistrian damages for the "aggravation" of Bistrian's Northington attack back pain and/or PTSD (both of which were originally caused by the Northington attack). *Id.* (footnotes omitted).

The Court did not fundamentally disagree with this statement of the law, and noted that, "[o]f course, the United States could not be liable for any harms that can be attributed solely to the Northington assault, i.e., those that predated the Taylor assault. But credible expert testimony established that the harms Plaintiff has suffered <u>since the Taylor assault</u> were, to a reasonable degree of medical certainty, the combined result of both assaults." *Id.* at fn. 355 (emphasis supplied). In other words, because the government could not prove (and the experts could not distinguish) what part of the continuing back pain and suffering, and emotional pain and suffering (PTSD) Bistrian suffered <u>after</u> the Taylor assault, but which was attributable <u>solely</u> to the Taylor

---

[11] The Northington assault damages were separately testified to by Bistrian at the original trial of this matter. See selected portions attached as Exhibit "A".

assault, all the post-Taylor assault pain and suffering in those categories would have to be attributed to the Taylor assault. *Id.*

Consequently, the unapportionable back pain and suffering and PTSD which Bistrian suffered from the moment of the Taylor attack forward, into the indeterminate future, were assessed against the government in the FTCA Taylor attack case and, there was no assessment for the pre-Taylor attack harms. This, of course, does not mean that the post-Northington, pre-Taylor pain and suffering in those two categories (i.e. back and PTSD/emotional distress) which resulted from the Northington attack, vanished or, are somehow non-compensable. Moreover, there is nothing in that finding by this Court that Bistrian, in a subsequent trial, could not himself testify as to the pain and suffering he endured in his back or, the PTSD/emotional distress he suffered from the Northington beating, immediately thereafter and in the interim between the Northington attack and the Taylor attack – something that had not been compensated for in this Court's FTCA adjudication. In fact, this Court agreed, and the government acknowledged, that apportionment was not an issue in the weeks and months after the Taylor assault and that: "Those harms were not jointly caused by the Northington assault, so apportionment is not at issue." *Id.* at *34 (emphasis supplied).

Accordingly, the same principle must hold for the Northington attack, even more so – because in the weeks and months (approximately 3.5 months) following the assault in this Northington attack case, the Taylor assault that had not yet occurred, and the back pain and suffering and PTSD (mental pain and suffering) which Bistrian suffered at the time prior to the Taylor attack was "not jointly caused" but, solely attributable to the Northington attack "so apportionment is not an issue." *Id.* The Defendant cannot be permitted to conflate the FTCA Taylor assault case with this case, where "distinct harms" were suffered from a single, not multiple

21

assaults. *Id.* at 32 (footnotes omitted).  In short, while the Court in the Taylor attack FTCA action had to deal with apportionment, the instant Northington attack case has no assault predecessor and, apportionment is therefore not an issue.

Accordingly, Bistrian should be permitted to present evidence of his <u>post Northington</u>, <u>pre-Taylor</u> back, and mental, pain and suffering for three and one half months.  Bistrian could accomplish that by way of expert testimony or, rely upon his own testimony as to both physical and mental pain and suffering, as the law of Pennsylvania and the Federal Rules of Evidence both permit.

> [U]nder the Federal Rules of Evidence, 'a witness may testify to a matter … if evidence is introduced to support a finding that the witness has personal knowledge of the matter.' *Fed. R. Evid.* 602.  Obviously, [the plaintiff] has personal knowledge of her own physical sensations and when they developed. Accordingly, [the plaintiff] will not be precluded from testifying about her alleged physical symptoms or when she began to experience these symptoms.

*Donaldson v. Lensbower*, 2017 WL 5634130 at *3 (W.D.Pa. 2017). See also *Reist v. Manwiller*, 231 Pa. Super. 444, 450 (1974) ("Because pain and suffering is basically a subjective concept, [the Plaintiff] would be competent to testify as to her problems. See, *Laurelli v. Shapiro*, 416 Pa. 308, 206 A.2d 308 (1965)); *accord*, *Cowher v. Kodali*, 2022 WL 4542224 at *12, ___ A.3d ___ (September 29, 2022) (Mundy, J., concurring and dissenting); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation …, personal humiliation, and mental anguish and suffering.'") (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)).

