**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETER BISTRIAN, | | CIVIL ACTION |
| | Plaintiff | |
| vs. | | NO.  08-cv-3010 |
| TROY LEVI, et al. | | |
| | Defendants | |

**JAMES GIBBS' REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

<u>TABLE OF CONTENTS</u>

Page(s)

I.   INTRODUCTION ...............................................................................................1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS .....................................1

III. ARGUMENT ....................................................................................................3

    A. The Law of the Case Doctrine and Mandate Rule Do Not Apply to Bistrian's
       Bivens Claim or to Gibbs' Qualified Immunity Defense ....................................3

    B. Bistrian's Remaining *Bivens* Claim Should be Dismissed .................................5

        1. Since *Bistrian 2018*, the Third Circuit and its sister courts have called into
           question its viability and in some cases, totally rejected *Bistrian 2018*. ....................6

        2. Bistrian's Claim Presents A New Context For *Bivens*................................11

        3. Special Factors Analysis ........................................................................12

            a. Bistrian had two Alternate Remedies ................................................12

            b. The judiciary is poorly suited to balance the costs and benefits of allowing
               damages in this new context. ......................................................14

    C. Assuming *arguendo* that there is a remedy under *Bivens,* Gibbs is entitled to
       judgment under the qualified immunity doctrine.............................................15

    D. Judicial Estoppel Prevents Double Recovery as to Bistrian's Back Pain and
       Psychological Injury ...................................................................................21

IV. CONCLUSION................................................................................................22

## I.    INTRODUCTION

Instead of responding to Gibbs' Motion for Summary Judgment ("Motion") with pinpoint citations to the record, Bistrian invokes the law of the case doctrine and the mandate rule to discourage this Court from even considering the *Bivens* question and qualified immunity. As will be more fully described below, the law of the case doctrine and the mandate rule are not a bar to adjudicate Gibbs' Motion, which should be granted for the following reasons: (1) Bistrian's claim against Gibbs is a new context; and (2) the undisputed facts demonstrate that Gibbs did not violate Bistrian's clearly established constitutional rights.  Moreover, even if this case were to move forward, Bistrian's compensatory damages are limited to those attributable to his alleged shoulder injury.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

These facts are garnered from Gibb's Statement of Facts in Support of his Motion and Bistrian's responses to same.  The focus of this case is the following undisputed facts involving the isolated and singular event of June 30, 2006.  *Bistrian v. Levi,* ("Bistrian 2018"), 912 F.3d 79, 94 (3d Cir. 2018) (Bistrian's failure-to-protect claim relates to a specific and isolated event).

On or about May 8, 2008, Bistrian told Gibbs that he believed that he was in physical danger due to verbal threats from inmate Northington.  Gibbs removed Bistrian as an orderly on the same day because of Bistrian's report.  Bistrian Testimony, Trial Tr. July 10, 2019, at 204:12-15; *Id.* at 20:20-22 (Bistrian was locked away in his cell on May 8, 2006).  Bistrian was returned to solitary or near-solitary conditions for 23 to 24 hours a day.  Pls. Response to Gibbs's SOF, DE 560, ¶21.  The Special Housing Unit ("SHU") was the safest area of the facility. Testimony of Timothy Gravette (Plaintiff's Expert), Trial Tr. July 11, 2019, at 195:24-196:10. Bistrian was never placed in the same recreation cage with Northington between May 8th and June 29th. Bistrian was not assaulted by Northington or his gang members between May 8th and

June 29th.  Bistrian Testimony, Trial Tr. July 10, 2019, at 229:12-15.  Gibbs did not place
Bistrian in the recreation cage with Northington on June 30th.  DE 560 at ¶ 26 ("It is admitted
that Gibbs did not personally place Bistrian in a locked recreation cage with known Savage Gang
members Steve Northington…").

    To overcome these undisputed facts, Bistrian creates a new theory of liability against
Gibbs. He argues, without any citation to the record that (1) Gibbs knew there was a separation
order in place; (2) Gibbs purposefully ignored the separation order; (3) Gibbs actually placed
Bistrian in the recreation cage on June 30, 2008 with Northington and his gang members; and (4)
Gibbs put Bistrian in the recreation cage so Northington and his gang could beat Bistrian.  Pls.
Response to Motion, DE 559 at 21.[1]  This new argument must be rejected.  Bistrian admitted in
his response to Gibbs' Motion that Gibbs did **not** place Bistrian in the recreation cage with
Northington on June 30th.  Bistrian does not cite to any portion of the record that supports this
new argument.  Unsupported arguments of counsel do not create issues of material fact at the
summary judgment stage.  *Jersey Cent. Power & Light Co. v. Lacey Twp.,* 772 F.2d 1103, 1109–
10 (3d Cir. 1985) (citing *Securities and Exchange Commission v. Bonastia,* 614 F.2d 908, 914
(3d Cir.1980)).

    The undisputed material facts, when viewed in light most favorable to Bistrian, do not
give rise to a claim under the Fifth Amendment.  Moreover, even if these facts could give rise to
such a claim, there was no statutory authority or a robust consensus of cases in June 2006 that

---

[1] "3. And, Gibbs not only ignored a prior separation order that was in effect in an attempt to
prevent Northington from having access to or making contact with the Plaintiff but he, with
deliberate indifference, actually locked the Plaintiff in the same recreation cage with Northington
and other gang members so that they could, and did, beat the helpless Plaintiff unmercifully."
Gibbs refers to the ECF page number (21 of 30) and will continue to use the ECF page number
for uniformity.

would have placed Gibbs on notice that he was constitutionally obligated to "personally" protect Bistrian on a daily basis after returning Bistrian to solitary confinement on May 8, 2006 for Bistrian's own protection.

