# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PETER BISTRIAN

                   Plaintiff,

     v.

WARDEN TROY LEVI, FDC
PHILADELPHIA, *et al.*,

                 Defendants.

CIVIL ACTION NO.  08-3010

## <u>MEMORANDUM OPINION</u>

Rufe, J.                                        October 19, 2023

Plaintiff Peter Bistrian filed this lawsuit against the federal government and several officers of the Federal Detention Center ("FDC") in Philadelphia for failing to protect him from other prisoners during his pretrial detention. Bistrian's claims against the individual officers, brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,[1] were tried before a jury. The officers were found not liable.[2] After the trial concluded, the government produced previously undisclosed evidence relevant to Bistrian's claims, which formed the basis for the Court's decision to grant Bistrian a new trial against Defendant James Gibbs, a Lieutenant in the Special Investigative Services ("SIS") at the FDC.[3] Defendant Gibbs now moves for summary judgment. In response, Plaintiff moves to rest upon his prior submissions concerning summary judgment or for alternate relief. For the reasons below, Plaintiff's motion is granted, and Defendant's motion is granted in part and denied in part.

---

[1] 403 U.S. 388 (1971).

[2] Verdict Form [Doc. No. 394]. Immediately after the jury trial concluded, the Court conducted a bench trial on Plaintiff's separate claims against the government under the Federal Tort Claims Act (FTCA).

[3] *Bistrian v. Levi*, 517 F. Supp. 3d 335 (E.D. Pa. 2021).

## I.     BACKGROUND

The Court assumes familiarity with the facts of this case, which are reviewed in detail in prior opinions of this Court.[4] Given the protracted history of this litigation, the Court writes principally for the benefit of the parties and recites only the facts essential to its disposition.

### A.  Factual Background[5]

In 2006, Plaintiff Peter Bistrian was a detainee at the FDC while awaiting trial on federal charges.[6] Bistrian was housed in the Secure Housing Unit ("SHU") of the FDC from, as relevant here, January 25, 2006 to December 8, 2006.[7] Defendant James Gibbs was a Lieutenant in the FDC's SIS office from 2004 to 2007.[8] The SIS oversaw investigations of inmate disciplinary infractions and monitored and investigated gang activity.[9]

In approximately April and May 2006, Bistrian served as an orderly, a job which allowed him to work outside of his cell.[10] Gibbs testified that inmates in the SHU often attempted to pass notes by using orderlies as intermediaries and, accordingly, Gibbs told Bistrian, "if they do that we want to read them first," because "obviously I want to read that information before it gets to

---

[4] *See, e.g.*, *Bistrian*, 517 F. Supp. 3d 335; *Bistrian v. Levi*, No. 08-3010, 2022 WL 888878 (E.D. Pa. Mar. 25, 2022).

[5] Contrary to Judge Rufe's Policies and Procedures for Summary Judgment, the parties did not agree upon a joint statement of undisputed material facts. Instead, Defendant filed his own statement of facts, and Plaintiff responded with an answer containing his denials or admissions (including additional facts and various clarifications). Def.'s Statement of Facts [Doc. No. 552-4]; Pl.'s Resp. Def.'s Statement of Facts [Doc. No. 560]. Defendant then styled the factual background section of his reply brief on the merits as a "Statement of Undisputed Material Facts," without any representation as to whether Plaintiff agreed upon that statement as submitted. Def.'s Reply Supp. Mot. Summ. J. 1 [Doc. No. 566]. Finally, Defendant filed a separate, third-order response to Plaintiff's objections to Defendant's original contested statement of facts. Def.'s Reply Statement of Facts [Doc. No. 567]. As Plaintiff is the non-moving party, the Court draws the factual background from Plaintiff's response to Defendant's statement of facts, the undisputed portions of Defendant's statement of facts, and the documents of record.

[6] *Bistrian*, 2022 WL 888878 at *1.

[7] Def.'s Statement of Facts ¶ 6 [Doc. No. 552-4].

[8] Def.'s Statement of Facts ¶ 12 [Doc. No. 552-4].

[9] *Bistrian*, 517 F. Supp. 3d at 337.

[10] *Id.*

where it's got to go."[11] One day, while Bistrian was sweeping a hallway, an inmate slipped a note under the door and asked Bistrian to deliver it to another cell.[12] The note was between Kaboni Savage, a "drug kingpin" in Philadelphia, and Steve Northington, a co-defendant who was involved in Savage's drug ring.[13] Both were considered "dangerous inmates."[14] Savage and Northington were involved in witness intimidation, death threats to witnesses and law enforcement, and a firebombing that killed six family members of the government's chief cooperating witness.[15]

Bistrian delivered the first note to its intended recipient, but when another note was slid out from under the same door three or four days later, Bistrian notified an SIS officer.[16] Bistrian and the SIS then established a process where Bistrian would allow future notes to be intercepted and photocopied before delivering them.[17] One day, according to Bistrian, the SIS kept the original copy of a message and returned a photocopied version, which Bistrian unknowingly delivered.[18] Bistrian recounted at trial that Northington began yelling and screaming threats after drawing the obvious conclusion that Bistrian was cooperating.[19] Bistrian told Gibbs he had

---

[11] Gibbs Test., Trial Tr. July 16, 2019, at 200–02.

[12] Bistrian Test., Trial Tr. July 9, 2019, at 49–50.

[13] *Bistrian*, 517 F. Supp. 3d at 337.

[14] Jezior Test., Trial Tr. July 10, 2019, at 236.

[15] *Bistrian v. Levi*, 912 F.3d 79, 84 n.4 (3d Cir. 2018) (*Bistrian II*).

[16] Bistrian Test., Trial Tr. July 9, 2019, at 50–51.

[17] Pl.'s Resp. to Def.'s Statement of Facts ¶ 17 [Doc. No. 560]; Bistrian Test., Trial Tr. July 9, 2019, at 69; *see also* Def.'s Statement of Facts Ex. B, at 5–13 [Doc. No. 552-3] (FBI report dated May 15, 2006 with scans of intercepted letters and photographs between Savage and Northington).

[18] Pl.'s Resp. to Def.'s Statement of Facts ¶ 17 [Doc. No. 560].

[19] Bistrian Test., Trial Tr. July 9, 2019, at 70.

delivered a photocopy and thought his life was in danger.[20] Gibbs then removed Bistrian as an orderly for his safety.[21] At some point after Bistrian was exposed, Northington posted a prominent sign on his cell door that read, "Stop Snitching."[22]

On June 30, 2006, eight weeks after Bistrian had delivered the wrong envelope, prison officials placed Bistrian, Northington, and other inmates together in a recreation area.[23] Northington and his associates viciously assaulted Bistrian, causing serious injuries.[24]

### B.  Procedural Background

In 2008, Bistrian brought failure-to-protect claims under *Bivens* against Defendant James Gibbs and other individual officers, alleging that they were deliberately indifferent when they placed him in a recreation pen with Northington.[25] In March 2018, this Court ruled on Defendant prison officials' joint motion for summary judgment, finding, as relevant here, that Plaintiff Bistrian's Fifth Amendment failure-to-protect claim against Defendant Gibbs survived summary judgment.[26] In May 2018, Gibbs appealed.[27] In December 2018, the Third Circuit affirmed this Court's denial of summary judgment as to the failure-to-protect claims against certain defendant

---

[20] Def.'s Statement of Facts ¶ 17–18 [Doc. No. 552-4].

