**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PETER BISTRIAN**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**WARDEN TROY LEVI, et al.**<br><br>    **Defendants.** | **CIVIL ACTION NO. 08-3010** |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                        **December 3, 2024**

   Before the Court is Plaintiff Peter Bistrian's Application for Attorneys' Fees and Expenses ("Fee Application") and Supplement to Plaintiff's Application for Attorneys' Fees and Expenses ("Supplement"). After reviewing the Fee Application and Supplement and responses thereto, the Court will grant Bistrian's Fee Application and Supplement and award Bistrian fees and costs, in the manner set forth below.

**I.**  **BACKGROUND**

   The basis for the Fee Application is this Court's Order of March 25, 2022, in which the Court imposed monetary sanctions on the United States.[1] The Court found that the United States had "failed to supplement its disclosures by impermissibly cabining its search to documents within the possession of the [Bureau of Prisons]."[2] Accordingly, the Court ordered that as a sanction, the United States will pay attorneys' fees and costs in connection with Plaintiff's Motion to Compel United States to Review FBI Documents and to Produce Relevant Documents [Doc. Nos. 465, 477]; Plaintiff's Reply Brief regarding Plaintiff's Motion for New Trial as to

---

[1] Order [Doc. No. 519].

[2] Mem. Op. at 18 [Doc. No. 518].

James Gibbs [Doc. Nos. 462, 481]; Plaintiff's Motion for Sanctions Against the Government for

Failing to Produce FBI Records Concerning Northington Attack [Doc. No. 495]; and the

deposition of Officer Jezior taken pursuant to the February 5, 2021 Memorandum Opinion and

Order [Doc. Nos. 490, 491].[3] The Court ordered Bistrian to submit a fee application accounting

for his legal fees and other expenses encompassed by the granted sanctions and deferred ruling

on the specific amount until the submission of the fee application.[4]

Plaintiff has submitted his Fee Application and a Supplement and requests, in total,

$393,514.75 for fees and $6,218.94 for expenses.[5] Bistrian's attorney, Richard Bazelon, has

submitted a detailed affidavit to explain the claimed fees and costs, in addition to time entries

and invoices, CVs and declarations for billing attorneys, and a declaration from Mary Catherine

Roper, Esq., regarding billing rates in Philadelphia.[6] The Court accepts these sworn statements as

true. The Government objects to Bistrian's Fee Application and Supplement and proposes that

Bistrian should only be awarded $39,391, less than 10% of the requested amount.[7]

## II.    LEGAL STANDARD

In reviewing a fee application, a district court must conduct "a thorough and searching

analysis."[8] Where, as here, the court has determined a party is entitled to attorneys' fees and

costs, the court must determine the reasonableness of both the attorneys' hourly rates and the

---

[3] Order [Doc. No. 519].

[4] Order ¶ 6 [Doc. No. 519].

[5] Pl.'s Appl. [Doc. No. 521]; Supp. Pl.'s Appl. [Doc. No. 546].

[6] *See* Bazelon Decl. [Doc. 521-1].

[7] Def.'s Resp. Supp. Pl.'s Appl. [Doc. No. 547]; Def.'s Resp. Supp. Pl.'s Appl., Ex. B [Doc. No. 547-1]. *See also* Def.'s Resp. Pl.'s Appl. [Doc. No. 523].

[8] *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001).

work performed.[9] The party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours billed are reasonable.[10] To initially satisfy this burden, the fee petitioner "should submit evidence supporting the hours worked and rates claimed."[11] If the opposing party wishes to challenge the fee award, it must then object "with sufficient specificity" to the request.[12] The court has a "great deal of discretion" to adjust the fees in light of such objections.[13] However, the court cannot "decrease a fee award based on factors not raised at all by the adverse party."[14]

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended . . . multiplied by a reasonable hourly rate."[15] This calculation results in the "lodestar." Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary, and the court can also deduct hours when the fee petition inadequately documents the hours claims.[16] Finally, the court can opt to adjust the fee award upward or downward if it is not reasonable "in light of the results obtained."[17]

## III.    DISCUSSION

Defendants argue that the Plaintiff's fee award should be significantly reduced because 1) the requested rates are excessive and unreasonable; 2) it is unreasonable to award senior partner

---

[9] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *K.S. v. Upper Darby Sch. Dist.*, No. 20-4470, 2021 WL 4262324, at *3 (E.D. Pa. Sept. 20, 2021).

[10] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

[11] *Hensley*, 461 U.S. at 433.

[12] *Rode*, 892 F.2d at 1183.

[13] *Marthers v. Gonzales*, No. 05-3788, 2008 WL 3539961, at *1 (E.D. Pa. Aug. 13, 2008) (citing *Rode*, 892 F.2d at 1183).

[14] *K.S.*, 2021 WL 4262324, at *3 (quoting *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)).

[15] *Hensley*, 461 U.S. at 433.

[16] *Id.*; *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 400 (3d Cir. 2018).

[17] *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 434-37).

rates for junior associate work; 3) the Court should reduce the attorney time claimed for compensation; and 4) the Court should strike expenses associated with Plaintiff's Rule 60 response. Defendants also request that the Court confirm that no further sanctions awards are appropriate. The Court addresses each in turn.

### A.    Rates

#### 1.    Requested Timekeeper Rates

The Court must first determine whether Bistrian has requested a reasonable hourly rate for his attorney's work. Bistrian has requested the following hourly rates by timekeeper, based on the complexity of the case and the skill and experience of the attorneys:

| | | |
|---|---|---|
| Richard Bazelon | 50+ years' experience | $900 per hour |
| Michael Harris | 33 years' experience | $825 per hour |
| Lisa Barton | 26 years' experience | $675 per hour |
| Paralegals | | $210 per hour[18] |

The United States objects that the requested rates for the attorneys here are excessive and unreasonable. Specifically, the United States objects to the rates Bistrian seeks because they are higher than both the rates previously charged to Bistrian by Bazelon, Less, & Feldman, P.C. ("BLF") and the rates published in the Community Legal Services ("CLS") fee schedule.[19]

The Third Circuit has explained succinctly how to determine a reasonable hourly rate:

> In an attorney's fee award, the proper hourly fee rate is determined by the community market rate rule. To wit, a reasonable hourly rate should be determined by examination of the prevailing market rates in the relevant community at the time of the fee petition, not the time the legal services were performed. A court should assess the skill and experience of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. The party seeking to

---

[18] Pl.'s Appl. at 2 [Doc. No. 521].