Further, it is not only the pain and suffering and limitations to his physical condition (i.e. back pain, ear pain and loss of hearing) which can be established without expert testimony, this legal precept applies to psychological and emotional injuries (e.g. PTSD) as well.

> As a preliminary matter, this Court notes that Plaintiffs may testify to the existence and cause of their own psychological injuries and non-economic damages.  "[E]xpert medical evidence is not required to prove emotional distress in section 1983 cases." *Bolden v. Se. Pennsylvania Transp. Auth.,* 21 F.3d 29, 36 (3d Cir. 1994); *McKenna v. City of Philadelphia*, 363 F. Supp. 2d 446, 463 (E.D.Pa. 2009) ("because of the remedial purpose of civil rights laws, courts have applied a relaxed causation standard in the Title VII cases and have

> not required expert testimony to prove a defendant's actions caused a plaintiff
> emotional distress.") (citing *Bolden*, 21 F.3d at 35-36); *see* also *Crosby v. State
> Con. Inst. at Greensburg*, No. VIV.A. 08-1506, 2011 WL 284098, at *5
> (W.D.Pa. Jan. 25, 2011) ("It is well-settled that expert medical testimony is not
> required to support recovery for emotional distress" in Title VII [Civil Rights
> Act of 1969] cases.)

*Donaldson*, at *6. See also, *McKenna v. City of Philadelphia*, 636 F.Supp.2d 446, 457 (E.D.Pa. 2009) (plaintiff need not present expert medical testimony that being fired from his job caused him to develop depression).

### D. Bistrian Does Not Require Expert Testimony To Establish The Cause Of His Hearing Loss.

Gibbs does not challenge the fact that Bistrian suffered a hearing loss. Nor does he contend that he was somehow compensated for that loss in the FTCA case. Rather, Gibbs asserts that Bistrian cannot establish that said loss resulted from the attack ("Northington") he suffered (which included violent and repeated kicks to his head and ears), without expert testimony. Bistrian does not require an expert to establish causation here.

In support of his argument, Gibbs cites to *Schweikert v. Eagle*, No. 20-4310, 2022 WL 394751, at *3 (E.D.Pa. 2022), and its progeny, for the proposition that, "[i]n most circumstances, a plaintiff must prove causation by expert medical testimony." This statement of the law is generally correct, but is not correct here. In fact, in the very next sentence to the one above-cited by Gibbs, the court explains why the plaintiff did <u>not</u> require expert testimony in that case.

> However, there is exception to this rule where there is an obvious causal
> relationship between the injury and the alleged negligent act. *Id.* When an
> obvious causal relationship exists, expert medical testimony is unnecessary.
> *Smith v. German*, 253 A.2d 107, 109 (Pa. 1969). An obvious causal relationship
> is present "where the injuries are either an 'immediate and direct' or the 'natural
> and probable' result of the alleged negligent act." *Id.* (quoting *Tabuteau v.
> London G. & A., Ltd.*, 40 A.2d 396 (Pa. 1945); and *Fenstermaker v. Bodamer*,
> 171 A.2d 641 (Pa. 1961)). "The two must be so closely connected and so
> readily apparent that a layman could diagnose (except by guessing) the causal
> connection…." *Smith*, 253 A.2d at 109.

*Id.* at *3.

In like fashion, the court in *Bixler v. Lamendola*, 2022 WL 2441567 (M.D.Pa. 2022), after surveying Pennsylvania law, found that "a jury could causally link [the plaintiff's] left hand numbness [noticed two days after his automobile accident] to the accident, without the aid of an expert." *Id.* at *5 (footnote omitted) (collecting cases demonstrating causation, including delayed onset of symptoms).