For these reasons, and those that follow, Gibbs requests summary judgment be entered in his favor and against Bistrian.

**III.    ARGUMENT**

    **A.  The Law of the Case Doctrine and Mandate Rule Do Not Apply to Bistrian's Bivens Claim or to Gibbs' Qualified Immunity Defense**

*Ziglar v. Abbasi,* 137 S. Ct. 1843 (2017) made clear that lower courts may not rely on their own prior precedents to recognize a *Bivens* remedy. *Bistrian 2018,* 912 F.3d at 95 ("It is *Abbasi*, not our own prior precedent, that must guide us now."). The Supreme Court did not create an implied *Bivens* action for deliberate indifference to an inmate's right to be protected from inmate-on-inmate assault in *Farmer v. Brennan*, 511 U.S. (1994). Thus, this Court may review whether Bistrian has a damages remedy under *Bivens.*

Deviation from the law of the case is permitted in these narrow circumstances: (1) when there has been an intervening change in the law; (2) new evidence; (3) or where reconsideration is necessary to prevent clear error or a manifest injustice. *Schneyder v. Smith*, 709 F. Supp. 2d 368, 383 (E.D. Pa. 2010), aff'd, 653 F.3d 313 (3d Cir. 2011) (citations omitted). Since the Third Circuit's decision in *Bistrian 2018*, there has been both newly discovered evidence and intervening changes in the law. Thus, this Court is not bound by the law of the case doctrine.

First, there was newly discovered evidence. An entire trial record now exists that was not part of the original summary judgment record. This Court granted a new trial based on newly discovered evidence that was withheld by the United States, not Gibbs. Absent the new evidence, the jury verdict in favor of Gibbs would have remained untouched. Bistrian took additional

3

discovery after the new trial was granted.  Second, Bistrian has changed his theory of the case.

Now he argues that Gibbs purposefully ignored a prior separation order and placed Bistrian in

the recreation cage on June 30, 2008, with Northington and his gang members, so Northington

and his gang could beat him.  DE 559 at 21.

Third, there has been an intervening change in the law. After *Bistrian 2018* was decided,

the Third Circuit in *Dongarra v. Smith,* 27 F.4th 174, 181 (3d Cir. 2022) called into question the

viability of a *Bivens* remedy for a failure to protect claim in the Third Circuit.[2]  One recent

District Court decision described the tension regarding the continued viability of *Bistrian 2018*:

> Although *Egbert, Hernandez*, and *Abbasi* do not mention *Farmer* as one of the
> cases in which the Court recognized a *Bivens* remedy, the Court of Appeals for
> the Third Circuit has held, post-*Abbasi*, that *Farmer* recognized an implied *Bivens*
> remedy for claims that prison officials were deliberately indifferent to a risk that
> an inmate would be assaulted by other inmates. The Supreme Court's more recent
> decisions in *Hernandez* and *Egbert* and the Third Circuit's decision in *Dongarra*
> *v. Smith*, 27 F.4th 174 (3d Cir. 2022) cloud this conclusion.

*Milhouse v. Heath*, No. 1:15-CV-01400, 2022 WL 18860932, at *8 (M.D. Pa. Dec. 30, 2022),

*report and recommendation adopted,* 2023 WL 2212987 (M.D. Pa. Jan. 24, 2023)(citations

omitted).

Further, the trial court's denial of Gibbs' previous Motion for Summary Judgment was an

interlocutory order.  *Bistrian 2018,* 912 F.3d at 87.[3]  "Interlocutory orders ... do not constitute the

law of the case."  *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir.

---

[2] *Dongarra* did not overrule *Bistrian 2018* because *Dongarra* is not an *en banc* decision.
*Milhouse v. Heath,* No. 15-CV-01400, 2022 WL 18860932, at *10, n.7.

[3] Appeals based on a denial of a defendant's motion for summary judgment will be heard so long
as: (1) the defendant is a public official asserting a qualified immunity defense; and (2) the issue
on appeal is whether the facts alleged by the plaintiff demonstrate a violation of clearly
established federal law, not which facts the plaintiff might be able to prove at trial."  *Bistrian*
*2018*, 912 F.3d at 87.

2017) (citing *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)); *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). Further, Gibbs' qualified immunity arguments are not based of the sufficiency of evidence but pure questions of law. Thus, any argument that Gibbs is barred from reasserting his defense of qualified immunity based on the "law of the case" doctrine must be rejected.

The mandate rule is also inapplicable to Gibbs' Motion for Summary Judgment based on qualified immunity. The mandate rule applies only to those issues that were decided by the appellate court. *Casey v. Planned Parenthood of SE Pennsylvania*, 14 F.3d 848, 857 (3d Cir. 1994). The Third Circuit did not directly address Gibbs' appeal on the merits because it determined that outside the *Bivens* question, it lacked jurisdiction on questions related to "evidence sufficiency" in the sense of what facts might be proven at trial. *Bistrian 2018*, 912 F.3d at 87. The Third Circuit summarily determined the trial court conducted a sufficient analysis and remanded the case for trial. *Id.* at 88, n.12. The mandate from the Third Circuit, as it related to Gibbs' personal liability, was to try the case. The trial court followed that mandate and held a jury trial which culminated in the jury's verdict in favor of Gibbs. For these reasons, neither the law of the case doctrine nor mandate rule bars Gibbs' defense of qualified immunity.