[21] *Id.* at ¶ 20.

[22] *Id.* at ¶ 28; Pl.'s Objections to Def. Statement of Facts ¶ 25 [Doc. No. 560], Ex. A [Doc. No. 560-1]; *Bistrian v. Levi*, No. 08-3010, 2023 WL 1100994, at *1 (E.D. Pa. Jan. 30, 2023).

[23] Def.'s Statement of Facts ¶ 25 [Doc. No. 552-4].

[24] Pl.'s Resp. to Def.'s Statement of Facts ¶ 27 [Doc. No. 560].

[25] Bistrian also brought claims against the United States, arising from a second, unrelated attack by another inmate (the "Taylor attack"), under the FTCA. 28 U.S.C. §§ 1346(b), 2671–80. The claims were bifurcated, with the *Bivens* claims tried to a jury, and the FTCA claims tried to the Court.

[26] *Bistrian v. Levi*, 299 F. Supp. 3d 686, 699–702 (E.D. Pa. 2018), *aff'd in relevant part*, 912 F.3d 79 (3d Cir. 2018).

[27] Def.'s Notice of Appeal [Doc. No. 248].

officials (including Gibbs) and reversed on other claims which are no longer at issue here.[28] In February 2019, the mandate issued.[29]

In July 2019, the *Bivens* claims were tried to a jury. Gibbs testified that he did not impose a separation order to keep Northington away from Bistrian, out of concern that doing so would place a "spotlight" on Bistrian.[30] But Gibbs described other steps he took which he believed would keep Bistrian safe, such as removing him from his position as an orderly and checking in with Bistrian during his daily rounds.[31] The jury found that Bistrian was facing a substantial risk of serious harm at the time of the attack, and that Gibbs had actual knowledge of the substantial risk, but it did not find that Gibbs had been deliberately indifferent to the risk Bistrian faced.[32] The jury found in favor of all Defendants.[33] On April 21, 2020, Bistrian moved for a new trial as to Defendant Gibbs.[34]

On May 8, 2020, Bistrian filed a motion to compel the United States to review and produce documents held by the Federal Bureau of Investigation ("FBI") in connection with the *Bivens* claims, based on "revelations . . . that the Government failed to review critical FBI documents readily available to it" and in light of "a consistent pattern of . . . failure to produce existing evidence . . . and misrepresentations concerning the existence of evidence . . . ."[35] On May 20, 2020, while the motion to compel was pending, the United States produced a highly

---

[28] *Bistrian II*, 912 F.3d at 90–94, 96.

[29] Mandate of Ct. Appeals [Doc. No. 258].

[30] Gibbs Test., Trial Tr. July 17, 2019, at 80–81, 82–83, 98–101.

[31] *Id.* at 80–82.

[32] *See* Verdict Form [Doc. No. 394].

[33] *Id.*

[34] Pl.'s Mot. New Trial as to James Gibbs [Doc. No. 462].

[35] Pl.'s Mot. Compel 1–2 [Doc. No. 465].

relevant, previously undisclosed file generated from an investigation the FBI had conducted—unbeknownst to Bistrian—into the Northington attack ("the Northington Attack File").[36] The Northington Attack File contained relevant evidence, including high-quality color photographs of the "Stop Snitching" sign.[37] The Court granted in part Bistrian's motion to compel additional discovery, granted his motion for a new trial against Gibbs, and imposed sanctions against the government for failing to timely disclose the relevant evidence.[38]

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[39] Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."[40] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[41] A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[42]

---

[36] *Bistrian*, 517 F. Supp. 3d at 340; Pl.'s Mem. Supp. Mot. Sanctions [Doc. No. 495] at ECF pages 36–45; *see* Pl.'s Mem. Supp. Mot. Sanctions [Doc. No. 495] at 4 n.2 (noting the file "consisted of 285 pages").

[37] *See Bistrian*, 517 F. Supp. 3d at 341–44 (discussing newly discovered evidence).

[38] Order Feb. 5, 2021 [Doc. No. 491]; Order Mar. 25, 2022 [Doc. No. 519]; *see also Bistrian*, 2023 WL 1100994 (denying government's motion for reconsideration of the Court's order imposing sanctions).

[39] Fed. R. Civ. P. 56(a).

[40] *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).

[41] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[42] *Id.*

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[43] Although a court may not weigh the evidence or make credibility determinations at the summary judgment stage,[44] the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[45] This requirement upholds the "underlying purpose of summary judgment," which is "to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[46] Summary judgment is therefore appropriate only if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact.[47]

## III.    DISCUSSION

Defendant Gibbs's motion raises several arguments. First, Gibbs asks the Court to grant summary judgment based on the Supreme Court's recent decision in *Egbert v. Boule*,[48] which, he argues, precludes recognizing a *Bivens* remedy for Plaintiff's failure-to-protect claim under the Fifth Amendment's Due Process Clause.[49] Second, Gibbs asserts a qualified-immunity defense, on the ground that even assuming a *Bivens* remedy is available, a genuine issue of material fact does not exist regarding whether Gibbs violated Bistrian's clearly established constitutional

---

[43] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[44] *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[45] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted).

[46] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[47] *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[48] 142 S. Ct. 1793 (2022).

[49] Def.'s Mot. Summ. J. [Doc. No. 552].

rights.[50] Third, Gibbs argues he is entitled to summary judgment on all of Bistrian's alleged damages as to back pain and diagnosis of post-traumatic stress disorder ("PTSD"), because a factfinder could not determine which of these categories of damages is attributable to the Northington attack as opposed to a second, unrelated assault by another inmate (for which Bistrian has already been awarded damages after a separate bench trial).[51] Fourth, Gibbs asserts that he is entitled to summary judgment on Bistrian's alleged damages as to hearing loss, because Bistrian did not present expert testimony that he suffered hearing loss due to either assault.[52]

The Court addresses each of these arguments in turn.

### A.  The Mandate Rule and Law of the Case

At the risk of understatement, the Court is not writing on a blank slate in evaluating the viability of Bistrian's failure-to-protect claim under *Bivens* or considering whether there are genuine issues of material fact at the summary judgment stage. Much ink has been spilled by this Court and the Court of Appeals in analyzing and ruling on these issues since this case was initiated over fifteen years ago.[53]

---

[50] *Id.* at 3–4.