[19] Def.'s Resp. Pl.'s Appl. at 5 [Doc. No. 523].

recover attorney's fees has the initial burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case. If the burden is met, the party opposing the fee award can rebut the reasonableness of the proffered hourly rate with record evidence.[20]

The Third Circuit has also instructed that the CLS fee schedule is "a fair reflection of the prevailing market rates in Philadelphia."[21] Numerous district judges have used it as a benchmark.[22] While the starting point in ascertaining a reasonable hourly rate is the attorney's usual billing rate, this rate is not dispositive.[23]

Bistrian has provided both the CLS fee schedule at the time of the Fee Application and further record evidence, via declarations, to assist the Court in determining a reasonable rate. Mr. Bazelon's declaration explains that the redacted hourly attorney rates on Bistrian's invoices were as follows: $750 for Bazelon, $500 for Barton, $400 for Harris, and $150 for paralegals.[24] But Mr. Bazelon also avers that "these rates are [not] relevant to the Application because, *inter alia*, of the *sui generis* agreement pertaining thereto and the date thereof."[25] Of course, "counsels' hourly rates are not limited by rates specified in engagement letters [and] a fee agreement does not impose an automatic ceiling on an award of attorney fees."[26]

---

[20] *L.J. v. Audubon Bd. of Educ.*, 373 F. App'x 294, 296 (3d Cir. 2010) (quotations and citations omitted).

[21] *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (quotations omitted).

[22] *See, e.g., M.P. v. Parkland Sch. Dist.*, No. 20-4447, 2021 WL 5177012, at *2, 7 (E.D. Pa. Nov. 21, 2021); *K.S.*, 2021 WL 4262324, at *4; *Gwendolyn L. v. Sch. Dist. of Phila.*, No. 12-51, 2014 WL 2611041, at *4 (E.D. Pa. June 10, 2014); *Pelzer v. City of Phila.*, 771 F. Supp. 2d 465, 470-71 (E.D. Pa. 2011); *Phillips v. Phila. Hous. Auth.*, No. 00-4275, 2005 WL 3488872, at *6 (E.D. Pa. Dec. 20, 2005); *Rayna P. v. Campus Comm. Sch.*, 390 F. Supp. 3d 556, 564-66 (D. Del. 2019); *Westberry v. Commonwealth Fin. Sys.*, No. 11-4387, 2013 WL 435948, at *4 (D.N.J. Feb, 4, 2013); *Levy v. Glob. Credit & Collection Corp.*, No 10-4229, 2011 WL 5117855, at *4 (D.N.J. Oct. 27, 2011).

[23] *See Mitchell v. City of Phila.*, No. 99-6306, 2010 WL 1370863, at *14 (E.D. Pa. Apr. 5, 2010).

[24] Bazelon Decl. ¶ 12 [Doc. 521-1].

[25] Bazelon Decl. ¶ 12 [Doc. 521-1].

[26] *M.M. v. Sch. Dist. of Phila.*, 142 F. Supp. 3d 396, 405 (E.D. Pa. 2015).

The United States argues that because Bistrian was once a fee-paying client, using the fee he agreed to pay would be the best way to determine a reasonable rate.[27] The United States makes much of the fact that Bistrian has redacted the fees listed on the submitted invoices, and ultimately argues that the rates previously invoiced to Bistrian should be used for this fee application.[28] In the alternative, the United States argues that the CLS fee schedule should apply.[29]

Bistrian argues that a higher hourly rate than that previously invoiced is warranted. First, he presents the CLS fee schedule. At the time of the Fee Application, the CLS fee schedule identified a billable hour range of $650-700 an hour for attorneys with more than 25 years of experience and $160-230 an hour for paralegals.[30] At the time of filing, the CLS fee schedule was already four years old, and in the months following the Fee Application, CLS published a new fee schedule, which identified a billable hour range of $735-850 an hour for attorneys with more than 25 years of experience.[31] Second, Bistrian provides the declaration of Mary Catherine Roper, Esq., who described her familiarity with the Philadelphia legal market and averred that given their respective skill and experience, Mr. Bazelon "merits a rate in excess of $925 an hour for his work in this case,"[32] Mr. Harris a rate between $850 and $900, and Ms. Barton a rate

---

[27] Def.'s Resp. Pl.'s Appl. at 2-3 [Doc. No. 523].

[28] Def.'s Resp. Pl.'s Appl. at 2 [Doc. No. 523]. Frankly, the Court does not understand why the invoiced fees are redacted on the Fee Application but accepts as true Mr. Bazelon's affidavit averring to the invoiced rates.

[29] Def.'s Resp. Pl.'s Appl. at 4 [Doc. No. 523].

[30] *See* Pl.'s Appl. at 5-6 [Doc. No. 521] (identifying rates in old CLS fee schedule).

[31] *Attorney Fees*, COMMUNITY LEGAL SERVICES OF PHILADELPHIA, https://clsphila.org/about-community-legal-services/attorney-fees/ (last updated January 19, 2023) [https://perma.cc/A54V-NCSS]. The updated fee schedule also identifies a billable range of $190-240 an hour for paralegals. *See also* Doc. No. 551.

[32] Bazelon Decl., Ex. B. ¶ 16 [Doc. 521-1].

between $700 and $750.[33] She also explains that these rates do not equal nor exceed the top rates she has seen charged by Philadelphia attorneys with comparable experience.[34]

The Court finds that the rates requested by Bistrian are reasonable. The CLS fee schedule at the time the Fee Application was filed was four years old, and thus does not account for inflation or other increases in market rates.[35] Hourly rates for both Ms. Barton and Mr. Harris fall in the range identified by CLS in the 2018 and 2023 fee schedules, respectively. And the requested rate for Mr. Bazelon is only $50 higher than the 2023 suggested CLS fee range. Given that Mr. Bazelon has over 50 years' experience litigating civil rights cases, this is perfectly reasonable. The three attorneys staffed on Bistrian's case are well-trained, highly qualified, and well-respected. Their records speak for themselves, as do their CVs and declarations that were submitted alongside the Fee Application.[36] Finally, the filings for which fees were ordered were complex, thoroughly briefed, and intensely opposed by the United States. BLF adeptly researched and briefed multiple complex legal issues, including issues of first impression. In short, the representation provided was exceptional. Given the skill, experience, and reputation of the attorney's staffed on the matter, the protracted nature of the case and the complexity of the issues,[37] and taking into account that the CLS fee schedule at the time of the Fee Application was already four years old, the Court will use the requested rates for each attorney. Similarly, and

---

[33] Bazelon Decl., Ex. B. ¶ 17 [Doc. 521-1].

[34] Bazelon Decl., Ex. B. ¶ 18 [Doc. 521-1].