Although the extant record regarding Mr. Bistrian's hearing loss may not be a work of great clarity, the record is clear as to the critical factors regarding Bistrian's claim. There is no evidence to suggest that Bistrian reported, or experienced, having any hearing loss <u>prior</u> to being kicked viciously in and about his head and ears in the <u>Northington assault</u>. Bistrian did testify that he suffered a hearing loss, and reported same, <u>after</u> the <u>Northington assault</u> and <u>before</u> the Taylor assault. And, as stated hereinbefore, Bistrian can testify to his own injuries and symptoms, which include hearing loss. See, section C *supra*. Moreover, Bistrian's testimony establishes an "obvious" causal relationship between the attack and his hearing loss which is "either an 'immediate and direct' or the 'natural and probable result of'" the attack. *Smith v. German*, 253 A.2d 107, 108-09 (Pa. 1969) (citing *Tabuteau v. London G. & A., Ltd.*, 40 A.2d 396 (Pa. 1945); see *Bixler* at *4.

> Cases in which expert testimony is not required typically share two common traits: (1) the plaintiff began exhibiting symptoms of the injury "immediately after the accident or within a relatively short time thereafter," and (2) the alleged injury is "the type one would reasonably expect to result from the accident in question." See *Fenstermaker v. Bodamer*, 171 A.2d 641 (Pa. Super. Ct. 1961) (collecting cases).

*Id.*

This Court did not award hearing loss damages in the Taylor assault FTCA case, due to the absence of expert testimony that could medically establish the cause of Bistrian's hearing loss, rendering Bistrian's hearing loss claim in that case, at best, murky. When viewed in that context,

Bistrian could not, and did not, take issue with the propriety of the Court's holding.  However, in this Northington case, the above referenced Bistrian testimony, is sufficient to permit a jury to make the determination, based upon circumstantial evidence, whether the hearing loss Bistrian temporally suffered after the Northington head and ears assault (and which he had never suffered from before), was causally related to said assault.

Where, as here, an injury is "so immediately and directly, or naturally and probably, the result of the accident, [ ] the connection between them does not depend solely on the testimony of professional or expert testimony of professional or expert witnesses." *Mathews v. Clarion Hosp.*, 742 A.2d 1111, 1116 (Pa. Super. 1999).  It is equally clear that a reasonable jury would be equipped by common experience, to render such a judgment, together with the credibility determination which would necessarily follow Mr. Bistrian's direct and cross examination.  A medical expert is not required "where the matter under investigation is so simple … as to be within the rage of the ordinary experience and comprehension of even non professional persons." *Smith v. Yoke*, 412 Pa. 84, 194 A.2d 167 (Pa. 1963).

This matter, Bistrian asserts, requires only the run of the mill judgment which juries are expected to make everyday in hundreds, if not thousands of personal injury cases.  And, notably, this Court is no longer incumbered by the antecedent harm issues that permeated the Taylor assault case, requiring a different, but justified, holding by this Court.

## III.  CONCLUSION

For the reasons set forth above, Gibbs Summary Judgment Motion (Reconsideration) must be DENIED, in its totality.

Respectfully Submitted:

Dated: June 6, 2023                    By: _____

Robert E. Goldman, Esquire
PA Attorney I.D. # 25340
535 Hamilton Street, Suite 302
Allentown, PA 18101
(610) 841-3876
reg@bobgoldmanlaw.com
Attorney for Plaintiff Peter Bistrian

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PETER BISTRIAN,** | : | |
| | : | **No. 2:08-cv-03010-CMR** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN TROY LEVI, et al.,** | : | |
| | : | |
| **Defendants.** | : | **Honorable Cynthia M. Rufe** |

## CERTIFICATE OF SERVICE

I, Robert E. Goldman, Esquire, do hereby certify that a true and correct copy of the foregoing *Plaintiff's Memorandum of Law in Opposition to Defendant James Gibbs' Motion for Summary Judgment "Alternative Method"* and *proposed Order* were served upon all counsel of record via CM/ECF.


Dated: June 6, 2023                    By: _____
                                       Robert E. Goldman, Esquire
                                       PA Attorney I.D. # 25340
                                       535 Hamilton Street, Suite 302
                                       Allentown, PA 18101
                                       (610) 841-3876
                                       (215) 933-6902 (facsimile)
                                       reg@bobgoldmanlaw.com
                                       Attorney for Plaintiff Peter Bistrian