### B.    Bistrian's Remaining *Bivens* Claim Should be Dismissed

Since *Bistrian 2018* was decided, an abundance of persuasive authority has rejected a failure to protect claim in this context. The Third Circuit's recent decision in *Dongarra*, 27 F.4th at 181 calls into question whether the remaining *Bivens* claim against Gibbs is actionable.

The Supreme Court has never extended a Bivens remedy in this context. Without once mentioning *Bistrian 2018,* the Third Circuit observed in *Dongarra* that the Supreme Court has recognized an implied cause of action for constitutional violations in only three contexts: *Bivens*; *Davis v. Passman*, 442 U.S. 228 (1979), in which the Court extended the *Bivens* remedy to a

claim for gender discrimination under the Fifth Amendment's Due Process Clause; and *Carlson v. Green,* 446 U.S. 14 (1980), in which the remedy was extended to a claim for inadequate prison medical care under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Xi v. Haugen,* 68 F.4th 824, 832 (3d Cir. 2023) (*Bivens* remedy only available in three contexts, none of which is a failure to protect claim).

A common constitutional basis is not enough to link a new *Bivens* theory to an existing *Bivens* context. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). It is not enough that the new theory matches an existing context at a high level of generality, as the definition of, "new context" is broad. *Id.* Here, Bistrian volunteered to be a snitch, thereby placing himself at risk of being discovered and assaulted. The Supreme Court has never extended a *Bivens* remedy to a prisoner who has knowingly placed himself at risk of being discovered and being assaulted by another prisoner.

> 1. **Since *Bistrian 2018*, the Third Circuit and its sister courts have called into question its viability and in some cases, totally rejected *Bistrian 2018*.**

Since 2018, courts under the direction of the Supreme Court have taken a narrower approach to recognizing a *Bivens* remedy, being mindful that "superficial similarities" are insufficient to justify creating a *Bivens* remedy. *See Egbert*, 142 S.Ct. at 1805 (quoting *Abbasi,* 137 S. Ct. at 1859) (even "almost parallel circumstances ... are not enough")).

In *Mammana v. Barben*, 856 F. App'x 411, 414, n.5 (3d Cir. 2021), the majority questioned the viability of *Bistrian 2018* and noted that the Supreme Court in *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (*Hernandez II*) did not list failure-to-protect, or *Farmer*, as a *Bivens* claim. The Third Circuit, however, declined to address this apparent tension because the "failure to protect" claim was not before the Court.

In *Dongarra*, the Third Circuit declined to recognize a *Bivens* cause of action grounded

in deliberate indifference to a serious risk of an inmate-on-inmate assault for an inmate who was wrongfully labeled a sex offender by prison officials. *Dongarra*, 27 F.4th at 180.  In rejecting the *Bivens* claim, the Third Circuit determined that the fact pattern did not give rise to an implied *Bivens* cause of action because Dongarra did not suffer an attack. *Id.* at 181.  This more recent ruling directly applies to Bistrian's remaining claims because he was not attacked for a period of almost 60 days after being relieved from his duties as an orderly.

Gibbs placed Bistrian into solitary confinement for Bistrian's protection.  According to Bistrian's own allegations, inmates in the SHU are in solitary or near-solitary conditions "for 23 to 24 hours a day, with little or no opportunity to interact with other inmates.  App. 75 ¶ 12. Given these conditions, it seems reasonable to assume that an inmate would generally be less at physical risk in the SHU than elsewhere in the prison." *Bistrian 2012,* 696 F.3d at 368; *see also Bistrian 2018*, 912 F.3d at 83 (The SHU is a segregated housing unit where inmates may be placed for either administrative or disciplinary reasons. Inmates are confined in solitary or near-solitary conditions in a "six by eight-foot cell for 23 to 24 hours a day, with little or no opportunity to interact with other inmates[.] (App. at 2923 ¶ 12.)").

After being removed as an orderly, Bistrian was never placed in the same recreation cage with Northington until June 30th.  Bistrian Testimony, Trial Tr. July 10, 2019, at 229:12-15. There is no dispute, Gibbs himself never placed Bistrian in the same recreation cage with Northington at any time after Gibbs relieved Bistrian of his orderly duties and returned Bistrian to SHU.  As in *Dongarra,* Bistrian's claim against Gibbs arises in a wholly new context that has never been recognized by the Supreme Court.

After finding that *Dongarra*'s fact pattern constituted a new context, the Court then determined that special factors counseled against creating an implied *Bivens* remedy because

Dongarra had available alternate remedies (injunction and administrative remedies). The Court was reluctant and "ill-suited" to create remedies that "could unleash a torrent of litigation on prisons." *Id.* *Egbert*, *Abbasi, and Dongarra* instruct that "superficial similarities" are insufficient to justify creating a *Bivens* remedy, and that the limitation of available alternate remedies to nonmonetary relief is not a license to create a new *Bivens* cause of action. *Id.* (citing *Egbert*, 142 S. Ct. at 1805)(quoting *Abbasi,* 137 S. Ct. at 1859) (even "almost parallel circumstances ... are not enough")).