[51] *Id.* at 4–5; *Bistrian v. Levi*, No. 08-3010, 2020 WL 6951048, at *34 (E.D. Pa. Aug. 21, 2020) (Findings of Fact and Conclusions of Law) (finding United States liable under the FTCA and awarding Plaintiff "the sum of $251,340.81 for past costs of care and $1,000,000.00 for future costs of care, as well as $500,000.00 for pain and suffering").

[52] *Id.* at 5.

[53] *See, e.g.*, *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (*Bistrian I*) ("[I]t is well established that, under the Constitution's guarantees of due process, an unsentenced inmate is entitled, at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment. . . . Therefore, Bistrian—as an inmate who at all relevant times was either not yet convicted or convicted but not yet sentenced—had a clearly established constitutional right to have prison officials protect him from inmate violence.") (quotation marks and citation omitted); *Bistrian*, 299 F. Supp. 3d at 686, 699–701 (denying summary judgment as to Gibbs with respect to Bistrian's Fifth Amendment substantive due process claim for failure to protect); *Bistrian II*, 912 F.3d at 90 ("[A]n inmate's claim that prison officials violated his Fifth Amendment rights by failing to protect him against a known risk of substantial harm does not present a new *Bivens* context.").

This Court is bound by the rulings of the Third Circuit until that court changes its position or is overruled by the Supreme Court.[54] A closely related set of principles, known as "law of the case rules," have developed out of federal courts' understandable reluctance to reopen already-decided issues throughout the lifetime of a given case.[55] When courts have been asked to reconsider one of their own prior rulings, "[l]egions of cases . . . illustrate law-of-the-case refusals to reconsider a matter once resolved in a continuing proceeding."[56] That said, this "simple principle of disciplined self-consistency," although compelling, is understood to be a matter of judicial discretion and not necessarily based in a lack of authority.[57]

Another law of the case rule, known as the "mandate rule," applies when an appellate decision is followed by further district court proceedings in the same case.[58] The Third Circuit has summarized the essential thrust of the mandate rule as follows:

> It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.
>
> A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.[59]

---

[54] *See Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965, 970 (3d Cir. 1979) ("Precedents set by the higher courts are conclusive on the lower courts, and leave to the latter no scope for independent judgment or discretion.") (modifications and citation omitted) (quoting H.C. Black, Law of Judicial Precedents 10 (1912)); *Winters v. Akzo Nobel Surface Chemistry, LLC*, No. 19-5398, 2020 WL 2474428, at *4 (E.D. Pa. May 13, 2020).

[55] 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478 (3d ed.) [hereinafter Wright & Miller].

[56] *Id.*

[57] *Id.*

[58] *Casey v. Planned Parenthood of Se. Pa.*, 14 F.3d 848, 856 (3d Cir. 1994) (describing the mandate rule as "the most compelling" among law of the case rules, which bind federal courts "during the course of a single continuing lawsuit") (citation omitted); *see also* Wright & Miller § 4478.

[59] *Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985) (citations omitted).

The mandate rule is not a matter of judicial self-restraint or discretion. Rather, the rule is founded upon more fundamental and binding principles of authority, because "[t]he very structure of a hierarchical court system demands as much."[60]

There are limited exceptions to the mandate rule. It is well recognized, for example, that a district court may depart from an appellate court's mandate when there is an intervening change in controlling law.[61] Other exceptional circumstances may justify a departure, as in the case of new evidence becoming available, or where applying the mandate rule would cause manifest injustice or disserve judicial economy, but such circumstances must be shown to be clear and compelling.[62] Similarly, under the law-of-the-case doctrine, although "[a] court has the power to revisit prior decisions of its own . . . as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'"[63]

The critical question before this Court, then, is whether the Supreme Court can plainly be said to have overruled the operative Third Circuit ruling which otherwise controls this case—or, relatedly, whether the Third Circuit can be understood to have reversed course from its prior ruling, either on its own initiative or based on superseding guidance from the Supreme Court.[64] The Court proceeds with particular caution, given the thoroughness of the appeals court's prior

---

[60] *Id.*

[61] *Casey*, 14 F.3d at 862; Wright & Miller § 4478.3.

[62] *Casey*, 14 F.3d at 862; Wright & Miller § 4478.3; *cf. AL Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601, 605 (3d Cir. 1997).

[63] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).

[64] *See, e.g.*, *Sheet Metal Workers' Int'l Ass'n Loc. Union No. 19 v. U.S. Dep't Veterans Affs.*, No. 96-4120, 1997 WL 34681, at *6 (E.D. Pa. Jan. 28, 1997) ("This court, however, is bound by the rulings of the Third Circuit until that court changes its position or its decisions are overruled by the Supreme Court.").

review and its unambiguous guidance as to these issues and facts. The Court will also consider whether other exceptional circumstances warrant diverging from the Third Circuit's ruling.

**B. Whether Bistrian's Fifth Amendment Failure-to-Protect Claim Presents a New *Bivens* Context**

1. *Supreme Court and Third Circuit* Bivens *Precedent Before* Egbert

The Supreme Court's recent decisions in *Abbasi*, *Hernandez*, and *Egbert* have shifted the landscape for how federal courts throughout the country approach *Bivens* claims.[65] However, as the Third Circuit last noted on appeal in this case, even if *Abbasi* "changed the framework of analysis for *Bivens* claims generally," it does not follow that "the particular right to *Bivens* relief for prisoner-on-prisoner violence" has ceased to exist.[66] Similarly, neither *Hernandez* nor *Egbert* purported to upend the core framework *Abbasi* established.

In 2017, the Supreme Court held in *Abbasi* "that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," and it described three contexts in which *Bivens* actions have been recognized:[67] the *Bivens* case itself,[68] finding an implied cause of action under the Fourth Amendment's right against unreasonable searches and seizures; *Davis v. Passman*,[69] allowing a claim against a former member of Congress for gender discrimination in violation of the equal protection component of the Fifth Amendment's Due Process Clause; and *Carlson v. Green*,[70] recognizing a *Bivens* claim for inadequate prison medical care under the Eighth Amendment's

---

[65] *Ziglar v. Abbasi*, 582 U.S. 120 (2017); *Hernandez v. Mesa*, 140 S. Ct. 735 (2020); *Egbert v. Boule*, 142 S. Ct. 1793 (2022); *see also Mack v. Yost*, 968 F.3d 311, 317 (3d Cir. 2020) ("*Abbasi* reflected a 'notable change' in the Supreme Court's attitude toward creating an implied damages remedy directly from the Constitution . . . .").

[66] *Bistrian II*, 912 F.3d at 94.

[67] *Abbasi*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)); *id.* at 130–31.

[68] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[69] 442 U.S. 228 (1979).

[70] 446 U.S. 14 (1980).