[35] *See Ryan P. v. Sch. Dist. of Phila.*, No. 07-2903, 2008 WL 724604, at *6 (E.D. Pa. Mar. 18, 2008) (awarding rates higher than CLS fee schedule when fee schedule was two years old).

[36] *See* Bazelon Decl., Exs. C, D, E [Doc. 521-1].

[37] *Mitchell*, 2010 WL 1370863, at *15 (awarding rates higher than CLS fee schedule in a protracted Section 1983 case where fee schedule was four years old).

because the United States does not argue for a fee reduction for the paralegals, the Court will use the requested rate for paralegals.

## 2. Rates for the Work Performed

The United States also argues that junior associates should have performed 80 percent of the attorney work charged in the Fee Application, at a much lower rate of $275 an hour.[38] The United States takes issue with Mr. Bazelon and Mr. Harris "comb[ing] through the record, conduct[ing] legal research, [and] drat[ing] motions from scratch," insisting that a junior associate should have performed those tasks, while a senior partner should have reviewed the work "at a much lower time commitment."[39]

Indeed, "Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."[40] And the Third Circuit rejects "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates."[41] "A fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law."[42] That said, "[l]egal research is an essential part of a lawyer's job and should not always be deemed 'associate level' work."[43]

When opposing a fee application, the opposing party must object "with sufficient specificity" to the request.[44] Here, the United States has not. Instead, the United States suggests

---

[38] Def.'s Resp. Pl.'s Appl. at 7 [Doc. No. 523]; Def.'s Resp. Pl.'s Appl., Ex. A [Doc. No. 523-2].

[39] Def.'s Resp. Pl.'s Appl. at 6 [Doc. No. 523].

[40] *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983).

[41] *Id*.

[42] *Id*.

[43] *Simring v. Rutgers*, 634 F. App'x 853, 861 (3d Cir. 2015).

[44] *Rode*, 892 F.2d at 1183.

the Court apply this 80% downgrade without differentiating among motions or providing any analysis of the services performed by these attorneys or why junior associates should have performed this work. The Court declines to do so. First, the Court rejects the notion that it was inappropriate for Mr. Bazelon and Mr. Harris to draft the filings covered by the fee application themselves. This case has gone on for decades, and the knowledge of the case that Mr. Bazelon and Mr. Harris have make it so that it is likely far more efficient for them to draft briefings, rather than to supervise a junior associate inexperienced in the matter. Nor does the Court find it unreasonable for these attorneys to undertake cursory reviews of previously withheld and newly produced evidence—the basis for the sanctions here—as is billed in the invoices.

However, the Court recognizes that given BLF's size and composition, some perhaps more "junior" work, specifically basic research or extensive record review, was completed by more expensive, experienced attorneys than necessary. Where appropriate below, the Court considers such a downgrade and reimburses these tasks at a lower rate of $275 an hour.[45] Where a block-billed time entry includes both research or record review and other tasks appropriately billed at a higher rate, the Court will reimburse a portion of the block-billed hours at a lower rate, considering the tasks described in the time entry and the relative amount of time spent on "junior" work.

### B.    Hours

Next, the Court must determine whether the work performed and hours charged by BLF were reasonable. In making this determination, a court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described

---

[45] The United States has advocated for a junior associate rate of $275 an hour, which it derives from the CLS fee schedule. Def.'s Resp. Supp. Pl.'s Appl., Ex. B [Doc. No. 547-1]. Bistrian does not argue for a different junior associate rate to be applied. The Court will use the proposed $275 an hour.

and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"[46] The court can also deduct hours when the fee petition inadequately documents the hours claimed.[47]

BLF appropriately provided invoices with time entries for the Court's review, along with a "breakdown of attorney and paralegal time by motions and depositions."[48] BLF also provided a summary of the total number of hours expended by each timekeeper.[49] In its response, the United States undertook to breakdown the number of hours each timekeeper spent on each motion (or deposition).[50] This endeavor is helpful, but the totals by motion that the United States calculates differ from those reported by Bistrian in the Fee Application.[51] Bistrian has stated that he does not object to the Court's use of the United States' table when helpful, despite these discrepancies.[52] The United States provided an updated summary table following Bistrian's supplement to the Fee Application.[53] When necessary, the Court supplements BLF's invoices and Fee Application with the breakdown provided by the United States.

1.    Motion to Compel and Reply in Support of Motion to Compel

First, the Court awarded fees and expenses in connection with Bistrian's Motion to Compel and Reply Brief in support thereof.[54] Bistrian claims 48.9 hours expended on the Motion to Compel and 59 hours spent on the Reply—a total of 107.9 hours.[55]

---

[46] *Pub. Interest Rsch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (quoting *Hensley*, 461 U.S. at 433-34).

[47] *Hensley*, 461 U.S. at 433; *Clemens*, 903 F.3d at 400.

[48] Pl.'s Appl. at 2 [Doc. No. 521]; Bazelon Decl., Ex. A [Doc. 521-1].

[49] Pl.'s Appl. at 2 [Doc. No. 521].

[50] Def.'s Resp. Pl.'s Appl., Ex. A [Doc. 523-2].

[51] *Compare* Def.'s Resp. Pl.'s Appl., Ex. A [Doc. 523-2] *with* Pl.'s Appl. at 2 [Doc. No. 521].

[52] Supp. Pl.'s Appl. at 9 [Doc. No. 546].

[53] Def.'s Resp. Supp. Pl.'s Appl., Ex. B [Doc. No. 547-1].

[54] Order ¶ 1 [Doc. No. 519].

[55] Pl.'s Appl. at 2 [Doc. No. 521].

The United States argues that most of the hours spent on the Motion to Compel and Reply are not recoverable, because the Court did not award fees and expenses for the Reply.[56] The United States misreads the Court's previous Memorandum Opinion and Order. The Memorandum Opinion awarded fees and expenses because the Motion to Compel was successful in producing the previously withheld documents, and says nothing about refusing to award fees for the Reply.[57] Moreover, the Court's Order clearly states that "Plaintiff's motion for the United States to pay attorneys' fees and costs in connection with Plaintiff's Motion to Compel United States to Review FBI Documents and to Produce Relevant Documents [Doc Nos. 465, 477] is **GRANTED**."[58] Document Number 477 is Bistrian's Reply Brief.[59] The Court awarded fees and expenses in connection with the preparation of this document.

The United States also argues that the Court should award only some of the fees and expenses related to the Motion to Compel based on the Motion's partial success.[60] The United States already raised this argument in opposing the Motion for Sanctions, and the Court has already rejected it:

> The United States' contention that sanctions are inappropriate because Bistrian's sanctions] motion was untimely, or that the Court did not grant the motion in full, ignores this context. Furthermore, the United States was not substantially justified in its handling of Bistrian's 2015 request for the color photographs, which should have led to the production of the Northington Attack file years before the trial.[61]

The Court again rejects this argument and will not reduce fees in connection with the Motion to Compel on this basis.