Other Federal Court of Appeals have refused to create an implied cause of damages under *Bivens* in failure to protect claims based upon facts similar to Bistrian's. In *Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022), the Ninth Circuit held that *Egbert* precludes recognizing a *Bivens* remedy where the complaint alleged that a "prison correctional officer intentionally created the risk that another prisoner would assault Hoffman by publicly labeling him as a snitch and offering prisoners rewards."

In *Tate v. Harmon*, 54 F.4th 839, 847 (4th Cir. 2022), plaintiff argued that he was entitled to a *Bivens* remedy because "[f]ederal prison officials exposed him to conditions that posed a constitutionally unacceptable risk to his health and safety and took deliberate actions that exposed him to a substantial risk of serious physical harm." Tate argued that his conditions-of-confinement claim "fit[] well within the class of *Bivens* actions acknowledged by the Supreme Court" in *Carlson* and *Farmer*. Tate, 54 F.4th at 842–43. The *Tate* Court rejected the argument that *Farmer* and *Carlson* supported his claim and held:

> In *Farmer*, the Eighth Amendment claim involved the failure of prison officials to protect an inmate from an attack that involved a beating and rape, even though the officials knew that the prison had a "violent environment" and that the inmate was "particularly vulnerable to sexual attack." Importantly, however, while the Court allowed the action to proceed, it never addressed whether the claim was properly

a *Bivens* claim.  Moreover, the [Supreme] Court has never considered *Farmer* a *Bivens* case when cataloging all of its *Bivens* cases.

Id., 54 F.4th at 839 (citations omitted).

Following *Tate,* the Fourth Circuit in *Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023) specifically rejected *Bistrian 2018* and held that a claim alleging a prison official failed to protect an inmate informant from inmate-on-inmate violence was a new context with special factors counseling against expansion.  In rejecting *Bistrian 2018,* the *Bulger* Court reasoned, "we find Appellant's reliance on the Third Circuit's *Bistrian* decision unavailing as neither *Bivens, Davis*, nor *Carlson* involved an official's alleged failure to intervene and stop an inmate's transfer to a particular facility or failure to protect an inmate from prisoner-on-prisoner violence.  Thus, such claims, we conclude, arise in a new context."  *Bulger*, 62 F.4th at 138-39.  Each one of these courts, like the *Dongarra* Court, noted that the Supreme Court has not recognized a cause of action based on *Farmer's* broadly stated deliberate indifference standard relating to prison conditions and inmate-on-inmate assaults.

Since *Bistrian 2018,* our local district courts have adopted the same conclusion.  In *Milhouse v. Heath,* plaintiff argued that Defendants failed to protect him from assaults by two different cellmates on two separate occasions.  Specifically, Milhouse argued staff members at USP-Lewisburg were deliberately indifferent to safety needs, failed to protect him, and forced him to cell with dangerous inmates.  Plaintiff further argued that Defendants failed to place him in a single cell, although they knew he was in danger because of being labeled as a rat, rapist, and homosexual, resulting in his cellmate attacking him.  *Milhouse,* 2022 WL 18860932, at *7.  Defendants argued that Millhouse's claim was not actionable under *Bivens.*  In dismissing the *Bivens* action the court reasoned,

> The instant case is meaningfully different from *Farmer.* Although both cases
> broadly allege deliberate indifference by prison officials, the deliberate

9

indifference claim in *Farmer* arose from "prisoner-on-prisoner violence" against a transsexual prisoner who alleged that prison officials were aware of a history of inmate assaults and that the prisoner would be particularly vulnerable to sexual attack. *Farmer*, 511 U.S. at 830-31. In this case, by contrast, Milhouse, a non-transsexual inmate, alleges that Defendants failed to cell him with an appropriate cellmate in the Special Management Unit at USP-Lewisburg where Milhouse alleges he was labeled a rat, homosexual, and rapist. (Doc. 113; Doc. 337). In sum, we find that Davis's claim presents a new context for *Bivens* that is meaningfully different from the claims recognized in *Bivens, Davis, Carlson*, and *Farmer.*

*Milhouse,* 2022 WL 18860932, at \*9.  Even if (as *Milhouse* implies) the Supreme Court considered *Farmer* a *Bivens* case, which it did not, a failure to protect claim where a non-transsexual inmate claimed that the prison officials failed to protect him from other inmates who knew he was a rat, or in Bistrian's case, a "snitch," presents a new *Bivens* context.

In *Landis v. Moyer*, 610 F. Supp. 3d 649, 657-58 (M.D. Pa. 2022) plaintiff alleged that defendant Moyer used excessive force against him in violation of his Eighth Amendment rights. The *Landis* Court held that although *Bivens* itself involved an excessive-force claim, that claim, arose under the Fourth Amendment, not the Eighth, and in an entirely different factual setting. Important to this decision was the Supreme Court directive that "superficial similarities" are insufficient to justify creating a *Bivens* remedy.  *Id.* (citing *Egbert*, 142 S.Ct. at 1805) (quoting *Abbasi,* 137 S. Ct. at 1859 (even "almost parallel circumstances ... are not enough")).