Cruel and Unusual Punishments Clause. The *Abbasi* decision established a two-part inquiry for evaluating whether a *Bivens* cause of action should be implied: first, courts must determine whether a case presents a new context, *i.e.*, whether the case "is different in a meaningful way from previous *Bivens* cases" decided by the Supreme Court; and second, if the case is found to be an extension into a new *Bivens* context, courts must ask whether there are "special factors counseling hesitation in the absence of affirmative action by Congress."[71]

In 2018, the Third Circuit decided *Bistrian II* on appeal in this case, applying the *Abbasi* two-part standard to find that Bistrian's failure-to-protect claim "does not present a new *Bivens* context."[72] In so ruling, the *Bistrian II* court cited extensively to the Supreme Court's decision in *Farmer v. Brennan*,[73] which it viewed as an explicit recognition of *Bivens* claims against prison officials arising from inmate-on-inmate violence.[74] Critically, the Third Circuit considered and rejected the notion that *Farmer* was implicitly overruled by *Abbasi*, notwithstanding that "*Abbasi* identified three *Bivens* contexts and did not address, or otherwise cite to, *Farmer*."[75] The Third Circuit "decline[d] to conclude that the Supreme Court's more recent cases have, by implication, overruled an earlier precedent," because, it posited, "[i]t may be that the [Supreme] Court simply viewed the failure-to-protect claim as not distinct from the Eighth Amendment deliberate indifference claim in the medical context."[76]

---

[71] *Abbasi*, 582 U.S. at 139, 136 (quotation marks and citation omitted).

[72] *Bistrian II*, 912 F.3d at 90.

[73] 511 U.S. 825 (1994).

[74] *Bistrian II*, 912 F.3d at 90–91 ("*Farmer* practically dictates our ruling today because it is a given that the Fifth Amendment provides the same, if not more, protection for pretrial detainees than the Eighth Amendment does for imprisoned convicts.") (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 188 n.10 (3d Cir. 1993)).

[75] *Bistrian II*, 912 F.3d at 91 ("*Farmer* continues to be the case that most directly deals with whether a *Bivens* remedy is available for a failure-to-protect claim resulting in physical injury.").

[76] *Id.*

The *Bistrian II* court then evaluated whether there are special factors to consider—although noting that, under *Abbasi*, "there is no need to address the second step" if a court concludes that a *Bivens* claim does not present a new context in the first step—and it concluded that "a special factors analysis does not counsel hesitation . . . ."[77] The Third Circuit found unpersuasive the existence of alternative remedies—such as those under the FTCA, the prison administrative grievance process, and writs of habeas corpus—and it concluded that congressional silence in the Prison Litigation Reform Act ("PLRA") was not sufficient evidence of congressional intent that *Bivens* remedies be unavailable in cases like Bistrian's.[78] It also rejected the argument that separation-of-powers principles counsel against providing a *Bivens* remedy in cases involving prisoner-on-prisoner violence based on an officer's deliberate indifference.[79]

In 2020, the Supreme Court decided *Hernandez v. Mesa*,[80] which declined to recognize *Bivens* claims under the Fourth and Fifth Amendments arising from a cross-border shooting by a United States Border Patrol agent, because the claims "assuredly ar[ose] in a new context" and, under the second step of the *Abbasi* analysis, there were "multiple, related factors" that counseled hesitation.[81]

---

[77] *Id.* at 92–93.

[78] *Id.*

[79] *Id.*

[80] *Hernandez v. Mesa*, 140 S. Ct. 735 (2020).

[81] *Id.* at 743–47 (discussing how a *Bivens* remedy for cross-border shootings by U.S. Border Patrol agents implicates foreign relations and national security concerns); *see also Mack v. Yost*, 968 F.3d 311, 324 (3d Cir. 2020) (finding after *Hernandez* that inmate's First Amendment retaliation claim against federal prison officials was an inappropriate *Bivens* expansion but suggesting continued viability of Fifth Amendment duty-to-protect claim under *Bistrian II*).

In 2021, the Third Circuit decided *Shorter v. United States*, its most unequivocal post-*Hernandez* endorsement of *Farmer*, finding that a transgender plaintiff had a cognizable *Bivens* claim against officials she alleged "violated her Eighth Amendment rights by displaying deliberate indifference to the substantial risk that another inmate would assault her."[82] The court held in no uncertain terms that plaintiff's case fell "comfortably within one of the few contexts in which the Supreme Court has recognized a *Bivens* remedy."[83] In rejecting the government's arguments that the case presented a new *Bivens* context, the court elaborated:

> Our Court's precedent in *Bistrian II* covers this argument. In that case, we considered a *Bivens* claim from a prisoner who was beaten by fellow inmates after they learned he was cooperating with a prison surveillance operation. Like Shorter, Bistrian claimed prison officials had failed "to protect him from a substantial risk of serious injury at the hands of other inmates." There, as here, the defendants contended Bistrian's claim presented a new *Bivens* context. We disagreed, reiterating that under our case law and the Supreme Court's longstanding precedent in *Farmer*, a federal prisoner "has a clearly established constitutional right to have prison officials protect him from inmate violence" and has a damages remedy when officials violate that right.
>
> Because *Bistrian's claim was not meaningfully different from the claim at issue in* Farmer*, we concluded the latter case "practically dictated our ruling" in the former. So too here.*[84]

For the avoidance of any doubt, the Third Circuit commented that future cases need not meet the same "remarkable" degree of factual similarity as between the plaintiffs in *Shorter* and *Farmer* for a court to find that a case does not present a new *Bivens* context.[85]

---

[82] *Shorter v. United States*, 12 F.4th 366, 369 (3d Cir. 2021).

[83] *Id.*

[84] *Id.* at 372–73 (quoting *Bistrian II*, 912 F.3d at 88–94) (emphasis added) (modifications and citations omitted).

[85] *Id.* at 373 n.6.

In March 2022, the Third Circuit issued its decision in *Dongarra v. Smith*.[86] Defendant argues that *Dongarra* now "cloud[s]" the circuit court's prior conclusions in *Bistrian II* and *Shorter* that *Farmer* remains good law.[87] The *Dongarra* decision cannot, however, be read to cast doubt on the availability of Bistrian's Fifth Amendment claim here, which was already ruled upon in *Bistrian II*. The court in *Dongarra* held that the plaintiff was unable to pursue *Bivens* damages only because the plaintiff was never actually attacked.[88] To the extent that the panel in *Dongarra* gave any indication about how it *would have* ruled in a hypothetical alternative scenario where an attack indeed materialized, such comments are best viewed as dicta.

   2. *Post-*Egbert *Landscape*

Defendant would have this Court hold that, after the Supreme Court's most recent decision in *Egbert v. Boule*,[89] Bistrian may no longer pursue his failure-to-protect claim under *Bivens*.[90] The Court disagrees.