---

[56] Def.'s Resp. Pl.'s Appl. at 7 [Doc. No. 523].

[57] Mem. Op. at 21 [Doc. No. 518].

[58] Order ¶ 1 [Doc. No. 519].

[59] See Docket, *Bistrian v. Levi*, Civ. No. 08-3010 (E.D. Pa.).

[60] Def.'s Resp. Pl.'s Appl. at 8 [Doc. No. 523].

[61] Mem. Op. at 21 [Doc No. 518].

Next, the Court considers whether any of the hours expended on these motions by senior attorneys should be reimbursed at a junior attorney rate given the nature of the task. In reviewing the provided invoices, the Court identifies nine entries, totaling 20.6 hours, that include, *inter alia*, record review or research.[62] Thus, the Court will reimburse the following at a junior associate rate of $275 an hour, rather than at the requested rate: 1 hour of Harris's May 6, 2020 time entry; 1 hour of Harris's May 7, 2020 time entry; the full 1.1 hours of Harris's May 21, 2020 time entry; .5 hours of Bazelon's May 24, 2020 time entry; the full 4.75 hours of Bazelon's May 31, 2020 time entry; .5 hours of Harris's June 8, 2020 time entry; and 1 hour of Harris's June 9, 2020 time entry.

In sum, regarding the Motion to Compel and Reply Brief in Support of the Motion to Compel, the Court will reduce Mr. Harris's requested hours by 4.6 hours and Mr. Bazelon's requested hours by 5.25 hours and will order reimbursement of 9.85 hours at a junior associate rate of $275 an hour to account for work that could reasonably be completed at a lower rate.

2.    Reply Brief in Support of Motion for a New Trial

Second, the Court awarded fees and expenses in connection with Bistrian's Reply Brief in Support of his Motion for a New Trial as to James Gibbs.[63] The Court reasoned that because

---

[62] Bazelon Decl., Ex. A at 17-25 [Doc. No. 521-1]. The relevant entries are as follows: On May 6, 2020, Harris billed 4.20 hours for "[r]esearch for motion for FBI documents; review and comment on draft of memorandum of law in support of motion;" on May 7, 2020, Harris billed 3.7 hours for "[r]esearch for and drafting of legal argument section of memorandum of law in support of motion for FBI documents; review and edit draft memorandum of law; e-mails about same and exhibits thereto;" on May 21, 2020, Harris billed 1.1 hours for "[r]esearch on recovery of attorney's fees from United States for discovery misconduct; e-mails about same; review correspondence; review transcript of Northington sentencing proceeding;" on May 24, 2020, Bazelon billed 2.15 hours for "[r]eview Bivens trial transcripts for references to FBI involvement and instigation; review memo from client re: FBI documents; compare FBI documents to documents previously produced re: Northington attack; consider implications for Bivens motion(s) based on newly discovered evidence;" on May 31, 2020, Bazelon billed 4.75 hours for "[w]ork on researching record in preparation for responding to Government's response to Motion to Compel, including Alkano memos, McLaughlin testimony; FDC administrative proceeding against Northington;" on June 8, 2020, Harris billed 1.5 hours for "[r]eview and edit draft reply brief in support of motion to compel; research for same; e-mails about same;" and on June 9, 2020, Harris billed 3.2 hours for a continuation of his June 8 work.

[63] Order at ¶ 2 [Doc. No. 519].

only the Reply Brief addressed any newly discovered evidence that formed the basis for a new trial, only time expended on the Reply Brief—and not on the Motion itself—would be reimbursed in the sanction award.[64] Bistrian claims only 17.80 hours in connection with this Reply Brief.[65]

The United States argues that the Court should credit "at most one quarter of the time spent" on the Reply Brief.[66] It urges that because only three pages in Bistrian's reply support a new trial based on newly discovered evidence, only that time can be recovered. The United States has again misunderstood (or misrepresented) the Court's prior ruling. The Court explicitly awarded attorneys' fees and expenses for Bistrian's Reply Brief.[67] As the initial motion for re-trial was filed before Plaintiff learned of the previously withheld Northington Attack file, awarding fees and costs only for the Reply Brief addresses the United States' apparent concern that Bistrian not be awarded for a motion that did not mention newly discovered evidence.[68] Most importantly, though, Bistrian's motion for a new trial was wholly successful: a new trial was ordered. The Court will not attempt to parse out successful and unsuccessful arguments for a new trial and will not reduce the amount of fees awarded for Bistrian's Reply Brief on that basis.[69]

---

[64] Mem. Op. at 21-22 [Doc. No. 518].

[65] Pl.'s Appl. at 2 [Doc. No. 521].

[66] Def.'s Resp. Pl.'s Appl. at 9 [Doc. No. 523].

[67] Order ¶ 2 [Doc. No. 519] ("Plaintiff's motion for the United States to pay attorneys' fees and costs in connection with Plaintiff's Motion for New Trial as to James Gibbs [Doc. Nos. 42, 481] is **GRANTED** with respect to Plaintiff's reply brief costs and **DENIED** with respect to Plaintiff's motion costs.").

[68] Def.'s Resp. Pl.'s Appl. at 9-10 [Doc. No. 523].

[69] *See Hensley*, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."); *Ray v. AT&T Mobility Servs., LLC*, No. 18-3303, 2022 WL 1203730, at *3 (E.D. Pa. Apr. 22, 2022) ("[W]here a plaintiff has failed to prevail on a claim that is related to, or furthers, a successful claim, an award should not be reduced simply because the court 'did not adopt each contention raised.'") (quoting *Hensley*, 461 U.S. at 436).

Now, the Court again reviews whether any billed time should be reimbursed at a junior associate rate. The Court identified two entries, totaling 6.6 hours, that included any research or record review.[70] Thus, the Court will reimburse the following at a junior associate rate of $275 an hour, rather than at the requested rate: the full 1 hour of Harris's June 1, 2020 time entry and 2 hours of Harris's June 22, 2020 time entry.

In sum, regarding the Reply Brief in Support of the Motion for a New Trial, the Court will reduce Mr. Harris's requested hours by 3 hours and will order reimbursement of 3 hours at a junior associate rate of $275 an hour to account for work that could reasonably be completed at a lower rate.