Other district courts have refused a *Bivens* remedy based on a failure to protect theory, and have specifically held that *Bistrian 2018* was wrongly decided.  In *Palmer v. Gardner*, No. 22-CV-113, 2023 WL 3231614, at \*3-5 (N.D. Iowa May 3, 2023), the Court held that *Bistrian 2018* was decided incorrectly because the only question before the *Farmer* Court was the proper standard for deliberate indifference, not whether to extend *Bivens* and recognize an implied cause of action for Eighth Amendment conditions of confinement claims.  *Accord*, *Oden v. True*, No. 18-CV-600, 2020 WL 4049922, at \*4 (S.D. Ill. July 20, 2020) (declining to find a *Bivens* implied

10

cause of action based upon the same rationale)*; Choice v. Michalak,* No. 21-CV-0060, 2022 WL 4079577, at *5 (N.D. Ill. Sept. 6, 2022) (*Bistrian 2018* unpersuasive because the only question before the *Farmer* Court was the proper standard for deliberate indifference); *Johnson v. Terry*, No. 1:18-CV-1899-AT, 2023 WL 3215366, at *5 (N.D. Ga. Mar. 22, 2023) (rejecting *Bistrian 2018* because the Supreme Court itself does not recognize *Farmer* as creating a *Bivens* action and the *Bivens* issue was not before the Court in *Farmer*); *Schubert v. Mcyntre*, No. 19-cv-66, 2023 WL 2192944, (E.D. Tex. February 1, 2023) (Report and Recommendation) (failure to protect is a new context under *Bivens*), *adopted*, 2023 WL 2188703 (E.D. Tex. February 23, 2023); *Lucero v. United States*, No. 3:20-CV-1967-SI, 2022 WL 980858, at *4 (D. Or. Mar. 31, 2022) ("The Court, however, does not read *Farmer* [] to create a *Bivens* remedy for Eighth Amendment failure-to-protect claims.").

Bistrian has no counter to these well-reasoned cases other than to argue these issues were decided in 2018, after *Bivens* jurisprudence became more narrowed and refined. All of the above-cited cases raise serious doubt about the viability of *Bistrian 2018* and whether Bistrian's claim presents a new context that is meaningfully different from the claims recognized in *Bivens, Davis, and Carlson*.

### 2.    Bistrian's Claim Presents A New Context For *Bivens*

Bistrian's reliance on *Farmer* to support his *Bivens* claim should be rejected. In *Farmer*, the plaintiff alleged that the prison had a history of sexual assaults and violence that posed a particular risk to the plaintiff, an acknowledged transsexual who projected feminine characteristics. The Supreme Court clarified inconsistencies in the definition of the "deliberate indifference" standard applicable to plaintiff's claims and remanded the case so the plaintiff could complete discovery. *Farmer*, 511 U.S. at 847-48. In contrast, Bistrian is not a transsexual inmate. And unlike Dongarra, who was identified as a sex offender by prison officials so all

could see, Bistrian was a snitch by self-design.  Bistrian alleges that that Gibbs purposefully ignored a prior separation order, and placed Bistrian in the recreation cage on June 30, 2008 with Northington and his gang members, so Northington and his gang could beat Bistrian unmercifully.  DE 559 at 21.  Bistrian's claim presents a new context for *Bivens* that is meaningfully different from the claims recognized in *Bivens, Davis, Carlson.*

Since the Supreme Court has never expressly acknowledged a *Bivens* action in this context, and special factors counsel against extending the instant claim, Gibbs is entitled to judgment in his favor.  *See Mack v. Yost*, 968 F.3d 311, 321 (3d Cir. 2020).

### 3. Special Factors Analysis

After deciding that this case presents a new context, the Court then should proceed to the second step in the *Bivens* inquiry and determine whether special factors counsel against creating a new *Bivens* cause of action.  The Court is required to answer the following two questions: (1) whether alternative remedies are available, and (2) whether the judiciary is poorly suited to balance the costs and benefits of allowing damages.  *Dongarra*, 27 F.4th at 181.

### a. Bistrian had two Alternate Remedies

Bistrian had two avenues for relief: the prison grievance process and a federal injunction. The prison's grievance process lets prisoners "seek formal review" of officers' conduct.  *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (quoting 28 C.F.R. § 542.10).  "Any alternative, existing process for protecting the [injured party's] interest" is a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Ziglar,*137 S. Ct. at 1858; *Egbert,* 142 S. Ct. at 1804 ("Nor does it matter that "existing remedies do not provide complete relief.); *see also Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988)("The absence of relief "does not by any means necessarily imply that courts should award money damages.").

As the *Dongarra* Court noted, the grievance process is well-suited to prevent an assault on Bistrian. The *Dongarra* Court determined that the BOP's grievance procedures, and the availability of injunctive relief, were considered adequate alternate remedies that counseled against extending a *Bivens* remedy. Moreover, "even if the grievance process failed, [the inmate] "could have asked the court for an injunction" requesting removal from the SHU or some other form of relief. *Dongarra*, 27 F.4th at 181.

"Summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006); Fed. R. Civ. P. 56(c). Bistrian claims that he followed the grievance process between May 8th and June 30th, but offers no proof of this assertion. DE 560 at ¶ 29. The time to produce the actual evidence is now.

Bistrian claims that after the threat was made, there was a separation order in place to prevent Bistrian from being placed into the same recreation cage with Northington and his gang members. DE 559 at ¶21. Gibbs removed Bistrian as an orderly. No harm came to Bistrian for almost 60 days. Bistrian had 60 days to follow the grievance process or seek an injunction. He did neither. No harm came to Bistrian between May 8th and June 29th. On June 30th, an unnamed prison official placed Bistrian in the recreation cage with Northington. DE 560 at ¶26 ("It is admitted that Gibbs did not personally place Bistrian in a locked recreation cage with known Savage Gang members Steve Northington…"). Plaintiff offers no facts to support that Gibbs was even present when this event took place.