In 2022, the Supreme Court held in *Egbert* that a plaintiff bed-and-breakfast operator could not bring *Bivens* claims against a United States Border Patrol agent for excessive force under the Fourth Amendment and for retaliation under the First Amendment.[91] The *Egbert*

---

[86] *Dongarra v. Smith*, 27 F.4th 174 (3d Cir. 2022).

[87] Def.'s Reply Supp. Mot. Summ. J. 4 [Doc. No. 566]. Defendant cites a Report and Recommendation ("R&R") from another district in this circuit for support. *Milhouse v. Heath*, No. 15-1400, 2022 WL 18860932, at *8 n.7 (M.D. Pa. Dec. 30, 2022), *adopted*, 2023 WL 2212987 (M.D. Pa. Jan. 24, 2023). Even upon a general review, for persuasiveness, of the R&R Defendant cites, the Court finds it relevant that the magistrate judge concluded "*Dongarra* did not overrule *Bistrian* [*II*] because *Dongarra* is not an *en banc* decision," and that *Bistrian II* remains "binding precedent . . . ." *Milhouse*, 2022 WL 18860932 at *8 n.7.

[88] *Dongarra*, 27 F.4th at 180 ("Though injunctive relief was available while the prison was actively violating Dongarra's rights, he cannot get damages under *Bivens* for Smith's failure to protect him *from an attack that never happened*.") (emphasis added); *id.* at 181 ("*Bivens* damages are unavailable for an assault that never happened.").

[89] *Egbert v. Boule*, 142 S. Ct. 1793 (2022).

[90] Def.'s Mot. Summ. J. 1–3 [Doc. No. 552]; Def.'s Reply Supp. Mot. Summ. J. 4 [Doc. No. 566] (citing *Milhouse*, 2022 WL 18860932).

[91] *Egbert*, 142 S. Ct. at 1804–09.

decision applied the two-part analysis from *Abbasi* and *Hernandez* regarding when courts may imply a *Bivens* remedy, but added an observation that the two established steps—*i.e.*, whether the case presents a new *Bivens* context and whether there are special factors counseling against implying a damages remedy—"often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."[92]

As discussed above, the Third Circuit previously applied the same two-part framework on appeal in this case, and it concluded that Bistrian's failure-to-protect claim *against this Defendant* (among others) could proceed past summary judgment because it did not arise in a new *Bivens* context.[93] While the *Egbert* decision provided new tools for determining when a new *Bivens* context arises under the first step—for example, cases "involv[ing] a 'new category of defendants'"—it did not overrule the availability of implied *Bivens* actions falling under the previously established contexts.[94]

Three months after *Egbert*, the Third Circuit provided its most comprehensive analysis of that decision, holding in *Xi v. Haugen* that the Supreme Court's reasoning in *Egbert* bore "particular significance for [the *Xi*] appeal" because Xi's claims against an FBI counterintelligence agent and other federal officials, like Egbert's claims against a Border Patrol agent, "implicated national security interests . . . ."[95] The Third Circuit commented that, under its reading of *Egbert*, "the [Supreme] Court went so far as to suggest that any extension to a new

---

[92] *Id.* at 1803.

[93] *Supra* Section III.B.1; *Bistrian II*, 912 F.3d at 93–94.

[94] *Egbert*, 142 S. Ct. at 1803; *id.* at 1823 ("[T]he Court unmistakably stops short of overruling *Bivens* and its progeny, and appropriately so. . . . [T]he lower courts should not read it to render *Bivens* a dead letter.") (Sotomayor, J., concurring).

[95] *Xi v. Haugen*, 68 F.4th 824, 833 (3d Cir. 2023).

context may be *ultra vires*."[96] Applying the Supreme Court's guidance in *Egbert*, the Third

Circuit concluded that Xi's Fourth and Fifth Amendment claims—arising from the government's

investigation, arrest, and indictment based on mistaken allegations that he was a "technological

spy" for China—arose in a new *Bivens* context, implicated national security interests, and had

alternative remedies available, all of which counseled against the judicial creation of a *Bivens*

remedy and therefore warranted dismissal.[97]

Therefore, although the Third Circuit has interpreted *Egbert* to suggest a *de facto*

prohibition on *any* extensions to a new *Bivens* context, it did not call into question the decisions

in *Shorter* and *Bistrian II*, which determined that Bistrian's Fifth Amendment failure-to-protect

claims do not arise in a new context.[98] Moreover, while the *Xi* opinion did not explicitly

elaborate on the continued viability of failure-to-protect claims after *Egbert*, the panel did cite to

*Bistrian II* (among other cases) in support of its observation that the Third Circuit has followed

the Supreme Court's guidance by "refus[ing] to extend *Bivens* except in one of [the] three

established contexts"—and in a parenthetical summary, it described the *Bivens II* decision as

having "appl[ied] a *Bivens* remedy to [a] Fifth Amendment failure-to-protect claim, but not to [a]

Fifth Amendment punitive detention claim or First Amendment retaliation claim."[99]

Defendant's remaining arguments on this issue are unavailing. He cites a handful of

district court decisions—some from within this circuit and some from elsewhere—that are not

---

[96] *Id.*

[97] *Id.* at 834–37.

[98] *Cf. Snowden v. Henning*, 72 F.4th 237, 239 (7th Cir. 2023) ("If the context is not new, then the claim may proceed.").

[99] *Id.* at 832–33, 833 n.7.

binding upon this Court, unlike the Third Circuit's decision in *Bistrian II*.[100] It is a hornbook

principle in federal courts that "there is no such thing as 'the law of the district,'" and "[t]he

doctrine of *stare decisis* does not compel one district court judge to follow the decision of

another."[101] This is particularly true where the cases are factually distinguishable from this

case.[102] Moreover, although some district courts have cast doubt on the viability of failure-to-

protect claims after *Egbert*, other courts continue to view *Farmer* and *Bistrian II* as controlling

precedent in this circuit.[103]

       Defendant also cites recent decisions from the Fourth and Ninth Circuits. Those circuits

ascribe more significance to the Supreme Court's omission of *Farmer* in its summaries of prior

*Bivens* cases.[104] In doing so, the Fourth Circuit explicitly framed its reasoning as a departure

from the Third Circuit's approach in *Bistrian II*.[105] The established rule remains that "the

decisions of other circuits, while persuasive, are not binding on the district courts in this

---

[100] *See, e.g.*, *Milhouse v. Heath*, No. 15-1400, 2022 WL 18860932, at *8 n.7 (M.D. Pa. Dec. 30, 2022), *adopted*, 2023 WL 2212987 (M.D. Pa. Jan. 24, 2023); *Schubert v. Mcyntre*, No. 19-66, 2023 WL 2192944 (E.D. Tex. Feb. 1, 2023), *adopted*, 2023 WL 2188703 (E.D. Tex. Feb. 23, 2023); *Lucero v. United States*, No. 20-1967, 2022 WL 980858 (D. Or. Mar. 31, 2022); *Palmer v. Gardner*, No. 22-113, 2023 WL 3231614 (N.D. Iowa May 3, 2023); *Johnson v. Terry*, No. 18-1899, 2023 WL 3215366 (N.D. Ga. Mar. 22, 2023).