### 3.    Motion for Sanctions and Reply Motion for Sanctions

Third, the Court awarded fees and costs "in connection with Plaintiff's Motion for Sanctions Against the Government for Failing to Produce FBI Records Concerning Northington Attack."[71] The Court granted this "reasonable" request "given that Bistrian would not have needed to move for sanctions had the United States produced the Northington Attack file prior to the *Bivens* trial."[72] The Fee Application claims 89.90 hours towards the Motion for Sanctions and 106.80 hours towards the Reply Memorandum in Support of Motion for Sanctions.[73]

In opposition, the United States makes a similar argument regarding the Motion for Sanctions, arguing an "outrageous amount" of attorney time went into the papers when the "vast

---

[70] On June 1, 2020, Harris billed 1 hour for "[r]esearch on motion for new trial based on newly discovered evidence; e-mails about same." Bazelon Decl., Ex. A at 22 [Doc. No. 521-1]. On June 22, 2020, Harris billed 5.6 hours for "[r]eview Gibbs' response to motion for new trial; research for reply brief in support of motion for new trial; e-mails about same." Bazelon Decl., Ex. A at 30 [Doc. No. 521-1].

[71] Order ¶ 3 [Doc. No. 519].

[72] Mem. Op. at 22 [Doc. No. 518].

[73] Pl.'s Appl. at 2 [Doc. No. 521].

majority . . . was rejected or disregarded by the Court."[74] This argument is, frankly, absurd. The Court previously awarded fees for the preparation of the Motion for Sanctions and the Reply, and Plaintiff obtained broad relief as a result of these briefs.[75] The fact that Bistrian put forward alternative grounds for sanctions is immaterial to his entitlement to attorneys' fees and expenses.[76] The sanctions imposed in this case are meant to reimburse Bistrian for the costs incurred because of the United States' dilatoriness, withholding evidence, and "series of errors and omissions during discovery that have come to light over this case's lengthy history."[77] The Court will not change its decision now.

The United States also argues that any expenses relating to Bistrian's Rule 60 Response should not be awarded.[78] Bistrian seeks compensation for a total of 6.70 hours of work on the Rule 60 Response—6.4 hours billed by Bazelon, .1 by Harris, and .2 by Barton.[79] The United States argues that Bistrian did not seek, and the Court did not award, any fees in connection with this briefing.[80] Bistrian responds that "the United States' purpose in making the submission was to influence the Court with respect to the then pending Motion for Sanctions,"[81] and thus Bistrian's response was "in connection with Plaintiff's Motion for Sanctions."[82] Thus, Bistrian urges, the time spent on the Rule 60 Response should be included in the Court's fee award. The Court agrees with the United States that the time spent on the Rule 60 response should be

---

[74] Def.'s Resp. Pl.'s Appl. at 10 [Doc. No. 523].

[75] Order ¶ 3 [Doc. No. 519].

[76] *See Hensley*, 461 U.S. at 440.

[77] Mem. Op. at 22 [Doc. No. 518].

[78] Def.'s Resp. Pl.'s Appl. at 13 [Doc. No. 523].

[79] Def.'s Resp. Pl.'s Appl., Ex. A [Doc. No. 523-2].

[80] Def.'s Resp. Pl.'s Appl. at 13 [Doc. No. 523].

[81] Pl.'s Reply Supp. Appl. at 10 [Doc. No. 527].

[82] Order ¶ 3 [Doc. No. 519].

stricken: the time was entered several months after briefing was completed on the Motion for Sanctions, and the Court did not award fees in connection with this briefing. The Court will reduce Bazelon's requested hours by 6.4, Harris's by .1, and Barton's by .2.

Next, the Court considers whether any reduction in rate is necessary for time billed researching or reviewing the record. In connection with the Motion for Sanctions, the Court identified ten entries, totaling 33 hours, where Harris billed for, *inter alia*, research or record review.[83] Thus, the Court will reimburse the following at a junior associate rate of $275 an hour, rather than at the requested rate: the full 3.2 hours of Harris's February 7, 2021 time entry; the full 2.5 hours of Harris's February 8, 2021 time entry; the full 4.2 hours of Harris's March 25, 2021 time entry; the full 3.8 hours of Harris's March 25, 2021 time entry; the full .6 hours of Harris's March 27, 2021 time entry; the full 2.2 hours of Harris's March 28, 2021 time entry; the full .8 hours of Harris's March 30, 2021 time entry; 2 hours of Harris's March 31, 2021 time entry; 2 hours of Harris's April 1, 2021 time entry; 2 hours of Harris's April 4, 2021 time entry.

In connection with the Reply Brief in Support of the Motion for Sanctions, the Court identified fifteen entries, totaling 63.3 hours, where some portion of the time entry was spent on research or record review.[84] Thus, the Court will reimburse the following at a junior associate

---

[83] Bazelon Decl., Ex. A at 41-48 [Doc. No. 521-1]. The relevant entries are as follows: On February 7, 2021, Harris billed 3.2 hours for "[r]esearch for possible motion for sanctions; e-mails about same;" on February 8, 2021, Harris billed 2.5 hours for the same; on March 24, 2021, Harris billed 4.2 hours for "[r]esearch on sanctions available against government for discovery misconduct; e-mail about same;" on March 25, 2021, Harris billed 3.8 hours for the same; on March 27, 2021, Harris billed .6 hours for "[r]esearch for motion for sanctions;" on March 28, 2021, Harris billed 2.2 hour for "research for motion for sanctions; e-mails about same;" on March 30, 2021, Harris billed .8 hours for "[r]esearch for sanctions motion;" on March 31, 2021, Harris billed 4.3 hours for "[r]eview and revise draft of fact section of sanctions motion; e-mails about same; research for and drafting of argument section of sanctions motion;" on April 1, 2021, Harris billed 5.3 hours for "[r]evise draft memorandum of law in support of motion for sanctions; additional research for same; e-mails about same;" and on April 4, 2021, Harris billed 6.1 hours for "[r]evise draft memorandum of law in support of motion for sanctions; additional research for same; e-mails about same; draft motion."