13

**b. The judiciary is poorly suited to balance the costs and
benefits of allowing damages in this new context.**

Creating a *Bivens* remedy here would require this Court to make rules on when liability

attaches to a prison official (Gibbs) who removed an immediate threat by housing the inmate

(Bistrian) in SHU, only to have another unnamed prison official, almost 60 days later, restore the

risk by placing the inmate (Bistrian) in the direct path of danger (a recreation cage with

Northington).  Making rules in this circumstance would require this Court to make Gibbs the

personal guarantor of Bistrian's safety from the time he reported the threat until the end of

Bistrian's incarceration.  Such a rule would run contrary to well-established precedent that each

"[g]overnment official, his or her title notwithstanding, is only liable for his or her own

misconduct."  *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009); *Ziglar,* 137 S. Ct. at 1860 (*Bivens*

claim is brought against the individual official for his or her own acts, not the acts of others.).

Extending Bivens to these facts case would also require this Court to delve into

policymaking and rule-making regarding classification, housing, segregation, and post rules for

prison officials who are aware of threats and who act (whether ultimately successful or not) to

prevent an assault, and into their subsequent responsibilities to prevent an assault, that may or

may not happen.  As the *Dongarra* Court noted,

> It is not obvious how far a prison official's liability should extend. If we strike the
> wrong balance, we could unleash a torrent of litigation on prisons. And unlike
> state tort damages, the availability of a federal *constitutional* remedy cannot be
> undone by the legislature. The stakes are high, and we are poorly suited to the
> task. So we must leave that judgment to Congress.

*Dongarra,* 27 F.4th at 181.  Creating a *Bivens* remedy here is a "high stakes" game that is better

left to Congress and the Executive Branch.

Expanding the *Bivens* remedy is a "disfavored" judicial activity as Congress and the

executive branch are better equipped to administer prisons.  *Ziglar,* 137 S. Ct. at 1857 (2017).

"The Supreme Court has warned that the BOP, not the judiciary, has the 'expertise, planning, and the commitment of resources' necessary for the difficult task of running a correctional facility." *Milhouse,* 2022 WL 18860932, at *10 (citing *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)). Consequently, the task of prison administration "has been committed to the responsibility of [the legislative and executive] branches, and separation-of-powers concerns counsel a policy of judicial restraint." *Turner,* 482 U.S. at 85. Thus, given the array of challenges facing prison administration and the complexity of those problems, "separation of powers concerns counsel a policy of judicial restraint." *Id.* Based on these principles, this Court should find that Bistrian is not entitled to *Bivens* damages remedy against Gibbs.

### C. Assuming *arguendo* that there is a remedy under *Bivens,* Gibbs is entitled to judgment under the qualified immunity doctrine

In *Bistrian v. Levi* (*Bistrian 2012),* 696 F.3d 352 (3d Cir. 2012), the Third Circuit narrowed the questions to be decided at summary judgment. It determined that the decision to keep Bistrian in the SHU after Bistrian's cooperation with prison officials became exposed was not unreasonable. In doing so, the Court held, "[w]e do not infer that the decision to keep Bistrian in the SHU after his cooperation became exposed was, by itself, unreasonable. This is so whether we 'put[ ] it in terms of duty or deliberate indifference.'" *Bistrian 2012*, 696 F.3d at 368.[4] (citations omitted).

---

[4] "BOP regulations suggest that, generally speaking, officials can better protect inmates when they are in the SHU rather than the general population. *See* 28 C.F.R. § 541.22 (describing SHUs as units "where inmates are securely separated from the general inmate population" to "help ensure the safety, security, and orderly operation of correctional facilities"). According to Bistrian's own allegations, inmates in the SHU are in solitary or near-solitary conditions "for 23 to 24 hours a day, with little or no opportunity to interact with other inmates." App. 75 ¶ 12. Given these conditions, it seems reasonable to assume that an inmate would generally be less at physical risk in the SHU than elsewhere in the prison." *Bistrian 2012*, 696 F.3d at 368.

*Bistrian 2012* examined the question broadly and linked the deliberate indifference issue to whether "thirteen officials violated their constitutional duty to protect [Bistrian] from inmate violence by being deliberately indifferent to the risk posed by his placement in the recreation yard with Northington and others who knew of his prior complicity with prison authorities." *Id.* at 371. The jury trial of this matter conclusively determined that the remaining defendants (including Gibbs) did not violate Bistrian's constitutional rights. At Bistrian's request, he obtained a new trial based on newly discovered evidence, which he does not even use to defeat summary judgment. Instead of pursuing his claim against the "thirteen officials" who were absolved by the jury, he has chosen to pursue his damages claim against Gibbs only.

Bistrian's tactical decision has narrowed the legal question presented before this Court: did Gibbs violate Bistrian's clearly constitutional rights when he removed Bistrian as an orderly, and 60 days later, another prison official placed Bistrian into the recreation cage with Northington, resulting in the assault? The answer is no. Gibbs is entitled to judgment under the qualified immunity doctrine.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

*D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018)(internal citations omitted).