[101] *Threadgill v. Armstrong World Indus.*, 928 F.2d 1366, 1371 (3d Cir. 1991) (citation and quotation marks omitted); *see also Daubert v. NRA Grp., LLC*, 861 F.3d 382, 395 (3d Cir. 2017) ("[A] district court's decision, whether published in a reporter or not, binds only the parties in *that* case and no judge in any other case.") (citation and quotation marks omitted); *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case.").

[102] *See, e.g.*, *Landis v. Moyer*, 610 F. Supp. 3d 649 (M.D. Pa. 2022) (evaluating Eighth Amendment excessive-force claim and First Amendment retaliation claim); *Oden v. True*, No. 18-600, 2020 WL 4049922 (S.D. Ill. July 20, 2020) (addressing Eighth Amendment conditions-of-confinement claim); *Choice v. Michalak*, No. 21-60, 2022 WL 4079577 (N.D. Ill. Sept. 6, 2022) (considering Fifth Amendment claim of inadequate medical care).

[103] *See, e.g.*, *Orange v. Keen*, No. 22-1019, 2023 WL 5512230 (M.D. Pa. Aug. 25, 2023); *Scott v. United States*, No. 22-0006, 2023 WL 4673271 (M.D. Pa. July 20, 2023).

[104] *See Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023); *Tate v. Harmon*, 54 F.4th 839 (4th Cir. 2022); *Marquez v. Rodriguez*, No. 21-55981, 2023 WL 5733889 (9th Cir. Sept. 6, 2023); *Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254 (9th Cir. Oct. 11, 2022).

[105] *Bulger*, 62 F.4th at 139.

Circuit."[106] This Court is bound by *Bistrian II*—the Third Circuit's directive in this case—and subsequent cases. Accordingly, the Court will deny summary judgment on the basis of an intervening change in law.

### C.  Whether Defendant Gibbs Is Entitled to Qualified Immunity

Defendant Gibbs also invokes the doctrine of qualified immunity, which insulates government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[107] Courts must consider two prongs: first, whether the facts shown "make out a violation of a constitutional right;" and second, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[108] The failure of either prong will result in the official being entitled to qualified immunity, and "[c]ourts need not evaluate the two prongs sequentially."[109]

#### 1.  Clearly Established Constitutional Right

The second prong has already been addressed above.[110] A right is "clearly established" when its "contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."[111] The Third Circuit in *Bistrian II* explained that it was required to consider whether Bistrian's claims could properly be brought under *Bivens* because

---

[106] *United States v. Maury*, 695 F.3d 227, 259 n.27 (3d Cir. 2012).

[107] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (quotation marks omitted).

[108] *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[109] *Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (citing *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012); *Pearson*, 555 U.S. at 236).

[110] *Supra* Section III.B.

[111] *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (quotation marks and citations omitted).

the cognizability of a *Bivens* claim is a question inherent in qualified immunity defenses.[112] The court concluded that Bistrian's Fifth Amendment failure-to-protect claim against Gibbs was indeed cognizable, meaning Bistrian "had a clearly established constitutional right to have prison officials protect him from inmate violence."[113] As previously discussed at length, this Court abides by the Third Circuit's determination because there has not been an intervening change of law sufficient to exempt the Court from the mandate rule.[114]

### 2. *Facts Showing Violation of Constitutional Right*

Defendant further argues that, even if Bistrian's constitutional right to protection by prison officials was clearly established, the facts are insufficient to make out a violation. Courts assessing an assertion of qualified immunity "take the facts in the light most favorable to 'the party asserting the injury.'"[115] Because Defendant raises these arguments at summary judgment, the Court must identify concrete evidence in the record supporting the non-moving party's opposition to summary judgment, but the Court may not weigh the evidence or make credibility determinations.[116]

Defendant has raised these arguments many times before. In denying a joint motion to dismiss, this Court preliminarily rejected qualified immunity arguments as to Plaintiff's failure-to-protect claims because Plaintiff had sufficiently alleged that the prison officials knew Plaintiff's cooperation had become exposed, that they knew of the threat to Plaintiff's safety, and

---

[112] *Bistrian II*, 912 F.3d at 88.

[113] *Id.* at 94 (quoting *Bistrian I*, 696 F.3d 352, 367 (3d Cir. 2012)).

[114] *Supra* Section III.B.

[115] *Bistrian II*, 912 F.3d at 83 n.2 (quoting *Scott v. Harris*, 550 U.S. 372, 377 (2007)).

[116] *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

that Plaintiff was nevertheless placed in a recreation yard with the inmates who were known to be a danger to him.[117] The Third Circuit affirmed in relevant part.[118]

Then, following the initial close of fact discovery and in ruling on the prison officials' joint motion for summary judgment, this Court determined that "Plaintiff ha[d] pointed to evidence which suggest[ed] that a reasonable jury could find that some Defendants' deliberate indifference"—including that of Gibbs—"caused the Northington attack and Plaintiff's resulting injuries."[119] The Court considered the evidence in the light most favorable to Plaintiff and determined that Plaintiff had identified evidence suggesting Defendant Gibbs (among others) knew or was aware of the note-passing scheme, the threats Northington made to Plaintiff, and the risk Plaintiff faced once his cooperation was discovered.[120] The Court further held that "Plaintiff ha[d] identified evidence, or disputed issues of material fact, that the officials"—including Gibbs—may have removed Plaintiff as an orderly, but "they did not take action to prevent Plaintiff from encountering Northington in the recreation area."[121] The Court therefore denied summary judgment and concluded that a qualified immunity defense was not available as to Gibbs and certain other officials with respect to the failure-to-protect claims.

On appeal, Defendants asserted that this Court's qualified immunity analysis was not sufficiently particularized as to each claim and each defendant. The Third Circuit rejected that argument in *Bistrian II*, noting that "[t]he Court could not have conducted a one-size-fits-all

---

[117] *Bistrian v. Levi*, No. 08-3010, 2010 WL 3155267, at *7 (E.D. Pa. July 29, 2010).

[118] *Bistrian I*, 696 F.3d 352, 368–71 (3d Cir. 2012).

[119] *Bistrian*, 299 F. Supp. 3d at 701.

[120] *Id.* at 700–01 (citing, *inter alia*, Pl.'s Proposed Statement of Undisputed Facts ¶¶ 144–45, 199, 206–08, 203–14, 217–18, 220–21, 222–25, 227 [Doc. No. 208]; Defs.' Proposed Statement of Undisputed Facts ¶ 146 [Doc. No. 197-2]).