[84] Bazelon Decl., Ex. A at 51-56 [Doc. No. 521-1]. The relevant entries are as follows: On April 23, 2021, Bazelon billed 4.2 hours for "[r]esearch and review of record re Gov't new defense of sovereign immunity; communicate with M. Harris re same; review cases including Limone v. U.S.; review Equal Access to Justice Act and annotations;" on April 24, 2021, Harris billed 3.3 hours for "[t]elephone conference with R. Bazelon about reply

16

rate of $275 an hour, rather than at the requested rate: 3 hours of Bazelon's April 23, 2021 time entry; 2 hours of Harris's April 24, 2021 time entry; the full 4.1 hours of Harris's April 25, 2021 time entry; 4 hours of Bazelon's April 26, 2021 time entry; the full 4.1 hours of Harris's April 26, 2021 time entry; 2 hours of Bazelon's April 27, 2021 time entry; the full 2.7 hours of Harris's April 27, 2021 time entry; 3.4 hours of Harris's April 28, 2021 time entry; 1.1 hours of Harris's April 29, 2021 time entry; 1.2 hours of Harris's April 30, 2021 time entry; 1 hour of Harris's May 1, 2021 time entry; .6 hours of Harris's May 2, 2021 time entry; 4 hours of Bazelon's May 3, 2021 time entry; the full 3.3 hours of Harris's May 3, 2021 time entry; and 3.4 hours of Harris's May 4, 2021 time entry.

In sum, regarding the Motion for Sanctions, Reply Brief in Support of the Motion for Sanctions, and Bistrian's Rule 60(b) Response, the Court will reduce Mr. Bazelon's requested hours by 19.4, Mr. Harris's, by 50.3, Ms. Barton's by .2, and will order reimbursement of 63.2 hours at a junior associate rate of $275 an hour to account for work that could reasonably be completed at a lower rate.

---

brief in support of motion for sanctions; research for same; e-mails about same;" on April 25, 2021, Harris billed 4.1 hours for "[r]esearch for reply brief in support of motion for sanctions; e-mails about same;" on April 26, 2021, Bazelon billed 7.2 hours for "research sovereign immunity issues and review cases; numerous communications with M. Harris re sovereign immunity;" on April 26, 2021, Harris billed 4.1 hours for "research for reply brief in support of motion for sanctions; e-mails about same;" on April 27, 2021, Bazelon billed 4.65 hours for "further research and consideration of sovereign immunity issues; memo to M[.] Harris re same with references to relevant facts;" on April 27, 2021, Harris billed 2.7 hours for "[r]esearch for reply brief in support of motion for sanctions; e-mails about same;" on April 28, 2021, Harris billed 6.8 hours for "[r]esearch for and drafting of section of reply brief in support of motion for sanctions; e-mails about same;" on April 29, 2021, Harris billed 2.3 hours for "[r]esearch for and drafting on argument section of reply brief in support of motion for sanctions; e-mails about same;" on April 30, 2021, Harris billed 2.4 hours for "[r]esearch for and drafting of argument section of [reply brief];" on May 1, 2021, Harris billed 2.1 hours for "[r]esearch for and drafting of argument section of reply brief in Support of Motion for Sanctions;" on May 2, 2021, Harris billed 1.3 hours for "E-mails about reply brief in Support of Motion for Sanctions; additional research for same;" on May 3, 2021, Bazelon billed 8.05 hours for "[w]ork on issue of Touhy v. Federal Rules and status of U.S. as a party, including review of record and legal argument; draft section of memorandum re same; research on applicable DOJ Guidelines and policy and include same in draft; communications with M. Harris re legal issues;" on May 3, 2021, Harris billed 3.3 hours for "[a]dditional research for reply brief in Support of Motion for Sanctions; e-mails about same and deposition of FBI representative;" and on May 4, 2021, Harris billed 6.8 hours for "[r]evise draft reply brief in Support of Motion for Sanctions; additional research for same; e-mails about same."

4.    Jezior Deposition

The Court also ordered the United States to pay attorneys' fees and costs in connection with the deposition of Officer William Jezior.[85] The United States has raised no objections to the costs in connection with the Jezior deposition. Bistrian's Fee Application identifies and seeks reimbursement for 4.35 hours, billed by Mr. Bazelon, spent on the Jezior Deposition.[86] Preparing for and completing a deposition in less than 5 hours is reasonable and it is reasonable that a senior attorney prepares for and completes the deposition. The Court will award fees for the full 4.35 hours.

5.    Memorandum in Opposition to Motion for Reconsideration

After the Court granted Bistrian's Motion for Sanctions and ordered that the United States pay fees and costs in this matter, the United States filed a Motion for Reconsideration, which the Court has since denied.[87] Bistrian responded in opposition to that motion ("Opposition Brief"), and the time spent on that opposition was included in Bistrian's Supplement that was filed February 10, 2023.[88] Because the Opposition Brief was in connection with the Motion for Sanctions and in direct response to both the United States' sanctioned behavior and opposition to the Court's Order imposing sanctions, the Court will award fees for this filing.[89] BLF billed 17.8 hours and claims $15,555 for this Opposition Brief.[90]

---

[85] Order ¶ 4 [Doc. No. 519].

[86] Bazelon Decl., Ex. A at 49 [Doc. 521-1]. The time entry for this task is 5.10 hours, billed by Bazelon, for "Jezior depos and prep therefore; make notes of deposition; start prep for Akano depos." The Application subtracts .75 hours to account for the preparation for the Akano deposition which was not included in the Court's order awarding sanctions. *See* Order ¶ 4 [Doc. No. 519].

[87] Mot. Reconsideration [Doc. No. 520]; Order [Doc. No. 545] (denying Motion for Reconsideration).

[88] Supp. Pl.'s Appl. at 4 [Doc. No. 546].

[89] *See* Order at ¶ 3 [Doc. No. 519] ("Plaintiff's motion for the United States to pay attorneys' fees and costs in connection with Plaintiff's Motion for Sanctions Against the Government for Failing to Produce FBI Records Concerning Northington Attack [Doc. No. 495] is **GRANTED**.").

[90] Supp. Pl.'s Appl. at 4 [Doc No. 546]; Def.'s Resp. Supp. Pl.'s Appl., Ex. B [Doc. No. 547-1].

The United States continues to argue generally that the requested rates are too high and that junior associates should have performed a majority of the work completed.[91] The Court reviewed the time entries for this briefing and identified one entry on April 18, 2022, where Harris billed .5 hours for "[r]esearch on standards applicable to motions for reconsideration; emails with R. Bazelon about same; review letter to client."[92] For the reasons explained above regarding a reasonable rate for research, the Court will reduce Mr. Harris's requested hours by .5 and reimburse this .5 at a junior associate rate of $275 an hour.

The United States raises no other specific objections to the fees requested for the opposition to the motion for reconsideration, and the Court cannot "decrease a fee award based on factors not raised at all by the adverse party."[93]

### 6. Fee Application

Likewise, the Court did not explicitly order fees in connection with the Fee Application. Including the additional fees claimed in the Supplement, Bistrian claims $62,423 in connection with the Fee Application and $46,168 in connection with the Reply in Support of the Fee Application.[94] These fees represent 139.45 hours of work billed in connection with the Fee Application and Reply.