In *Saucier v. Katz*, the Court set forth a two-step analysis for evaluating claims of qualified immunity. 533 U.S. 194 (2001), *overruled in part, Pearson v. Callahan*, 555 U.S. 223 (2009).[5] Courts may begin their inquiry with either prong. *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). Courts may first determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [state actor] is entitled to immunity." *Bennett v. Murphy et al.*, 274 F.3d 133, 136 (3d Cir. 2002).

> Once a court determines that there has been a constitutional violation, it must move to the second step and determine whether the constitutional right was clearly established. That is, in the factual scenario established by the plaintiff, would a reasonable state actor have understood that his actions were prohibited? The focus in this step is solely upon the law. If it would not have been clear to a reasonable state actor *what the law required* under the facts alleged, he is entitled to qualified immunity. If the requirements of the law would have been clear, the state actor must stand trial.

*Bennett*, 274 F.3d at 136-37 (emphasis in original).

In order to show that a constitutional right was clearly established *at the time of the alleged state action*, a plaintiff must show that "a reasonable state actor [would] have understood that his actions were prohibited." *Id.*

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful …; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

---

[5] The Supreme Court in *Pearson* addressed the order of the mandatory two-step analysis set for assessing qualified immunity set forth in *Saucier*. District courts may address, in any order, either step, depending upon the facts and circumstances of each case. *Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009). However, both steps are still required to defeat application of qualified immunity. *Pearson*, 555 U.S. at 242.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[T]he salient question … is whether the state of the law [at the time of the conduct] gave respondents fair warning that their [conduct] was unconstitutional." *Hope*, 536 U.S. 730, 741 (2002); *Groh v. Ramirez*, 540 U.S. 551, 563 (2004).

"Defining the right at issue is critical to the [qualified immunity] inquiry." *Kedra v. Schroeter*, 876 F.3d 424, 449 (3d Cir. 2017)(citing *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 248 (3d Cir. 2016). At the highest level of generality, an inmate who is convicted but not yet sentenced has a clearly established constitutional right to have prison officials protect him from inmate violence. *Bistrian 2012*, 696 F.3d at 367. However, when addressing the right at stake, this Court must frame the issue in "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). The question of whether a government official is immune from suit on the ground that it was not clearly established is assessed at the time of the alleged unconstitutional act, June 30, 2006. *Pearson*, 555 U.S. at 227.

Bistrian was not attacked and did not sustain any damages between the time he reported being in danger to Gibbs to the time of his assault. There is no *Bivens* cause of action during this time period. *Dongarra,* 27 F.4th at 179. Bistrian does not contest this point of law, as he does not seek any damages for the time period between his report of being discovered and the actual assault. *See* DE 559 at 25 ("Bistrian should be permitted to present evidence of his post Northington, pre-Taylor back, and mental, pain and suffering for three- and one-half months.")

Thus, the question of whether Gibbs violated Bistrian's constitutional rights is limited to the time period that Bistrian was placed into the recreation cage with Northington and others, on that specific date. The legal question presented before this Court is whether Gibbs violated Bistrian's clearly constitutional rights when he removed Bistrian as an orderly, and 60 days later,

other prison officials placed Bistrian into the recreation cage, with Northington. The answer is no, and Gibbs is entitled to judgment under the qualified immunity doctrine.

Whether Gibbs did "enough" by leaving Bistrian in the Special Housing Unit is not a question of fact; but a pure question of law to be decided by the Court. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (" [T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials"). To overcome the defense of qualified immunity, Bistrian must come forward with admissible showing that Gibbs (1) "violated a [federal] statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct*." George v. Rehiel,* 738 F.3d 562, 572 (3d Cir. 2013). Bistrian cannot meet this burden.

"The deliberate indifference prison standard spoken of in [*County of Sacramento v.*] *Lewis,* [523 U.S. 833 (1998)] is equivalent to the concept of recklessness utilized in the criminal law. *Schieber v. City of Philadelphia,* 320 F.3d 409, 421 (3d Cir. 2003) (citing *Farmer,* 511 U.S. at 837). To be deliberately indifferent, the prison custodian has to have subjective appreciation of an excessive risk of serious harm to inmate health or safety and must "consciously disregard" that risk. *Id*. at 839. As the *Farmer* court noted, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. *Daniels v. Delaware*, 120 F. Supp. 2d 411, 421 (D. Del. 2000).

Gibbs removed Bistrian as an orderly and placed him into SHU rather than general population after being notified of the threat, where he would be better protected from an assault. *Bistrian 2012*, 696 F.3d at 368. As a matter of law, Gibbs' actions shows that he did not consciously disregard the risk that Bistrian might be assaulted. Gibbs did not consciously

disregard (take no action on) Bistrian's report and, thereby, demonstrate a lack of indifference, as enunciated in *Farmer*.

After Bistrian directly reported to Gibbs that he was being threatened, Gibbs relieved Bistrian of his orderly duties right after May 8th. Bistrian Testimony, Trial Tr. July 10, 2019, at 204:12-15; 20:20-22 (Bistrian was locked away in his cell on May 8, 2006). Taking Bistrian's unsupported facts as true, a separation order was put into place to prevent Bistrian from being placed into the same recreation cage. DE 559 at 21. Gibbs placed Bistrian into solitary confinement for Bistrian's protection. According to Bistrian's own allegations, inmates in the SHU are in solitary or near-solitary conditions "for 23 to 24 hours a day, with little or no opportunity to interact with other inmates." *Bistrian 2012*, 696 F.3d at 368; *see also Bistrian 2018*, 912 F.3d at 83 After being removed as an orderly, Bistrian was never placed in the same recreation cage with Northington until June 30th, where he was placed by an unidentified prison official. Bistrian Testimony, Trial Tr. July 10, 2019, at 229:12-15.