[121] *Id.* at 701.

analysis because it reached different conclusions as to different defendants on each of the claims it let proceed," and it "agree[d] with Bistrian that the defendants' attempts to argue that the District Court erred as a matter of law [were] nothing more than 'a disguised insufficiency of the evidence contention.'"[122] The Third Circuit affirmed this Court's denial of summary judgment and rejection of a qualified immunity defense as to the failure-to-protect claims against Gibbs.[123]

Defendant now argues that the mandate rule does not apply to the Third Circuit's ruling regarding qualified immunity, because that court "summarily determined the trial court conducted a sufficient analysis and remanded the case for trial."[124] In Defendant's view of events, the Third Circuit's mandate was to try the case, this Court abided by that mandate by conducting a jury trial, and the matter is now resolved because Gibbs received a favorable verdict from the jury.[125] The Court disagrees with Defendant's characterization of the appellate decision, but it need not reach the issue because the law of the case—which provides a strong basis for this Court to abide by *its own* prior rulings—is sufficient to dictate the outcome.

Defendant has presented no clear and compelling reasons to depart from the Court's previous decisions. In particular, Defendant has not pointed to new evidence that undercuts this Court's prior ruling granting Plaintiff a new trial.[126] Defendant protests that "[a]n entire trial record now exists that was not part of the original summary judgment record."[127] This Court had the full benefit of the trial record, which it cited extensively, in finding that a new trial was

---

[122] *Bistrian II*, 912 F.3d 79, 87 n.12 (3d Cir. 2018).

[123] *Id.* at 90–94, 96.

[124] Def.'s Reply Supp. Mot. Summ. J. 5 [Doc. No. 566].

[125] *Id.*

[126] *Bistrian*, 517 F. Supp. 3d 335.

[127] Def.'s Reply Supp. Mot. Summ. J. 3 [Doc. No. 566].

necessary due to the emergence of evidence *unfavorable* to Defendant.[128] That opinion closely reviewed two pieces of evidence from the previously withheld Northington Attack File—specifically, handwritten notes from an FBI interview of a correctional officer, and higher-resolution color photographs of the prominent "Stop Snitching" sign Northington placed on the window of Plaintiff's cell.[129] That evidence undercut Defendant's contentions at trial that he was unaware of the threatening sign Northington had placed in Plaintiff's window, that there had been no separation in place between Plaintiff and Northington, that Defendant had a reasonable justification for declining to impose a separation, that Defendant took sufficient steps to protect Bistrian, and that Defendant believed Bistrian was safe at the time of the attack.[130]

Defendant repeatedly emphasizes that, after Plaintiff's cooperation was exposed, Defendant removed Plaintiff as an orderly and placed him into the SHU of the FDC to protect him from an assault.[131] Defendant further emphasizes that he did not personally place Plaintiff into the recreation area with Northington and the other inmates who attacked him.[132] But those facts do not raise novel issues based on newly discovered evidence. This Court's prior opinion denying summary judgment before trial and its later opinion granting a new trial as to Defendant, both of which relied upon concrete evidence in the record, provide extensive explanations for

---

[128] *Bistrian*, 517 F. Supp. 3d at 341–45.

[129] *Id.* at 341.

[130] *Id.* at 341–44.

[131] *Cf.* Pl.'s Objections to Def. Statement of Facts ¶ 20 [Doc. No. 560] ("[I]t is also not disputed that Bistrian's removal as an orderly at the time represented proof positive to other inmates, including Northington, that he was an informant, and placed Bistrian in even further jeopardy."); *id.* ¶ 21 ("It is uncontested that Bistrian was not in his cell for 24 hours on June 30, 2006.").

[132] *Cf. id.* ¶ 26 ("[S]uch placement cold not have occurred without Gibbs' knowledge, consent, acquiescence and/or deliberate indifference to the obvious danger it would present to Bistrian.").

how a reasonable jury could find that Defendant's deliberate indifference caused the Northington attack and Plaintiff's resulting injuries.[133]

Because the Court's prior rulings were not clearly erroneous and remain well reasoned in light of the current factual record, and it would not work a manifest injustice to decline to revisit them, Defendant Gibbs is not entitled to qualified immunity. On the same grounds, the Court will deny Defendant summary judgment as to liability under Plaintiff's failure-to-protect claim, given that the evidence is sufficient to create a genuine dispute of material fact that Defendant's deliberate indifference led to the Northington attack.

### D.  Damages

#### 1.  *Back Pain and Post-Traumatic Stress Disorder*

Defendant asserts that Plaintiff is estopped from seeking damages for back pain and mental pain and suffering, including harm arising from a diagnosis of post-traumatic stress disorder ("PTSD"), alleged to have been caused by the Northington attack. Under Defendant's theory, Plaintiff was previously made whole as to these categories when he was awarded damages under the FTCA arising from a second, unrelated attack by another inmate (the "Taylor attack") after a bench trial before this Court. Defendant's arguments are misplaced.

In awarding Plaintiff damages under the FTCA, the Court was required to address issues related to the apportionment of harms attributable to the Northington attack versus the Taylor Attack, or, as applicable, those attributable to both. The Court elaborated that the government could not, of course, "be held liable for harms attributable *solely* to causes other than the Taylor

---

[133] *Bistrian*, 299 F. Supp. 3d 686; *Bistrian*, 517 F. Supp. 3d 335.

assault, including those attributable to the Northington assault."[134] Applying that principle, the

Court held that the government owed no damages for Plaintiff's shoulder injury or hearing loss,

because it found the Taylor assault was not a substantial factor in causing those injuries.[135] The

Court did, however, find that damages could be awarded for Plaintiff's back pain and PTSD

because those categories of damages which arose *after both attacks* were not apportionable—*i.e.*,

that the government had not met its burden in showing "that Plaintiff's damages can be

segregated into a Northington category, a Taylor category, and an 'aggravation' category."[136]

As Plaintiff correctly raises, the Court drew a clear line between damages that predated

the Taylor attack, and would therefore not be recoverable under the FTCA, and damages

occurring after the Taylor attack, which might be attributable to both the Northington and Taylor

attacks but, the Court found, could not be apportioned.[137] Apportionment concerns are not

implicated where, as here, harms are alleged to have been caused by a single incident (the

Northington attack) with no predecessor tortfeasor assault. Critically, Plaintiff has represented to

the Court that he is now seeking only back pain and PTSD damages suffered during the

approximately three to four months between the Northington attack and the Taylor attack. The

Court expects that Plaintiff will abide by that representation in further proceedings.

---

[134] *Bistrian*, 2020 WL 6951048 at *74.