The United States first urges that the requested fees should not be awarded because "the Court did not award fees for the costs of preparing Bistrian's fee application."[95] The Court

---

[91] Def.'s Resp. Supp. Pl.'s Appl. at 1-2 [Doc. No. 547].

[92] Bazelon Decl., Ex. B. at 21 [Doc. No. 546-1].

[93] *Bell*, 884 F.2d at 720.

[94] Def.'s Resp. Supp. Pl.'s Appl., Ex. B [Doc. No. 547-1].

[95] Def.'s Resp. Pl.'s Appl. at 11 [Doc. No. 523].

disagrees. First, fees incurred in litigating the Fee Application are compensable.[96] Second, the

Fee Application and the work performed in compiling it is directly related to the United States'

sanctioned conduct.[97] As the Court explained when granting Bistrian's Motion for Sanctions, the

Motion for Sanctions (and, it follows, the Fee Application) would not have been necessary had

the United States produced the Northington Attack file prior to the *Bivens* trial.[98] The Court will

order reimbursement for reasonable fees associated with the Fee Application.

Next, the United States argues that the hours claims are unreasonable because Bistrian

"unnecessarily complicated this application" by redacting the invoiced rates and making a

thorough argument for a higher hourly rate.[99] The Court disagrees with the United States'

argument that the case for a higher hourly rate was "unnecessarily complicated," and suspects

that, had Bistrian not included the research and affidavits provided, the United States would be

making the converse argument that Bistrian did not meet his burden of supporting the requested

rates. However, the Court agrees with the United States that the redaction of the invoiced rates

was unnecessary—especially when Mr. Bazelon then included the invoiced rates in his

declaration—and will reduce the requested hours to exclude time spent making those

redactions.[100] The Court does not disagree with BLF's practice of redacting time entries not

---

[96] *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53-54 (3d Cir. 1978); *see also McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 488, 494 (6th Cir. 2014) (finding that a sanctions award of fees encompasses reasonable fees and costs associated with the preparation and presentation of the fee application).

[97] Fed. R. Civ. P. 37(c)(1)(A); *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103-04 (2017) (holding that a sanction to pay fees is "limited to the fees the innocent party incurred solely because of the misconduct").

[98] Mem. Op. at 22 [Doc. No. 518].

[99] Def.'s Resp. Pl.'s Appl. at 12 [Doc. No. 523].

[100] Bazelon Decl., Ex. A at 71-73 [Doc. No. 521-1]. The following time was spent making redactions on the Fee Application and Supplement: on March 31, 2022, Bazelon billed 1.5 hours for "[c]onsider how to present attorney time in fee application, including redactions and highlighting" and "make highlights and redactions to invoices;" on March 31, 2022, paralegal Blair billed 3 hours for "[c]onfer with R. Bazelon re spreadsheet of Westlaw charges; compile BLF invoices for R. Bazelon's review, redact Westlaw invoices for inclusion in Fee Petition and confer with R. Bazelon re same;" on March 31, 2022, paralegal Bennett billed .3 hours for "[a]ssist[ing] S. Blair with redaction issues;" on April 4, 2022, Blair billed 3.0 hours for "[c]onfer with R. Bazelon and revise redacted invoices

subject to the sanctions award and has considered the same when reducing the requested hours. To account for time spent making unnecessary redactions to the invoiced rates, the Court will reduce Mr. Bazelon's requested hours by 1 hour, Ms. Blair's by 2 hours, and Ms. Bennett's by .25 hours.

Next, the United States repeats its chorus that the requested fees are unreasonable because the work could have been completed in far less time and by a junior associate for a lower rate.[101] It urges that over $100,000 for 140 hours of work to prepare the Fee Application and reply is unreasonable.[102] Indeed, courts in this district generally expect and approve far lower totals for the "fees on fees" award.[103] For a recent fee petition presenting "novelty and complexity," for example, Judge Beetlestone found an award of approximately $18,000 reasonable—after Plaintiff's voluntary 28% reduction in billed hours.[104] The Court recognizes that the Fee Application here required the review of invoices for multiple filings, the drafting of a brief, declarations of attorneys and an expert, and an extensive response to the United States' objection to essentially every dollar requested. Moreover, the Court recognizes that Bistrian has not included time spent in connection with the Supplement to the Fee Application in an effort to "support[] the reasonableness of the fees requested."[105]

---

as requested, review Westlaw invoices for billing dates and revise spreadsheet as requested, redact additional invoices, create spreadsheet of billable hours;" and on April 5, 2022, Blair billed 1 hour for "[c]reate spreadsheet of timekeeper hours; redact Westlaw invoices and email R. Bazelon re same."

[101] Def.'s Resp. Pl.'s Appl. at 12 [Doc. No. 523].

[102] Def.'s Resp. Supp. Pl.'s Appl. at 2-3 [Doc. No. 547].

[103] *See, e.g.*, *Cent. Bucks Sch. Dist. v. Q.M.*, No. 22-1128, 2022 WL 17339037, at *14 (E.D. Pa. Nov. 29, 2022) (finding 28 hours spent on fee petition excessive, and reducing time billed to 21 hours); *K.S.*, 2021 WL 4262324, at *8-9 (finding $6,003 in attorney fees for a fee petition reasonable; *United States v. The Farfield Co.*, No. 09-4230, 2020 WL 1821028, at *20 (E.D. Pa. Apr. 10, 2020) (awarding $8,450 for preparing a fee petition).

[104] *LeJeune v. Khepera Charter Sch.*, 420 F. Supp. 3d 331, 341-42 (E.D. Pa. 2019).

[105] Reply Def.'s Resp. Supp. Pl.'s Appl. at 4 [Doc. No. 548].

Despite all this, the Court still finds the billed 140 hours of work—nearly 30% of the total hours requested by Bistrian—excessive. Mr. Bazelon billed 35.8 hours and Mr. Harris billed 31 hours working on the Fee Application, and Mr. Bazelon spent 47.6 hours working on the Reply.[106] Of the 31 hours Mr. Harris billed on the Fee Application, 26.2 were spent conducting research on fee petitions.[107] For an attorney with over 30 years' experience, this is unreasonable. The Court will reduce Mr. Harris's billed research time to 15 hours and will reimburse these hours at a junior associate rate of $275. Similarly, Mr. Bazelon—an attorney with over 50 years' experience—should not need to spend 83.4 hours drafting a rather standard, albeit thorough, Fee Application and Reply. A "fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law."[108] The Court will reduce Mr. Bazelon's billed time on the Fee Application and Reply to 50 hours.