There is no dispute; Gibbs did not place Bistrian in the same recreation cage with Bistrian on June 30th. DE 560 at ¶ 26 ("It is admitted that Gibbs did not personally place Bistrian in a locked recreation cage with known Savage Gang members Steve Northington…"). On June 30th, approximately eight weeks after being discovered as a snitch, Bistrian was placed in the same recreation pen with Northington, by an unnamed prison official, where he was assaulted. *Bistrian v. Levi*, No. CV 08-3010, 2022 WL 888878, at *1 (E.D. Pa. Mar. 25, 2022) (citing Bistrian Testimony, Trial Tr. July 9, 2019, at 90–92, 95–104). At best, what Bistrian now argues is that unnamed prison officials, not Gibbs, violated the separation order that was intended to protect him. Gibbs is not liable for the negligence or even deliberate indifference of other prison officials. *Iqbal*, 556 U.S. at 677; *Ziglar*, 137 S. Ct. at 1860.

In June 2006, there was no robust consensus of cases or authority that would have placed Gibbs on notice that having a separation order between two inmates due to a threat, and placing the threatened inmate into near solitary confinement conditions, would be considered deliberate indifference to the risk of inmate-on-inmate assault. Likewise, there was no robust consensus of cases or authority that would have placed Gibbs on notice in 2006 that he would be liable for the actions other prison officials who placed Bistrian in the recreation cage/pen with Northington. For these reasons, Gibbs is entitled to judgment in his favor.

### D.  Judicial Estoppel Prevents Double Recovery as to Bistrian's Back Pain and Psychological Injury

Bistrian argues that he is entitled to present evidence of his post Northington, pre-Taylor back, and mental pain and suffering for three- and one-half months. DE 559 at ¶ 25. Based on Bistrian's trial decision to bring into evidence his aggregate pain and suffering as a result of both the Northington and Taylor assaults, and all the combined sequalae, Bistrian is judicially estopped from seeking double recovery for the June 30th assault. *Madero v. Luffey*, 549 F. Supp. 3d 435, 442 (W.D. Pa. 2021).

Judicial estoppel precludes litigants from taking a position opposite from one that has previously been successfully pursued. As articulated in *Madero*, the Third Circuit has described the doctrine:

> Judicial estoppel, sometimes called the "doctrine against assertion of inconsistent positions," is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather it is designed to prevent litigants from "playing fast and loose with the courts." The basic principle ... is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.

*Id.* (quoting *Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358 (3d. Cir. 1996) (quoting *Scarano v. Central R. Co. of N.J.,* 203 F.2d 510, 513 (3d. Cir. 1953)).

This Court awarded Bistrian the sum of $251,340.81 for past costs of care; $1,000,000.00 for future costs of care; and $500,000.00 for pain and suffering, for injury, symptoms and complications of "back pain" and psychological harm, which included the diagnosis of PTSD, for both incidents. *Bistrian v. Levi*, No. CV 08-3010, 2020 WL 6951048, at *34 (E.D. Pa. Aug. 21, 2020)("Plaintiff's back pain and its attendant complications, and Plaintiff's PTSD—are not apportionable.").  Thus, this Court should grant Gibbs' summary judgment for any damages related to pain and suffering; for injury, symptoms and complications of "back pain;" and for psychological harm, which included the diagnosis of PTSD.

The only remaining damages that may be recovered are related to the alleged shoulder injury and hearing loss.  *Id.* at *34 (Taylor assault was not a substantial factor in causing Plaintiff's shoulder injury or his hearing loss).  Whether Bistrian can recover for his alleged hearing loss is a question to be decided in the future, should this case proceed to trial.

## IV.    CONCLUSION

For all of the foregoing reasons, James Gibbs requests this Court to enter judgment in his favor and against Bistrian, with prejudice, and all other relief requested.

Date: July 11, 2023

_/s/Jeffrey M. Scott, Esquire_
Jeffrey M. Scott, Esquire
jscott@archerlaw.com
Shelley R. Smith, Esquire
srsmith@archerlaw.com
Archer & Greiner, P.C.
THREE LOGAN SQUARE
SUITE 3500
1717 Arch Street
Philadelphia, PA 19103
jscott@archerlaw.com
Telephone:      (215) 963-3300
Facsimile:      (215) 963-9999
_Attorneys for Defendant James Gibbs_

23

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified a copy of James Gibbs' Reply in Support of Motion for Summary Judgment was filed on the ECF's Court's Filing System and is available for downloading and reviewing by all counsel of record.

Date: July 11, 2023

*/s/Jeffrey M. Scott, Esquire*
Jeffrey M. Scott, Esquire
jscott@archerlaw.com
Shelley R. Smith, Esquire
srsmith@archerlaw.com
Archer & Greiner, P.C.
THREE LOGAN SQUARE
SUITE 3500
1717 Arch Street
Philadelphia, PA 19103
jscott@archerlaw.com
Telephone:      (215) 963-3300
Facsimile:      (215) 963-9999
*Attorneys for Defendant James Gibbs*

227383275 v12

24