[135] *Id.*

[136] *Id.*

[137] *See, e.g., id.* at *72 n.355 (citing expert testimony suggesting "that Plaintiff likely suffered from the injuries inflicted in the Northington assault in the interim between that first incident and the Taylor assault," and while the government "could not be liable for any harms that can be attributed solely to the Northington assault, *i.e.*, those that predated the Taylor assault[,] . . . credible expert testimony established that the harms Plaintiff ha[d] suffered *since the Taylor assault* were, to a reasonable degree of medical certainty, the *combined* result of *both* assaults") (emphasis in original, emphasis added in part).

Accordingly, the Court will permit Plaintiff to present evidence at trial, including his own testimony and medical expert testimony, in support of back pain and PTSD damages during the limited time period between the Northington attack and the Taylor attack.

This is not to say that Plaintiff may not have hurdles to overcome in proving the extent of those damages.[138] Regardless of potential evidentiary challenges, however, Plaintiff is entitled to pursue damages in an amount that will fairly compensate him for the full extent of his injuries.[139] The harm Plaintiff alleges to have suffered after the Northington attack but before the Taylor attack was explicitly not addressed in the prior damages award under the FTCA. At bottom, whether Plaintiff is able to establish the existence and extent of his back pain and PTSD damages during the relevant time period is a question for the factfinder, not this Court.

---

[138] For example, Plaintiff testified during the FTCA trial that his back pain "started" after the Northington attack, but it was only the subsequent Taylor attack which "took it to a whole other level." Bistrian Test., Trial Tr. Aug. 8, 2019, at 93. Plaintiff's expert on the Bureau of Prisons system, Timothy Gravette, explained that there was no indication of any back injury in the documentation of Plaintiff's injuries from the Northington assault. *Bistrian*, 2020 WL 6951048 at *34 (citing Gravette Test., Trial Tr. July 11, 2019, at 194–95). Dr. Harry Schwartz, one of Plaintiff's medical experts, gave credible testimony regarding Plaintiff's back pain, but he noted that he had not "been able to examine [Plaintiff] between attack one and attack two," although if he had, he might have been able to "differentiate." *Bistrian*, 2020 WL 6951048 at *72 (citing Schwartz Test., Trial Tr. July 15, 2019, at 95).

Similarly, Dr. Kenneth Weiss, Plaintiff's expert in psychiatry and forensic psychiatry, testified that the Northington attack and the stress of confinement in the SHU "weakened Mr. Bistrian's resilience to further stress" and "predisposed him" to an intensified psychological response to additional trauma. *Bistrian*, 2020 WL 6951048 at *47 (citing Weiss Test., Trial Tr. Aug. 8, 2019, at 187–90). But other testimony and evidence the Court reviewed as to Plaintiff's PTSD diagnosis was linked specifically to the Taylor attack. *See, e.g.*, *Bistrian*, 2020 WL 6951048 at *48 n.234 (discussing assessment of FDC staff psychiatrist, who noted that Plaintiff's PTSD was associated with having been "attacked by another [inmate]," which the Court construed to be a reference to the Taylor attack, not the Northington attack).

[139] *See generally Nudelman v. Gilbride*, 647 A.2d 233, 237 (Pa. 1994).

2. *Hearing Loss*

Defendant finally argues that Plaintiff cannot recover damages for his alleged hearing loss, because Plaintiff has not presented expert testimony establishing that category of damages was caused by the Northington attack.[140] The Court agrees.

As a general matter, expert medical testimony is required to establish causation.[141] Broadly speaking, "the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson."[142] It is for this reason that, when plaintiffs seek to prove causation, "the law requires that expert medical testimony be employed," which bears upon the question of whether "the injury in question did, with a reasonable degree of medical certainty, stem from" the alleged wrongdoing.[143]

At trial on the FTCA claims, Plaintiff testified that his hearing loss began when he was kicked in the head during the Northington assault.[144] But not one of Plaintiff's expert witnesses opined as to the cause of his hearing loss.[145] The Court held that Plaintiff could not meet his burden of showing that the Taylor attack, with a reasonable degree of medical certainty, caused Plaintiff's hearing loss. The same would inevitably be true at trial on Plaintiff's *Bivens* claims arising from the Northington attack.

---

[140] In an inexplicable reversal, Defendant stated in his reply brief that "[w]hether Bistrian can recover for his alleged hearing loss is a question to be decided in the future, should this case proceed to trial." Def.'s Reply Supp. Mot. Summ. J. 22 [Doc. No. 566]. However, given that the issue has been fully briefed by both parties and is likely to arise at trial, the Court will decide it now. Def.'s Mot. Summ. J. 5 [Doc. No. 552]; Pl.'s Opp. Mot. Summ. J. 23–25 [Doc. No. 559].

[141] *Hamil v. Bashline*, 392 A.2d 1280, 1285 (Pa. 1978).

[142] *Id.* (citation omitted).

[143] *Id.* (citations omitted).

[144] *Bistrian*, 2020 WL 6951048 at *46 (citing Bistrian Test., Trial Tr. July 10, 2019, at 60).

[145] *Bistrian*, 2020 WL 6951048 at *46.

Plaintiff responds that expert testimony is not required to establish causation because, he argues, there is an obvious causal relationship between having been kicked in the head and his subsequent hearing loss.[146] However, even medical causation that appears intuitively obvious may require expert testimony, and as a threshold matter, the Court finds no basis in the factual record for concluding that causation here is "obvious" in any event.[147] Indeed, the Court previously found after the FTCA trial that, "[s]o far as the record reflects, the damage to Plaintiff's hearing is consistent with multiple possible causes, including aging and family history."[148] Accordingly, Plaintiff shall not be permitted to present evidence regarding hearing loss damages arising from the Northington attack.

## IV.    CONCLUSION

Plaintiff Bistrian has been pursuing these claims before the Court for over fifteen years. This prolonged litigation has included multiple motions to dismiss, multiple motions for summary judgment, two interlocutory appeals, two lengthy trials, post-trial litigation, and seemingly endless problems with discovery.[149] The Court did not determine lightly, over two years ago as of this writing, that a new trial was necessary against Defendant Gibbs. The Court now finds that summary judgment is not warranted as to Bistrian's remaining claim. An order will be entered.

---

[146] Pl.'s Opp. Mot. Summ. J. 23 [Doc. No. 559] (quoting *Schweikert v. Eagle*, No. 20-4310, 2022 WL 394751, at *3 (E.D. Pa. Feb. 9, 2022)).

[147] *See Kravinsky v. Glover*, 396 A.2d 1349, 1354–55 (Pa. Super. Ct. 1979) (holding that the causation of the plaintiff's driving phobia, which began immediately after the car crash that was the subject of the suit, was not "such an obvious, natural, or probable result of the car collision that a trier of fact could determine causation without the aid of expert testimony").

[148] *Id.* at 47.

[149] *Bistrian*, 517 F. Supp. 3d at 346 n.80.