Finally, the United States requests that the Court proportionally disallow the expenses associated with preparing the Fee Application based on any reductions the Court makes to the overall fee award, arguing such reductions demonstrate a lack of success.[109] The Court declines to do so here, because the Fee Application was tailored to the filings and deposition for which the Court had already awarded fees. Any "success" of the original fee petition as contemplated by *Palmer*, the Motion for Sanctions here, was accounted for by the Court's Memorandum Opinion and Order awarding sanctions.[110] The purpose of this Fee Application is simply to

---

[106] Def.'s Resp. Supp. Pl.'s Appl., Ex. B [Doc. No. 547-1].

[107] Bazelon Decl., Ex. A at 70-73 [Doc. No. 521-1]; Bazelon Decl., Ex. A [Doc. No. 546-1].

[108] *Ursic*, 719 F.2d at 677.

[109] Def.'s Resp. Pl.'s Appl. at 12 [Doc. No. 523] (citing *Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 142 (3d Cir. 2018)).

[110] *See Palmer*, 897 F.3d at 142.

determine the reasonableness of the fees—fees that the Court *already* determined were an appropriate sanction for the United States' egregious behavior in this litigation. The Court will not reduce the fee award on this basis.

### 7.    Paralegal Fees

The United States does not challenge the fees associated with paralegals (except for where the United States objects wholesale to the inclusion of work on particular filings, as discussed above) or the requested paralegal rate of $210 an hour.[111] Two paralegals staffed on Bistrian's case, Susan Blair and Hillary Bennett, are well-qualified and have 34 years and 22 years of experience, respectively. Also included in the Fee Application is a request for .2 hours expended by timekeeper JJR for "[e]lectronically fil[ing] Motion for Sanctions, Certification and Memorandum of Law per R. Bazelon."[112] The Court assumes this is paralegal Jacqueline Rosso, who is identified in Mr. Bazelon's declaration.[113] No information is provided regarding her qualifications or experience. Collective paralegal time spent on this matter totals 25.1 hours, which was largely spent cite-checking, e-filing documents, managing correspondence, and preparing and reviewing document productions, exhibits, and filings.[114] This time is well-accounted for and reasonable. The Court will grant reimbursement for all requested paralegal fees at the full requested rate, except for the paralegal time spent making unnecessary redactions identified above.

---

[111] 523-2 at 2; 547-1 at 1.

[112] Bazelon Decl., Ex. A at 48 [Doc. No. 521-1].

[113] Bazelon Decl. ¶ 14 [Doc. No. 521-1].

[114] Bazelon Decl., Ex. A [Doc. No. 521-1] (reflecting time entries for paralegals SLB, HAB, and JJR).

8.    Expenses

The United States also does not challenge the expenses sought by Bistrian. Bistrian

requests a reasonable $397.30 for court reporter fees for the Jezior Deposition and $5,821.64 for

Westlaw charges.[115] Expenses such as court reporter fees and Westlaw charges are reimbursable

as part of a sanctions award.[116] The Court grants reimbursement for the full $6,218.94.

## IV.    CONCLUSION

The Fee Application seeks a total award of $399,733.69. After reviewing the Fee

Application, Supplement, and the United States' objections thereto, the Court awards the

following fees:

| Timekeeper | Reasonable Hourly Rate | Total Hours Requested | Adjustments (Hours) | Hours Reasonably Expended | Total Fees Awarded |
|---|---|---|---|---|---|
| Richard Bazelon | $900 | 222.20 | -59.05 | 163.15 | $146,835.00 |
| Michael Harris | $825 | 130.75 | -84.6 | 46.15 | $38,073.75 |
| Lisa Barton | $675 | 10.20 | -0.20 | 10.00 | $6,750.00 |
| Research Converted to Junior Associate Rate | $275 | 0 | +91.55 | 91.55 | $25,176.25 |
| Susan Blair | $210 | 20.90 | -2.0 | 18.90 | $3,969.00 |
| Hillary Bennett | $210 | 4.00 | -.25 | 3.75 | $787.50 |
| Jacqueline Rosso | $210 | 0.20 | 0 | 0.20 | $42.00 |

---

[115] Bazelon Decl., Ex. F at 97 [Doc. No. 521-1].

[116] *See, e.g.*, *Jones v. Thomas Jefferson Univ. Hosps., Inc.*, No. 13-4316, 2015 WL 1255997, at *2 (E.D. Pa. Mar. 19, 2015) (ordering payment of court reporter fees following grant of contempt motion); *Stezzi v. Citizens Bank of Pa.*, No. 10-4333, 2013 WL 1234178, at *6 (E.D. Pa. Mar. 27, 2013) (ordering payment of court reporter fees as discovery sanction); *Marthers*, 2008 WL 3539961, at *5 (collecting cases where courts in this Circuit awarded costs for computerized legal research); *Wolk v. Cohen*, No. 94-5096, 1995 WL 314508, at *3 (E.D. Pa. May 22, 1995) (awarding Westlaw costs as part of sanctions award).

The Court also awards the following costs:

| Type of Cost | Total Costs Requested | Adjustments | Total Costs Awarded |
|---|---|---|---|
| Court Reporter Fee for Jezior Deposition | $397.30 | 0 | $397.30 |
| Westlaw Research | $5,821.64 | 0 | $5,821.64 |

| | | | |
|---|---|---|---|
| Total Attorneys' Fees | $221,633.50 | | |
| Total Costs | $6,218.94 | | |
| Total Attorneys' Fees and Costs | $227,852.44 | | |

Lastly, the United States asks the Court to "confirm that its award concludes the imposition of sanctions."[117] The Court agrees that "[w]ith an award on this fee application, Bistrian will have been compensated for his expenses directly traceable to the sanctioned conduct."[118] However, unlike the United States' accusation that the Court has given a "blank check" or "the sword of Damocles" to Bistrian, the Court has carefully and impartially reviewed the Fee Application and Supplement, the United States' objections thereto, and Bistrian's further responses.[119] The Court has, in ruling on the Motion for Sanctions, identified the expenses directly traceable to the sanctioned conduct, and has declined to award fees for expenses not traceable to the United States' frankly egregious behavior in this litigation. The Court is satisfied that this award has provided reasonable compensation to Bistrian's attorneys for their work

---

[117] Def.'s Resp. Pl.'s Appl. at 13 [Doc. No. 523].

[118] Def.'s Resp. Pl.'s Appl. at 14 [Doc. No. 523].

[119] Def.'s Resp. Pl.'s Appl. at 14 [Doc. No. 523].

completed in response to the United States' flagrant errors and omissions throughout this litigation.

The United States shall pay $227,852.44 in fees and costs to BLF in 30 days. An order will be entered.